HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

T-MOBILE USA, INC., a Delaware
corporation,

        Plaintiff,

    v.

HUAWEI DEVICE USA, INC., a Texas
corporation; and HUAWEI TECHNOLOGIES
CO. LTD, a China corporation,

        Defendants

Case No. C14-1351-RAJ

**T-MOBILE USA, INC.'S
OPPOSITION TO HUAWEI
DEVICE USA'S MOTION TO
DISMISS**

**NOTE ON MOTION CALENDAR:
NOVEMBER 21, 2014**

**ORAL ARGUMENT REQUESTED**

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA'S MOTION TO DISMISS
(C14-1351-RAJ)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................. 1

II.    MOTION TO DISMISS STANDARD.................................... 3

       A.     A Rule 12(b)(6) Motion Is Not A Vehicle For Contesting Facts .......................... 3

       B.     The Court May Consider Materials Outside The Pleadings In Only
              Limited Circumstances – None Present Here ........................................ 4

III.   T-MOBILE HAS PLEADED ALL NECESSARY ELEMENTS FOR A TRADE
       SECRETS CLAIM.................................................................. 5

       A.     T-Mobile's Complaint Describes Huawei's Pattern Of Trade Secrets Theft
              In Significant Detail ..................................................... 5

              1.     Huawei's campaign of theft was ongoing and extensive. ....................... 5

              2.     The existence of Huawei's robot further supports T-Mobile's claim. ......... 7

              3.     T-Mobile's pleading sufficiently puts Huawei on notice of the trade
                     secrets it stole. ................................................... 8

                     a.     There is no heightened "particularity" standard for
                            identifying trade secrets. ................................... 8

                     b.     T-Mobile identifies specific trade secrets and the nature of
                            those secrets. ................................................ 10

       B.     T-Mobile's Complaint Establishes The Secrecy Element Of A Trade
              Secrets Claim ......................................................... 11

              1.     The validity of T-Mobile's trade secrets is a question of fact not
                     suited to a motion to dismiss........................................ 12

              2.     Trade secrets exist despite other information published in patent
                     applications or demonstrated in the promotional video....................... 12

                     a.     Patent applications do not destroy the trade secrets
                            identified in T-Mobile's complaint. ........................... 13

                     b.     The robot video is outside material that does not disclose
                            any trade secrets.............................................. 15

                     c.     T-Mobile pleaded theft of source code and sequence files........... 15

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA'S MOTION TO DISMISS - i
(C14-1351-RAJ)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350

IV.    HUAWEI DOES NOT RAISE ANY SERIOUS DISPUTE TO T-MOBILE'S
       BREACH OF CONTRACT CLAIM .................................................................... 15

       A.    "Double Recovery" Is Not A Basis For Dismissing A Contract Claim ............... 16

       B.    The Complaint's Identification Of The MetroPCS Agreement Puts Huawei
             On Notice Of That Contract .................................................................................. 16

V.     T-MOBILE PLEADS A VALID CLAIM UNDER THE CONSUMER
       PROTECTION ACT ...................................................................................................... 17

       A.    T-Mobile Properly Pleads The Unfair Or Deceptive Act Or Practices
             Element ................................................................................................................. 17

       B.    T-Mobile's CPA Claim Is Not Preempted, As It Relies On Facts Beyond
             The Trade Secrets Misappropriation Claim .......................................................... 19

       C.    T-Mobile Has Satisfied The Public Interest Element By Pleading That
             Huawei Is Likely To Repeat Its Wrongdoing With Others ................................... 20

VI.    CONCLUSION ............................................................................................................... 23

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA'S MOTION TO DISMISS - ii
(C14-1351-RAJ)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................. 2

*Baden Sports v. Wilson Sporting Goods Co.*, No. C11-0603,
2011 WL 3158607 (W.D. Wash. July 26, 2011) ........................................ 9

*BioD, LLC v. Amnio Tech.*, No. 2:13-CV-1670,
2014 WL 268644 (D. Ariz. Jan. 24, 2014) ............................................... 12

*Boeing Co. v. Sierracin Corp.,* 108 Wash.2d 38 (Wash. 1987) ............................ 13, 20

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192 (N.D. Cal. 2012) ...... 9

*Christianson v. Colt Indus. Operating Corp.*,822 F.2d 1544
(Fed. Cir. 1987) ........................................................................... 14

*Dri-Eaz Products, Inc. v. Allen*, No. C12-1638,
2013 WL 3814361 (W.D. Wash. July 22, 2013) ................................ 8, 10, 12

*Ed Nowogroski Ins., Inc. v. Rucker,* 137 Wash. 2d 427 (1999) .................................. 2

*Erickson v. Pardus*, 551 U.S. 89 (2007) ............................................................ 3

*Ferguson v. O'Connor*, No. C12-1381RAJ,
2013 WL 234588 (W.D. Wash. Jan. 22, 2013) ......................................... 16

*Fidelitad, Inc. v. Insitu, Inc.*, No. 13-CV-3128-TOR,
2014 WL 5421214 (E.D. Wash. Oct. 24, 2014) ........................................ 19

*FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233 (1972) ...................................... 18

*Garter-Bare Co. v. Munsingwear, Inc.*, 723 F.2d 707 (9th Cir. 1984) .......................... 8

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
105 Wash. 2d 778 (Wash. 1986) .................................................. 20, 21, 22

*Henry Hope X-Ray Products, Inc. v. Marron Carrel, Inc.*,
674 F.2d 1336 (9th Cir. 1982) ...................................................... 8, 13

*Hickory Specialities, Inc. v. Forest Flavors Int'l, Inc.*,
12 F. Supp. 2d 760 (M.D. Tenn. 1998) ............................................ 13, 14

*International Paper Co. v. Stuit*, No. C11-2139,
2012 WL 3527932 (W.D. Wash. Aug. 15, 2012) ....................................... 20

*John Davis & Co. v. Miller,* 104 Wash. 444 (1918) ........................................... 19

*Johnson v. Riverside Healthcare Sys.*, *LP*, 534 F.3d 1116 (9th Cir. 2008) ................. 3, 17

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350

*Kammerer v. Western Gear Corp.,* 27 Wash. App. 512 (Wash. Ct. App. 1980)..........................16

*Kazia Digo, Inc. v. Smart Circle Int'l, LLC,* No. C11-544,
2012 WL 836233 (W.D. Wash. Mar. 12, 2012) ....................................21

*Knievel v. ESPN,* 393 F.3d 1068 (9th Cir. 2005)..........................................................4

*Lafjord USA v. Nutreco Holding NV,* No C03-3897,
2005 WL 1126923 (W.D. Wash. May 10, 2005) ....................................12

*LaFrance Corp. v. Werttemberger,* No. C07-1932,
2008 WL 5068653 (W.D. Wash. Nov. 24, 2008) ....................................20

*Lee v. City of Los Angeles,* 250 F.3d 668 (9th Cir. 2001)................................................4

*Magney v. Lincoln Mut. Sav. Bank,* 34 Wash. App. 45, 57 ..............................................18

*Marder v. Lopez,* 450 F.3d 445 (9th Cir. 2006).......................................................4, 15

*Mellon v. Reg'l Tr. Servs. Corp.,* 334 P.3d 1120 (Wash. Ct. App. 2014)..............................17, 18

*Moritz v. Daniel N. Gordon, P.C.,* 895 F. Supp. 2d 1097 (W.D. Wash. 2012) ..........................21

*Nextdoor.Com, Inc. v. Abhyanker,* No. C-12-5667 EMC,
2013 WL 3802526 (N.D. Cal. July 19, 2013).......................................13

*nexTUNE, Inc. v. McKinney,* No. C12-1974,
2013 WL 5211778 (W.D. Wash. Sept. 17, 2013)................................8, 10, 12

*Nw. Prod. Design Grp., LLC v. Homax Products, Inc.,* 174 Wash. App. 1002,
2013 WL 992666 (2013)................................................................21, 22

*Panag v. Farmers Ins. Co. of Washington,* 166 Wash.2d 27 (2009) ....................................18

*Parrino v. FHP, Inc.,* 146 F.3d 699 (9th Cir. 1998) ....................................................4

*Pierce v. NovaStar Mortgage, Inc.,* 422 F. Supp. 2d. 1230 (W.D. Wash. 2006) ..........................4

*Redding v. Dhaliwal,* No. 10-998, 2011 WL 6153132 (D. Or. Oct. 4, 2011)..............................7

*Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.,*
768 F.3d 938 (9th Cir. 2014) ........................................................4

*Robbins, Geller, Rudman & Dowd, LLP v. State,*
179 Wash. App. 711 (Wash. Ct. App. 2014)..........................................9

*Short v. Demopolis,* 103 Wash.2d 52 P.2d 163 (1984)..................................................17

*Smith v. Reg'l Transit Auth.,* 756 F.3d 340 (5th Cir. 2014) ............................................4

*Stephens v. Omni Ins. Co.,* 138 Wash. App. 151 (Wash. Ct. App. 2007)....................................20

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA'S MOTION TO DISMISS - iv
(C14-1351-RAJ)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350

*telSPACE LLC v. Coast to Coast Cellular, Inc.*, No. 2:13-CV-01477,
2014 WL 4364851 (W.D. Wash. Sept. 3, 2013)................................................9

*Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, L.L.C.*, 637 F.3d 604 (5th Cir. 2011) .........13

*Thola v. Henschell*, 140 Wash. App. 70 (2007)................................................19

*United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*,
547 F.3d 943 (9th Cir. 2008) ................................................4

*Volvo Const. Equip. N. Am., LLC v. Clyde/W., Inc.*, No. C14-0534,
2014 WL 5365454 (W.D. Wash. Oct. 20, 2014) ................................20, 21, 22

**Statutes**

Cal. Code Civ. Proc. § 3426.5 ................................................9

**Other Authorities**

LCR 7(b) ................................................7

Milgrim on Trade Secrets § 1.05 ................................................14

**Rules**

Federal Rules of Civil Procedure 12(b)(6) ................................................3, 4, 19

Federal Rules of Civil Procedure 12(f) ................................................7

Federal Rules of Civil Procedure 408 ................................................7

Federal Rules of Civil Procedure 8 ................................................8

Federal Rules of Civil Procedure 8(a)(2) ................................................3

Federal Rules of Civil Procedure 8(d)(2) ................................................16

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA'S MOTION TO DISMISS - v
(C14-1351-RAJ)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350

# I. INTRODUCTION

Huawei infiltrated T-Mobile's labs without authorization, stole its robot testing technology, and used that stolen information to build and improve its own robot. T-Mobile's complaint describes this scheme in detail, as well as the value of T-Mobile's proprietary testing robot technology, the effort and investment to develop it, the steps to keep it secret, and the harm caused by Huawei's actions. The complaint states a claim for misappropriation of trade secrets.

Huawei's motion ignores these allegations. Huawei attempts to reduce its wrongdoing to "merely" taking a handful of photographs (an act that itself explicitly violates the parties' contracts). But as the complaint describes – and as Huawei has already admitted – Huawei stole far more. Indeed, Huawei smuggled robot parts out of the T-Mobile facility while trying to hide from a security camera, lied to T-Mobile personnel about having authorization to escort Huawei employees into the lab to take measurements and photographs of the robot, and made conference calls to Huawei R&D in China to "address questions" about the stolen information. Knowing it cannot deny the theft, Huawei tries to minimize the value of the stolen technology behind the robot, suggesting that all of it is public. Yet Huawei's actions defy its arguments. Why expend effort to steal what it can learn from a public filing, or a web video? The answer is that Huawei could not develop and improve its robot with public materials. It needed T-Mobile's innovative and confidential technology.

The first seventeen pages of Huawei's motion urge the Court to rely on outside materials and bare assertions of fact to overcome T-Mobile's well-pleaded trade secret allegations. This is not a motion for summary judgment. Even if it were, Huawei's repeated misstatements of fact do not support dismissal. Nowhere does T-Mobile plead – nor does anything submitted by Huawei establish – that Epson created the testing robot (it did not), that T-Mobile freely gave robot parts to Huawei to study and copy (it did not), or that all of the information that Huawei stole is public (it is not). The jury will no doubt find Huawei's unsupported factual assertions incredible, but the Court need not address these matters now.

Aside from being wrong on the facts, Huawei's motion has misstated the law. *First*,

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA'S MOTION TO DISMISS - 1
(C14-1351-RAJ)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350

"whether specific information is a trade secret," including whether it satisfies the "secrecy" element, is a question of fact to be addressed at trial. *See, e.g., Ed Nowogroski Ins., Inc. v. Rucker,* 137 Wash. 2d 427, 436 (1999). *Second,* the mere existence of patents and patent applications relating to *some* of the robot testing technology does not forfeit protection for the many elements that remain secret and valuable – not to mention the refinements made to the robot in the years since the patent applications were published. Trade secrets exist, for example, in the lab robot's component selection and specifications, (Compl. ¶¶ 13, 15, 43, 57, 71, 80), in its operating software, (*Id.* ¶¶ 13, 33, 39, 61, 80), in know-how relating to its operation, (*Id.* ¶¶ 69, 80), and in the unique combinations of public and non-public materials (*Id.* ¶ 80). Indeed, Huawei's argument that any patent covers "all aspects of the robot," (Mot. at 7), is belied by the fact that *three* separate applications over time cover different *aspects* of robot testing technology. For a motion to dismiss, the factual question – whether each trade secret Huawei stole is disclosed – is governed by T-Mobile's allegations in the complaint, not Huawei's unsupported assertions in its motion. (*See, e.g.*, Mot. at 1) (claiming that "[t]he T-Mobile robot . . . was actually in the public domain years before Huawei even had access to T-Mobile's lab and the robot."). *Third*, the purpose of a motion to dismiss is to determine whether the plaintiff has sufficiently and fairly stated a plausible claim in order to "unlock the doors of discovery." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Having pleaded detailed allegations about Huawei's scheme – identifying specific trade secrets stolen, and particular acts of theft – without the benefit of discovery and without disclosing materials provided by Huawei pursuant to an NDA before this case was filed, T-Mobile is entitled to discovery regarding the full extent of Huawei's wrongdoing.

Huawei also claims that T-Mobile's security measures did not adequately guard the robot technology's secrecy. T-Mobile's security measures included mandatory nondisclosure and confidentiality obligations in several written agreements; extensive lab security, including badge access, video surveillance, and dedicated security employees; and strict limits on (and authorization requirements for) the vendor personnel allowed in the lab. Yet Huawei argues

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350

these extensive efforts were insufficient because, for instance, T-Mobile did not plead that the code on computers in its *secured lab* was protected by a password. (Mot. at 17.) But the question on a 12(b)(6) motion is whether T-Mobile pleaded "reasonable" efforts at secrecy, which it unquestionably has. And the fact that Huawei stole T-Mobile's trade secrets by circumventing these many measures is not a defense – it is an admission of wrongdoing.

Separately, Huawei also seeks dismissal of the breach of contract claim. Huawei does not argue that T-Mobile has failed to satisfy any elements of this claim other than "damages." Huawei argues that T-Mobile's contract claim would lead to "double recovery" for damages based on the trade secrets claim. This is irrelevant as a pleading matter. Whether damages *awarded* pursuant to this claim are duplicative of other damages is a subject for jury instructions, not a question of pleading. T-Mobile has pleaded the fact of damages caused by Huawei's breach, which is sufficient to state a claim.

Finally, Huawei seeks dismissal of T-Mobile's claim under the Washington Consumer Protection Act. Huawei's argument that T-Mobile only pleads trade secret misappropriation as a basis for this claim ignores the countless unfair and deceptive acts and practices alleged in the complaint. And Washington courts have consistently held that the public interest element is satisfied by the defendant's repeated wrongdoing. Washington courts have also specifically rejected the preemption arguments Huawei makes as premature at the pleading stage.

Huawei has not provided this Court with any basis to dismiss any of T-Mobile's claims. The Motion to Dismiss should be denied in its entirety.

## II.   MOTION TO DISMISS STANDARD

### A.   A Rule 12(b)(6) Motion Is Not A Vehicle For Contesting Facts

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The statement "need only give the defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests." *Johnson v. Riverside Healthcare Sys.*, *LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA'S MOTION TO DISMISS - 3
(C14-1351-RAJ)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350

A 12(b)(6) motion is not an occasion for the defendant to contest allegations.  Rather, a court "accept[s] as true all factual allegations in the complaint and draw[s] all reasonable inferences in favor of the nonmoving party."  *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014); *see also Smith v. Reg'l Transit Auth.,* 756 F.3d 340, 347 (5th Cir. 2014) ("[D]isputed questions of fact are anathema to Rule 12(b)(6) jurisprudence.").  For example, "damages are a question of fact, and are not the appropriate subject of a Fed. R. Civ. P. 12(b)(6) motion to dismiss."  *Pierce v. NovaStar Mortgage, Inc.,* 422 F. Supp. 2d 1230, 1237 (W.D. Wash. 2006).

**B.  The Court May Consider Materials Outside The Pleadings In Only Limited Circumstances – None Present Here**

On a motion to dismiss, the "scope of review . . . is limited to the contents of the complaint."  *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006); *United States v. 14.02 Acres of Land More or Less in Fresno Cnty.,* 547 F.3d 943, 955 (9th Cir. 2008) ("[A]s a general rule, a district court may not consider materials not originally included in the pleadings in deciding a Rule 12 motion.").

The Ninth Circuit has recognized two limited exceptions to this rule.  *First*, a court may "take judicial notice of *undisputed* matters of public record" – but may not take "judicial notice of *disputed* facts stated in public records."  *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (emphasis in original).  *Second*, a court may consider a document referenced in the complaint, but only when three conditions are met:  (a) "the plaintiff's claim depends on the contents of a document," (b) "the defendant attaches the document to its motion to dismiss," and (c) "the parties do not dispute the authenticity of the document."  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  This narrow exception, in short, is limited to explicitly referenced, authenticated documents on which the complaint "***necessarily relies***."  *Parrino v. FHP, Inc*., 146 F.3d 699, 706 (9th Cir. 1998) (emphasis added) (superseded by statute on other grounds).  Typical examples include the contract on which a breach claim is based, or allegedly defamatory materials on which a defamation claim is based, *e.g.*, *Knievel*, 393 F.3d at 1076-77.

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA'S MOTION TO DISMISS - 4
(C14-1351-RAJ)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350

The mere fact that a complaint "references" a document or fact does not provide the moving party *carte blanche* to submit those materials in an attempt to contradict well-pleaded allegations in the complaint. T-Mobile also does not stipulate to the authenticity of the photographs attached by Huawei.

### III. T-MOBILE HAS PLEADED ALL NECESSARY ELEMENTS FOR A TRADE SECRETS CLAIM

T-Mobile's trade secret claim against Huawei is based on Huawei's coordinated campaign to copy elements of the current incarnation of T-Mobile's testing robot in order to build and improve Huawei's own robot. (*See* Compl. ¶ 15.) The specific allegations of wrongdoing (well more than the two identified in Huawei's motion), all made without the benefit of discovery, provide Huawei more than sufficient notice of the trade secrets implicated by its own theft and the basis of T-Mobile's claim.

Aside from trying to minimize its efforts to steal T-Mobile's technology, Huawei primarily argues that T-Mobile's trade secrets are not truly secret and that T-Mobile did not make reasonable efforts to protect those secrets. As explained below, the existence of public information as to some aspects of robot testing technology does not destroy any and all trade secrets relating to T-Mobile's current testing robot. T-Mobile has also made significant efforts – well past the threshold of "reasonable" – to protect this technology.

**A.  T-Mobile's Complaint Describes Huawei's Pattern Of Trade Secrets Theft In Significant Detail**

**1.  Huawei's campaign of theft was ongoing and extensive.**

Huawei's motion attempts to reduce its misconduct to two incidents of theft. This simply ignores T-Mobile's complaint and the specific acts it alleges – allegations that Huawei does not deny despite going through the effort to deny T-Mobile's other factual allegations in its motion to dismiss. T-Mobile alleges that Huawei engaged in a *campaign* and conspiracy to copy T-Mobile's technology in order to build and refine its own testing robot. (*See* Compl. ¶ 15.) ("Beginning in 2012, when Huawei was first given access to T-Mobile's robot, Huawei's R&D department and other Huawei officials and employees conspired to steal T-Mobile's trade secrets

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA'S MOTION TO DISMISS - 5
(C14-1351-RAJ)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350

so that Huawei could copy T-Mobile's robot.")  The complaint identifies many instances where Huawei was caught red-handed in its theft, including:

- Aggressively inquiring about non-public aspects of the robot's specifications, being told by T-Mobile personnel that they were proprietary, and *continuing* to try to obtain that information anyway *despite acknowledging that T-Mobile was unwilling to share it.*  (Compl. ¶¶ 43-44.)

- Bringing an unauthorized Huawei R&D employee into the lab without T-Mobile's consent after already being kicked out once, and then lying to a T-Mobile contractor about having authorization from T-Mobile to be in the lab. (Compl. ¶¶ 46-50.)  On this occasion, the unauthorized Huawei employee also photographed the robot in the lab – a direct violation of the Clean Room Letter – and forwarded the photographs to his R&D colleagues at Huawei. (*Id.*)

- Stealing the robot arm (known as an "end effector") from the lab while trying to hide the theft out of the view of the security camera.  (Compl. ¶ 55.)  The same Huawei employee then immediately lied to a T-Mobile contractor who asked where the part was.  (*Id.* ¶ 56)

- Taking the stolen end effector to Huawei's offices, measuring it, and answering "many questions" about it (including the material on the tip and its size) in a conference call with Huawei R&D in China.  (Compl. ¶¶ 57-59.)  A Huawei employee provided at least *seven different measurements* to the R&D team.  (*Id.* ¶ 70.)

- Stealing sequence files and source code by taking screenshots at the computer inside T-Mobile's secured lab and sending them as attachments from personal email accounts. (Compl. ¶¶ 62, 81.)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350

- Asking an Epson dealer to build the same robot T-Mobile had, because Huawei believed that the dealer had the ability to do so. (Compl. ¶ 66.) Huawei also concealed this attempt from T-Mobile.

- Secretly collecting detailed information about the "correct times, force, and duration for T-Mobile's robot – the number of times the 'finger' touches the device, the force of the pressure applied, and the duration of that pressure." (Compl. ¶ 69.)

- Recording and copying confidential specifications. (Compl. ¶ 15.)

Huawei's theft is not limited even to this wealth of examples. Certainly these specific instances alone are sufficient to state a claim. But T-Mobile has had no opportunity for discovery, and it has not used information that was provided by Huawei pursuant to an NDA or FRCP 408 before the complaint was filed.[1] In short, the specific instances pleaded are not the sum total of Huawei's wrongdoing, but part of an overall campaign. (*See* Compl. ¶ 15.) T-Mobile has pleaded more than enough to unlock the doors to discovery into other means Huawei used to steal T-Mobile's information, to what degree it succeeded, and how it exploited that information.

### 2. The existence of Huawei's robot further supports T-Mobile's claim.

Huawei built and improved its own robot using the technology it stole from T-Mobile. (Compl. ¶ 16.) Huawei only had access to this technology because of confidentiality and non-disclosure agreements between the parties. (*Id.* ¶ 12.) The Ninth Circuit has held that in these circumstances, the burden shifts to Huawei to prove that it did not use T-Mobile's trade secrets to

---

[1] In its motion, Huawei claims that T-Mobile submitted materials provided by Huawei pursuant to an NDA and Federal Rule of Civil Procedure 408. (Mot. at 3-4.) Huawei provides no evidence in support of this claim, and it cannot. In its complaint, T-Mobile only relied on its own investigative materials, not materials provided by Huawei pursuant to an NDA or Rule 408. Huawei's "motion to strike" (Mot. at 4, n.3), besides lacking evidence, is not a proper motion. *See* FRCP 12(f); LCR 7(b). Even if it were, "[m]otions to strike are disfavored and infrequently granted." *Redding v. Dhaliwal*, No. 10-998, 2011 WL 6153132, at *3 (D. Or. Oct. 4, 2011).

It is telling, however, that while simultaneously arguing that T-Mobile's pleading lacks factual support, Huawei strenuously argues that T-Mobile is not allowed to plead incriminating facts about Huawei that go directly to the claims at issue. These facts will no doubt be brought out in discovery.

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA'S MOTION TO DISMISS - 7
(C14-1351-RAJ)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350

develop its own robot:

> Where the plaintiff shows that it possesses valuable secrets, confidentially disclosed to the defendant, followed by manufacture of a closely similar device by the defendant, the burden shifts to the defendant to show that, at the time, it could have arrived at the process by independent invention, inspection, or reverse engineering.

*Henry Hope X-Ray Products, Inc. v. Marron Carrel, Inc.*, 674 F.2d 1336, 1341 (9th Cir. 1982); *see also Garter-Bare Co. v. Munsingwear, Inc.*, 723 F.2d 707, 715 (9th Cir. 1984) (applying burden-shifting framework to reverse judgment as a matter of law). This is a burden that Huawei will not be able to meet at any stage, let alone the motion to dismiss stage.[2]

### 3. T-Mobile's pleading sufficiently puts Huawei on notice of the trade secrets it stole.

Huawei argues that T-Mobile failed to identify trade secrets with "particularity." (Mot. at 9.) That is not the standard. But in any case, T-Mobile has placed Huawei on notice of trade secrets it stole and the nature of those secrets. As outlined below, it has identified them with more than the level of specificity required.

### a. There is no heightened "particularity" standard for identifying trade secrets.

The relevant standard for pleading a trade secrets claim is notice pleading, not "particularity." *See nexTUNE, Inc. v. McKinney*, No. C12-1974, 2013 WL 5211778, at *3 (W.D. Wash. Sept. 17, 2013) (holding that Rule 8 notice pleading applies and denying dismissal because "the Plaintiff has clearly identified the contours of its claim"); *see also Dri-Eaz Products, Inc. v. Allen*, No. C12-1638, 2013 WL 3814361, at *2 (W.D. Wash. July 22, 2013) ("it is sufficient that [Plaintiff] identified information that may be cognizable as a trade secret" – here "knowledge of personal contact information for [Plaintiff's] customers"). The question, for pleading purposes, is whether Huawei can understand the "contours" of the claim against it – a standard exceeded by the detail in T-Mobile's complaint.

---

[2] In accounting for how it suddenly developed its own testing robot soon after receiving access to T-Mobile's lab, Huawei makes two inconsistent statements: on one hand, that the robot was independently developed by Huawei, and on the other that the robot was developed with T-Mobile's assistance for the sole purpose of testing T-Mobile devices. (Mot. at 3.)

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA'S MOTION TO DISMISS - 8
(C14-1351-RAJ)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350

*Baden Sports v. Wilson Sporting Goods Co.*, No. C11-0603, 2011 WL 3158607 (W.D. Wash. July 26, 2011), Huawei's leading authority, does not apply a different standard. The complaint in *Baden* did not identify *anything* that *could* be a trade secret on its face without further detail (*e.g.,* "inflating a ball with a needle"), nor did it describe any innovative functionality for the apparently obvious process. (*Id.* at 2.) T-Mobile's complaint, in contrast, describes information that can be, and usually is, a trade secret (*e.g.*, source code). *See Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1214 (N.D. Cal. 2012) (denying summary judgment where trade secrets plaintiff identified "type of information [that] is routinely given trade secret protection"). T-Mobile also identifies novel and unique functionality (*e.g.*, touch functionality including force of pressure, duration, and number of touches), unlike the *Baden* plaintiff. Even the particular *Baden* quote selected by Huawei demonstrates the difference here: the plaintiff "fails to identify *what components of the device are claimed* or *whether it is the combination of the components* that are claimed." (Mot. at 9) (citing *Baden*, 2011 WL 3158607, at *2) (emphasis added). Here, T-Mobile has both identified specific components *and* noted that the trade secrets extend to "combinations" of the robot. (Compl. ¶ 80.)

Huawei's other citations are also inapplicable. *telSPACE LLC v. Coast to Coast Cellular, Inc.*, No. 2:13-CV-01477, 2014 WL 4364851 (W.D. Wash. Sept. 3, 2013) is not a pleading case. Rather, it is a discovery decision about what a plaintiff must show to obtain access to a *defendant's* trade secrets in discovery. Even in that limited and irrelevant context, the language Huawei quotes (Mot. at 10) is from an opinion applying California's heightened discovery standard, which Washington does not follow. *See* Cal. Code Civ. Proc. § 3426.5. The other case cited by Huawei is likewise irrelevant. *See Robbins, Geller, Rudman & Dowd, LLP v. State*, 179 Wash. App. 711 (Wash. Ct. App. 2014) (deciding whether a trade secret actually existed in context of Public Records Act request). These are not notice pleading cases and do not support dismissal in any event.

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA'S MOTION TO DISMISS - 9
(C14-1351-RAJ)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350

### b. T-Mobile identifies specific trade secrets and the nature of those secrets.

Huawei is on notice of the "contours" of the trade secrets claimed by T-Mobile. *See nexTUNE,* 2013 WL 5211778, at *3. T-Mobile provided far more detail in its pleading than necessary to meet that bare standard.

Huawei quotes one paragraph from T-Mobile's complaint that identifies the nature of the trade secrets at issue and declares it "wholly insufficient." (Mot. at 9.) In fact, Paragraph 80 of the complaint comprehensively identifies several categories of protected information and know-how related to the robot testing technology. (Compl. ¶ 80.) The trade secret categories include the (1) design (*i.e.*, materials used and specifications for the robot), (2) assembly (*i.e.*, the selection of components and the manner in which they are combined), and (3) operating methods of the robot (*i.e.*, how the robot moves, tests, and records results, including the code used to operate the robot). *Id.* This alone is sufficient to state a claim. *See Dri-Eaz Products*, No C12-1638, 2013 WL 3814361, at *2 (holding that complaint sufficiently identified trade secret where it listed the "type[s] of information which can be a protected trade secret") (internal quotation marks omitted).

Yet T-Mobile's description of the trade secrets at issue does not begin and end with that single paragraph. The complaint describes the trade secrets misappropriated by Huawei in numerous other places, for instance:

- Compl. ¶ 13 ("its component parts, its functionality, and its software")
- Compl. ¶ 15 ("recording and copying confidential specifications . . . copying operating software")
- Compl. ¶ 33 ("The robot's operating software is confidential and proprietary and was also developed by T-Mobile")
- Compl. ¶ 57 ("the size of the finger and the tip and the material out of which the tip is made")
- Compl. ¶ 61 (sequence files)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350

- Compl. ¶ 69 ("correct times, force, and duration for T-Mobile's robot – the number of times the 'finger' touches the devices, the force of the pressure applied, and the duration of that pressure")

- Compl. ¶ 70 ("size of the conductive tip and material out of which it is made, along with the size of the 'finger' – the post on which the tip resides" and specific measurements of those items)

- Compl. ¶ 71 ("size of the robot hand and its material")

In light of these allegations, Huawei cannot credibly claim it does not know what trade secrets are at issue. Its purported ignorance is also not credible given the circumstances of Huawei's theft. Huawei was given access to T-Mobile's robot under strict and explicit non-disclosure requirements. It was told by T-Mobile personnel the information was proprietary. Huawei nonetheless stole that information. It cannot now claim not to know or understand what is protected.

## B. T-Mobile's Complaint Establishes The Secrecy Element Of A Trade Secrets Claim

In the face of these extensive allegations identifying T-Mobile's trade secrets, Huawei's only remaining argument is that T-Mobile did not "maintain secrecy." Huawei rests this argument on materials outside the pleadings and its own unsupported speculation – claiming that patents and patent applications as to certain aspects of the robot technology and a short promotional video of the robot disclose all of T-Mobile's trade secrets. Huawei then also claims that T-Mobile did not use adequate security measures.

*First*, these are fact issues that cannot be resolved at the motion to dismiss stage, even if Huawei had actual evidence to support them. *Second*, patent applications as to *some aspects* of the robot technology do not destroy all trade secrets used in building and operating the robot currently in T-Mobile's lab. *Third*, T-Mobile has alleged the reasonable steps it took to keep its secrets protected, which is all that is required at this stage. *Finally*, Huawei's extensive and repeated efforts to steal this information directly from T-Mobile is further evidence that it could

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA'S MOTION TO DISMISS - 11
(C14-1351-RAJ)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350

not obtain it publicly.

### 1. The validity of T-Mobile's trade secrets is a question of fact not suited to a motion to dismiss.

T-Mobile pleads the fundamental elements of a trade secrets claim. Huawei seeks to attack those allegations using material outside the pleadings and asserting facts without support in the complaint (or anywhere else, for that matter).[3] It is premature to attempt to resolve these disputes at the motion to dismiss stage. *See, e.g., nexTUNE,* 2013 WL 5211778, at *4 ("[T]he issue of whether Plaintiff's documents contain trade secrets is not appropriate for review on a motion to dismiss"); *see also Dri-Eaz Products*, 2013 WL 3814361, at *2 (holding that the Defendant's "factual assertions are irrelevant" because "it is sufficient that [Plaintiff] identified information that may be cognizable as a trade secret and stated the necessary elements of a UTSA claim"); *BioD, LLC v. Amnio Tech.*, No. 2:13-CV-1670, 2014 WL 268644, at *8 (D. Ariz. Jan. 24, 2014) (holding that at motion to dismiss stage "any argument that some of this information might be public information is premature"). Indeed, such disputes are not even suitable for resolution at the summary judgment stage after extensive discovery. *See, e.g., Lafjord USA v. Nutreco Holding NV*, No C03-3897, 2005 WL 1126923, at *8 (W.D. Wash. May 10, 2005) (rejecting defendant's argument that trade secrets were too vague and were publicly disclosed on packaging because "under these circumstances, the determination whether the specific information asserted by plaintiff is a trade secret is a factual question for the jury").

On this basis alone, Huawei's motion to dismiss should be denied.

### 2. Trade secrets exist despite other information published in patent applications or demonstrated in the promotional video.

As noted above, Huawei's improper references to these materials outside the pleadings is irrelevant because fact disputes cannot be resolved at this stage. Huawei asserts – without

---

[3] For instance, Huawei's sweeping conclusion that Epson invented the robot is apparently based on the fact that Epson's name appears on a component of the robot in a video. (Mot. at 2.) This claim is wrong, but at this stage in the proceedings it is not necessary to present this factual dispute to the Court for resolution. It suffices that T-Mobile pleads that it is the inventor of the robot and owner of the trade secrets. (Compl. ¶ 1.)

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA'S MOTION TO DISMISS - 12
(C14-1351-RAJ)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350

support – that the patent applications disclose all possible trade secrets relating to the robot in T-Mobile's lab.  This is wrong as a matter of fact, pleading, and law.

### a. Patent applications do not destroy the trade secrets identified in T-Mobile's complaint.

For a patent or patent application to destroy a trade secret, it must actually reflect the secret information.  *See Henry Hope,* 674 F.2d at 1342 ("general depiction" disclosed in patent insufficient to destroy trade secrets related to the subject film processing equipment); *see also Nextdoor.Com, Inc. v. Abhyanker*, No. C-12-5667 EMC, 2013 WL 3802526, at *7 (N.D. Cal. July 19, 2013) ("Information related to technology disclosed in a patent or patent application may retain trade secret status, however, if it was not itself disclosed in the application.").  T-Mobile's complaint draws this very distinction:  "Several aspects of the robot are patented or patent-pending, and the remaining innovative aspects consist of closely-guarded trade secrets." (Compl. ¶ 10.)  T-Mobile's trade secrets fall into several categories that go beyond information disclosed in the patent applications:

*Unique Combinations of Public and Non-Public Materials.*  T-Mobile pleads that its trade secrets consist of the "combinations" of identified information reflected in its robot.  It is well-established that a "trade secrets plaintiff need not prove that every element of an information compilation is unavailable elsewhere" and that a "trade secrets frequently contain elements that by themselves may be in the public domain but together qualify as trade secrets." *Boeing Co. v. Sierracin Corp.,* 108 Wash.2d 38, 50 (Wash. 1987); *see also Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, L.L.C.,* 637 F.3d 604, 613 (5th Cir. 2011) ("we have specifically rejected the contention that a combination of disclosed technologies cannot itself constitute a trade secret.").

*Post-Application Refinements.*  T-Mobile pleads that it has "improved and refined [the robot] over the last several years."  (Compl. ¶ 30.)  Huawei cites a Middle District of Tennessee decision for the principle that T-Mobile's patent applications foreclose its trade secrets claim. *See Hickory Specialities, Inc. v. Forest Flavors Int'l, Inc.*, 12 F. Supp. 2d 760 (M.D. Tenn. 1998).

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA'S MOTION TO DISMISS - 13
(C14-1351-RAJ)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350

But that very case *denied dismissal* of the trade secrets claim in question because there was a question of fact as to whether "refinements" had been made to the underlying technology that had been patented. *Id.* at 768 ("Because a question of material fact exists as to whether HSI's trade secrets are refinements – or mere clarifications – of the patent, the Court must DENY summary judgment on the three remaining counts.").

  ***Particular Specifications and Choices Embodied in the Lab Robot.*** T-Mobile's complaint describes at length the efforts Huawei used to track down particular specifications used in T-Mobile's lab robot – the precise measurements of the end effector, the exact material the tip was made out of, and the particular force, duration, and pressure used in the process. These particular details are protected: "[T]he law has never required that a patentee who elects to manufacture its claimed invention must disclose in its patent the dimensions, tolerances, drawings, and other parameters of mass production not necessary to enable one skilled in the art to practice (as distinguished from mass-produce) the invention. Nor is it an objective of the patent system to supply, free of charge, production data and production drawings to competing manufacturers. And that is well, for such a requirement would be irrational." *Christianson v. Colt Indus. Operating Corp.*, 822 F.2d 1544, 1562 (Fed. Cir. 1987) (vacated for lack of jurisdiction at 486 U.S. 800 (1988), and adopted in *Christianson v. Colt Ind. Operating Corp.*, 870 F.2d 1292 (7th Cir. 1989)); *see also* Milgrim on Trade Secrets § 1.05 ("However, not every instance of seeming 'public disclosure' of a trade secret actually results in loss of trade secrecy. For example, trade secrets may subsist in specifications and tolerances of marketed products because such information cannot be readily ascertained through reverse engineering of the product.").

  T-Mobile nowhere claims that its patent applications include all information related to the robot in its labs that Huawei has copied. Indeed, it states the opposite. (Compl. ¶¶ 10, 33.) Huawei cannot support its claim that T-Mobile's trade secrets have been destroyed by patent applications.

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA'S MOTION TO DISMISS - 14
(C14-1351-RAJ)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350

### b. The robot video is outside material that does not disclose any trade secrets.

The "robot video" is likewise outside material that is not admissible on a motion to dismiss. *See Marder,* 450 F.3d at 448 ("Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint.")  Even if it were, the video on its face cannot be used to discern the type of information Huawei stole – such as the *measurements* of parts of the robot.  And of course, there is a difference between a video produced under T-Mobile's supervision and control, and photographs surreptitiously taken in close examination of particular components of technology one is trying to steal.   This short promotional video supervised by T-Mobile simply does not publicize the trade secrets identified in T-Mobile's complaint.  Regardless, any argument to the contrary is a factual dispute improper to resolve at this stage.

### c. T-Mobile pleaded theft of source code and sequence files.

T-Mobile pleaded that Huawei stole sequence files used to operate the robot for particular tests, as well as source code.  (Compl. ¶¶ 61-62.)  Huawei calls these allegations "conclusory" even though T-Mobile describes what the files are, what they do, how Huawei had access to them (via the contracts the parties signed and Huawei's presence in the testing lab), and how Huawei employees transmitted them.  "Information and belief" does not mean "conclusory." Huawei claims that the programs have been "published" (Mot. at 14), yet sequence files appear nowhere in the patent applications.  T-Mobile has stated a claim for theft of its trade secret files.

## IV.  HUAWEI DOES NOT RAISE ANY SERIOUS DISPUTE TO T-MOBILE'S BREACH OF CONTRACT CLAIM

For the Supply Agreement, NDA, and Clean Room Letter, Huawei does not dispute the adequacy of T-Mobile's pleading, except as to one element: "damages."  Huawei's only other attack on Count II concerns the inclusion in the claim of "other applicable agreements" between the parties.  Neither argument has merit.

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA'S MOTION TO DISMISS - 15
(C14-1351-RAJ)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350

## A.    "Double Recovery" Is Not A Basis For Dismissing A Contract Claim

Huawei argues that because there may be overlap between damages for T-Mobile's trade secrets claim (Count I) and its breach of contract claim (Count II), T-Mobile has "failed to adequately plead damages" for the contract claim. (Mot. at 17.)  Huawei provides no authority for this argument.  The one case it cites, *Kammerer v. Western Gear Corp.,* 27 Wash. App. 512 (Wash. Ct. App. 1980), is a post-trial damages ruling, not a decision on the pleadings.  This is not a legal basis to dismiss a claim.  *See Ferguson v. O'Connor,* No. C12-1381RAJ, 2013 WL 234588, at *4 (W.D. Wash. Jan. 22, 2013) ("Not only is it unnecessary to dismiss these claims merely because they raise the possibility of duplicative damages, it would be improper to do so."); FRCP 8(d)(2) (permitting alternative pleading)[4]

## B.    The Complaint's Identification Of The MetroPCS Agreement Puts Huawei On Notice Of That Contract

Huawei asserts that "there is no identification [in the complaint] of the individual agreements alleged to have been breached" beyond the Supply Agreement, NDA, and Clean Room Letter.  (Mot. at 18.)  But the complaint specifically alleges that Huawei breached confidentiality provisions of another contract that T-Mobile assumed as part of a 2013 acquisition:

> In 2013, T-Mobile assumed MetroPCS Wireless, Inc.'s rights and obligations under a Supply Agreement with Huawei (**the 'MetroPCS Agreement'**).  This contract also contains provisions **restricting the use and disclosure of the parties' confidential trade secrets.**"

(Compl. ¶ 40) (emphasis added).

Count II in turn alleges that "[t]he Supply Agreement, NDA, Clean Room Letter, and other applicable agreements (**such as the MetroPCS Agreement**) between the parties are valid and enforceable contracts, according to which T-Mobile has performed all conditions, covenants, and promises." (*Id.* ¶ 90.) (emphasis added).

---

[4]  This argument also smacks of trade secrets "preemption" as to the breach of contract claim.  But contract claims are statutorily exempt from trade secrets preemption.  *See* RCW 19.108.900(2)(a) ("This chapter does not affect[] . . . [c]ontractual or other civil liability or relief that is not based upon misappropriation of a trade secret.").

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA'S MOTION TO DISMISS - 16
(C14-1351-RAJ)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON  98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350

Since T-Mobile has sufficiently identified the MetroPCS Agreement and the breached terms, Huawei has "fair notice of what . . . the claim is and the grounds upon which it rests." *Riverside Healthcare*, 534 F.3d at 1122.

Huawei's request to dismiss T-Mobile's breach of contract claim should be denied.

## V. T-MOBILE PLEADS A VALID CLAIM UNDER THE CONSUMER PROTECTION ACT

The Washington Consumer Protection Act is "carefully drafted . . . to bring within its reaches *every* person who conducts unfair or deceptive acts or practices in *any* trade or commerce." *Short v. Demopolis*, 103 Wash.2d 52, 61, 691 P.2d 163 (1984) (emphasis in original). Washington courts "liberally construe the CPA to serve its beneficial purposes." *Mellon v. Reg'l Tr. Servs. Corp.*, 334 P.3d 1120, 1126 (Wash. Ct. App. 2014).

Contrary to case authority, Huawei argues for a narrow application of this remedial law. But the Washington Supreme Court has repeatedly affirmed that a claim can be brought in the circumstances here – where there is a substantial likelihood that others will be harmed in the same manner T-Mobile was harmed by Huawei. Huawei also argues that the claim is preempted. However, (1) it is premature to adjudicate preemption now, before all of the facts have developed, (2) the claim is not merely based on Huawei's theft of trade secrets, but also Huawei's other unfair and deceptive acts, and (3) the CPA claim requires proof of facts independent of those needed for the trade secrets claim, and T-Mobile has sufficiently plead those facts. The Court should therefore deny Huawei's request to dismiss this claim.

## A. T-Mobile Properly Pleads The Unfair Or Deceptive Act Or Practices Element

As its sole argument that T-Mobile did not meet the basic pleading requirement of an unfair or deceptive act or practice, Huawei asserts that "T-Mobile has failed to state a claim for trade secret misappropriation." (Mot. at 21.) As discussed in the section above, T-Mobile has met that requirement. But this claim is based on more than the theft of trade secrets. The complaint alleges – and Huawei's motion ignores – a host of unfair acts and practices carried out by Huawei employees that satisfy this element.

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350

T-Mobile's CPA claim alleges that Huawei (1) stole the technology of its business partner, (2) willfully violated nondisclosure requirements, (3) passed off T-Mobile's testing technology as its own, and (4) attributed improvements to its devices to its own efforts rather than T-Mobile's own research and development. (Compl. ¶ 108.) The claim also incorporates allegations that Huawei (5) breached four contracts, (*Id.* ¶¶ 2, 13, 14, 15, 35, 36, 37, 38, 39, 40, 60, 89-97); (6) **concealed** its breaches and covered up its actions through lies and other subterfuge in order to maintain its relationship with T-Mobile while at the same time secretly exploiting the relationship for its own gain (*Id.* ¶¶ 3, 18, 49, 55, 56); (7) sought out and passed on information requested by its parent company without T-Mobile's permission, (*Id.* ¶¶ 7, 50, 57, 58, 59); (8) abused its confidential *relationship* with T-Mobile, (*Id.* ¶¶ 2, 100, 101, 103); (9) sneaked unauthorized individuals into T-Mobile's lab, (*Id.* ¶¶ 15, 46, 48, 49, 81, 101); (10) stole physical items from the lab, (*Id.* ¶¶ 18, 55); and (11) attempted to re-activate suspended lab access badges after being told it no longer had access (*Id.* ¶¶ 63, 64).

Huawei does not address any of these allegations, let alone demonstrate that *none* could, as a matter of law, satisfy Washington's broad standard for what constitutes an unfair act or practice. *See Mellon*, 334 P.3d at 1126 (Wash. Ct. App. 2014) ("[A] defendant's act or practice might be unfair if it offends public policy as established by statutes [or] the common law, or is unethical, oppressive, or unscrupulous, among other things.") (internal citations omitted); *Panag v. Farmers Ins. Co. of Washington*, 166 Wash.2d 27, 49 (2009) ("By broadly prohibiting unfair or deceptive acts or practices in the conduct of any trade or commerce, the legislature intended to provide sufficient flexibility to reach unfair or deceptive conduct . . . .") (internal citation omitted); *Magney v. Lincoln Mut. Sav. Bank*, 34 Wash. App. 45, 57 (1983) ("In determining whether something is unfair, the court may look to see . . . whether it causes substantial injury to consumers (**or competitors or other businessmen**.") (quoting *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244, n.5 (1972)) (emphasis added). Indeed, the fact that Huawei attempted to – and for some time did successfully – conceal its wrongdoing and deliberate breaches from T-Mobile to maintain its business relationship is alone sufficient to satisfy this element.

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA'S MOTION TO DISMISS - 18
(C14-1351-RAJ)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350

Furthermore, Huawei's conduct constitutes "unfair competition" under Washington law, which is separately actionable under the CPA. *See John Davis & Co. v. Miller,* 104 Wash. 444, 448 (1918) (holding that the use of confidential information acquired during one's employment in a "competitive business" results in unfair competition).

**B.     T-Mobile's CPA Claim Is Not Preempted, As It Relies On Facts Beyond The Trade Secrets Misappropriation Claim**

Huawei also argues T-Mobile's CPA claim is preempted by the WUTSA because, again, it is "rooted exclusively in the alleged misappropriation of trade secrets." (Mot. at 23-24.)  As an initial matter, Huawei does not cite a single case dismissing any claim based on preemption on a Rule 12(b)(6) motion.  In *Thola v. Henschell*, on which Huawei relies, the trial court's legal error was not denying a motion to dismiss, but rather "fail[ing] *to instruct the jury* on preemption." 140 Wash. App. 70, 85 (2007) (emphasis added).  Thus, even if Huawei later seeks an instruction on preemption of the CPA claim at trial—which would be improper for the reasons discussed below—it may not seek dismissal of the CPA claim at the pleading stage simply because the complaint separately alleges trade secret theft.[5]  *See also Fidelitad, Inc. v. Insitu, Inc.*, No. 13-CV-3128-TOR, 2014 WL 5421214, at *4 (E.D. Wash. Oct. 24, 2014) (refusing to dismiss claim as preempted at motion to dismiss stage because it "requires a factual analysis and facts are poorly developed at the pleading stage").

Moreover, as discussed above, T-Mobile's CPA claim is based on several unfair and deceptive acts that constitute other wrongs besides trade secret misappropriation.  For instance, the complaint alleges not only that Huawei stole trade secrets, but also that Huawei USA abused its relationship of confidentiality with T-Mobile.  (Compl. ¶¶ 2, 100, 101, 103.)  It did so by, among other things, gaining security clearance for two of its employees and then letting its parent company use those employees as a vehicle for infiltrating T-Mobile's lab.  (*Id.* ¶¶ 15, 46, 48, 49, 81, 101.)  The Washington Supreme Court has specifically held that allegations of this

---

[5]  The other two Washington cases Huawei cites involved dismissals on summary judgment.  *Ed Nowogroski Ins., Inc. v. Rucker,* 88 Wash. App. 350, (1997); *Enterprises Int'l, Inc. v. Int'l Knife & Saw, Inc.*, No C12-5638, 2013 WL 6185241 (W.D. Wash. Nov. 26, 2013).  The Ninth Circuit case Huawei cites, applying California law, concerned a *post-trial* ruling. *Atl. Inertial Sys., Inc. v. Condor Pac. Indus. of Cal., Inc.*, 545 F. App'x 600, 601 (9th Cir. 2013).

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA'S MOTION TO DISMISS - 19
(C14-1351-RAJ)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350

nature, involving the breach of a confidential relationship, "may be brought independently of trade secrets claims." *Boeing*, 108 Wash. 2d at 48.

As another example, the complaint alleges Huawei concealed and lied about its misconduct and contract breaches to prevent T-Mobile from replacing Huawei with another supplier. (*Id.* ¶¶ 3, 18, 49, 55, 56.) Even if the fact finder were to ultimately determine that some of these acts do not rise to the level of trade secrets misappropriation, they are nonetheless independent violations that constitute unfair and deceptive practices under the CPA. Those claims cannot be preempted.

T-Mobile's CPA claim, moreover, *requires* T-Mobile to prove facts that are irrelevant to a trade secrets claim. Washington's CPA uniquely requires all private plaintiffs to make a showing of public interest impact. *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 788 (Wash. 1986) (identifying only one other state with such a requirement). No such requirement exists for the trade secrets claim. In *International Paper Co. v. Stuit*, the court rejected an argument that the WUTSA preempted a tortious interference claim where one element of the tort was based on independent facts. No. C11-2139, 2012 WL 3527932, at *3 (W.D. Wash. Aug. 15, 2012) ("[T]here is no allegation that the fourth element of the tortious interference claim is satisfied by the misappropriation of trade secrets . . . therefore [the] claims are not preempted by the UTSA as it is currently pled.").**[6]**

### C. T-Mobile Has Satisfied The Public Interest Element By Pleading That Huawei Is Likely To Repeat Its Wrongdoing With Others

Whether the public interest element is satisfied is a question of fact not suited for decision at the motion to dismiss stage. *See Volvo Const. Equip. N. Am., LLC v. Clyde/W., Inc.*, No. C14-0534, 2014 WL 5365454, at *4 (W.D. Wash. Oct. 20, 2014) ("[W]hether the public has an interest in any given action is to be determined by the trier of fact.") (citing *Stephens v. Omni Ins. Co.*, 138 Wash. App. 151, 177 (Wash. Ct. App. 2007)). The *Volvo* court explained that

---

[6] Courts have previously held that a claim is not preempted by the WUTSA if it requires an element that the WUTSA claim does not. *See LaFrance Corp. v. Werttemberger*, No. C07-1932, 2008 WL 5068653, at *3 (W.D. Wash. Nov. 24, 2008).

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350

"[b]ecause the public interest element is a question of fact, [the plaintiff] is entitled to an opportunity to discover evidence that will support a finding in its favor." *Id.* at \*5. Here, Huawei asks the Court to not only deny T-Mobile that opportunity, but to ignore the well-pleaded (and well-documented) allegations of Huawei's pattern of repeated conduct. These allegations preclude dismissal.

The public interest element "hinges on the 'likelihood that additional plaintiffs have been or will be injured in exactly the same fashion.'" *Kazia Digo, Inc. v. Smart Circle Int'l, LLC*, No. C11-544, 2012 WL 836233, at \*3 (W.D. Wash. Mar. 12, 2012) (emphasis added). This likelihood-of-repetition standard is satisfied by T-Mobile's allegations of Huawei's *actual* repetition of unfair and deceptive acts on others. *See, e.g.*, *Moritz v. Daniel N. Gordon, P.C.*, 895 F. Supp. 2d 1097, 1114 (W.D. Wash. 2012) (denying summary judgment motion on CPA claim based on evidence that defendant had "likely attempted to collect debts from other persons").

Specifically, T-Mobile alleges that Huawei misappropriated source code from its business partner Cisco (Compl. ¶¶ 77-78), and that it has generally engaged in the pattern of intellectual property theft described by the U.S. House Select Committee on Intelligence (Compl. ¶ 76). In the case Huawei cites, by contrast, there were "no allegations" that the unfair acts were "part of 'a pattern or generalized course of conduct' creating a 'real and substantial potential for repetition of defendant's conduct.'" *Nw. Prod. Design Grp., LLC v. Homax Products, Inc.*, 174 Wash. App. 1002, 2013 WL 992666, at \*6 (2013). Here, T-Mobile *has* alleged Huawei's pattern of the same wrongdoing against others. (*See* Compl. ¶¶ 73-78.)

Huawei's motion does not address these allegations, instead improperly attempting to reduce the public interest element to a mandatory four-part test (which it is not). This is an incorrect statement of the law, as the four factors[7] listed by Huawei are merely "indicia of an

---

[7] Those four factors are: "(1) the alleged acts were committed in the course of the defendant's business; (2) the defendant advertised to the consumer public in general; (3) the defendant actively solicited the plaintiff, indicating its potential to similarly solicit others; and (4) plaintiff and defendant occupied unequal bargaining positions." *Nw. Prod.*, 174 Wash. App. at \*5 (*citing Hangman Ridge*, 105 Wash. 2d at 790-91).

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA'S MOTION TO DISMISS - 21
(C14-1351-RAJ)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350

effect on public interest from which a trier of fact could reasonably find public interest impact." *Hangman Ridge*, 105 Wash. 2d at 791. They are "relevant to evaluating the public interest," *Volvo Const. Equip.*, 2014 WL 5365454, at *4, but they "are not exclusive, no one factor is dispositive, and it is not necessary that all be present." *Nw. Prod.*, 174 Wash. App., 2013 WL 992666, at *5 (emphasis added). In other words, these factors merely help inform the likelihood of Huawei's repetition – a requirement T-Mobile has already met in its pleading as outlined above. The "four factors" are superfluous here given T-Mobile's specific allegations.

Moreover, the factors have no relevance where a "legislative declaration of public interest impact" satisfies the public interest element on a *per se* basis. *Hangman Ridge*, 105 Wash. 2d at 791. Such a legislative declaration exists here. The Washington legislature has specifically declared it a "matter of public policy" to protect the confidentiality of "trade secrets, other confidential research, development, or commercial information concerning products or business methods." RCW 4.24.601. This case, which raises these very same public policy issues, easily satisfies the public interest element of the CPA.

Regardless, although it does not need to do so, T-Mobile's complaint *does* address and satisfy each of the four factors identified by Huawei. *See Nw. Prod.*, 174 Wash. App., 2013 WL 992666, at *5. *One*, the complaint alleges, and Huawei concedes, that the alleged acts were committed in the course of Huawei's business. (Mot. at 20.) *Two*, the complaint alleges that Huawei advertises to the general public, (Compl. ¶ 119) – a fact Huawei does not deny. *Three*, Huawei's motion acknowledges the allegation that Huawei actively solicited T-Mobile's business, and even concedes that Huawei successfully "participated in a competitive bidding process" aimed at winning T-Mobile's business. (Mot. at 21.) Although Huawei recasts this as "T-Mobile soliciting Huawei" in its motion, the pleadings state the opposite. *Four*, the parties do not occupy equal bargaining positions. The Congressional investigation cited by T-Mobile explains that Huawei receives the support of the Chinese government via subsidies and special

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA'S MOTION TO DISMISS - 22
(C14-1351-RAJ)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350

policies as a so-called "national champion." (Compl. ¶ 76.)[8] Huawei's pattern of disregard of its non-disclosure obligations and the intellectual property rights of others additionally puts it at an unfair bargaining advantage relative to other companies that obey such obligations. (Compl. ¶ 74.) In sum, T-Mobile has satisfied the pleading standard for the public interest element of its CPA claim, even under Huawei's incorrect suggestion that the "indicia" are controlling.

Huawei's efforts to recast T-Mobile's CPA claim as a trade secret claim are belied by the well-pleaded facts and the law. T-Mobile has more than met its burden for this claim to proceed.

## VI. CONCLUSION

For all of the reasons discussed above, the Court should deny Huawei's motion to dismiss in its entirety.

DATED this 17th day of November, 2014.

s/ Michael E. Kipling
Michael E. Kipling, WSBA #7677
Marjorie A. Walter, WSBA #40078
**KIPLING LAW GROUP PLLC**
3601 Fremont Avenue N., Suite 414
Seattle, WA 98103
(206) 545-0345
(206) 545-0350 (fax)
kipling@kiplinglawgroup.com
walter@kiplinglawgroup.com

John Hueston (admitted *Pro Hac Vice*)
Alison Plessman (admitted *Pro Hac Vice*)
Eric Hayden (admitted *Pro Hac Vice*)
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
(310) 277-1010
(310) 203-7199 (fax)
jhueston@irell.com
aplessman@irell.com
ehayden@irell.com
***Counsel for Plaintiff T-Mobile USA, Inc.***

---

[8] *See, e.g.*, U.S. House Permanent Select Committee on Intelligence (Oct. 8, 2012) (http://intelligence.house.gov/sites/intelligence.house.gov/files/documents/Huawei-ZTE%20Investigative%20Report%20%28FINAL%29.pdf) at 21 *et seq.*

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA'S MOTION TO DISMISS - 23
(C14-1351-RAJ)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of November, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

*Counsel for T-Mobile USA, Inc.*
- Michael E. Kipling
  kipling@kiplinglawgroup.com
- Marjorie A. Walter
  walter@kiplinglawgroup.com
- John Hueston
  jhueston@irell.com
- Alison Plessman
  aplessman@irell.com
- Eric Hayden
  ehayden@irell.com

*Counsel for Huawei Device USA, Inc.*
- William F. Abrams
  wabrams@steptoe.com
- Timothy C. Bickham
  tbickham@steptoe.com
- Franklin D. Cordell
  fcordell@gordontilden.com
- James F. Hibey
  jhibey@steptoe.com
- Jessica I. Rothschild
  jrothschild@steptoe.com
- Jeffrey M. Thomas
  jthomas@gordontilden.com

DATED this 17th day of November, 2014.

s/ Michael E. Kipling
Michael E. Kipling, WSBA #7677
**KIPLING LAW GROUP PLLC**
3601 Fremont Avenue N., Suite 414
Seattle, WA 98103
(206) 545-0345
(206) 545-0350 (fax)
kipling@kiplinglawgroup.com

*Counsel for Plaintiff*

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA'S MOTION TO DISMISS - 24
(C14-1351-RAJ)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
TELEPHONE (206) 545-0345
FAX (206) 545-0350