```
 1              UNITED STATES DISTRICT COURT

 2          WESTERN DISTRICT OF WASHINGTON AT SEATTLE

 3    _____

 4                                )
      T-MOBILE USA, INC.,         )  C14-1351-RAJ
 5                                )
                     Plaintiff,   )  SEATTLE, WASHINGTON
 6                                )
      v.                          )  July 28, 2016
 7                                )
      HUAWEI DEVICE USA, INC., et )  Telephone
 8    al.,                        )  Conference
                                  )
 9                   Defendants.

10    _____

11               VERBATIM REPORT OF PROCEEDINGS
            BEFORE THE HONORABLE RICHARD A. JONES
12               UNITED STATES DISTRICT JUDGE
      _____
13

14
      APPEARANCES:
15

16

17     For the Plaintiff:     John Hueston
                               Alison Plessman
18                             Steve Feldman
                               Hueston Hennigan LLP
19                             620 Newport Center Drive
                               Suite 1300
20                             Newport Beach, CA  92660

21
       For the Defendant:     James Hibey
22                             Timothy Bickham
                               Steptoe & Johnson
23                             1330 Connecticut Avenue NW
                               Suite 662
24                             Washington, DC  20036

25
```

Michael Flynn-O'Brien
Steptoe & Johnson
1891 Page Mill Road
Palo Alto, CA  94304

Franklin Cordell
Gordon Tilden Thomas & Cordell
1001 4th Avenue
Suite 4000
Seattle, WA  98154

10:02:48   1          THE CLERK:  Who do we have for plaintiffs?

10:03:11   2          MR. HUESTON:  Good morning, it's John Hueston from

10:03:15   3   Hueston Hennigan.  We have a number of attorneys from our

10:03:18   4   firm and from T-Mobile on the line, as you know.

10:03:24   5          THE COURT:  Why don't we have people identify

10:03:26   6   themselves who will actually be participating and speaking in

10:03:29   7   the hearing.

10:03:31   8      So for plaintiffs, besides Mr. Hueston.

10:03:38   9          MR. FELDMAN:  Steve Feldman of Hueston Hennigan.

10:03:44  10          THE CLERK:  Okay.  All right.  So it's just the two

10:03:45  11   of you arguing today?

10:03:47  12          MR. FELDMAN:  No.  I believe Alison Plessman of

10:03:49  13   Hueston Hennigan will be joining us, if she's not on right

10:03:51  14   now.

10:03:52  15          MS. PLESSMAN:  Yes, I'm on.

10:03:55  16          THE CLERK:  Okay.  Ms. Plessman, will you be arguing

10:03:58  17   as well today?

10:03:59  18          MS. PLESSMAN:  Yes, I will be.

10:04:01  19          THE CLERK:  Okay.  Then for defense?

10:04:03  20          MR. HIBEY:  Jim Hibey from Steptoe & Johnson in

10:04:06  21   Washington -- Washington, D.C.  I will be arguing for the

10:04:11  22   defendants.  There may be a necessity to have Tim Bickham or

10:04:19  23   Mike Flynn-O'Brien participate, but I'm going to try to get

10:04:23  24   through it myself.

10:04:31  25          THE CLERK:  Counsel, because we have so many people

10:04:33  1    on the line and we do have a court reporter here, it's

10:04:36  2    important that before you speak you identify yourself so our

10:04:39  3    record is clear.  Okay?

10:06:45  4              (The judge entered the conference room.)

10:06:45  5              THE COURT:  Good morning, counsel.  This is Judge

10:06:50  6    Richard Jones in the matter of T-Mobile v. Huawei Device,

10:06:56  7    Inc., et al.  Cause number C-14-1351-RAJ.  Would the parties

10:07:03  8    please identify themselves?

10:07:07  9              MR. HUESTON:  Good morning, Your Honor.  John

10:07:10  10   Hueston, Alison Plessman and Steve Feldman on behalf of

10:07:14  11   T-Mobile.

10:07:17  12             THE COURT:  All right.

10:07:17  13             MR. HIBEY:  Good morning, Your Honor.  My name is

10:07:20  14   James Hibey.  I represent the defendants in the case.  And

10:07:23  15   along with me on other phones in other locations are Tim

10:07:28  16   Bickham and Mike Flynn-O'Brien.  I believe our counsel in

10:07:35  17   Washington, Frank Cordell, might be on the line as well.

10:07:39  18             MR. CORDELL:  Yes, I am.

10:07:41  19             THE COURT:  And who will be the speaking parties for

10:07:44  20   the plaintiff?  Is it Mr. Hueston?

10:07:47  21             MR. HUESTON:  It will be three of us, depending on

10:07:49  22   which motion is discussed, Your Honor.  It is John Hueston,

10:07:53  23   myself, Alison Plessman, or Steve Feldman, depending on the

10:07:58  24   motions.

10:07:59  25             THE COURT:  And who is going to be speaking on behalf

10:08:01  1    of the defendants?

10:08:03  2          MR. HIBEY:  Your Honor, Jim Hibey.  I'm prepared to

10:08:06  3    address all four motions.  If necessary, and with the court's

10:08:09  4    permission, Mr. Bickham or Mr. Flynn-O'Brien may have to

10:08:13  5    chime in on a fact or two.

10:08:16  6          THE COURT:  Okay.  All right, counsel, this is what

10:08:18  7    the court is going to do.  I'm not sure what your

10:08:20  8    expectations were, but I thought because of the locations of

10:08:26  9    individuals that it would be more expeditious for the parties

10:08:30  10   for the court to bring the parties together in this fashion.

10:08:33  11   My game plan today is to go through and give you my rulings,

10:08:37  12   tentative rulings at this point.  You've had more than an

10:08:44  13   abundance of opportunity to brief this case.  And some of the

10:08:47  14   motions start to be repetitive in terms of the arguments that

10:08:51  15   are made and the cases that have been cited to advance your

10:08:54  16   positions to the court.  And so I don't know that extensive

10:08:58  17   oral argument is going to be necessary.

10:09:00  18      So I'm going to start with the motions the parties have.

10:09:03  19   I'll address each of the motions.  And then I'll take any

10:09:06  20   comment or answer any questions that the parties may have if

10:09:09  21   you need further clarification.

10:09:10  22      We're not going to give you a detailed written order.  I'm

10:09:14  23   going to provide as much detail as possible in the court's

10:09:17  24   oral determinations.  And then what you can expect at the

10:09:20  25   conclusion will be basically a minute order or a very brief

10:09:23  1    order that just confirms the actual determinations made by

10:09:26  2    the court.

10:09:27  3         So with that we'll begin with -- and what's the correct

10:09:30  4    pronunciation of the defendant's name?

10:09:34  5              MR. HIBEY:  It's Huawei.

10:09:36  6              THE COURT:  Huawei.  Okay.  Thank you, counsel.

10:09:39  7         I'll begin with Huawei's motion for sanctions, that's

10:09:43  8    Docket No. 130, and the supplemental briefs, Docket No. 149.

10:09:47  9         Now, these two motions request terminating sanctions in

10:09:55  10   response to T-Mobile's late or claimed incomplete disclosures

10:09:59  11   of two documents.  That's, one, the partial image or working

10:10:03  12   copy of a T-Mobile laboratory computer; and, two, certain

10:10:08  13   documents such as laboratory access logs, computer logs, and

10:10:14  14   badge entry logs that have been withheld.

10:10:16  15        Now, my initial observation is that when you begin your

10:10:20  16   request by asking for the most severe sanction that can be

10:10:25  17   possibly awarded by the court, the likelihood of success on

10:10:28  18   that type of request isn't great.

10:10:30  19        I'll also note that a terminating sanction, whether it's a

10:10:35  20   default judgment against a defendant or dismissal of a

10:10:38  21   plaintiff, is very severe.  And all the cases talk about the

10:10:42  22   severity of the type of sanction being requested.  Now,

10:10:47  23   generally speaking, only willfulness, bad faith, or fault

10:10:51  24   justify terminating sanctions.

10:10:54  25        Now, it's undisputed that T-Mobile had a copy of the 2013

1   partial image since June 2013.  The request for inspection

2   relevant to this image was propounded in September 2015.  My

3   review indicates that T-Mobile responded to this request on

4   October 8, 2015, and appears to have offered to make the

5   actual robot and image available on November 20, 2015.

6   Apparently Huawei was not available, but they did not try to

7   reschedule until April 2016.

8       Now, I'm not satisfied that T-Mobile has delayed in

9   producing the partial image as claimed.  The court also notes

10  that Huawei has not sufficiently shown that the partial image

11  fell under another discovery request.  T-Mobile produced the

12  partial image essentially around the time the parties finally

13  agreed to a laboratory inspection.  That's the time in which

14  Huawei could have scheduled the same event earlier.

15      Now, we have another problem that still exists.  T-Mobile

16  admits that it lost the physical image, that's a complete

17  copy of the June 2013 computer hard drive.  Apparently there

18  was some issue regarding how it was plugged in and a worn

19  power connector of some sort.

20      Now, there's some evidence that the partial image that was

21  ultimately produced to Huawei is incomplete, especially as

22  compared to the physical image.

23      Now, in this regard or in response, Huawei has argued

24  spoliation.  Now, on the surface it appears that the

25  defendant is correct, that T-Mobile failed to preserve this

10:12:47  1    information.  But terminating sanctions for spoliation

10:12:52  2    generally requires a showing of some degree of willfulness,

10:12:57  3    bad faith, or fault.  And the court does not find that this

10:13:02  4    has been demonstrated.

10:13:04  5         The court also notes that terminating sanctions are

10:13:07  6    available for lost electronically-stored information, only

10:13:10  7    upon the finding that the party acted with intent to deprive

10:13:14  8    another party of the information's use.

10:13:17  9         Again, dismissal is authorized only in extreme

10:13:22  10   circumstances and only when the violation is due to

10:13:25  11   willfulness, bad faith, or fault of the party.  And the

10:13:29  12   defendant has not shown this.

10:13:30  13        Now, at best, this really comes down to a question of, if

10:13:34  14   it wasn't willfulness, then I have to address the question of

10:13:38  15   delay, because that appears to be the more prevalent issue.

10:13:43  16   Now, it's apparent to this court that T-Mobile delayed for

10:13:47  17   nearly two years in disclosing the specific existence or

10:13:52  18   destruction of the logical images.  Now, the court doesn't

10:13:56  19   condone or support that that was appropriate.  T-Mobile knew

10:14:01  20   that it was lost.  T-Mobile knew that there was litigation.

10:14:03  21   And clearly, in good faith, should have exercised the proper

10:14:06  22   discretion and produced or shared this information with the

10:14:09  23   defense.

10:14:10  24        Now, some of the delay may have been justified, and much

10:14:15  25   of it may not.  But whatever the case, terminating sanctions

10:14:19  1    are too severe and not appropriate, based upon the record

10:14:24  2    that has been presented to this court.

10:14:26  3         Now, Huawei also requests terminating sanctions for the

10:14:31  4    late disclosure of certain documents.  Now, these documents

10:14:35  5    include Internet access logs, computer audit trails, badge

10:14:41  6    access logs, and the physical sign-in and sign-out logs for

10:14:44  7    one of the robot testing chambers.  The court finds, as other

10:14:49  8    courts, that delay alone is insufficient prejudice to justify

10:14:55  9    terminating sanctions.

10:14:57  10        Now, I think that in the truest of hearts the defendants

10:15:01  11   recognize this and that's the reason why they filed its

10:15:05  12   supplemental briefing adding additional evidence.  And,

10:15:09  13   again, further arguing spoliation.

10:15:11  14        And in that briefing Huawei gave the court the theory that

10:15:19  15   it was deprived of the ability to conduct some investigation

10:15:23  16   and discover exculpatory evidence.  It also argued that

10:15:27  17   T-Mobile likely did not follow best practices in preserving

10:15:31  18   the physical drive.

10:15:31  19        Now, T-Mobile has countered and disputes these

10:15:35  20   contentions, and it argues that the logical image actually

10:15:39  21   contains some of the information that Huawei contends it was

10:15:42  22   deprived of.  Bottom line, the court finds there was

10:15:48  23   insufficient evidence to show intentional spoliation of

10:15:51  24   evidence.  The evidence suggests that the destruction was

10:15:57  25   inadvertent.

10:15:58  1     Now, again, this is based upon the records and facts as

10:16:02  2  presented to the court.  The court also notes that the

10:16:07  3  information didn't necessarily deprive Huawei of much of the

10:16:10  4  evidence Huawei originally indicated it could not discover.

10:16:14  5  The only evidence as far as the court can determine that

10:16:16  6  Huawei no longer had access to is, one, evidence from other

10:16:21  7  user files; and, two, temporary file data.

10:16:25  8     Bottom line, the court finds that Huawei has not been

10:16:29  9  deprived of any critical information and neither of the two

10:16:35 10  bases supplied for this court constitute significant

10:16:38 11  deprivation to warrant the relief sought by the defendant.

10:16:42 12     The court also notes that there's case authority that

10:16:44 13  clearly indicates that there is no duty to preserve temporary

10:16:48 14  files until they have been specifically requested.  The court

10:16:53 15  also notes there's no duty to preserve temporary files where

10:16:56 16  parties were only under a general litigation hold.  The

10:16:59 17  physical image here was lost before this litigation began,

10:17:04 18  but it was certainly while T-Mobile was under a general duty

10:17:07 19  to preserve.

10:17:08 20     Now, on the other hand the other user profiles presents a

10:17:14 21  compounded additional challenge, because here it could be

10:17:18 22  helpful in showing whether Huawei's conduct deviated from

10:17:23 23  other manufacturers with access to the robot computer.

10:17:26 24     Huawei argues that T-Mobile must be sanctioned because

10:17:32 25  Huawei can't rely on this information any longer.  Now, the

10:17:36  1    court doesn't necessarily disagree with that, but the problem

10:17:40  2    and the challenge I have is that Huawei has failed to explain

10:17:43  3    how this information really matters or why it is unable to

10:17:47  4    obtain similar information through other means.  In other

10:17:51  5    words, it has received evidence of source code changes and

10:17:54  6    access to the robot computer in the interim.

10:17:57  7         Huawei's accusations of delay present another challenge.

10:18:03  8    Now, there's no question or at least little question that

10:18:07  9    T-Mobile should have known that potentially relevant

10:18:09 10    information was destroyed before the litigation began, and

10:18:12 11    I've already indicated that.  But Huawei's accusations that

10:18:16 12    T-Mobile has consciously attempted to cover the incident up,

10:18:21 13    in this court's opinion, it believes that that goes too far,

10:18:25 14    because part of the delay in inspecting the testing robot and

10:18:29 15    related computer information is directly attributed to the

10:18:32 16    conduct of Huawei.

10:18:34 17         Consequently, there's enough blame to go around on this

10:18:38 18    dispute, and the court is not satisfied, based upon the

10:18:42 19    record made, that it warrants further determinations as

10:18:46 20    requested.

10:18:46 21         Now, there's another issue that Huawei appears at times to

10:18:52 22    request a lesser sanction.  There's no evidence that T-Mobile

10:18:56 23    intentionally destroyed the information or explanation of how

10:19:00 24    this evidence would help Huawei.  And based upon the lack of

10:19:01 25    evidence or lack of sufficient information, the court can't

10:19:05   1   grant that request.  Therefore, the court will deny the

10:19:09   2   motion for sanctions as proposed.

10:19:11   3       The court will grant the motion for leave to file a

10:19:15   4   supplemental brief.  And the bottom line is that the briefs

10:19:18   5   that were filed, the court has considered all of them as

10:19:21   6   they've been presented.  So I just wanted to make a formal

10:19:25   7   record that I have granted the leave to file a supplemental

10:19:29   8   brief.

10:19:29   9       I'd also noted, along these lines, the key documents that

10:19:33   10  Huawei complains about were ultimately produced.  And I would

10:19:36   11  also note that if they believe that they didn't have enough

10:19:38   12  time to analyze all these documents, the simple recourse

10:19:41   13  would have been to request additional time for expert and

10:19:44   14  factual discovery.  There's no question that the parties

10:19:46   15  clearly understand that when you don't have what you need,

10:19:49   16  you know how to come to court and ask for it.

10:19:52   17      The court also notes that the physical image presents a

10:19:56   18  problem in so far as Huawei is unable to compare its conduct

10:20:00   19  with those of other manufacturers.  Now, the difficulty with

10:20:04   20  sanctioning this loss is Huawei has not shown why it is

10:20:10   21  unable to make use of data currently on the robot computer to

10:20:17   22  do such a comparison; and, two, how other manufacturers' user

10:20:21   23  activity would actually bolster their claims of innocence.

10:20:25   24      Now, please don't read into this as an invitation for

10:20:29   25  additional briefing.  When the court makes its ruling the

10:20:32  1    court is satisfied that this is a correct and proper ruling

10:20:34  2    and is a final say and determination on this.  Now,

10:20:38  3    T-Mobile's delay is regrettable, but ultimately it's not

10:20:42  4    going to be sanctioned by this court by way of the relief

10:20:45  5    sought by the defense.

10:20:46  6         Now, we'll transition to T-Mobile's motion to compel.

10:20:52  7    That's Docket Nos. 132 and 138.  And T-Mobile seeks five

10:21:01  8    categories of documents or things, and I'll go through them

10:21:05  9    in the order as follows:

10:21:06  10        First we'll start with the sales and return data.  Now,

10:21:11  11   T-Mobile is requesting information about the sales of

10:21:14  12   Huawei's devices and consumer returns of the products.

10:21:19  13   Huawei claims that it has produced all of this data or that

10:21:23  14   T-Mobile has failed to meet and confer on these issues.  And

10:21:27  15   T-Mobile has countered that it has yet to receive the

10:21:30  16   relevant documents or information.

10:21:32  17        Now, if the court takes T-Mobile's representations as

10:21:36  18   accurate, it's probably correct that Huawei has not fully

10:21:41  19   complied with its discovery obligations.  If the

10:21:45  20   Bates-numbered files that Huawei has been directing them to

10:21:49  21   have not revealed the sought-after information, then it was

10:21:53  22   either not produced or Huawei has not complied with its

10:21:57  23   obligations to specifically identify the records that

10:22:00  24   actually contained this information.  Regardless, or whatever

10:22:04  25   the case, the evidence is relevant and should be produced,

10:22:07 1   and the court will grant this motion.

10:22:11 2       Next is the TMSS issue.  Huawei's central testing server

10:22:19 3   is the TMSS.  Now, both parties have made their attempts to

10:22:23 4   try and describe the enormity and size of what this TMSS

10:22:28 5   platform includes.  Now, the summary that I have is it

10:22:33 6   contains over 1 billion files, that there are nearly

10:22:36 7   24 million of those related to software testing, and almost

10:22:41 8   2 million related to hardware testing.  The testing robots

10:22:45 9   identified by T-Mobile, according to the materials and

10:22:52 10  documents submitted by the parties, apparently have never

10:22:55 11  been connected to TMSS, although they have log-in screens for

10:23:00 12  TMSS.

10:23:01 13      Based upon what Huawei has proffered, I'm not even sure if

10:23:04 14  TMSS's circumstances or information is relevant to this case.

10:23:09 15  If it was never connected to any robotic device tester, I'm

10:23:14 16  not clear how T-Mobile's trade secrets were incorporated into

10:23:18 17  it.

10:23:18 18      Now, I agree with Huawei that even if TMSS is relevant to

10:23:24 19  the case, further discovery is inappropriate at this time.

10:23:30 20  T-Mobile appears to have discovered the existence of TMSS in

10:23:35 21  December 2015.  It appears to the court that T-Mobile does

10:23:41 22  not appear to have investigated TMSS in the interim, and this

10:23:44 23  motion was brought on the eve of the discovery cutoff.  Now,

10:23:49 24  delay in bringing this motion to compel may justify its

10:23:55 25  denial, just based upon that fact alone.

10:23:57  1        The other question the court has is whether discovery of

10:24:02  2    the sought-after discovery is proportional to the needs of

10:24:05  3    the case.  Now, I want the parties to understand the context

10:24:08  4    of the request.  If there are a billion files at issue, I'm

10:24:16  5    not sure how, with a team of lawyers, or scores of lawyers,

10:24:20  6    between today's date and the time set for trial, that any

10:24:25  7    rational person could argue that you'd have time to analyze

10:24:29  8    the data, particularly if the data would come to you in the

10:24:32  9    form of a matter that needed to be translated to some degree.

10:24:36  10       Trial in this matter is set for October 31, 2016.  It

10:24:42  11   appears to the court that the parties should be or are in the

10:24:45  12   middle of completing expert depositions.  The additional

10:24:48  13   discovery of potentially billions or at least millions of

10:24:52  14   additional files is certainly going to lead to another

10:24:55  15   continuance in this long-running case.

10:24:57  16       Now, if I granted the request, I'm confident that there

10:25:01  17   would be a request for an extended delay and there would be

10:25:05  18   some projections or proposals about your approach to

10:25:11  19   discovering the information, and there would be motions

10:25:14  20   requesting the opening of further discovery because of this

10:25:17  21   information that you believe might potentially have more

10:25:21  22   information to help the case along.

10:25:23  23       Going into the TMSS appears to be closer to the concept of

10:25:29  24   scorched-earth discovery as opposed to pursuing something

10:25:35  25   reasonably calculated to lead to discovery of admissible

10:25:36  1  evidence.  And it's for these reasons I will deny T-Mobile's

10:25:40  2  request to compel production of TMSS information.

10:25:44  3      Next is the issue regarding other robots.  T-Mobile is

10:25:51  4  requesting the court to compel Huawei to permit inspection of

10:25:55  5  Huawei's additional testing robots.  T-Mobile also requests

10:25:59  6  the source code or software for those robots, specifically

10:26:06  7  OptoFidelity -- and I'll spell that for the court reporter,

10:26:10  8  O-P-T-O, F-I-D-I-L-I-T-Y -- and Putian, P-U-T-I-A-N.  And

10:26:18  9  these are systems that are ostensibly from third parties.

10:26:24  10      Now, Huawei objects, contending that T-Mobile relies on

10:26:29  11  the wrong discovery requests or that such discovery is

10:26:32  12  duplicative or unduly burdensome.  The court disagrees with

10:26:38  13  Huawei's contentions on this point.  Huawei has not given

10:26:42  14  T-Mobile access to the control software for the OptoFidelity

10:26:46  15  and Putian robots.  Conceivably Huawei could have

10:26:53  16  misappropriated T-Mobile's trade secrets if it incorporated

10:26:58  17  those secrets into those testing platforms.  So the court

10:27:03  18  will grant the motion to compel another inspection of these

10:27:06  19  third-party robots, along with their accompanying source code

10:27:12  20  or software.

10:27:13  21      Next, test cases, scripts and sequence files.  T-Mobile

10:27:19  22  requests compulsion of certain sequence files associated with

10:27:25  23  the testing robots.  T-Mobile claims that the only sequence

10:27:28  24  files made available relate to the XDeviceRobot, not to the

10:27:33  25  other testing robots.  Now, Huawei admits that it never

10:27:37  1   produced this data for non-XDeviceRobot testers.

10:27:43  2       In the court's view, T-Mobile is entitled to this

10:27:46  3   information, but only for the other robots identified in the

10:27:51  4   request.

10:27:54  5       Next we'll transition to Huawei's motion to compel, Docket

10:27:59  6   No. 134.  Some of the issues have been mooted by further

10:28:04  7   productions or agreements between the parties, but Huawei

10:28:07  8   still insists upon compulsion of, one, a 30(b)(6) witness on

10:28:15  9   T-Mobile's communication with third parties relating to the

10:28:18  10  lawsuit, topic No. 30; and number two, Interrogatories Nos.

10:28:23  11  2, 7, 8 and 9.

10:28:26  12      Let's look now at the deposition, topic No. 30.  It's a

10:28:30  13  request or calls for all communications with third parties,

10:28:34  14  including but not limited to OptoFidelity and Deutsche,

10:28:41  15  D-E-U-T-S-C-H-E, Telekom, T-E-L-E-K-O-M, AG, related to this

10:28:47  16  action or any of the underlying actions.

10:28:49  17      Now, T-Mobile contends that the topic is overbroad because

10:28:53  18  Huawei has not confined the inquiry to specific third parties

10:28:58  19  other than OptoFidelity and Deutsche Telekom.

10:29:03  20      The court disagrees with T-Mobile.  The communication they

10:29:07  21  point to does not reflect that T-Mobile ever disclosed the

10:29:10  22  identities of third parties it discussed litigation with.

10:29:15  23  Once they have disclosed that information, they would be

10:29:18  24  entitled to raise relevance concerns.

10:29:21  25      Now, on the other hand, T-Mobile appears to argue that

10:29:25  1   Huawei has already had the opportunity to explore T-Mobile's

10:29:28  2   communications with OptoFidelity.  And it's inadequate

10:29:34  3   justification, simply because individual deponents have

10:29:37  4   already testified about the topics noticed in the

10:29:41  5   Rule 30(b)(6) deposition notice, it doesn't preclude

10:29:45  6   continued examination.

10:29:45  7       Now, T-Mobile argues that its communications with Deutsche

10:29:50  8   Telekom are irrelevant.  Now, I don't really understand that

10:29:54  9   objection.  The deposition topic isn't asking for Deutsche

10:29:58  10  TeleKom's view of the case, it's asking for what information

10:30:01  11  was disclosed between T-Mobile and third parties.

10:30:05  12      Therefore the court orders that T-Mobile is to designate a

10:30:09  13  30(b)(6) witness to testify as to T-Mobile's communications

10:30:14  14  with OptoFidelity and Deutsche Telekom regarding the subject

10:30:18  15  matter of this case; and, two, to disclose the identities of

10:30:22  16  any other third parties they communicated with regarding the

10:30:26  17  subject matter of this case.

10:30:27  18      The court also directs that the parties should meet and

10:30:31  19  confer to discuss whether an additional 30(b)(6) witness is

10:30:35  20  necessary.

10:30:35  21      And, counsel, when I direct the parties to meet and

10:30:39  22  confer, there's a lot of engagement that goes back and forth,

10:30:42  23  and I'm not sure if it's really good-faith effort on the

10:30:45  24  parties to really sincerely meet and confer in a civil

10:30:49  25  fashion towards resolving the conflict, short of filing a

10:30:51 1   motion with this court.  So when I direct the parties to meet

10:30:55 2   and confer, I direct with a genuine approach in trying to

10:30:59 3   resolve the differences without having to ask for court

10:31:03 4   intervention.

10:31:03 5        We'll next go to Interrogatory No. 2.  This is a request

10:31:13 6   of a detailed description of the development of the trade

10:31:18 7   secrets that Huawei allegedly misappropriated.  But the

10:31:23 8   response simply directs Huawei to two expert reports and

10:31:25 9   5,000 pages of documents.  In the court's opinion and

10:31:29 10  conclusion, that's not a responsive answer.  T-Mobile

10:31:32 11  obviously knows much more about the development of its trade

10:31:35 12  secrets than Huawei.  The court therefore orders that

10:31:38 13  T-Mobile should and shall supplement this response.

10:31:42 14       The next is Interrogatory No. 7.  This interrogatory

10:31:47 15  requests the identities of each person involved in T-Mobile's

10:31:51 16  decision to end its supplier relationship with Huawei.

10:31:56 17  T-Mobile's response is deficient.  Now, Mr. Rossi apparently

10:32:01 18  identifies some of the individuals involved.  He does not

10:32:05 19  identify all of them.  And, in fact, he even admits that he

10:32:08 20  did not recall all of the names of the folks involved at all

10:32:13 21  points in time.  That's insufficient.  The court, therefore,

10:32:17 22  orders that the response shall be supplemented.

10:32:21 23       Next is Interrogatory No. 8.  This requests that T-Mobile

10:32:27 24  describe the facts that support its claim for damages,

10:32:31 25  including each category of substantial costs identified in

1  the complaint as well as the identity of persons with

2  knowledge of these damages.

3      Again, T-Mobile's supplemental response directs Huawei to

4  the expert report of Ryan Sullivan, Ph.D.  This response

5  should be supplemented.  The court finds that that response

6  is inadequate.

7      Next, Interrogatory No. 9 requests an explanation for

8  every denied request for admission.  Now, my review indicates

9  that T-Mobile responded for only 17 requests for admission,

10  contending that each other separate request constituted a

11  separate interrogatory.

12      Now, as for the 17 requests for which there were

13  responses, T-Mobile simply provided identical responses,

14  referring Huawei to an expert report, T-Mobile's initial

15  disclosures, depositions and expert reports.  Again, the

16  court agrees with Huawei, that is improper and insufficient

17  and must be cured.

18      Now, Huawei does not appear to request any responses

19  beyond these 17, so only those responses shall be

20  supplemented and so ordered by this court.

21      Next is Docket No. 179.  This is T-Mobile's motion to

22  compel.  In this motion T-Mobile is seeking documents that

23  Huawei has clawed back through the parties' confidentiality

24  agreement.  Now, at the outset the parties argue over the

25  admissibility of the evidence, under Federal Rule of Evidence

10:34:24  1  408.  Bottom line, the court concludes that the issue of

10:34:30  2  admissibility is not proper at this time.  Now, that may come

10:34:33  3  up some other time, either in a motion in limine or some

10:34:37  4  other purpose, but at this point in time that's not the

10:34:42  5  dictating factor.  Rule 408 does not effectively affect the

10:34:47  6  discoverability of settlement discussions.

10:34:50  7       Now, in this motion the waiver issue is also of

10:34:57  8  significant concern to this court.  Now, before filing this

10:35:02  9  lawsuit Huawei shared some information about its internal

10:35:06  10 investigation with T-Mobile's investigations unit.  Now, this

10:35:10  11 information apparently included a copy of Huawei's internal

10:35:13  12 investigation report, among other things.  Huawei has since

10:35:17  13 asserted attorney-client and work-product privilege for the

10:35:22  14 details of Huawei's internal investigation.

10:35:26  15      Somewhere in the process Huawei produced 22 documents out

10:35:30  16 of -- I believe the number was 375,000, and that it has now

10:35:35  17 attempted to claw back under the stipulated confidentiality

10:35:38  18 agreement.

10:35:38  19      Now, half of those documents or half of those e-mails

10:35:44  20 between T-Mobile and Huawei discuss the results of Huawei's

10:35:48  21 internal investigation and answer a few questions about the

10:35:51  22 investigation.  Under these circumstances there's little

10:35:55  23 basis for finding that communications shared with third

10:35:57  24 parties are no longer privileged.

10:36:01  25      The others, however, are e-mails that do not have a

10:36:04  1   third-party addressee.  T-Mobile raises serious concerns

10:36:08  2   about whether they are actually internal communications.

10:36:11  3   However, T-Mobile appears to argue that these internal

10:36:16  4   communications are actually identical to communications

10:36:19  5   between Huawei and T-Mobile.  The problem the court has is

10:36:23  6   that Huawei hasn't filed these communications in camera, so

10:36:27  7   it's impossible for the court to tell.

10:36:30  8       So for these communications the court will order Huawei to

10:36:34  9   present them to the court in camera so that the court can

10:36:37  10  make its own determination that privilege has actually been

10:36:41  11  waived.

10:36:41  12      And, finally, T-Mobile argues that not only has Huawei

10:36:45  13  waived any privilege to these 22 documents, but that it has

10:36:49  14  waived privilege as to the entire subject of Huawei's

10:36:52  15  internal investigation.

10:36:55  16      The Ninth Circuit has construed the scope of such waiver

10:36:58  17  to be very narrow and extremely narrow.  In evaluating what

10:37:03  18  constitutes the subject matter of a waiver, courts are

10:37:07  19  instructed to weigh the circumstances of the disclosure, the

10:37:10  20  nature of the legal advice sought, and the prejudice to the

10:37:13  21  parties in permitting or prohibiting further disclosures.

10:37:18  22  With this in mind, I will narrowly construe the waiver.

10:37:23  23      The documents that have been presented to the court show

10:37:25  24  limited disclosure of the results and findings of the

10:37:27  25  internal investigation.  These communications do not reveal

10:37:31  1    the legal advice given to Huawei.  For the most part they

10:37:35  2    simply reflect factual findings and conclusions that Huawei

10:37:39  3    reached.

10:37:39  4        The apparent purpose of the disclosure was to facilitate

10:37:43  5    resuming of the business relationship between T-Mobile and

10:37:48  6    Huawei.  In other words, settlement-type or pre-dispute

10:37:51  7    discussions.  The bottom line is, the court will deny any

10:37:55  8    finding that Huawei has waived its privilege as to its entire

10:37:58  9    investigation.

10:37:59 10        The last are the different motions to seal, and that's

10:38:05 11    Docket Nos. 136, 163, 183 and 190.  None of these motions are

10:38:13 12    dispositive, so the parties simply have to show good cause to

10:38:17 13    seal.  Now, from my review it appears that the documents

10:38:21 14    involve, one, Huawei's detailed and confidential financial or

10:38:25 15    internal company development information that may be

10:38:30 16    commercially sensitive; and, two, sensitive business

10:38:33 17    information such as descriptions of its internal process for

10:38:37 18    selecting products; three, internal human business operations

10:38:41 19    processes and technical information; and, four, information

10:38:45 20    about Huawei's internal investigation.

10:38:47 21        Based upon these submissions to the court, and the

10:38:52 22    representations made by the parties, the court agrees that

10:38:55 23    these documents are sensitive, contain sensitive information,

10:38:59 24    and warrant the court's protection.  So they may be filed

10:39:03 25    under seal.  The court, therefore, finds that the parties

10:39:06  1    have established good cause.

10:39:07  2        So with that, counsel, I think the court has clearly laid

10:39:11  3    out its determinations of the variety of motions.  And I

10:39:15  4    believe the court is current with any outstanding motions

10:39:18  5    that are before this court at this point in time.

10:39:20  6        So, if the parties wish to make any additional record or

10:39:24  7    ask for any clarifications.  And, counsel, on the in camera

10:39:28  8    submission I'm going to give you seven business days.  So

10:39:31  9    today's date is the 28th, so seven business days from that,

10:39:41  10   I'll expect that production to be made.

10:39:43  11       So, on behalf of plaintiff, are there any issues or any

10:39:49  12   clarifications that need to be made?

10:39:53  13            MR. HUESTON:  Your Honor, it's John Hueston.  And

10:39:57  14   with respect to the motions for sanctions, we're prepared to

10:39:59  15   submit on the court's tentative, depending on -- I may have a

10:40:05  16   comment, responding comment if Mr. Hibey wishes to address

10:40:10  17   that.  I'm going to turn it over to my colleagues for

10:40:13  18   follow-up on the other motions.

10:40:16  19            THE COURT:  Okay.  And please identify yourself

10:40:17  20   before you speak.

10:40:21  21            MS. PLESSMAN:  Good morning, Your Honor.  This is

10:40:23  22   Alison Plessman.  I wanted to briefly address T-Mobile's

10:40:26  23   motion to compel.  One particular issue that we'd like

10:40:30  24   clarification on is the test cases, sequence files and

10:40:36  25   script.  I believe you ordered that those -- that that

10:40:40   1    software information should be produced for the additional

10:40:44   2    robots, but I wanted to make clear that our position is that

10:40:48   3    information has also not been provided for the XDeviceRobot.

10:40:54   4    Huawei claimed in their opposition that it has, in fact, been

10:40:57   5    produced.  But we have followed up, it's been two months.

10:41:00   6    They still haven't identified, by Bates number or any other

10:41:04   7    manner, where those files may be.  And so we would like to

10:41:07   8    just have the court's order make clear that that information

10:41:10   9    should also be produced for the XDeviceRobot.  And if Huawei

10:41:15   10   believes it has, in fact, been produced, that they should

10:41:18   11   have to identify that by Bates number.

10:41:25   12              THE COURT:  Okay.  Thank you.

10:41:28   13              MR. HIBEY:  Your Honor, this is Jim Hibey.  Should I

10:41:30   14   respond?

10:41:31   15              THE COURT:  No.  Let me hear any issues raised by

10:41:34   16   plaintiffs to anything that was said by the court, so then

10:41:36   17   when you respond it's a global response as opposed to one at

10:41:40   18   a time.  So anything further from the plaintiffs?

10:41:43   19              MS. PLESSMAN:  Just one additional point on Huawei's

10:41:46   20   motion to compel.  With respect to topic No. 30, I think our

10:41:51   21   primary issue was trying to, as a practical matter, determine

10:41:56   22   how we would interview thousands of employees to determine

10:42:00   23   whether anybody spoke to third parties about the lawsuit and

10:42:04   24   how we would prepare a witness to testify regarding those

10:42:07   25   communications.

10:42:08   1      One compromise that we offered to Huawei was to limit the

10:42:15   2   third-party communications that would be inquired about to

10:42:18   3   the documents that have been produced in this case already,

10:42:21   4   which were produced after a diligent search on topics that

10:42:24   5   should be relevant in any way to this case.  So we would ask

10:42:28   6   the court to consider limiting that deposition to questioning

10:42:36   7   on documents relating to that topic.

10:42:42   8      THE COURT:  Okay.  Does that cover it for plaintiffs?

10:42:49   9      MR. FELDMAN:  This is Steve Feldman of Hueston

10:42:52  10   Hennigan.  I would like to briefly address the motion to

10:42:55  11   compel the investigatory documents.

10:42:58  12      THE COURT:  Okay.  And which docket number is that,

10:43:00  13   counsel?

10:43:00  14      MR. FELDMAN:  179, I believe.

10:43:02  15      THE COURT:  Okay.

10:43:04  16      MR. FELDMAN:  So I understand that Your Honor is

10:43:06  17   going to be looking at the documents that are submitted in

10:43:10  18   camera by Huawei.

10:43:12  19      THE COURT:  Right.

10:43:13  20      MR. FELDMAN:  And we appreciate that and think that

10:43:15  21   that will shed some additional light on the issue of not just

10:43:19  22   waiver of specific documents, but of the broader subject

10:43:24  23   matter waiver.

10:43:25  24      I understand the court's belief that based on the evidence

10:43:30  25   it's seen, it doesn't believe there's a subject-matter waiver

10:43:33  1  here.  But we would just ask that when these additional

10:43:36  2  numerous documents are reviewed, that Huawei has never

10:43:39  3  submitted, that the court give consideration to whether that

10:43:42  4  actually would change the analysis.

10:43:44  5          THE COURT:  Counsel, if you could give me context in

10:43:47  6  terms of what kind of volume are we talking about with these

10:43:50  7  documents?

10:43:51  8          MR. FELDMAN:  Well, our understanding is that --

10:43:53  9  well, virtually all of the 22 documents have not been

10:43:57 10  provided.  There were about six or seven, I believe, that we

10:44:01 11  had separate versions of that we then submitted under seal to

10:44:05 12  this court, which you were able to review.  But I believe

10:44:08 13  Huawei will be submitting ten-plus additional documents that

10:44:13 14  were clawed back.  And so T-Mobile isn't in possession of

10:44:19 15  those, because we, in compliance with the protective order,

10:44:24 16  went ahead and immediately destroyed them.

10:44:28 17          THE COURT:  All right.

10:44:28 18          MR. FELDMAN:  And the final point, just to make on

10:44:31 19  this motion to compel investigatory documents, is while there

10:44:34 20  is this issue of waiver of privilege and of the broader

10:44:37 21  subject-matter waiver, there is this other subset of

10:44:40 22  documents.  And I believe Your Honor referenced them, but I

10:44:43 23  just wanted to clarify those, which is there are a series of

10:44:47 24  documents here where we are not asserting that there was a

10:44:50 25  waiver, but that, in fact, these documents were never

10:44:54  1  privileged in the first place.

10:44:56  2      And so as a result a claw back would be improper because

10:45:00  3  to be clawed back under the parties' agreement, there must

10:45:04  4  have been an inadvertent disclosure of privileged material.

10:45:09  5  And a number of these documents, some of which were

10:45:12  6  submitted, but we believe a number of additional ones which

10:45:15  7  you'll see when Huawei provides them in camera, are simply

10:45:19  8  e-mails between a non-lawyer at Huawei and non-lawyers at

10:45:25  9  third-party T-Mobile a year before the litigation even

10:45:29  10  commenced, talking about the incident.  And that's about it.

10:45:37  11  There is no indication of privilege anywhere in the e-mail.

10:45:40  12  And there was never any assertion of privilege.  In fact, in

10:45:45  13  one of those e-mails which we submitted, it was actually

10:45:48  14  redacted by Huawei for privilege on a couple of points, but

10:45:52  15  not on the rest, I think clearly showing that even they

10:45:56  16  didn't believe it was privileged.

10:45:59  17      And so we would just urge the court, with respect to those

10:46:02  18  documents, to consider a ruling that those should be returned

10:46:08  19  to T-Mobile and that they be part of the discovery in this

10:46:12  20  case, given that they were never actually privileged in the

10:46:15  21  first place.

10:46:18  22          THE COURT:  Okay.  And may I take your representation

10:46:20  23  that that was the last word from the plaintiff?

10:46:24  24          MR. FELDMAN:  If Mr. Hueston and Ms. Plessman agree,

10:46:28  25  then yes, certainly from me.

10:46:30   1          MR. HUESTON:  Yes, Your Honor.

10:46:31   2          THE COURT:  All right, then.  Let's hear from counsel

10:46:37   3   for the defense.

10:46:39   4          MR. HIBEY:  Thank you, Your Honor.  It's Jim Hibey

10:46:42   5   for the defendants.  I think I would like, if the court is

10:46:47   6   okay with it, to go in reverse order, since it's what I just

10:46:51   7   last heard.

10:46:52   8          THE COURT:  That's fine.

10:46:53   9          MR. HIBEY:  With respect to the documents that were

10:46:55  10   clawed back, they are either work product or attorney-client

10:47:01  11   privilege documents.  There is no intent on the part of

10:47:04  12   Huawei to use them in this litigation, so the sword/shield

10:47:10  13   argument that they made and would like, I assume, you to

10:47:14  14   consider when Mr. Feldman says we want you to reconsider your

10:47:19  15   waiver decision, there is no sword/shield use here.

10:47:25  16      And equally important, perhaps even more importantly,

10:47:29  17   after we clawed back the documents, T-Mobile produced all of

10:47:34  18   the same documents in this litigation.  So they are in the

10:47:39  19   record.  And so the issue that remains is the court

10:47:43  20   recognized, when it was providing its ruling, is that there

10:47:47  21   will be an issue either in limine or in court at trial with

10:47:54  22   respect to the admissibility.

10:47:56  23      All of that, all of those documents were shared with

10:48:00  24   T-Mobile under 408.  And we're happy to provide the court

10:48:07  25   with the 22 documents or so, however many there are, and ask

10:48:13   1   that you not reconsider given what I've just said.

10:48:15   2       Moving to the motion to compel that Ms. Plessman addressed

10:48:25   3   and the 30(b)(6) witness, with respect to Opto, and I think

10:48:31   4   she was really concerned about Deutsche Telekom or others.

10:48:35   5   It's remarkable to hear today that they're concerned about

10:48:38   6   thousands of people within their company to interview, to

10:48:44   7   discuss, or to find out whether they discussed third-party

10:48:49   8   communications about the allegations in this case.  If they

10:48:54   9   did, then we are entitled to know all of that.

10:49:00  10       But it would be shocking to me, though I think they just

10:49:04  11   said it, it would be shocking to me that they had lots of

10:49:09  12   conversations with lots of different vendors or companies or

10:49:12  13   entities about the allegations in this lawsuit.  If they did,

10:49:19  14   then according I believe to Your Honor's ruling, your

10:49:24  15   tentative ruling at least, they best disclose that and give

10:49:29  16   us an opportunity to know who they are and what those

10:49:32  17   communications were.

10:49:33  18       With respect to --

10:49:36  19       THE COURT:  Counsel, one of the proposals that

10:49:38  20   counsel made was to limit it to the documents they actually

10:49:44  21   produced, as a friendly proposal at limiting the scope.  What

10:49:51  22   is your reaction to that?

10:49:54  23       MR. HIBEY:  They produced virtually nothing with

10:49:56  24   respect to that issue.  So I don't accept their supposed

10:50:00  25   proposal or compromise.  If their people had conversations

10:50:08  1   with third parties, including Deutsche Telekom and Opto about

10:50:14  2   the allegations in the lawsuit, then we're entitled to know

10:50:17  3   who and what they said to them.  That would be our position.

10:50:25  4       With respect to the motion to compel and Ms. Plessman's

10:50:35  5   comments about XDR or XDeviceRobot as opposed to Opto and

10:50:41  6   Putian, there are two responses, actually, Your Honor, that

10:50:45  7   are pretty straightforward.  We have given them the test

10:50:49  8   cases and the scripts.  All they have to do is run a search

10:50:53  9   with the words "test case" and they'll find them, they'll get

10:50:58  10  them.  It's beyond me why we have to do their work for them.

10:51:06  11      Secondly, the documents upon which or to which we're

10:51:11  12  referring right now, they're in our expert report.  So

10:51:14  13  perhaps if they took -- some of those documents were in the

10:51:17  14  expert report, relied upon in our expert report.  So if they

10:51:22  15  take the time to go back through that they'll see what we're

10:51:25  16  talking about.

10:51:33  17      I need to come back on a logistical matter, the court's

10:51:41  18  ruling on the Opto and Putian robots, but I want to first,

10:51:44  19  before I do that, because it's a logistical matter, I would

10:51:48  20  like to say something about our motion for sanctions.

10:51:56  21  Obviously I understand the court's ruling.  I understand that

10:52:01  22  it was a severe sanction, that it is a terminating sanction

10:52:10  23  that we requested.  But the conduct merited it.

10:52:14  24      We also said, as an alternative, that they should be

10:52:16  25  prevented from using the documents that come off that

10:52:22  1    computer or come off that FTK, that forensic tool kit image,

10:52:28  2    which is a partial image.

10:52:31  3         And the reason we think this is so significant, the reason

10:52:35  4    we think this is so important and the reason we think this

10:52:38  5    conduct is so egregious is because they sat on that

10:52:44  6    information until -- and let me flip a note here if I can to

10:52:50  7    my chronology -- the first time they ever disclosed the

10:52:55  8    existence of that FTK image was April 18, 2016.

10:53:04  9         And then when we tried thereafter to try to talk to them

10:53:09  10   about what's that mean, even, the answer we got was:  Your

10:53:17  11   inspection will answer most of your questions.  That's when

10:53:21  12   we went and did the inspection on May the 4th.  That's when

10:53:25  13   we stopped it because my colleague, Mr. Flynn-O'Brien, as he

10:53:33  14   was going through the computer and the FTK image, saw that

10:53:38  15   there were documents that were marked privileged.  So he

10:53:43  16   stopped.  Though he saw -- before he saw those privileged

10:53:45  17   documents -- documents that are clearly relevant to this

10:53:48  18   case.  They produced some of them, yes, since then.  Since

10:53:53  19   then.  They produced them on May the 13th, after we filed

10:53:56  20   this motion for sanctions.

10:53:59  21        Discovery closed on May the 18th, having been extended

10:54:03  22   from May the 4th.  And on May the 23rd, that is the first

10:54:08  23   time we were ever told, ever knew, ever had any way of

10:54:14  24   knowing that the full image had been destroyed and that only

10:54:20  25   a partial image remained.

10:54:22  1      The egregious conduct here is the fact that they sat on

10:54:27  2  this information for more than three years.  That's why we

10:54:32  3  asked for such severe sanctions, understanding that it is

10:54:36  4  difficult to convince a court for terminating sanctions.  But

10:54:41  5  at a minimum they should be penalized for their conduct.

10:54:46  6  They cannot be rewarded for sitting on information that they

10:54:51  7  had in their possession, and that was directly relevant to

10:54:55  8  this case, since June of 2013.  We come upon it in April and

10:55:02  9  then in May, still even a month later, before they tell us

10:55:06  10  that it's just a partial image.

10:55:09  11      Now they're in a position to use whatever they want to use

10:55:14  12  off of that image or off of that computer.  And we, quite

10:55:19  13  frankly, can't.  We have documents that haven't been

10:55:23  14  analyzed.  And we're in a position now where we don't know

10:55:28  15  what was destroyed.  None of us on this call can say what was

10:55:33  16  destroyed.  And why is it important?  Because it had

10:55:37  17  contemporaneous documentation of the alleged misuse of TMO's

10:55:43  18  robot.  It had things like Internet and file-access activity,

10:55:49  19  user profiles, applications.

10:55:52  20      All of that is important for a couple of reasons at least.

10:55:56  21  One, and I think Your Honor alluded to it, whether or not the

10:56:00  22  other OEMs were acting consistently or whether we, more

10:56:05  23  importantly, were acting consistently with them.  Course of

10:56:09  24  conduct.  Pattern.  Practice.

10:56:11  25      The second reason is it goes to the issue as to whether

10:56:14  1    these things, whatever they can identify as a trade secret,

10:56:19  2    are actually trade secrets, because one of the issues in the

10:56:26  3    case is to what extent, to what measures did they go to

10:56:29  4    protect their so-called trade secrets?  There likely is

10:56:34  5    information with respect to the other OEMs, even with respect

10:56:38  6    to us in this, the materials that were destroyed and lost,

10:56:44  7    with respect to those issues.

10:56:48  8         And I understand it looks like if Mr. Corey Riel, who they

10:56:52  9    identified in a May 23, 2016 filing, if this is all a

10:57:00  10   mistake, so be it, it was a mistake.  But nonetheless, it was

10:57:03  11   a mistake they sat on for over three years.  That's why we

10:57:09  12   think, at a minimum, at a very minimum they should be

10:57:12  13   penalized and should not be allowed to use the information

10:57:16  14   off the image or off that computer.

10:57:18  15        I think that's all I have at this point, Your Honor.

10:57:27  16             THE COURT:  Okay.

10:57:30  17             MR. HIBEY:  Except I have a logistical issue at the

10:57:33  18   very end.

10:57:33  19             THE COURT:  Let's talk about it now, then.

10:57:35  20             MR. HIBEY:  It has to do, then, with the inspection

10:57:42  21   of the Opto and Putian robots.  This means everybody is going

10:57:47  22   back to China for a third time to do this at this point.

10:57:53  23   This isn't something that can be done overnight.  And if I

10:57:56  24   understood Your Honor's ruling, we have to somehow -- or not

10:58:02  25   somehow -- but we have to provide them with source codes and

10:58:06  1   test cases with respect to those two robots.  If that's going

10:58:10  2   to happen we're going to end up adjusting the dates for the

10:58:13  3   technical expert reports.  I assume there will be

10:58:17  4   supplements.  There are depositions scheduled that are going

10:58:20  5   to have to be put off.  Summary judgment is supposed to be

10:58:24  6   filed on August 2nd, and we have been preparing to do that.

10:58:27  7   But now if there's going to be more information and more

10:58:30  8   discovery, I guess what I'm saying is it doesn't make sense.

10:58:36  9   Otherwise Your Honor is going to be inundated with motions

10:58:39  10  and then supplemental motions, et cetera, et cetera.  This is

10:58:44  11  going to delay matters.

10:58:48  12          THE COURT:  Well, counsel, I fully expect that

10:58:51  13  there's going to be -- just one second -- I fully expect,

10:58:59  14  counsel, that the nature of the court's rulings were going to

10:59:04  15  necessitate some ongoing discussions with counsel.  And I

10:59:07  16  also fully expected that this was going to require, more

10:59:11  17  probably than not, an additional trip for the parties.  But,

10:59:15  18  again, this isn't at the court's doing, it's the manner in

10:59:19  19  which this case has been litigated.  The parties certainly

10:59:22  20  have the opportunity to, again, with emphasis, meet and

10:59:26  21  confer to deal with some of the logistical problems the

10:59:30  22  parties have identified.

10:59:31  23      We've got a trial date, and the trial date is coming up

10:59:34  24  quite quick and quite fast.  There's a tremendous amount of

10:59:37  25  work that needs to be done.  And when you use the word

10:59:40  1   "inundated," counsel, that's a foul word, as far as the court

10:59:44  2   is concerned, because I hope the parties don't think that

10:59:46  3   yours is the only case that this court has to address.  I've

10:59:49  4   got a heavy docket.  I've got enormous numbers of cases that

10:59:54  5   we have to deal with.  And when the parties file compound and

10:59:58  6   multiple motions with supplemental briefing and surreply,

11:00:03  7   that doesn't help your case.

11:00:04  8       If you've got an argument to make, you make it.  Don't try

11:00:07  9   and hold off an argument until the very end in a surreply or

11:00:12 10   in a reply and then motivate the opposition to file an

11:00:15 11   additional brief.  That just compounds the work that the

11:00:18 12   court has to do.  That compounds how you have to litigate

11:00:21 13   your case and it doesn't do justice for either party.

11:00:27 14       So I'm not going to resolve your conflict, counsel, as far

11:00:30 15   as logistical problems.  But I will direct that you do meet

11:00:34 16   and confer with opposing counsel and see if you can find a

11:00:37 17   remedy that addresses what actually needs to be filed with

11:00:40 18   this court and how you can streamline the litigation as

11:00:43 19   opposed to protracting the litigation.

11:00:45 20       So inundating is not a favored word with this court and

11:00:50 21   certainly not with me.

11:00:52 22          MR. HIBEY:  Your Honor, this is Jim Hibey, I did not

11:00:54 23   mean to suggest that we, or the other side, wants to file

11:00:59 24   paper on paper.  And I didn't mean to offend the court if I

11:01:04 25   did.  So I apologize.  The only point I was trying to make is

11:01:08  1   we've got a date coming up for summary judgment.  And what

11:01:11  2   the court has ordered is going to affect those motions.  And

11:01:15  3   so we're going to have to -- we will meet and confer, but I

11:01:19  4   don't think it unreasonable to preview for the court the fact

11:01:25  5   that August 2nd may not be a date that we want to keep for

11:01:34  6   summary judgment, because of the fact there's going to be

11:01:36  7   more expert reports, and we should only be taking one

11:01:39  8   deposition as opposed to multiple depositions on these

11:01:42  9   issues, with respect to the expert.  And so all that is just

11:01:45  10  going to postpone things.  That's all I was trying to

11:01:48  11  suggest.

11:01:49  12       THE COURT:  Well, counsel, the parties know this case

11:01:52  13  far better than the court.  And the parties can figure out

11:01:54  14  different ways of streamlining the efficiencies, so if you

11:01:58  15  want this matter truly resolved or if you can resolve it with

11:02:02  16  or without the court, that's up to you.  But, again, that's

11:02:07  17  an effort that can be engaged in with both parties as opposed

11:02:10  18  to seeking court intervention on every single line item that

11:02:14  19  you have between now and the trial date.

11:02:16  20       MR. HIBEY:  I understand.

11:02:17  21       THE COURT:  All right.  Anything further from the

11:02:18  22  defense?

11:02:19  23       MR. HIBEY:  No, Your Honor.  I think that's it.

11:02:21  24       THE COURT:  Anything further from the parties?  From

11:02:24  25  the plaintiff?

11:02:26   1        MR. HUESTON:  No, Your Honor.

11:02:27   2        THE COURT:  Okay.  Thank you, counsel.

11:02:29   3    I hope this is more of an efficient way of addressing the

11:02:33   4  motions.  And, again, we'll get out to you a very brief order

11:02:36   5  that just summarizes the court's final rulings and

11:02:38   6  determinations.  Have a good day.  We'll be in recess.  Thank

11:02:41   7  you.

           8              (The proceedings were adjourned.)

           9

          10              C E R T I F I C A T E

          11

          12

          13    I certify that the foregoing is a correct transcript from

          14  the record of proceedings in the above-entitled matter.

          15

          16

          17

          18  */s/ Debbie Zurn*

          19  DEBBIE ZURN
              COURT REPORTER
          20

          21

          22

          23

          24

          25