# EXHIBIT A

# EXHIBIT 6

*Execution Copy*



# HANDSET AND ACCESSORY SUPPLY AGREEMENT

THIS HANDSET AND ACCESSORY SUPPLY AGREEMENT (this "**Agreement**") is made as of the 2nd day of June, 2010 (the "**Effective Date**"), by and between **T-Mobile USA, Inc.**, a Delaware corporation ("**T-Mobile**") and Futurewei Technologies, Inc. d/b/a Huawei Technologies (USA), a Texas corporation ("**Seller**"). Seller and T-Mobile each may be referred to as a "**Party**", and Seller and T-Mobile collectively may be referred to as the "**Parties**"). Capitalized terms used in this Agreement have the meanings defined for them in the Agreement. **Attachment N** lists the defined terms by Section number. The Agreement includes the following attachments, addenda, and exhibits to this Agreement which are incorporated in and are a part of this Agreement:

**Attachment A – Sample Equipment Addendum**
**Attachment B – Seller End User Limited Warranty**
**Attachment C – FAI Guidelines**
**Attachment D – Customer Care, Training and Support Requirements**
**Attachment E – Packaging**
**Attachment F – Promotional Understanding Form**
**Attachment G – Cosmetic Standards**
**Attachment H – DT Marks and T-Mobile Marks**
**Attachment I – Seller Marks**
**Attachment J – Compliance Fee Schedule**
**Attachment K – Technical Acceptance Criteria and Requirements**
**Attachment L – Sample Work Order**
**Attachment M – Quality Assurance MSA Quality Requirements**
**Attachment N – Software and Firmware Updates**
**Attachment O - Definitions**

## ARTICLE 1
## PURCHASE AND SALE OF EQUIPMENT

1.1    <u>The Equipment.</u>  Seller hereby agrees to make available for purchase by T-Mobile and its Affiliates (as defined in Section 9.13 below) the handsets ("**Handsets**") and data devices ("**Devices**") and associated equipment and accessories packaged with the Handsets or Devices ("**Accessories**"), firmware and included software(whether licensed or sold ("**Software**") (Handsets, Devices, Accessories and Software, collectively, the "**Equipment**"), on the terms set forth in the applicable Equipment Addendum, and to provide Development Services relating to Deliverables and Equipment as set forth in ARTICLE 7. "**Equipment Addendum**" means an addendum substantially in the form attached to this Agreement as **Attachment A**. Each of the Equipment Addenda will be signed by both Parties (except for Addendum 1) and attached to this Agreement as an attachment.  The Parties agree that Equipment Addenda may be added from time to time to include such future models of Seller's GSM, GPRS, UMTS, LTE, WiFi and/or UMA compatible Equipment that Seller offers to T-Mobile and which T-Mobile elects to purchase from Seller.  This is not an exclusive Agreement for Seller to provide Equipment or Development Services to T-Mobile and T-Mobile shall have the right to purchase identical or similar handsets and other equipment, accessories, software and services from other vendors.  The obligations herein will apply to Seller regardless of whether the sale of Equipment is made by Seller directly, or by an authorized agent of Seller, or by a packager/aggregator of Seller. T-Mobile and its Affiliates, agents, re-sellers and dealers shall only have the right to resell the Equipment within the United States of America and its territories and possessions (the "**Territory**").

1.2     Purchase Price.   The purchase prices (the "**Purchase Price**") for each model of the Equipment (including Development Services, if any) shall be as set forth in an Equipment Addendum, subject to adjustment as provided in this Agreement.

      1.2.1     The Purchase Price is a maximum and is not subject to escalation.

      1.2.2     The Purchase Price includes any and all charges for packing, packaging, boxing, crating and cartage of the Equipment to the Delivery Location (as defined in Section 1.6.2 below). T-Mobile shall not be responsible for and shall not be obligated to pay any taxes, fees, charges or surcharges added to the Purchase Price of the Equipment other than sales taxes or sales-type taxes where the liability for such taxes is measured by the Purchase Price of such Equipment and where the obligation for the tax is imposed on the purchaser. Seller shall timely remit taxes collected from T-Mobile as required by the governmental authorities imposing such taxes. Seller agrees that it shall permanently waive any taxes not invoiced within 90-days of delivery of Equipment to T-Mobile. To the extent applicable, T-Mobile shall submit to Seller certificate(s) of resale in those jurisdictions in which T-Mobile resells or will resell Equipment ten (10) calendar days prior to the shipment of Equipment. Upon receipt of such documentation, Seller shall exempt from such taxes for the Equipment purchased from Seller. Where T-Mobile believes it is exempt from taxes for any reason other than on the basis of a resale exemption, T-Mobile will provide Seller with appropriate documentation evidencing such exemption and Seller shall evaluate and exempt T-Mobile from payment of such taxes if the tax exemption is applicable.   Seller and T-Mobile agree that they shall mutually cooperate to the extent commercially reasonable in resolving any governmental audit inquiries or refund applications involving taxes imposed on the sale of Equipment.

      1.2.3     The terms of payment shall be net sixty (60) days from date of T-Mobile's receipt of Seller's invoice. Seller agrees to provide a discount equal to two percent (2%) of the total Purchase Price set forth in each invoice where such invoice is paid within fifteen (15) business days from proof of delivery. Seller shall invoice T-Mobile at the time of delivery and transmit the invoice to T-Mobile electronically, via U.S. mail, or other method of delivery as agreed upon by the Parties.

      1.2.4     During the Term (as defined in Section 5.1) of the Agreement, Seller warrants that the base price (pre-discounts and incentives) applicable to each model of Equipment (with substantially the same configuration) shall be no greater than the best price at which Seller makes such items (including, without limitation, equivalent Equipment using a technology other than GSM, GPRS, UMTS, LTE, WiFi and/or UMA) available to other customers at the time of purchase in the same Territory, whether by joint buying groups or otherwise, who purchase the same or lesser volumes of such Equipment upon substantially similar commercial terms and conditions ("**MFN Price**"). The prices set forth in an Equipment Addendum shall be adjusted to the MFN Price by prompt notice from Seller to T-Mobile such that Seller shall at all times be in compliance with the foregoing warranty. Any lag in such adjustment shall result in Seller issuing T-Mobile a check or wire transferring funds within forty-five (45) days of the adjustment for all purchases made at the higher price (for the difference between the Purchase Price and the MFN Price) during such lag. T-Mobile may from time to time request and obtain from Seller written confirmation that it is in compliance with this Section 1.2.4.

      1.2.5     If and when Seller shall reduce the price of a particular model of Equipment, then (a) the prices set forth in an Equipment Addendum shall be adjusted by prompt written notice from Seller to T-Mobile, and (b) T-Mobile shall be entitled to the benefit of such price reduction on all T-Mobile-owned Equipment of that model (i) purchased by T-Mobile during the sixty (60) day period immediately preceding the effective date of the price reduction, and (ii) remaining in T-Mobile's inventory (which for purposes of this Agreement shall include, without limitation, Equipment in warehouses and retail locations, in transit to T-Mobile, or in T-Mobile dealers' or partners' locations) on

the effective date of the price reduction. For the purpose of the foregoing sentence, the date of purchase shall be the date of Seller's invoice for the Equipment.

1.2.6    In case of any price adjustment required by Sections 1.2.4 or 1.2.5, T-Mobile shall receive the benefit of such price reduction by Seller issuing T-Mobile a check or wire transferring funds for the appropriate amount. Notwithstanding the foregoing, if (a) upon termination of this Agreement, the aggregate outstanding amount of any credit memo that may have been issued by Seller to T-Mobile exceeds the aggregate amount due or to become due under this Agreement, or (b) at the time of such price adjustment during the Term, T-Mobile has not issued a Purchase Order for ninety (90) days and has no outstanding balance due to Seller, then Seller will deliver to T-Mobile a check or wire transfer in the amount of the excess within forty-five (45) days of issuance of the credit memo, if any. Any credit memo issued pursuant to this Section 1.2.6 shall be issued by Seller within sixty (60) days after receipt of an invoice by T-Mobile for amounts owed along with supporting documentation from T-Mobile evidencing T-Mobile's inventory levels upon which the credit amount is detailed.

1.2.7    Provided the credit worthiness of each such particular Affiliate is approved by Seller, Seller shall afford T-Mobile's Affiliates  (as defined in Section 9.13)  the right to receive the same pricing as per this Agreement for virtually identical product provided that Seller and such entities enter into a mutually agreeable supply contract (including appropriate credit terms) wherein the Affiliate purchases Equipment based on its own credit, or T-Mobile agrees in writing to allow the Affiliate to purchase Equipment under this Agreement and T-Mobile agrees in writing to guarantee payment for its purchases from Seller (in which case, for purposes of such Affiliate transaction, all references to T-Mobile herein shall be deemed to include the Affiliate).  T-Mobile shall not be obligated to allow any Affiliate to make purchases under this Agreement.  Absent an express agreement in writing, T-Mobile is not obligated to guarantee payment for an Affiliate's purchase of Equipment from Seller.  Alternatively, T-Mobile may purchase Equipment under this Agreement and resell such Equipment to its Affiliates.

1.3    MDF Allowance/Displays.

1.3.1    Except as otherwise set forth in the applicable Equipment Addendum, T-Mobile shall be entitled to a two percent (2%) market development fund ("**MDF**") allowance on all Equipment purchases (measured against the MFN Prices as defined in Section 1.2.4), less any returned Equipment. T-Mobile in its sole discretion may elect not to receive MDF for a particular model of Equipment, and in such event Seller shall decrease pricing for such Equipment by 2% to be reflected in the applicable Equipment Addendum.  Purchase Orders and invoices shall reflect prices prior to MDF credits, if any to be applied, which may be reflected at the time they are accrued. MDF credits accrue when title to the Equipment transfers to T-Mobile.

1.3.1.1 Reporting. By the fifth (5th) business day following each calendar quarter of the Term, Seller will provide to T-Mobile a report detailing the amount accrued during such quarter as provided above.  Amounts accrued in any calendar year must be used by T-Mobile during such calendar year, provided T-Mobile shall in no event have less the six (6) months to utilize accrued MDF from time of accrual. MDF not used in accordance with the foregoing shall expire and no longer be available to T-Mobile.

1.3.1.2  Use of MDF by T-Mobile.  MDF may be used for marketing programs which positively promote Seller's brand or Equipment in conjunction with T-Mobile's brand or services.   The Parties will mutually agree how the MDF will be allocated and execute a Promotional Understanding Form ("PUF") from time to time substantially in the form set forth in **Attachment F** (each, an "**MDF Program**"). T-Mobile will maintain records during the Term of how all accrued MDF amounts were used by it to market and sell Equipment. Each month Seller

will send T-Mobile (i) a true-up matrix showing where MDF money has been spent and allocated; and (ii) a PUF indicating the programs and activities to be conducted and the corresponding MDF money to be dispersed.

1.3.1.3 Payment.   At such times throughout the Term as T-Mobile wishes to be reimbursed for expenses incurred in connection with MDF Programs (subject to 1.3.1.2), T-Mobile shall invoice Seller therefore, which invoice shall include all supporting documentation reasonably required by Seller and described in the applicable PUF to evidence performance under the MDF Program, including, without limitation and as applicable, copies of all advertising and marketing materials, copies of invoices, etc. (collectively, "**MDF Proof of Performance**"). Payment by Seller shall be made by check or wire transfer .

1.3.1.4 Cooperation, Approvals and Deliverables.   All advertising, marketing and promotional activities undertaken by T-Mobile pursuant to an MDF Program shall be developed in cooperation with Seller and described in the applicable PUF. Furthermore, T-Mobile shall provide Seller with sales data relating to sales of Equipment as reasonably requested by Seller to determine the effectiveness of the applicable MDF Program.

1.3.2   Launch Support Materials.   To enable T-Mobile to promote and sell the Equipment effectively, Seller will provide, free of charge, (a) reasonable quantities of literature to support sales of Seller's products (which shall include product data sheets) for each model of Equipment for all T-Mobile direct and indirect retail outlet, (b) two (2) non-working display units (dummies) of each model of Equipment per color variant for all T-Mobile direct and indirect retail outlets, (c) one (1) fully functioning demonstration unit of each model of Equipment for each T-Mobile direct retail outlet, and (d) two (2) fully functioning demonstration units of each model of Equipment for each T-Mobile Call Center and technical center. In each case of literature, non-working display units and fully functioning demonstration units, the number of such units may be more or less depending on commercial needs and upon mutual agreement of the Parties.

1.4   Forecasting.   T-Mobile shall provide Seller on at least a monthly basis, a non-binding rolling forecast of T-Mobile's projected Equipment purchases for at least the three-month period commencing on the following month (each, a "**Forecast**"), in a form to be reasonably agreed upon by Parties.   Such Forecast shall indicate, on a month-by-month basis, the quantities of each type of Equipment T-Mobile expects to purchase and the desired date by which the Equipment is to be delivered to the Delivery Location (as defined below).

1.5   Purchase Orders.

1.5.1   T-Mobile may periodically submit to Seller orders for the purchase of the Equipment (each a "**Purchase Order**"). Seller agrees to sell, and T-Mobile agrees to purchase, all Equipment specified in Purchase Orders tendered by T-Mobile subject to the terms and conditions of this Agreement, including, without limitation, Section 1.5.8.   All Purchase Orders are to be submitted to Seller no later than thirty (30) days prior to the expected date of shipment.   The Parties shall work collaboratively to ensure full pallets of Equipment for each Purchase Order; provided, however, Purchase Orders for demonstration units, dummy units, and any other special order or limited edition orders may be excluded.

1.5.2   Purchase Orders shall be governed by the terms and conditions of this Agreement.   Any additional or preprinted terms or conditions on the Purchase Order, invoice, or shipping document shall be null, void, and of no effect.

1.5.3   Each Purchase Order shall specify:

    (a)    the model and price of each type of Equipment to be delivered;

    (b)    the quantity of Equipment to be delivered;

    (c)    T-Mobile's required date of delivery of the Equipment (the "**Specified Delivery Date**");

    (d)    the "**Delivery Location**" (as defined in Section 1.6.2 below);

    (e)    the stock keeping unit ("**SKU**") and any other Equipment packaging or labeling requirements;

    (f)    Payment terms consistent with this Agreement; and

    (g)    Electronic signature of authorized T-Mobile or T-Mobile Affiliate representative, if delivered electronically.

1.5.4   T-Mobile may electronically transmit Purchase Orders to Seller under this Agreement, provided that the Parties have made the appropriate administrative and networking arrangements.

1.5.5   Seller and T-Mobile shall implement a process whereby the Parties enter into joint weekly collaborative planning, forecasting and replenishment calls/meetings ("**CPFR**"). The goal of this CPFR shall be to collaboratively align Equipment availability with demand and to establish mutually agreed parameters for potential supply flexibility by model of Equipment.

1.5.6   Seller shall provide T-Mobile with electronic notice of receipt of Purchase Orders within one (1) business day after Seller's receipt thereof if T-Mobile has submitted the same through an Electronic Data Interchange system compatible with that of Seller's ("**EDI**") or written notice (to include facsimile) of receipt of Purchase Orders within two (2) business days after Seller's receipt thereof if no EDI system is established pursuant to the foregoing. Seller is committed to work with T-Mobile to incorporate EDI 856 (Electronic Data Interchange) as a standard requirement to transfer SIM unlock data. Seller and T-Mobile shall jointly commit resources to move toward deploying EDI and maximizing the use of EDI to include ordering, invoicing, and advance shipping notices ("**ASN**") over a timeframe to be mutually agreed to by both Parties. The Parties agree to use the most current standards, protocols, and interface methods where practical. Each Purchase Order shall specifically identify the individual (with address and phone number) responsible for receiving such notice. Within three (3) business days of Seller's receipt of a Purchase Order, Seller shall notify T-Mobile in writing of its acceptance or rejection of T-Mobile's Purchase Order. Seller must accept T-Mobile's Purchase Order provided such Purchase Order is consistent with the terms of this Agreement, including, without limitation, the quantity of each type of Equipment does not exceed that covered by the applicable Forecast by more than twenty percent (20%) ("**Order Cap**"); provided, however, in the event Seller is not able to meet the Specified Delivery Date in a Purchase Order, Seller has three (3) business days to propose an alternative delivery date to T-Mobile. If T-Mobile fails to accept or reject an alternate delivery date within three (3) business days, then the Purchase Order with respect to the quantities to be delivered on the alternate delivery date shall be deemed to have been rejected. If T-Mobile accepts the alternative delivery date, Seller will be held to the delivery metrics for the Specified Delivery Date in the original Purchase Order. With respect to Purchase Orders inconsistent with the terms of this Agreement (other than those exceeding the Order Cap), Seller may, in each instance,

*Execution Copy*

(a) accept such Purchase Order, (b) reject such Purchase Order, or (c) propose alternative terms, which T-Mobile may accept or reject within three (3) business days of receipt of such notice. If Seller fails to provide such notice of acceptance, rejection, or proposed modification within such three (3) business day period, then the Purchase Order shall be deemed to have been accepted as written; if T-Mobile fails to accept or reject alternate terms within its three (3) business day period, then the Purchase Order shall be deemed to have been rejected. With respect to Purchase Orders for quantities of Equipment exceeding the Order Cap, Seller shall accept that portion of the Purchase Order up to and including the Order Cap and may, in each instance, (a) accept the remainder of the Purchase Order, (b) reject the remainder of such Purchase Order or (c) propose alternative quantities in excess of the Order Cap and estimated delivery dates therefore, which T-Mobile may accept or reject within three (3) business days of receipt of such notice. If Seller fails to provide such notice of acceptance, rejection, or proposed modification within such three (3) business day period, then the quantity of the Purchase Order exceeding the Order Cap shall be deemed to have been rejected as written; if T-Mobile fails to accept or reject an alternate delivery date within its three (3) business day period, then the Purchase Order with respect to the quantities to be delivered on the alternate delivery date shall be deemed to have been rejected. Seller will provide T-Mobile with pre-shipment calendar day prior to the date upon which the Equipment must be shipped in order for timely arrival on the Specified Delivery Date (the "**Shipment Date**"). Such notices shall at a minimum contain the Purchase Order number related to the shipment, the serial numbers of Equipment being shipped, as applicable, a listing of the Equipment to be shipped (including, without limitation, the Purchase Order number being filled, SKU, description, quantity shipped and quantities backordered), the name of the carrier and the carrier's tracking number, estimated delivery date, and Universal Product Codes ("**UPC**") related to the shipment. In addition, and without limiting T-Mobile's rights and remedies, Seller will promptly notify T-Mobile if it becomes aware of any factor, occurrence, or event that may result in a delay in shipment or delivery of the Equipment to T-Mobile.

1.5.7    Seller shall provide T-Mobile with all handset and data device SIM unlock data via electronic communications or computer disks within five (5) days of any handset or data device deliveries. The data format shall follow the GSM NA reference document NAPT 14 (or successor thereto). Upon prior written approval by T-Mobile, Seller may implement an alternate means of providing the SIM unlock data; provided, however, that if such alternate means requires additional costs or equipment, this shall be provided to T-Mobile by Seller free of charge.

1.5.8    T-Mobile shall have no obligation to purchase Equipment from Seller and Seller shall have no obligation to sell Equipment to T-Mobile, except as set forth in a properly accepted, written Purchase Order.

1.6      As set forth in this Section, T-Mobile shall have the right to make changes to movement of a Specified Delivery Date or Delivery Location to any Purchase Order delivered hereunder including, without limitation, cancellation or movement of a Specified Delivery Date without penalty or other additional cost or liability. For changes to extend the Specified Delivery Date, T-Mobile may extend delivery of quantities for a period of up to sixty (60) days provided that T-Mobile delivers notice of any such modification, in writing, at least seven (7) business days prior to the Specified Delivery Date. For cancellations, T-Mobile may cancel all or any portion of a Purchase Order provided that T-Mobile delivers notice of any such cancellation, in writing, at least ten (10) business days prior to the Specified Delivery Date. In the event of cancellation that is more than ten (10) days and less than ninety (90) days prior to the Shipment Date, T-Mobile will reimburse Seller for any T-Mobile branded components and materials or unique components or materials exclusively designed for T-Mobile for that Purchase Order; provided that Seller and T-Mobile have incorporated into the applicable Equipment Addendum the specific unique components and materials. Seller must first use commercially reasonable efforts to mitigate such costs (e.g. by returning components to the manufacturer, redeploying components to other products or future orders and removing branding where necessary, etc.). Any Purchase Order may be

cancelled ninety (90) days prior to the Shipment Date without repercussions. Changes requiring any increases in requested volumes shall require a separate, new Purchase Order issued pursuant to the requirements set forth above and will require separate confirmation of Seller. Such changes shall only be made in writing (the "**Modification Notice**") and delivered in the same manner as a Purchase Order hereunder.

1.6.1   <u>Shipment</u>.   Seller shall deliver all Equipment to the Delivery Location provided in the Purchase Order, provided the Delivery Location shall be limited to T-Mobile's distribution centers within the Territory and in no event shall Seller be required to ship to retailers unless mutually agreed to by the Parties.   Freight and transportation shall be at the sole discretion and responsibility of Seller. In addition to any other rights and remedies available to T-Mobile hereunder, T-Mobile will have the right to refuse any Equipment delivered more than two (2) days in advance of, or more than five (5) days after, the Specified Delivery Date. Within two (2) weeks of the attempted delivery, Parties will discuss and schedule a new mutually acceptable delivery date. T-Mobile shall inspect and either accept or reject all Equipment within two (2) business days of receipt at the Delivery Location.   The failure of T-Mobile to reject such goods within the aforementioned time period shall be deemed acceptance.  For avoidance of doubt, the acceptance period described in this Section 1.6.1 is not intended to cover the acceptance period related to Trial Devices or FAI Devices which are addressed in Sections 2.1.1 and 2.2.1, respectively.

1.6.2   All shipments will be D.D.P. (as defined by ICC 2000 Incoterms) to the ship-to location(s) designated by T-Mobile in its Purchase Order.  The designated ship-to location(s) shall be referred to as the "**Delivery Location(s).**"  In no event shall Seller be required to ship to retailers unless mutually agreed to by the Parties. All packages comprising each shipment must be accompanied by a packing slip identifying all items included with the shipment.

1.6.3   Time is of the essence of this Agreement, and, absent an event of Force Majeure, if delivery is not complete (Purchase Order requirements not met) by the Specified Delivery Date, except where such delay is attributable solely to T-Mobile's actions or those of T-Mobile's Affiliates, then Seller shall be liable for the following late delivery damages:  an amount equal to one percent (1%) of the invoice amount of the portion of such delayed shipment if the delay is between six (6) days and ten (10) days; one and one-half percent (1.5%) of the invoice amount if the delay is between eleven (11) days and two (2) weeks; and two percent (2%) of the invoice amount if the delay is between fifteen (15) days and three (3) weeks; three percent (3%) of the invoice amount if the delay is between twenty-two (22) days and four (4) weeks; and four percent (4%) of the invoice amount if the delay is more than four (4) weeks.  If a shipment is more than four (4) weeks late, T-Mobile may cancel the corresponding Purchase Order and any other then outstanding Purchase Orders with no liability and shall be entitled to reduce correspondingly any outstanding volume purchase requirement, if any, for such goods.  Further, upon T-Mobile's request, Seller shall overnight ship all late shipments at Seller's expense.

1.6.4   Risk of loss shall pass when delivery is complete to the Delivery Location. Seller warrants title to the Equipment to be good and clear and free from all liens, claims, security interests, and other encumbrances.

1.6.5   <u>Packaging</u>.  Seller shall package the Equipment in accordance with the terms set forth in this Section and **Attachment E** and deliver all Equipment to the Delivery Location provided in the Purchase Order in accordance with the supply and delivery metrics provided by T-Mobile from time to time. Seller will properly package the Equipment for protection against damage or deterioration that may occur during shipment, handling or storage, and will insure all Equipment during shipment in a commercially reasonable fashion. Seller will ensure that all packages comprising each shipment include

a packing slip identifying all items included with the shipment and an electronic file that contains all electronic serial numbers ("ESNs") within each shipment, as specified in **Attachment E**. Seller will mark the Equipment and packaging with the country of origin as required by applicable law. Seller will provide a certificate of origin and all other documents required for customs clearance and tax purposes.

1.6.6 Compliance. Seller shall comply with shipment, packaging and notification requirements including but not limited to packing slips, invoices and Modification Notices as set forth in this Agreement. T-Mobile shall inspect each shipment and provide documentation of any non-conformity (including but not limited to pallets, master carton, shrink wrap, strap, etc.) for each shipment in accordance with this Agreement at the time each shipment arrives at T-Mobile's Delivery Location, and Seller shall not be subject to any non-conformity penalty of Attachment J other than those non-conformities specified in the documentation (including but not limited to proof of delivery. Seller may incur penalty or other additional costs or liability as set forth in and attached to this Agreement as Attachment J in T-Mobile's sole discretion, subject to the notice requirements herein. T-Mobile will notify Seller of issues related to Seller's compliance of this Section 1.6.6 and provide the required EDI files to enable Seller aligned with T-Mobile's EDI system. Notwithstanding anything to the contrary in this Section 1.6.6, Seller will not incur any penalty or other additional costs or liability until Seller is set up with EDI (which will be no later than December 31 , 2010) as required in Section 1.5.6.

1.6.7 Quality Requirements. Seller shall comply with the quality requirements attached as **Attachment M** to this Agreement.

1.6.8 End of Life Equipment.

(a) T-Mobile will provide Seller with written notice (which may be given via e-mail) of its decision to "end of life" a particular Equipment model at least ninety (90) days prior to the designated end of life date. The period between the date of such notice and the designated end of life date will be deemed the **"End of Life Period"**. As part of such notice T-Mobile will identify the maximum number of units for which it intends to place Purchase Orders during the End of Life Period. Any Purchase Order for amounts in excess of such maximum will be treated in the same manner as a Purchase Order that exceeds an Order Cap pursuant to Section 1.5.6. Notwithstanding Sections 1.6.1 and 1.6.3.

(b) In connection with an end of life notice to Seller, T-Mobile in its sole discretion may elect to provide Seller with a firm, written commitment to issue Purchase Orders for a specified quantity of Equipment during the End of Life Period (an **"End of Life Purchase Commitment"**) at least sixty (60) days prior to the requested delivery date. In the event T-Mobile issues an End of Life Purchase Commitment, notwithstanding Sections 1.6.1, 1.6.3, and 1.6.8 (a), if Seller fails during the End of Life Period to deliver any Equipment on the Specified Delivery Date, T-Mobile may cancel the associated Purchase Order with no liability and shall be entitled to reduce correspondingly the End of Life Purchase Commitment.

1.7 Stock-Balancing. T-Mobile shall be permitted to return for a credit of its Purchase Price, any Equipment in T-Mobile's inventory in the event that: (a) within ninety (90) days after receipt of such Equipment from Seller, Seller releases a Seller-initiated upgrade or alternative of the Equipment into the marketplace (but excluding any maintenance release or minor changes to components), or (b) Seller discontinues a model of Equipment without providing T-Mobile with one hundred twenty (120) days notice thereof. Additionally if Equipment has been in T-Mobile's inventory for at least ninety (90) days and fails to sell at a commercially reasonable price due to its lack of compatibility or competiveness in the marketplace in terms of price, features, functionality or operation and not due to the lack of promotion or planning of T-Mobile or T-Mobiles prioritization of equipment provided by a then-competitor of Seller,

within three (3) business days of a request from T-Mobile the Parties shall meet and mutually agree on the sell-through plan of such Equipment and Seller shall offer to T-Mobile commercially reasonable programs to support the sell-through of such Equipment, such programs to potentially include rebates, sales incentives, advertising, and/or promotional events.

1.8   **After-Sale Support.**

1.8.1   Service Provider.   For purposes of after-sale support, T-Mobile will, among others, use the services of a warranty service provider selected and approved by T-Mobile (which may be Seller, a Seller designated entity if so designated by Seller ("**Seller's Service Affiliate**"), T-Mobile, or a T-Mobile authorized entity) and authorized by Seller as provided below ("**Service Provider**"), such authorization by Seller to not be unreasonably withheld or delayed.  Any additional terms relating to after-sale support may be contained in a separate agreement between T-Mobile and the Service Provider.

1.8.2   Pre-Launch Requirements.   Prior to T-Mobile's initial commercial launch of each model of Equipment to its general customer base ("**Launch**"), Seller will ensure that Service Provider and/or T-Mobile, as applicable, is provided with each of the following:

(a) No later than thirty (30) days prior to Launch, Seller will provide Service Provider and/or T-Mobile, at such applicable party's expense, with all applicable test and reflashing tools for the Equipment along with any associated manuals and other documentation to support T-Mobile's inbound inspection process for returns.

(b) No later than forty-five (45) days prior to Launch, Seller or Seller's Service Affiliate  will: (i) accept all Purchase Orders received from T-Mobile or its ASC (as defined below) for reasonable quantities of cosmetic parts, provided that (a) the Delivery Date shall be no earlier than the date that is thirty (30) days from the applicable Equipment's Launch; and (b) Seller or Seller's Service Affiliate has received forecasting with respect to such Purchase Order; and (ii) schedule all repair training for cosmetic refurbishment.

(c) No later than thirty (30) days prior to Launch, Seller or Seller's Service Affiliate will: (i) complete all cosmetic refurbishment training; (ii) certify T-Mobile or any third party Service Providers selected by T-Mobile as an Authorized Service Center ("**ASC**"), subject to such Service Provider complying with all of Seller's Service Affiliate's reasonable requirements relating thereto; (iii) provide the ASC with live or video (at Seller's Service Affiliate's reasonable discretion) presentations (in reasonably requested format) and written repair instructions on disassembly/reassembly procedures for such Equipment; (iv) deliver repair parts ordered by the ASC (subject to the Purchase Order requirements described in Section 1.8.2(b) above); and (v) provide the ASC, at the ASC's expense, with fully developed multi-configuration flashing capability for all applicable handsets or data devices.

(d) Seller agrees to provide, at no cost to T-Mobile sufficient quantities of USB cables and the proprietary software needed to update software and firmware on the Equipment in all repair and distribution centers, subject to Seller's or Seller's Service Affiliate's standard user software license. Prior to Launch, Seller or Seller's Service Affiliate will: (i) verify that flashing capability is on-site and operational at all repair and distribution centers; and (ii) verify that all ordered repair parts have been delivered to Service Provider.  Except for software re-flashing required due to new T-Mobile requirements or T-Mobile changes after T-Mobile has concluded the technical acceptance process as described in Section 2.1, Seller will be responsible for the costs of all software re-flashing required prior to sale to customers.

(e)  Seller acknowledges that its compliance with the requirements of this Section 1.8.2 may be a condition to T-Mobile providing final engineering acceptance of the Equipment.

(f)  Seller agrees to provide, for purposes of supporting valid claims under Seller's express warranties to the customer, a minimum of 1,000 units or one percent (1%) of the Purchase Order quantity of standard in-box kit accessories (batteries, chargers, etc.), at no cost to T-Mobile with initial delivery no later than Launch and with mutually agreed replenishment based on weekly "run rate" as discussed on the CPFR calls.

### 1.8.3   Customer Returns.

(a)  Return Policy.  T-Mobile allows the customer to return Equipment to T-Mobile within a specified period and upon meeting certain conditions, as determined in T-Mobile's sole discretion.  As of the Effective Date, the customer may return the Equipment for a refund in most markets if returned within 14 days of purchase or activation (some markets, such as California, require a 30-day return policy). Such return policy may be different in different markets and is subject to change without notice to Seller.

(b)  New Returns.   With respect to Equipment returned to T-Mobile in accordance with Section 1.8.3(a) above that is new, in its original packaging with the original contents, and is undamaged and in good working condition, T-Mobile shall be entitled to: (i) return the Equipment to inventory and sell the item as new Equipment to the extent allowed by and otherwise in accordance with applicable law and so long as the condition of such Equipment complies with T-Mobile standards and Seller standards for the sale of new Equipment, or (ii) transfer the Equipment to T-Mobile's Equipment exchange program for use as replacement stock and receive a credit from Seller for the Purchase Price of the returned Equipment ("**Equipment Exchange Program**") as allowed in Sections 1.8.6 of this Agreement.

(c)  In-Warranty and Dead On Arrival Returns.  T-Mobile may return to Seller for full credit any Equipment (i) purchased from Seller deemed "Dead on Arrival" which is defined as a Equipment that is defective within thirty (30) days of purchase by an end user or with zero minute of talk time; or (ii) that experiences a functional failure during the customer return period referred to as an "Early Life Failure" (collectively referred herein as "**DOA**") and such functional failure is not due to end user abuse.  Subject to Section 3 below, with respect to Equipment returned to T-Mobile in accordance with Section 1.8.3(a) above that are "DOA" or otherwise defective and within the  Equipment Warranty (as defined below) ), Seller shall meet its obligation to repair or replace such Equipment or provide T-Mobile with new or reconditioned or refurbished Equipment, in T-Mobile's discretion (provided the shipping is aggregated on a weekly or monthly basis for ease of tracking, shipping, and receiving) or may, solely in the case of DOA returns, at T-Mobile's option, issue a credit for the then-current price of the returned Equipment.

(d)  Used, Non-Defective Returns.  With respect to Equipment returned to T-Mobile in accordance with Section 1.8.3(a) above that are used but not defective, T-Mobile shall be entitled to: (i) return the Equipment to inventory and sell the item as "used" or "like new" to the extent allowed by and otherwise in accordance with applicable law and so long as the condition of such Equipment complies with T-Mobile and Seller's standards for the sale of used/like new Devices, or, (ii) transfer the Equipment  to the Equipment Exchange Program for use as replacement stock and receive a credit from Seller for the Purchase Price of the returned Equipment as allowed in 1.8.6 of this Agreement.

(e) With respect to Equipment returned to T-Mobile in accordance with this Section 1.8.3 that is re-sold or re-activated by T-Mobile, all warranties for such Equipment shall be the balance of the twelve (12) month customer warranty period from sale or activation date to the first customer or three (3) months from the sale or activation of the subsequent customer, whichever is later.

1.8.4    T-Mobile agrees to comply with Seller's reasonable procedures related to the tracking of in-bound Equipment returned to T-Mobile according to the return policy(ies) stated in this Section 1.8.3 and Section 3 below.

1.8.5    Exchange Program/Warranty Support.  Seller shall minimize customer time without handsets in the event of exchanges/warranty repairs.  To do so, Seller shall fully support an Equipment Exchange Program to be administered by the Service Provider.  Such Seller support shall consist of the following:

(a) Seed Stock.

Seller shall, at its sole cost, supply an appropriate quantity of Equipment to Service Provider as seed stock sufficient to meet warranty replacement needs ("**Seed Stock**"). To do so Seller shall, for each Equipment model, supply Equipment to T-Mobile as initial Seed Stock in an amount equal to four percent (4%) of the quantity of the Equipment shipped, or to be shipped under this Agreement during the ninety (90) day period commencing on the date of the first shipment of Equipment. Shipment of Seed Stock is permitted in two or more shipments during the ninety (90) day period but an initial Seed Stock delivery shall occur prior to, but no later than, the time of the first delivery of the Equipment to T-Mobile, and T-Mobile shall be entitled to use Seed Stock to support exchange requirements for the Equipment. For the period covering day ninety-one (91) up to day one hundred eighty (180), Seller shall at its sole cost continue to supply Seed Stock in amounts such that the Seed Stock shipped to T-Mobile equals two and one half percent (2.5%) of the quantity of Equipment shipped. Immediately upon Launch, Seller and T-Mobile shall use a collaborative Seed Stock management process in order to ensure Seed Stock levels do not fall below a target of thirty (30) calendar days based upon T-Mobile's weekly reporting. If Seed Stock levels fall below thirty (30) calendar days, Seller and T-Mobile shall meet to discuss options to replenish the Seed Stock inventory including, but not limited to, increasing repair capacity and further Seed Stock injection. If Seed Stock levels fall below twenty (20) calendar days and Seed Stock is otherwise unavailable to support a particular exchange due to such low inventory, then T-Mobile may, with notice to Seller (including during the CPFR calls), use its new Equipment stock as Seed Stock and receive a credit from Seller for the Purchase Price of the new Equipment. In the event that Seed Stock levels exceed thirty-five (35) days, Seller will not be required to inject supplemental Seed Stock until such time that inventory falls below thirty (30) days as described above.  For clarification, Seller must maintain its repair obligations regardless of Seed Stock inventory level.  No later than six (6) months prior to the end of the warranty period, Seller and T-Mobile will meet monthly and mutually agree on a phase-out plan and proper targets for Seed Stock levels.

(i)    In addition to the foregoing, as part of the engineering and technical approval process for Equipment, which is described in and attached hereto to this Agreement as **Attachment K**, Seller will provide to T-Mobile prior to technical approval a predicted exchange rate, acceptable to T-Mobile, for each Equipment model to be purchased by T-Mobile. If the predicted exchange rate for a particular Equipment model is exceeded, Seller will provide an acceptable escalation process and provide T-Mobile two (2) executive escalation contacts.

(ii)     In addition, Seller shall provide, at no cost to T-Mobile, Seed Stock on a unit-for-unit basis for all Equipment removed from the Exchange Program by Seller.

(iii)    The Parties acknowledge and **agree** that legal title to all Seed Stock shall transfer to T-Mobile upon delivery.

(iv)    T-Mobile may purchase additional Seed Stock exceeding the levels required above for a ten percent (10%) discount below the Equipment Purchase Price of a full kit for Devices and for a twenty percent (20%) discount below the Equipment Purchase Price of a full kit for Handsets.

(b) <u>Cosmetic Refurbishment</u>.  Seller shall pay all costs associated with Seller's handling, testing, repairing and refurbishing of all in-warranty Equipment received by Service Provider within the applicable Warranty Period in accordance with functional, cosmetic, and electrical specifications attached as **Attachment G** which T-Mobile may amend from time to time upon notice to Seller. Upon the purchase and sale of each model or upgraded model of Equipment under this Agreement, Seller shall simultaneously authorize the Service Provider's facility to carry out cosmetic refurbishment services for such model or upgraded model of Equipment as long as an ASC meets Seller's standards for ASC certification.

(c) <u>No Trouble Found.</u>  Notwithstanding the above, in the event that the Actual NTF Rate for a model of Equipment exceeds thirty-five percent (35%), then T-Mobile shall agree to a 50/50 split of all labor and parts costs for refurbishing NTF units above such thirty-five percent (35%) threshold and shall reimburse Seller within thirty (30) days of receipt of an invoice from Seller reflecting such actual and documented costs. Seller shall deliver to T-Mobile each month thirty-five percent (35%) of the parts that Seller replaces in the course of refurbishing NTF units. "**Actual NTF Rate**" means, with respect to any model of Equipment, the number of in-warranty units returned to Seller with "No Trouble Found" after testing, compared to the total number of in-warranty units returned. "**No Trouble Found**" or "**NTF**" is defined as Equipment that upon reasonable testing and inspection by a qualified technician does not exhibit an electrical or functional problem, or other product failure, under the then-current criteria for NTF determination, although the customer experienced a perceived product failure. If Equipment which, upon first testing and inspection, is not identified to have a problem or failure, but which upon later testing and inspection is in fact identified to have such a problem or failure (e.g. upon recertification prior to resale, or upon a second customer return), then the Equipment will be no longer be identified as NTF, the Actual NTF Rate will be adjusted accordingly, and Seller's next monthly invoice will reflect a credit for any overpayment by T-Mobile with respect to Equipment previously identified as NTF.  Notwithstanding anything to the contrary in Seller's consumer warranty, NTF Equipment is considered "in-warranty" if returned within the applicable Warranty Period and is not otherwise excluded from the warranty (e.g., such as for customer abuse).

(d) <u>Freight</u>. Except as otherwise provided in this Section 1.8 or as may otherwise be agreed in an ASC agreement between the Parties, T-Mobile shall be responsible for the logistics process, and applicable costs of all inbound and outbound freight for units it receives from or sends to T-Mobile end users under the exchange program. Seller will provide a credit to T-Mobile of Four United States Dollars and Thirty United States Cents (US$4.30) for each warranty failure and will incur all actual outbound bulk freight charges from Seller's or ASC facility back to the T-Mobile consolidation point. Seller shall be responsible for all bulk freight costs for SCAR affected product.

(e) <u>Testing</u>.  Seller will be responsible for all costs associated with evaluating the functionality and condition of all Equipment received by Seller from T-Mobile's National Return Center ("**NRC**") or other T-Mobile entity or facility.  Any evaluation or testing costs incurred by T-Mobile at the NRC or other T-Mobile facility are the responsibility of T-Mobile.

(f) <u>Water Detection Indicators</u>.  Seller agrees to equip the Equipment with "Water Detection Indications" according to T-Mobile's requirements in order to more readily determine whether Equipment has been exposed to liquids with the result that any repair services on such Equipment should be categorized at out of warranty.

(g) <u>Three Strikes</u>.  In the event any Equipment is returned under the Equipment Exchange Program more than two (2) times, on the third return such Equipment or component shall be removed from circulation and shall not be provided to an end customer.  Seller shall provide Seed Stock on a unit-for-unit basis for all Equipment removed from circulation under this subsection. The Parties agree that this Section may be re-addressed at a later date.

(h) <u>Transfer of Support</u>.  Upon sixty (60) days' prior notice, T-Mobile may elect not to include a particular Equipment within, or to remove Equipment from, the Equipment Exchange Program.  Upon the effective date of such notice, T-Mobile may transfer all device-related support for that model of Equipment to Seller and Seller agrees that it will maintain reasonable service levels for such support in all material respects.

    1.8.6   <u>Seller as Service Provider.</u>   In addition to the above, if Seller acts as the Service Provider, the following terms of this Section 1.8.6 shall apply.  Seller shall support any required repair or refurbishment volumes and related timelines for in-warranty and out-of-warranty support required hereunder.  Seller shall use all repaired and refurbished units of Equipment as replacement stock under the Equipment Exchange Program.

(a) <u>Repair Requirements</u>.    T-Mobile's repair requirements are based on forecasting tools that generate a four (4) week and a ninety (90) day requirement.  The 4-week plan is utilized to prepare the short-term repair requirement.  The 90-day plan is utilized to establish a quarterly, medium-term view of forecasted repairs.  Both plans are updated on a rolling basis and are provided to Seller.  Seller agrees to satisfy both four-week and 90-day requirements.

(b) <u>Turn Around Time ("TAT")</u>.   Seller shall use the four-week forecast model to establish shipping and receiving schedules for repaired and refurbished Equipment.  Additionally, Seller shall adhere to the following:

(i)     Seller shall repair/refurbish and return all Equipment delivered to Seller to T-Mobile's specified delivery location within nine (9) calendar days of receipt by Seller.  The Parties may from time to time agree to extensions of TAT on certain models of Equipment beyond the timeframe set forth in this Section 1.8.6(b)(i).

(ii)    If Seller fails to meet the TAT requirement set forth in 1.8.6(b)(i) by more than five (5) calendar days, T-Mobile shall with prior notice (including during the CPFR calls) "pull" new Equipment and put it into replacement stock in sufficient quantities to cover the shortfall at no charge to T-Mobile and with title transfer to T-Mobile or T-Mobile's customer as of the date of the "pull" and receive a credit from Seller for the Purchase Price for the new Equipment.  In the case of Equipment which T-Mobile is storing and distributing on Seller's

behalf, the remedies provided in this subsection are in addition to the remedies for late reporting as set forth above.

(iii)     Seller will provide T-Mobile, within two (2) business days of T-Mobile's request and without exception, a Return Materials Authorization (**"RMA"**) to ship against for repaired/refurbished units based upon the four-week forecast.

(c) Quality Requirements. Seller shall comply with the following quality requirements with respect to repair and refurbished Equipment:

(i)     Lot Acceptance. Seller shall maintain a minimum level of lot quality with T-Mobile in accordance with sample standard of ANSI/ASQ Z1.4, Single Level 2, Normal, AQL: 1.0, or other mutually agreed methodology. T-Mobile retains the right to return a lot of product that fails to meet this standard.

(ii)     Unit Acceptance Rate. Seller shall maintain a minimum unit acceptance rate with T-Mobile greater than 99.25%. Unit acceptance rate is measured by dividing the number of units accepted from product audits by total number of units audited at T-Mobile

(iii)     Out of Warranty/Return Unrepaired (**"OOW/RUR"**) Rates. OOW/RUR Rates will not exceed 5%. Seller will recover/repair or replace as necessary in repair network to maintain an OOW/RUR Rate under 5% per shipment back to T-Mobile.

(iv)     Seller Corrective Action Request Responsiveness. In the event of a lot rejection or a monthly/quarterly unit acceptance rate of Equipment is less than 99.25%, T-Mobile will issue to Seller a supplier corrective action request ("**SCAR**") in writing. Seller shall adhere to the following requirements when processing the affected SCAR lot units from T-Mobile:

A.     Provide an RMA to T-Mobile within twenty-four (24) hours during business days of aforementioned SCAR notification.

B.     Meet a TAT of ten (10) business days for all units subject to SCARs. SCAR shall be considered closed/complete when the T-Mobile SCAR form has been completed and submitted to T-Mobile with an acceptable response and the lot in question has been screened/ reworked/repaired and returned to the NRC.

C.     Notify and obtain approval for extension from T-Mobile Supply Chain Quality and Vendor Management if SCAR lot cannot be turned around in ten (10) business days.

D.     Clearly identify the lot by its SCAR number when shipping the lot back to the NRC.

(d)  Reporting.    Seller shall provide T-Mobile with the following as reasonably requested by T-Mobile.  Such requirements, including without limitation categories of reporting, are subject to change as may be mutually agreed upon by the Parties.

(i)     Datamart Reporting.    Datamart reporting enables T-Mobile to evaluate whether or not alleged customer warranty claims as to Equipment defects are valid (**"Datamart Reporting**"). The Datamart data transfer shall be provided on a weekly basis and shall outline the customer complaint and repair process outcome for Equipment submitted with alleged defects covered under customer warranty. The reports shall be delivered to T-Mobile by

Thursday each calendar week for the previous calendar week unless reporting has been granted a revised schedule by T-Mobile. Datamart Reporting currently includes without limitation:

- In-Warranty repairs/Out-Of-Warranty repairs
- Pareto repair outcomes
- Pareto repair and customer complaint
- NTF by equipment

In the event Seller fails to provide timely Datamart Reporting, the Parties acknowledge that T-Mobile's ability to charge its customers for out-of-warranty service may be materially impaired.

(ii)  Non-Datamart Reporting.  This reporting enables T-Mobile to improve its planning and business practices in general in order to maintain service levels within the Exchange Program (**"Non-Datamart Reporting"**). The reports shall be provided on a weekly, a monthly, and a quarterly basis unless otherwise agreed to by the Parties. The reports must be delivered to T-Mobile as follows:  the weekly reports by Thursday each calendar week for the previous calendar week; the monthly reports by the tenth business day of each calendar month for the previous calendar month; and the quarterly reports by the tenth business day of each first month in a calendar quarter for the previous calendar quarter. Non-Datamart reporting currently includes:

- Work in Progress (**"WIP"**) by model
- Repair plan vs. actual production
- In-Warranty repairs/Out-Of-Warranty repairs
- Pareto repair outcomes (monthly and quarterly only)
- Pareto repair and customer complaint (monthly and quarterly only)
- NTF by equipment
- 90 day and 180 day Bounce Rate by model (monthly)
- First Pass Acceptance Yield by model (monthly)
- Scrap rate (monthly and quarterly only)

In the event Seller fails to provide timely Non-Datamart Reporting, the Parties acknowledge that T-Mobile's ability to accurately plan and maintain service levels within the Equipment Exchange Program may be materially impaired.

(iii)  A report/data transfer shall only contain data referring to one (the latest) applicable reporting period. In no case shall a report/data transfer contain aggregated data of more than one (earlier) reporting period.

(e)  Remedies.  In the event Seller fails to meet its obligations set forth in this Section 1.8.6, T-Mobile has provisions to maintain Seed Stock as outlined in section 1.8.5.

1.8.7  Repair Parts. For each Equipment model, Seller shall make available to T-Mobile or Service Provider repair and replacement parts and Equipment for a period of three (3) years after delivery of a particular model of the Equipment to T-Mobile, unless a different period of time is required by law, and will provide T-Mobile at least ninety (90) days written notice of the option to place a last time buy for repair or replacement parts. If Seller does not provide replacement parts within specified times as agreed upon by the Parties to meet the requirements of the Equipment Exchange

Program, T-Mobile may convert new Equipment to Seed Stock pursuant to Section 1.8.5 as necessary to meet its needs. Additionally, if Seller fails to deliver repair or replacement parts by the Specified Delivery Date, T-Mobile may cancel the associated Purchase Order for repair or replacement parts with no liability. Seller and T-Mobile shall work collaboratively for repair and replacement part needs beyond the three (3) year period referenced above.

1.8.8    Out of Warranty Equipment. T-Mobile will pay a reasonably agreed upon repair and refurbishment cost of handling, testing, repairing and refurbishing all Equipment returned and determined to be out of warranty, provided prior T-Mobile authorization is acquired. If T-Mobile does not authorize repair of out of warranty Equipment, Seller will return such out of warranty equipment to T-Mobile. Seller will provide T-Mobile with fee schedule for such costs in advance.

1.8.9    Replacement Equipment.    For any Equipment not returned by the customer under an advanced exchange or for replacement of out-of-warranty Equipment, T-Mobile shall have the right to purchase replacement Equipment, with same configuration as Seed Stock, from Seller for ninety percent (90%) of the current Purchase Price for Devices and for eighty percent (80%) of the current Purchase Price for Handsets.

1.8.10    Invoices. Seller shall issue invoices to T-Mobile for any amounts due from T-Mobile under this Section 1.8 within three (3) months after the end of the calendar month in which Seller incurred the cost or provided the service giving rise to T-Mobile's payment obligation. Seller agrees that T-Mobile will have no obligation to pay any amounts invoiced after the time permitted in the preceding sentence.

1.9    Packaging. Seller shall use UPC SKU markings or other customer-specific bar code markings on the outside of the point-of-sale package for each of the packing options defined below, including the UPC of the Equipment contained within. Seller shall provide T-Mobile with any required disclaimers or related language in connection with the Equipment, including but not limited to the FCC identification number(s), RF frequency.

1.9.1    T-Mobile may select, from time-to-time, its desired packaging format from among the options appearing below.   For subsections (a), (b), and (d) below, Seller shall make reasonable efforts to reduce package size and Seller's packaging shall comply with all applicable legal and regulatory requirements. In the event that T-Mobile wishes to change its desired packaging format, T-Mobile and Seller shall meet to discuss the necessary lead-time.

(a)    *Seller-Labeled Box.* The Equipment is shipped in Seller's standard size rectangular box labeled with Seller's trade name.

(b)    *Generic Box.*    The Equipment is shipped in Seller's standard size rectangular box without any labels, in a plain white cardboard format.  In the event that any labels, packaging or identifying marks are attached to, or wrapped around such box, the label, packaging or identifying marks shall include Seller's logo in at least the same size as T-Mobile, or, if requested by T-Mobile, T-Mobile's logo or other authorized T-Mobile Mark (as defined in Section 8.3.1) in lieu of T-Mobile's logo.

(c)    *Bulk-Ship.*    The Equipment is shipped in a bulk package, without individual packages for each unit of Equipment.  It is then T-Mobile's obligation to arrange for individual unit packaging. Bulk-Ship method shall contain all items necessary for complete units on a single pallet. Seller shall use best efforts to minimize or eliminate all waste packaging.

(d) *Jointly Branded Box.* The Equipment is shipped in a jointly-branded box that includes, at T-Mobile's discretion, a T-Mobile SIM-card and applicable T-Mobile collateral. The boxes shall be packed in master packs of five (5).

All packaging above shall be subject to T-Mobile approval.

 1.9.2 <u>Packaging Bar Coding.</u> Seller will ensure that all master packaging contains SKUs in bar code format ("3 of 9", UPC, or EAN128) and human readable format.

 1.9.3 <u>Equipment Bar Coding.</u> Seller shall provide information to T-Mobile concerning Seller's bar coding and serial number coding for Equipment, sufficient to permit T-Mobile to properly electronically read Seller's bar coding and to be able to monitor and track Equipment received. All Equipment shall contain a bar code that is of proper size and density so it can be read with a standard scanner. The actual numbers of the electronic serial number ("ESN") or international mobile equipment identifier ("**IMEI**") shall be written below the bar code. The Equipment shall contain a bar code that contains an ESN or IMEI in the format of "EAN128" or "3 of 9." The bar code shall only contain the numbers and not contain spaces, dashes, etc. or extraneous numbers.

 1.10 <u>Discontinuance or Alteration of Equipment.</u> Subject to and without in any way limiting the additional requirements of Section 2.1, Seller agrees to: (a) provide T-Mobile with at least one hundred twenty (120) days prior written notice of discontinuance of, or a material change (including, without limitation, Equipment upgrades, new Equipment models, material software changes, or material hardware changes that affect form, fit, or function) to any Equipment; and (b) provide T-Mobile with ninety (90) days prior written notice of a material upgrade of the Equipment into the marketplace (but excluding any maintenance release or minor changes to components). If Seller fails to meet this requirement (other than for discontinuances that may be mutually agreed by the Parties, or material changes necessary to correct Equipment defects), then T-Mobile may return any Equipment on hand, refuse shipments and cancel Purchase Orders at the time of notice or any time thereafter and receive a full refund of amounts paid for such Purchase Orders. A new notice shall be required for each discontinuation or change even if the same product is involved.

 1.11 <u>Training.</u> Unless otherwise set forth in an Equipment Addendum, Seller will provide T-Mobile the training set forth in **Attachment D** to this Agreement.

 1.12 <u>Bundling Kits.</u> T-Mobile and/or its third-party vendors may supply SIM cards and/or Prepaid cards ("**Cards**") to Seller from time to time, and Seller will bundle the Cards with Equipment in packages ("**Kits**") and ship the Kits to T-Mobile and/or its third-party vendors. All shipments of Cards to Seller will be D.D.P. (as defined by ICC 2000 Incoterms) to the ship-to location(s) designated by Seller in writing to T-Mobile. With regard to this the following shall apply:

 1.12.1 The Parties acknowledge that Seller bears the risk of loss regarding the Cards from Seller's receipt of the Cards from T-Mobile or a third-party vendor until delivery of the Kits is complete at T-Mobile's Distribution Center or other Delivery Location as required by T-Mobile ("**Handling Time**"). Seller will provide T-Mobile with timely notice of any damaged or missing Cards upon receipt and acceptance of the Cards. Seller shall cooperate to provide T-Mobile necessary information to assist in resolving damaged or missing Cards claims with T-Mobile's third-party vendor.

 1.12.2 During the Handling Time, Seller shall protect the Cards against damage, deterioration and loss and insure them in a commercially reasonable fashion. Seller will be responsible for any damage, deterioration or loss due to the act or omissions of itself, its agents, contractors and affiliates. In case of any shortage or damage of Cards during the Handling Time Seller shall pay to T-Mobile (i) the

amount of $20 U.S. Dollars per missing/damaged SIM card and (ii) an amount equivalent to the face value per missing/damaged Prepaid card. Basis of the calculation of missing/damaged Cards shall be the number of Cards received by Seller from T-Mobile and/or its third-party vendors minus Cards received by T-Mobile in Kits as well as Cards in the Seller's inventory.

1.12.3  Seller shall provide T-Mobile with a weekly reporting as to the following:

(i)     Inventory of Cards by SKU number;

(ii)    Quantity of Cards received by SKU number;

(iii)   Weekly production plan by SKU; and

(iv)    Forecast for Cards with requested shipments based on demand

The reports shall be delivered to T-Mobile in electronic media by Tuesday each calendar week for the previous calendar week.

1.12.4  Subject to Section 9.4, T-Mobile shall, in its sole discretion, have a right to audit the Cards in inventory during Seller's normal business hours at any of Seller's premises with at least a seven (7) business day prior written notice to Seller, and Seller will cooperate with T-Mobile for the purposes of such audit. The timing for such audit will be mutually agreed to by the Parties. The costs of any such audit shall be borne by T-Mobile, unless a material discrepancy is discovered, in which case Seller shall pay for the costs of the audit. A discrepancy shall be deemed to be material if the data previously reported to T-Mobile varies by more than 10% from the actual inventory.

## ARTICLE 2
## INSPECTION AND TESTING

2.1     Trial Equipment & FAI Equipment.  With respect to any Equipment which T-Mobile notifies Seller of its intent to purchase subject to such Equipment meeting applicable testing, verification or other mutually agreed criteria as set forth in PRD 30-38, as may be updated from time to time and provided to Seller (the "**PRD**"), Seller agrees to deliver an aggregate of four hundred (400) operator acceptance units of Equipment (the "**Trial Equipment**"), at no charge, for testing, field user trials, customer care, and other reasonable uses by T-Mobile; provided, however, Seller agrees to provide additional Trial Equipment, as may be needed, in connection with new devices using technology not previously used by or offered to T-Mobile as may be agreed upon in an Equipment Addendum. Such units are in addition to FAI Equipment as described below and units provided as demos pursuant to Section 1.3 above. The Trial Equipment will be delivered free of charge to T-Mobile, and shall be identical to the Equipment to be offered commercially (except for any previously disclosed and pending modifications), to T-Mobile pursuant to this Agreement. T-Mobile's testing will include, but not be limited to, an assessment of whether the Equipment meets the technical specifications set forth in any T-Mobile Materials (as defined in Section 7.1), the technical specifications defining the performance characteristics as provided by Seller, Federal Communications Commission ("**FCC**") requirements, PCS Type Certification Review Board ("**PTCRB**") requirements, all applicable industry specifications and standards for GSM/GPRS/UMTS/UMA, and market needs. For the avoidance of doubt, to the extent the T-Mobile Materials or T-Mobile Technology incorporate third party technology, Seller is responsible for working with the T-Mobile designated technology provider to ensure the third party technology is integrated in a manner that will meet the acceptance criteria as required in this Section 2.1. In addition, at the time of delivery to T-Mobile of the Trial Equipment, Seller shall provide T-Mobile with a full and

complete test report concerning such Trial Equipment, which shall include all passing and failing conditions pursuant to the PRD. Further, Seller shall provide T-Mobile with updated test reports as they become available.

2.1.1   Technical Acceptance. T-Mobile has fifteen (15) days following delivery of Equipment in which to evaluate the same and submit a written notice of acceptance or rejection thereof to Seller. T-Mobile may accept or reject Equipment based on its failure to include T-Mobile Materials as contained in the specifications or conform to other specifications or warranties or its being unfit for T-Mobile's intended purposes. If T-Mobile delays acceptance of particular Equipment more than fifteen (15) days past date of delivery, Seller will provide a written reminder notice to T-Mobile and any schedule dates that depend on that applicable Deliverable will be allowed to slip, day for day past thirty (30) days, until acceptance or rejection, without penalty to Seller for the slippage. If T-Mobile rejects any element of the Equipment, Seller will correct and resubmit the same within fifteen (15) calendar days after notice of rejection or other reasonable period agreed to by the Parties, for acceptance or rejection. For avoidance of doubt, the technical acceptance period in this Section 2.1.1 is related to the testing and verification/validation period for Trial Equipment.

2.1.2   Failure to Deliver and Rejection. If Seller fails to deliver any Equipment within the dates specified or if any errors discovered before acceptance cannot be eliminated in the correction period, then T-Mobile may, at its option: (a) accept the non-conforming Equipment and continue under this Agreement (without waiving its rights to reject other Equipment); (b) extend the correction period; or (c) reject the non-conforming Deliverable.

2.1.3   Upgrades. Upon T-Mobile's request, the Parties will negotiate in good faith for specifications and a timeline for the development of Upgrades to the Equipment. All such Upgrades will be deemed part of the Equipment for all purposes under this Agreement. Without limiting the foregoing, Company agrees to correct errors in such Upgrades.

2.1.4   Work-in-Progress. Seller will deliver to T-Mobile all work-in-progress on Equipment and Deliverables (if any) within ten (10) days following any termination of this Agreement, unless for breach by T-Mobile for non-payment, if such work-in-progress has not previously been submitted to T-Mobile for approval or rejection under Section 2.1 above. In such event, T-Mobile shall have the option to approve or reject the work-in-progress pursuant to the terms of Section 2.1.

2.2   First Article Inspection ("**FAI**"). Seller shall provide approved, production units of Equipment to T-Mobile's designated facilities, at no charge, for first article inspection purposes ("**FAI Equipment**"). Seller shall provide FAI Equipment as set forth in **Attachment C**. Seller will comply with T-Mobile's FAI guidelines attached as **Attachment C**, which may be updated by T-Mobile from time to time.

2.2.1   FAI Acceptance. T-Mobile has two (2) business days following delivery of FAI Equipment in which to evaluate the same and submit a written notice of acceptance or rejection thereof to Seller. If T-Mobile rejects any element of the FAI Equipment, Seller will correct and resubmit the same within fourteen (14) calendar days after notice of rejection or other reasonable period agreed to by the Parties, for acceptance or rejection. For avoidance of doubt, the acceptance period described in this Section 2.2.1 is solely intended for the FAI.

2.3   Title to Units. Unless otherwise specifically stated to the contrary in the Agreement, title to all units of Equipment provided to T-Mobile, including without limitation, Trial Equipment and FAI Equipment shall transfer to T-Mobile upon T-Mobile's acceptance at the applicable T-Mobile facility.

2.4     Quarterly Reports.  Seller shall provide T-Mobile with performance reports of current models of Equipment on a quarterly basis (which shall include **a** listing of all known and verified problems and suspected problems with the Equipment), and shall provide T-Mobile with written notice of changes to the software all Equipment at the earlier of:  (a) the time specified in Section 1.10, and (b) such time the changes are first implemented into the Equipment.

2.5     Monthly Reports.  Seller shall provide T-Mobile with the following reports on a monthly basis, not later than five (5) business days subsequent to each month end:

(a)     A detailed listing of credits issued during the month with the reason for issuance.

(b)     A detailed report on returns, showing on a rolling twelve (12) month basis ending with the most recently ended month:  the quantities returned by SKU from T-Mobile, shipments back to T-Mobile, and amount remaining to be processed at the end of the current month.  Included in this data will be an analysis of all returns processed and the reasons for failure, with the quantities and percentages associated with each category.

(c)     A listing of shipments deemed to be late pursuant to Section 1.6.3 of this Agreement, and a calculation of the related penalties.

## ARTICLE 3
## SELLER WARRANTIES AND REPRESENTATIONS

3.1     Seller Representations and Warranties to T-Mobile.  In connection with all Purchase Orders made pursuant to this Agreement, T-Mobile shall be entitled to materially rely on, and Seller does make the following representations and warranties with respect to all Deliverables and Equipment:

3.1.1     Seller expressly represents and warrants during the Warranty Period (as defined below) that the Deliverables (if any) and Equipment, including, without limitation, the design, materials, workmanship and components incorporated therein, shall be free from defects, shall be of the highest quality and all materials and other items incorporated in or associated with the Equipment will be new (not refurbished or reconditioned) and suitable for their intended purpose.  Seller expressly represents and warrants that the Deliverables (if any) and Equipment will conform to the specifications, representations, conditions, and guaranties provided by Seller to T-Mobile or otherwise agreed upon by Seller and T-Mobile relating to performance at the time of original purchase.  Seller may utilize refurbished or reconditioned parts for Seed Stock or Equipment serviced as expressly provided in Section 1.8.  Seller additionally hereby provides express warranties of fitness and merchantability with respect to all Equipment purchased by T-Mobile under this Agreement. Notwithstanding anything to the contrary contained herein, no warranty will apply to any Equipment that (a) is NTF subject to Seller's obligations per Section 1.8.5(c); (b) has been subject to misuse, accident, neglect or improper storage or installation by any person other than Seller or Seller's Service Provider; (c) has been used with accessories other than accessories provided by Seller (or expressly authorized in writing by Seller for use with the subject Equipment) to the extent such use is the direct and material cause of the warranty claim and the warranty claim would not have occurred but for such use with an unauthorized accessory; (d) has been disassembled, repaired or altered by any person other than Seller or a Service Provider; or (e) has had the original  specific identification marks or serial numbers removed, altered or otherwise rendered unreadable.

3.1.2    Seller expressly represents and warrants that, to its knowledge as of a Delivery Date, the Equipment and any Deliverables delivered as of the Delivery Date do not misappropriate, infringe or otherwise violate any Third Party Intellectual Property Rights (as defined in Section 9.1.3) within the Territory and such other territories where Equipment may be distributed or manufactured subject to the terms of this Agreement. The foregoing warranty as to Third Party Intellectual Property Rights shall not extend to any T-Mobile Materials (as defined in Section 7.1).

3.1.3    Seller's obligation with respect to the warranty described in Section 3.1 (the "**Equipment Warranty**") shall be, at its sole cost and expense, to repair, refurbish, or replace, at Seller's sole discretion, any Equipment not conforming to the Equipment Warranty, where such non-conformance is discovered by T-Mobile within the longer of (i) twelve (12) months after activation by T-Mobile, as indicated by activation records which will be provided to Seller via flat file, or (ii) fifteen (15) months after the date of manufacture, as indicated by the manufacturing date code (the "**Warranty Period**"). Repaired or replaced Equipment provided pursuant to the foregoing warranty shall be further warranted in accordance with the Equipment Warranty for a period equal to (i)the duration of the Warranty Period; or (ii) three (3) months after a repair, refurbishment, or replacement is made, whichever period is longer.

3.2    Seller expressly represents and warrants that the Equipment and any Deliverables will be free from defects and all materials and other items incorporated in or associated with new Equipment will be new (not refurbished or reconditioned) and suitable for their intended purpose. Seller expressly represents and warrants that the Deliverables and Equipment shall conform to their published specifications, representations, conditions, and guaranties relating to performance at the time of original purchase and that the Deliverables and Equipment shall: (a) be designed and manufactured so that its appearance, functionality and performance will satisfy all Seller representations, specifications, conditions, and guarantees made in writing relating to performance described in all Seller manuals, advertisements, promotional materials, and specification documents, whether delivered to T-Mobile in connection with this Agreement or not (the "**Seller Specifications**"), (b) comply (and Seller's performance hereunder shall comply) with including without limitation all applicable foreign, federal, state and local laws, rules, regulations, and codes in existence in the Territory and such other territories where Equipment may be distributed or manufactured subject to the terms of this Agreement during the Term hereof (including without limitation, FCC rules, regulations and requirements), and (c) comply with all Electronics Industries Alliance/Telecommunications Industry Association ("**EIA/TIA**"), GSM, GSM NA, PTCRB, Enhanced Observed Time Difference ("**E-OTD**") and European Telecommunications Standards Institute ("**ETSI**") standards and all other applicable industry specifications and standards. In the event the Deliverables (if any) and Equipment fail to comply with the foregoing warranties, in addition to any other rights or remedies available to T-Mobile under this Agreement, Seller shall, at its sole cost and expense, employ best efforts to correct such noncompliance in the shortest possible time, provided that such efforts shall not effect or limit T-Mobile's rights in Section 3.3.

3.2.1    Seller further represents and warrants that no Equipment will be (a) produced, manufactured, assembled, or packaged by forced, prison, or child (defined as the minimum working age within all applicable jurisdictions) labor, or (b) transshipped for purpose of mislabeling, evading quota or country of origin restrictions, or avoiding compliance with labor laws. Seller shall furnish such documents as may be required to evidence such compliance.

3.2.2    In addition, and without limiting any other representations and warranties set forth herein or in any manner adding any exclusions or limitations with respect thereto, Seller makes the representations and warranties applicable to the Equipment to T-Mobile and its customers in accordance with the applicable limited warranty documents that accompany the Equipment as set forth as **Attachment B** attached hereto and incorporated herein. Seller agrees to revise this limited warranty

documentation from time to time as necessary to accurately reflect the warranty repair and other applicable terms of this Agreement, as such terms may be modified periodically by mutual agreement of the Parties. Seller may not make any changes to the customer warranty it offers to T-Mobile customers without T-Mobile's prior written approval. In no event shall Seller's limited warranty be for a period of less than one (1) year from the date of purchase by the customer, or within three (3) months after an in-warranty repair, refurbishment or replacement is made, whichever period is longer.

3.3     Pervasive Failure.   In the event that the failure rate under the Equipment Warranty exceeds two percent (2%) of the same verified defect (i.e. same cause and symptom) with regard to any particular model of Equipment (i.e., any lot, batch, or other separately distinguishable group of Equipment), or four percent (4%) failure rate due to cumulative verified defects, the Parties agree to create a "task force" of quality control and business managers to determine any potential wide-spread quality or perceived quality issues. The task force will work to determine the extent of the affected lot, batch or other separately distinguishable group. For purposes of this Section, the failure rate percentage is calculated as the total in-warranty failures of a particular model of Equipment returned during the warranty period divided by the total of all units of such model cumulatively shipped and delivered to T-Mobile by Seller. The task force will remain in effect until appropriate corrective actions have been taken, or the Equipment failure rate goes above the Pervasive failure limit. If any breach of the Equipment Warranty is pervasive with regard to any particular model of Equipment sold to T-Mobile or sold or delivered by T-Mobile or its dealers or partners to the customers has more than three percent (3%) of the same verified defect (i.e. same cause and symptom), or six percent (6%) failure rate due to cumulative verified defects where such verification is conducted by the Seller and, in addition to the warranty obligations set forth in Section 3.1 hereof, Seller shall at its sole cost immediately initiate a program of appropriate mutually-agreed countermeasures (such measures possibly including without limitation in-place repair, direct-to-customer offers, return for repair, a recall of the applicable models of Equipment by Seller and/or an extension of Seller's limited warranty covering the applicable models of Equipment to give customers sufficient time to have the Equipment repaired or replaced). In the event the Parties are unable to agree upon appropriate countermeasures within a period of three (3) business days from Seller's receipt of written notice requesting relief under this Section or Seller fails to implement the agreed upon countermeasures within a period of five (5) business days from the date of such agreement, T-Mobile may, at its option in its sole discretion:  (a) return the entire group of defective or potentially defective (as determined by the task force) Equipment delivered and remaining on-hand in T-Mobile's distribution centers or direct and indirect retail locations or in transit for a full credit of all amounts expended by T-Mobile in connection with such Equipment including, without limitation, freight in and out, cosmetic refurbishment, testing at distribution centers and repair centers, handling of Equipment and/or (b) cancel any open Purchase Orders for the same such Equipment. In addition to the foregoing, and not in limitation thereof or any other right or remedy T-Mobile may have, if Seller is unable to remedy the defect within a reasonable period, not to exceed thirty (30) days after T-Mobile has given Seller written notice of breach under this Section, unless an extended period is mutually agreed to by the Parties, at T-Mobile's option and in its sole discretion, T-Mobile may  (i) return the entire group of defective or potentially defective (as determined by the task force) Equipment delivered and remaining on-hand in T-Mobile's distribution centers or direct and indirect retail locations or in transit for a full credit of all reasonable amounts expended by T-Mobile in connection with such Equipment including, without limitation, freight in and out, cosmetic refurbishment, testing at distribution centers and repair centers, handling of Equipment, and/or (ii) cancel any open Purchase Orders for the same such Equipment.

3.4     EXCEPT AS EXPRESSLY SET FORTH IN THIS SECTION 3, WITH RESPECT TO ALL EQUIPMENT, SELLER DISLCAIMS ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THOSE OF MERCHANTABILITY, AND FITNESS FOR A PARTICULAR PURPOSE,

OR ARISING FROM A COURSE OF DEALING, USAGE OR TRADE PRACTICE, NOTHING IN THIS DISCLAIMER SHALL AFFECT THE EXPRESS OR IMPLIED WARRANTY OF TITLE.

## ARTICLE 4
## DEFAULT, REMEDIES AND TERMINATION

4.1     Events of Default.  The following shall constitute events of default (each an "**Event of Default**") under this Agreement:

4.1.1     Either Party fails to perform or observe any of its material obligations hereunder and (except as provided in Section 0) such failure is not remedied within thirty (30) days after written notice thereof is given to the defaulting Party.

4.1.2     Either Party files a petition of bankruptcy or insolvency, or makes a general assignment for the benefit of creditors, or any involuntary bankruptcy, receivership or similar proceeding is filed against such Party that is not dismissed within sixty (60) days of commencement.

4.1.3     Either Party assigns or delegates this Agreement or any of its rights or obligations hereunder in violation of the provisions hereof.

4.2     Termination.  Provided that this Agreement shall, subject to T-Mobile's right to extend, terminate upon expiration of the Term, this Agreement may be terminated only as follows:

4.2.1     At any time by mutual, written agreement of Seller and T-Mobile.

**4.2.2**     By either Party upon an Event of Default, provided that all applicable cure periods provided under Section 4.1 have run.

4.2.3     Termination of this Agreement shall not constitute a waiver of any other right or remedy T-Mobile or Seller may have against each other for breach of this Agreement.

4.3     Limitation of Liability.   Except for indemnification obligations, a breach of confidentiality or the gross negligence or willful misconduct of either Party, neither Party shall be liable for any indirect, punitive (except as arising from intentional misconduct or continuing breach after notice), special, consequential or incidental damages, including commercial loss, lost profits or loss of goodwill in association with trademark, however caused and regardless of legal theory or foreseeability, directly or indirectly arising under this Agreement.

The Parties further agree that each Party's aggregate liability arising from intellectual property indemnification obligations to the other Party during each calendar year shall not exceed either (a) $300 million US or (b) the total amount that T-Mobile has paid to Seller under this Agreement plus all amounts paid by T-Mobile to Seller's U.S. distributor, Personal Communications Devices, LLC, for Seller products and equipment prior to and during the Term, whichever is greater.

4.4     Remedies.   Except as expressly provided herein, no remedy conferred by any term hereunder is intended to be exclusive of any other remedy now or hereafter provided hereunder or by law or in equity, and the election of any one or more such available remedies by either of the Parties shall not constitute a waiver of the right of such Party to other available remedies.

## ARTICLE 5
## TERM

*Execution Copy*

5.1    Term. Unless sooner terminated in accordance with the provisions of this Agreement, the term of this Agreement shall commence on the Effective Date and terminate (5) five years thereafter (the "**Term**"). The Term of this Agreement shall extend automatically for consecutive one (1) year periods, unless terminated in writing by either Party at least ninety (90) calendar days prior to the then-scheduled end of the Term. If there is a positive credit balance at the time of termination, Seller shall issue a final report of amounts due from T-Mobile and credits owing to T-Mobile. If credits exceed amounts due, Seller shall include payment to T-Mobile with the final report. If amounts due exceed credits T-Mobile shall make timely payments as required for the applicable invoice(s).    If there is an undisputed outstanding balance owing to Seller by T-Mobile at the time of termination, T-Mobile shall issue a final payment of amounts due in accordance with the payment terms set forth in this Agreement,

### ARTICLE 6
### INSURANCE

6.1    Insurance. Seller must obtain and maintain, at its expense, Commercial General Liability Insurance, including product liability and contractual liability coverage, that is primary to any carried by T-Mobile, covering liabilities caused by or occurring in conjunction with the operation of Seller's business, with a minimum combined single limit for bodily injury and property damage of ten million dollars ($10,000,000) per occurrence. The policy must (i) be primary and non-contributory to any insurance maintained by T-Mobile; (ii) contain a broad form Vendor's Endorsement in favor of T-Mobile USA, Inc. and its Affiliates, (ii) name T-Mobile USA, Inc. and its Affiliates and their respective officers, directors, employees, successors, and agents as additional insureds, (iii) be issued by a reputable and financially sound insurer reasonably satisfactory to T-Mobile, and (iv) contain a provision requiring thirty (30) days advance written notice of cancellation or non-renewal to T-Mobile. If Seller performs any activities on T-Mobile's (or any of its Affiliates') premises, Seller must obtain and maintain, at its expense and at limits acceptable to T-Mobile: (a) Workers' Compensation (as required by law) and Employer's Liability insurance for a minimum limit of $10,000,000; and (b) Business Automobile Liability insurance covering owned, non-owned and hired vehicles, for a minimum combined single limit for bodily injury and property damage of $10,000,000. Seller may satisfy the limits of insurance required in this section with the combination of primary and excess/umbrella liability insurance policies. The coverages and limits required in this section shall in no way limit Seller's obligations under Article 8 of this Agreement. Seller will provide T-Mobile with a certificate of insurance evidencing compliance with the insurance requirements contained herein at time of execution of this Agreement and prior to the renewal of each policy evidenced thereon.

### ARTICLE 7

### DEVELOPMENT SERVICES

7.1    Definitions.

7.1.1    **"Deliverable"** means products and materials delivered to T-Mobile resulting from Development Services and agreed to in an applicable Work Order.

7.1.2    **"Development Services"** means custom development services requested by T-Mobile and agreed to by Seller for incorporation into or otherwise relating to the sale of Equipment hereunder subject to and otherwise in accordance with the applicable Work Order.

7.1.3    An **"Excluded License"** is any license that requires as a condition of use, modification and/or distribution of software subject to such license, that such software or other software combined and/or distributed with such software be (x) disclosed or distributed in source code form; (y) licensed for the purpose of making derivative works; or (z) redistributable at no charge.

7.1.4    **"Intellectual Property Rights"** means all past, present, and future rights of the following types, which may exist or be created under the laws of any jurisdiction in the world: (i) rights associated with works of authorship, including exclusive exploitation rights, copyrights, moral rights, and mask work rights; (ii) trademarks, service marks, trade dress, logos, trade names, domain names, URLs and corporate names, together with all translations, adaptations, derivations, and combinations thereof and including all goodwill associated therewith, and all applications, registrations, and renewals in connection therewith; (iii) trade secret rights; (iv) patent and industrial property rights, including Patents; (v) other proprietary rights in intellectual property of every kind and nature regularly recognized in the industry; and (vi) rights in or relating to registrations, renewals, extensions, combinations, divisions, and reissues of, and applications for, any of the rights referred to in (i) through (v) of this Section 7.1.4, which may consist of and/or subside in T-Mobile Materials or T-Mobile Technology.

7.1.5    **"Materials"** means any and all tangible or intangible materials, in printed or electronic form, provided by one Party to the other Party and containing or disclosing the delivering Party's Technology.

7.1.6    **"Patents"** means all patents, patent applications, provisional applications, continuations, continuations-in-part, divisional, reissues, renewals, reexamination certificates, utility models, or invention registrations in any country, whether now existing or for which application is made in the future.

7.1.7    **"T-Mobile Materials"** means Materials provided by T-Mobile to Seller.

7.1.8    **"Seller Materials"** means Materials provided by Seller to T-Mobile.

7.1.9    **"Technology"** means any and all intellectual properties owned or licensed to a Party, including by way of illustration and not limitation, methods, systems, processes, formulae, algorithms, know-how, trade secrets, discoveries, inventions, ideas, concepts, know-how, techniques, designs, specifications, software code, products, devices, computer programs, algorithms, procedures, improvements, materials, texts, drawings, source code, text, graphics, videos, designs, organization, layouts, user interfaces, navigation, photographs, music, sounds, multi-media, drawings, maps, blueprints, diagrams, flows and other technical, financial or business information graphics, and graphical user interface design and mechanism for communication devices or and any other materials whatsoever, in preliminary or final form and on any media whatsoever, whether or not disclosed in Patents, and whether now existing or developed in the future, together will all additions, improvements, derivatives, continuations, and modifications thereto.

7.1.10    **"T-Mobile Technology"** means Technology owned by or licensed to T-Mobile by a third party.

7.1.11    **"Seller Technology"** means Technology owned by or licensed to Seller by a third party.

7.1.12    " **"Work Order"** means a written agreement, substantially in the form set forth in **Attachment L**, between the Parties setting forth the applicable specifications and other terms and conditions with respect to Development Services.

7.2   Development of Deliverables.

    7.2.1   Development.  As set forth in an applicable Work Order, Seller will develop and incorporate T-Mobile Technology into Equipment, Deliverables, or both, according to the requirements and timing set forth in the Seller Specifications or in a Work Order.  The Deliverables will be deemed part of the Equipment and subject to all rights and obligations of the Parties under this Agreement with respect to Equipment including but not limited to support, warranties and representations, and indemnity, and shall likewise be subject to the exceptions to Seller's indemnity related to the T-Mobile Materials.  T-Mobile Materials may be modified upon written agreement of the Parties.  Immediately when both Parties have agreed upon any such modification, the most current version of any such mutually agreed-upon modified T-Mobile Materials will be deemed T-Mobile Materials and incorporated by reference into this Agreement.

    7.2.2   Exclusivity.  Seller covenants and agrees not to include the Deliverables, T-Mobile Technology or the T-Mobile Materials with any Seller product sold to any third party other than T-Mobile, T-Mobile Affiliates or T-Mobile's authorized distributors unless otherwise agreed to by the Parties.  Neither Seller, nor any Seller contractor, will develop, manufacture, market, sell and/or distribute any product or service substantially similar to the T-Mobile Technology, T-Mobile Materials and/or the Deliverables.  This Section shall survive any termination or expiration of the Agreement.

7.3   Licenses.

    7.3.1   Development Copyright and Trade Secret License.  T-Mobile grants to Seller and its Affiliates, during the term of this Agreement, a non-exclusive, personal, non-transferable, non-sublicensable, non-assignable, limited, world-wide, fully paid, royalty-free license (i) under T-Mobile's copyrights in the T-Mobile Materials and T-Mobile Technology, to reproduce and modify the T-Mobile Materials and T-Mobile Technology solely in connection with Seller's performance of Development Services and development of Deliverables exclusively for T-Mobile and sale of Equipment to T-Mobile; and (ii) under T-Mobile's trade secret rights in the T-Mobile Materials and T-Mobile Technology, to reference the T-Mobile Materials and T-Mobile Technology solely in connection with Seller's performance of Development Services and development of Deliverables exclusively for and sale of Equipment to T-Mobile.

    7.3.2   Testing and Distribution Copyright and Trade Secret License.  T-Mobile grants to Seller and its Affiliates, during the term of this Agreement, a non-exclusive, personal, non-transferable, non-sublicensable, non-assignable, limited, world-wide, fully paid, royalty-free license under T-Mobile's copyrights and trade secret rights in the T-Mobile Materials and T-Mobile Technology to (i) reproduce, install and test the Deliverables ; (ii) distribute Deliverables exclusively and solely to T-Mobile, T-Mobile's Affiliates and/or T-Mobile's authorized distributors; and (iii) to provide service and support of the Deliverables as required under this Agreement.

    7.3.3   License Limitations.

        (a) The licenses granted in Sections 7.3 and 7.4 do not include the right to, and Seller shall not, (i) create derivative works of the T-Mobile Materials and T-Mobile Technology (including Deliverables ) in any manner that would cause the T-Mobile Materials or T-Mobile Technology, in whole or in part, to become subject to any of the terms of an Excluded License ; or (ii) distribute the T-Mobile Materials and T-Mobile Technology (or derivative works thereof, including Deliverables ) in any manner that would cause any T-Mobile Materials and T-Mobile Technology component to become subject to any of the terms of the Excluded License.

(b) The licenses granted in Sections 7.3 and 7.4, do not include the right to distribute Equipment containing the Deliverables to any other third party including customers, except as otherwise expressly provided in this Agreement or as otherwise agreed to by the Parties.

7.4    Patents.

7.4.1    Limited Non-exclusive Patent License.    T-Mobile grants to Seller and its Affiliates a limited, non-exclusive, personal, non-transferable, non-sublicensable, non-assignable, world-wide, fully paid, royalty free license to make, use, sell, offer for sale, and import products embodying or made in accordance with any T-Mobile Patent covering the T-Mobile Technology or T-Mobile Materials, subject to the following limitations and restrictions:

(a) the license to manufacture granted herein shall be limited to Seller's (and Seller's Affiliates') use of T-Mobile Materials and T-Mobile Technology in making Equipment sold solely to T-Mobile;

(b) the license to sell, offer for sale or import granted herein shall be limited to Seller's (and Seller's Affiliates) selling or offering for sale Equipment to T-Mobile or its licensed distributors, or importing Equipment for sale to T-Mobile or its licensed distributors;

(c) the license granted herein shall be subject to and expressly conditioned upon compliance with the Technology Restrictions set forth in paragraph 7.5; and

(d) the license granted herein shall be subject to the limitations and restrictions set forth in Section 7.3.3 of this Agreement.

7.4.2    No Implied Licenses.    Under no circumstances should anything in this Agreement be construed as granting to Seller, by implication, estoppel or otherwise, (a) a license to any T-Mobile technology other than the T-Mobile Materials or T-Mobile Technology; (b) a license under any Patents, except as set forth herein; or (c) any additional license rights for the T-Mobile Materials or T-Mobile Technology other than the licenses expressly granted in this Agreement.

7.5    Technology Restrictions.    Seller agrees to incorporate encryption or other technological features, as instructed by T-Mobile, in the Deliverables and Equipment containing T-Mobile Technology or T-Mobile Materials, which encryption or other technological features are designed to effectively prevent the use of such T-Mobile Technology and T-Mobile Materials except in connection with a contracted service provided by T-Mobile. Once such encryption or other technological features have been incorporated into Deliverables and Equipment, Seller agrees not to remove, circumvent, or disable such features. Seller agrees to include with every shipment of Equipment that includes any Deliverables containing the T-Mobile Technology or T-Mobile Materials, a written notice in substantial conformity with the following:

The products described in this manual may include software stored in semiconductor memories or other media. Laws in the United States and other countries preserve for software providers certain exclusive rights for copyrighted software. The software and other features in this product, including features provided by T-Mobile USA, Inc. ("**T-Mobile**"), may also be protected by patents or other intellectual property rights. You will not modify, distribute or reproduce any software included with this product. You will not reverse engineer or otherwise attempt to access any computer software source code included with this

product, except as permitted by applicable law despite this limitation. You will not modify, distribute or reproduce any software included with this product. You will not reverse engineer or otherwise attempt to access any computer software source code included with this product, except as permitted by applicable law despite this limitation. Furthermore, the purchase of products will not be deemed to grant, either directly or by implication, estoppel, or otherwise, any license under the intellectual property rights of _____ or any other software provider, except for the normal, non-exclusive, royalty-free license for the purchaser to use the product that that arises by operation of law by the sale of the product. T-Mobile's features included in this product are for the exclusive use of T-Mobile subscribers on the T-Mobile wireless communications network and the use of these features with any other network is strictly prohibited. Certain restricted proprietary features that have been encrypted or otherwise secured from use with other networks may be present in this product and any attempt to circumvent measures used to encrypt or otherwise secure these features from improper use is strictly prohibited.

7.6     Ownership.

7.6.1     Ownership of Deliverables and Work Product. T-Mobile shall own all rights, including but not limited to Intellectual Property Rights, in and to (a) pre-existing and/or independently developed T-Mobile Materials and/or T-Mobile Technology, (b) unless otherwise expressly agreed by the Parties, the Deliverables exclusive of preexisting and/or independently developed Seller Materials and Seller Technologies therein, and (c) any ideas, designs, techniques, inventions, discoveries, improvements, information, creations, software, and any other items discovered, prepared or developed by Seller in the course of developing the Deliverables or based upon the Deliverables (unless otherwise expressly agreed by the Parties), T-Mobile Materials and/or T-Mobile Technology ("**T-Mobile Work Product**"), and this Agreement shall constitute a writing in which the Parties agree that all such Deliverables and T-Mobile Work Product are a "work made for hire" under the Copyright Act, 17 U.S.C. § 101 *et. seq*. To the extent that T-Mobile is not automatically considered to be the author or inventor of any Deliverables and T-Mobile Work Product, T-Mobile Materials or T-Mobile Technology, Seller agrees to execute all documents necessary to effect T-Mobile's complete ownership of all rights in and to the Deliverables, T-Mobile Work Product, T-Mobile Materials, and T-Mobile Technology, including but not limited to the right of first publication, the right of public performance and display, the right to sue for infringement, and the right to register claims to copyright and apply for patents in the United States and abroad. Seller appoints T-Mobile its attorney-in-fact to execute all such documents on its behalf. This power is coupled with an interest and is therefore irrevocable. To the extent allowable by applicable law, this Agreement serves as an assignment of all of Seller's and its subcontractors' rights in and to all Deliverables, T-Mobile Work Product, T-Mobile Materials and T-Mobile Technology. To the extent Seller cannot assign any moral rights, Seller waives the right to claim the benefit of those moral rights.

As between T-Mobile and Seller, Seller shall own all rights, including but not limited to Intellectual Property Rights, in and to (a) all preexisting or independently developed Seller Materials, Seller Technology and any ideas, designs, techniques, inventions, discoveries, improvements, information, creations, software, and any other items discovered, prepared or developed by Seller based upon the pre-existing or independently developed Seller Materials and/or Seller Technology, other than Deliverables (unless otherwise expressly agreed by the Parties) (collectively, "**Seller Work Product**"). All right, title and interest in the Seller Work Product will remain in Seller and the Seller Work Product

will not be deemed to be a work made for hire. Unless otherwise expressly authorized by Seller in writing, T-Mobile agrees that it has no right to modify any Equipment or any portion thereof in any manner whatsoever and it will not reverse engineer, decompile, disassemble, modify, create or prepare derivative works based upon the Equipment or any part thereof.

T-Mobile and Seller will jointly own all ideas, designs, techniques, inventions, discoveries, improvements, information, creations, software, and any other items jointly discovered, prepared and/or developed by the Parties, exclusive of Deliverables, T-Mobile Materials, T-Mobile Technology, T-Mobile Work Product, Seller Materials, Seller Technology and Seller Work Product.

        7.6.2   Seller hereby grants to T-Mobile a limited, non-exclusive, non-transferable, non-sublicensable, royalty-free, perpetual right and license to reproduce, modify, display, perform, distribute, access and use Seller Work Product and Seller Materials to the extent necessary for T-Mobile to receive the full benefit of the Development Services, Deliverables and Equipment under this Agreement.

    7.7   <u>Subcontracting</u>. Seller may, under the licenses provided in Sections 7.3 and 7.4, engage third-party contractors solely for the purposes of developing, producing and/or supporting Deliverables or Equipment for Seller, provided that (i) Seller guarantees the subcontractor's performance, (ii) Seller remains obligated under this Agreement for performance of the Development Services and delivery of the subcontracted Deliverables or Equipment notwithstanding T-Mobile's consent to the use of a subcontractor; (iii) Seller must enter into a written agreement with the subcontractor obligating the subcontractor to fully comply with Seller's obligations under this Agreement as they specifically pertain to the work to be performed by such contractor; (iv) T-Mobile pre-approves such contractors, which approval shall not be unreasonably withheld or delayed (but for the avoidance of doubt approval shall not be required for individual contract/temporary workers utilized by Seller); and (v) such contractor's use of T-Mobile Technology or T-Mobile Materials is subject to terms and conditions at least as restrictive as those set forth in this Agreement, including without limitation, provisions related to the use and protection of T-Mobile's Confidential Information; (vi) T-Mobile has no obligations under this Agreement to the subcontractor and the subcontractor has no rights or remedies against T-Mobile. Seller is liable for any breach of the Agreement by any contractor(s) and/or employee(s) of Seller. Seller may not impose a surcharge for any subcontractor fees on T-Mobile.

    7.8   Notwithstanding any other provision of this Agreement, T-Mobile will have no obligation to market, sell, or otherwise distribute the Deliverables or make the Deliverables available, either alone or in any product or service, provided that this Section shall not affect T-Mobile's obligations regarding modification or cancellation of orders under Section 1.5 or changes to branding under Section 8.3.1. With the exception of applicable restrictions on use of Confidential Information (as defined in Section 9.5.1) of Seller or Intellectual Property Rights (as defined in Section 7.1.3) of Seller, nothing in this Agreement will be construed as restricting T-Mobile's ability to, independently, directly or indirectly, acquire, license, develop, manufacture, or distribute any technology that is the same as or similar to, or that performs the same or similar functions as, the Deliverables, or to market and distribute such other technology, directly or indirectly, in addition to, or in lieu of, the Deliverables.

**ARTICLE 8**
**TRADEMARKS**

   8.1   <u>T-Mobile and DT Marks</u>.

        8.1.1   <u>License/Sublicense Grant</u>. Seller acknowledges that T-Mobile's marks, along with all intellectual property rights associated therewith, are either (a) the property of T-Mobile and/or

its subsidiaries ("**T-Mobile Marks**"), or (b) the property of T-Mobile's parent corporation, Deutsche Telekom AG ("**DT Marks**"), as set forth in **Attachment H** (collectively, "**Marks**"). T-Mobile grants Seller (i) a limited, personal, non-exclusive, non-transferable, non-sublicensable, royalty-free, fully paid, revocable license to use and reproduce the T-Mobile Marks identified in **Attachment H** hereto and in one or more addenda that may be executed from time to time by T-Mobile, on Equipment and Equipment packaging, user manuals, marketing and promotional materials, and other materials relating thereto, and (ii) a limited, personal, non-exclusive, non-transferable, non-sublicensable, royalty-free, fully paid, revocable sublicense to use and reproduce the DT Marks identified in **Attachment H** hereto and in one or more addenda that may be executed from time to time by T-Mobile, on Equipment and associated Equipment packaging, user manuals, marketing and promotional materials, and other materials relating thereto, solely in connection with the performance of Seller's obligations under this Agreement or as T-Mobile may expressly authorize in writing from time to time.

      8.1.2   Territory.  Unless otherwise set forth in an addenda to this Agreement or agreed between the Parties, Seller's use of the T-Mobile Marks and DT Marks shall be limited to the United States, Puerto Rico and the U.S. Virgin Islands and such other territories where Equipment may be distributed or manufactured by Seller or its Affiliates subject to the terms of this Agreement. Nothing set forth herein shall be construed as a license and/or sublicense to use any T-Mobile Mark and/or DT Mark outside the United States, Puerto Rico and the U.S. Virgin Islands, and such other territories where Equipment may be distributed or manufactured by Seller or its Affiliates subject to the terms of this Agreement unless otherwise expressly agreed by T-Mobile in writing.

      8.1.3   License/Sublicense Term.  Unless otherwise set forth in an addendum to this Agreement or agreed between the Parties, the term of the license and sublicense granted herein shall be the Term of this Agreement; provided, however, Seller shall not be required to withdraw or destroy Equipment packaging, user manuals, marketing and promotional materials, and other materials relating thereto, that contain T-Mobile Marks and/or DT Marks and which were released to the public prior to termination or expiration of the Agreement.

      8.1.4   Marks Rules and Branding Guidelines.  Seller will comply with all marks rules, branding guidelines and other rules and procedures on use in its use and reproduction of the T-Mobile Marks and the DT Marks. Seller acknowledges and accepts that T-Mobile is itself a sublicensee of the DT Marks and that the grant of a sublicense in the DT Marks is subject to any and all terms and conditions which T-Mobile is required to impose on its sublicensees by Deutsche Telekom ("**DT**") and which have been provided to Seller in writing, which terms and conditions may be revised at any time with notice to Seller in writing.

      8.1.5   Seller acknowledges that it has no rights in or to the T-Mobile Marks and/or the DT Marks except as provided herein and will not acquire any rights in such Marks or expectancy to their use as a result of any use of the Marks by Seller, and that all goodwill arising out of any use of the T-Mobile Marks by, through or under Seller will inure solely to the benefit of T-Mobile, and any use of the DT Marks by, through or under Seller will inure solely to the benefit of Deutsche Telekom AG. Seller further agrees that it has no power or right to and shall not during the term of this Agreement or thereafter (i) attack the title or any rights of T-Mobile and/or DT in or to the T-Mobile Marks and DT Marks, alone or with other elements, (ii) claim any right, title or interest in or to the T-Mobile Marks and DT Marks, alone or with other elements, which is adverse to T-Mobile's or DT's right, title or interest in or to the T-Mobile Marks and DT Marks; or (iii) anywhere register or apply for registration of the T-Mobile Marks and DT Marks, alone or with other elements. At T-Mobile's request, Seller will cooperate, as reasonably necessary, with T-Mobile in connection with T-Mobile's and DT's trademark applications and other filings for the T-Mobile's and/or DT's rights in the T-Mobile Marks and DT register, maintain or otherwise perfect T-Mobile's and/or DT's rights in the T-Mobile Marks and DT

Marks. Following the termination of this Agreement, Seller will immediately discontinue use of any and all T-Mobile Marks and DT Marks (and any other trademarks or service marks which T-Mobile reasonably deems to be confusingly similar thereto) and will promptly destroy, or, at T-Mobile's option, forward to T-Mobile all advertising and promotional materials, displays, order forms, signage, and all other materials that contain any T-Mobile Marks and/or DT Marks. Seller will immediately notify T-Mobile of any infringement, misappropriation or violation of the T-Mobile Marks and/or the DT Marks by itself or its licensors of which it becomes aware. Seller will cure any use of T-Mobile Marks and/or the DT Marks not in compliance with this Agreement or otherwise violative of T-Mobile's and DT's respective Marks within five (5) business days after written notice of such non-compliance. If Seller fails to timely cure, T-Mobile may terminate this Agreement and, in any case, T-Mobile will retain all rights and remedies regarding infringement and dilution of the T-Mobile Marks, DT will retain all rights and remedies regarding infringement and dilution of the DT Marks, including but not limited to the option to bring court proceedings to seek an injunction or other equitable relief to enforce any right, duty or obligation arising in law, equity or otherwise. Notwithstanding the foregoing, this Article 8 shall in no event prevent, prohibit or in any manner affect Seller's right to procure or protect its own trademarks, service marks, trade dress, logos, trade names, domain names, URLs and corporate names, together with all translations, adaptations, derivations, and combinations thereof and including all goodwill associated therewith, and all applications, registrations, and renewals in connection therewith.

8.2     Seller Marks.

8.2.1     License/Sublicense Grant. T-Mobile acknowledges that Seller's marks, along with all intellectual property rights associated therewith, are the property of Seller and/or its affiliates and subsidiaries ("**Seller Marks**"). Subject to the terms and conditions of this Agreement, Seller grants T-Mobile a limited, personal, non-exclusive, non-transferable, non-sublicensable, revocable license to use and reproduce the Seller Marks identified in **Attachment I** hereto and in one or more addenda that may be executed from time to time by Seller, solely in connection with the performance of T-Mobile's obligations under this Agreement or as Seller may expressly authorize in writing from time to time.

8.2.2     Territory. Unless otherwise set forth in an addenda to this Agreement or agreed between the Parties, T-Mobile's use of the Seller Marks shall be limited to the United States, Puerto Rico and the U.S. Virgin Islands. Nothing set forth herein shall be construed as a license and/or sublicense to use any Seller Mark outside the United States, Puerto Rico and the U.S. Virgin Islands.

8.2.3     License/Sublicense Term. Unless otherwise set forth in an addendum to this Agreement or agreed between the Parties, the term of the license and sublicense granted herein shall be the Term of this Agreement.

8.2.4     Marks Rules. T-Mobile will comply with all marks rules, branding guidelines and other rules and procedures on use in its use and reproduction of the Seller Marks. Any violation of this Section 8.2.4 shall constitute infringement of Seller's rights and a material breach of this Agreement.

8.2.5     T-Mobile acknowledges that it has no rights in or to the Seller Marks except as provided herein and will not acquire any rights in such Marks or expectancy to their use as a result of any use of the Marks by T-Mobile, and that all goodwill arising out of any use of the Seller Marks by, through or under T-Mobile will inure solely to the benefit of Seller. Following the termination of this Agreement, T-Mobile will immediately discontinue use of any and all Seller Marks (and any other trademarks or service marks which Seller deems to be confusingly similar thereto). T-Mobile will immediately notify Seller of any infringement, misappropriation or violation of the Seller Marks by itself or its licensors. T-Mobile will cure any use of Seller Marks not in compliance with this

Agreement or otherwise violative of Seller Marks within five (5) business days after written notice of such non-compliance. If T-Mobile fails to timely cure, Seller may terminate this Agreement and, in any case, Seller will retain all rights and remedies regarding infringement and dilution of the Seller Marks including but not limited to the option to bring court proceedings to seek an injunction or other equitable relief to enforce any right, duty or obligation arising in law, equity or otherwise.

   8.3    Miscellaneous.

      8.3.1    Joint Branding. The Parties agree that all Equipment to be sold hereunder shall be co-branded. The location of T-Mobile Marks, DT Marks and Seller Marks on the Equipment, and their approximate size, shall be as reasonably required by T-Mobile, but only to the extent such placement does not result in the exclusion or displacement of Seller Marks. The costs of such branding shall be the responsibility of Seller. If T-Mobile requests Seller to change T-Mobile's designated Mark, Seller shall not be required to ship any Equipment bearing the new Mark sooner than ninety (90) days after Seller first receives T-Mobile's written request for the change. If as a result of T-Mobile's brand change, Seller has excess quantities of Equipment bearing T-Mobile's prior Mark(s), T-Mobile shall reimburse Seller the reasonable costs and expense of removing and discarding (or sending to T-Mobile at T-Mobile's discretion) the existing brand and affixing T-Mobile's new brand subject to T-Mobile's approval.

      8.3.2    Each Party shall obtain advance approval from the other of all advertising that contains any marks of the other. Any violation of this Section 8.3.2 shall constitute infringement by the offending Party and a material breach of this Agreement

      8.3.3    Unless otherwise expressly authorized in writing by T-Mobile, Equipment not purchased by T-Mobile under this Agreement, which contains T-Mobile Marks and/or DT Marks, shall have all such T-Mobile Marks and/or DT Marks removed prior to any sale, use or disposition thereof. Seller agrees to indemnify, defend and hold T-Mobile harmless from any actual damage and expense arising out of Seller's failure to do so.

      8.3.4    The Licenses granted herein is personal to respective licensees, and licensees may not, without the relevant licensor's prior written consent, directly, by operation of law, by merger or otherwise, assign, delegate, sublicense, hypothecate, pledge or transfer the relevant license or any of its rights, sublicenses or obligations related to such license, and any such unapproved assignment, delegation, sublicense, hypothecation, pledge or transfer shall be null and void.

## ARTICLE 9
## MISCELLANEOUS

   9.1       Indemnification.

      9.1.1    Each Party (an **"Indemnifying Party"**) covenants and agrees that it will indemnify, defend and hold harmless the other Party, and its officers, directors, managers, and employees (collectively, the **"Indemnified Parties"**) from and against all claims, demands, assessments, actions, suits, and arbitration or other proceedings (collectively, **"Claim"**), as well as all damages, obligations, fines, liabilities, losses, adjustments, costs and expenses, including specifically, but without limitation, reasonable attorneys' fees and expenses (collectively, **"Costs"**) incurred by any of such Indemnified Parties directly or indirectly, caused by, relating to, based upon, or arising out of any Claims made by any third party and alleging or involving: (a) any breach of representations and warranties of the Indemnifying Party set forth herein and in any schedules, attachments or certificates delivered in connection herewith or therewith; (b) any breach or non-fulfillment of any covenant or

obligation on the part of the Indemnifying Party under this Agreement, or (c) any negligent or intentional misconduct on the part of the Indemnifying Party. For purposes of this Section 9.1, third parties shall include agents and employees of a Party and its Affiliates, but shall not include the Parties and their Affiliates as corporate entities.

9.1.2    Without limiting the generality of Section 9.1.l, Seller shall indemnify, defend, and hold harmless T-Mobile and the T-Mobile Indemnified Parties from and against any and all Claims and Costs incurred by T-Mobile or any of the other T-Mobile Indemnified Parties directly or indirectly, caused by, relating to, based upon, or arising out of any Claim made by any third party arising out of or relating to the manufacture, testing, function, design, defects, intended use or proper operation of the Equipment, including Claims and Costs for personal or bodily injury (including death), latent injury (including without limitation, cellular damage or cellular changes) or damage to or destruction of property arising out of or relating to the manufacture, testing, function, design, defects, intended use or operation of the Equipment (excluding end user data).  The indemnification obligations provided under this Section 9.1.2 do not extend to any Claim based upon alleged death or bodily injury to the extent caused by the Equipment: (1) being materially altered by T-Mobile without Seller's authorization or reasonable contemplation if the alleged death or bodily injury would not have occurred but for such alteration, (2) being combined with any products or services not furnished, authorized, or reasonably contemplated by Seller or T-Mobile if the alleged death or bodily injury would not have occurred but for such combination, or (3) which would have been avoided had the Indemnified Parties used a replacement or modified item or an update or Software release which was provided by the Indemnifying Party to Indemnified Parties specifically to avoid bodily injury claim and accompanied by a written notice indicating such risk of potential injury; provided, however, any such update or release remains subject to defined testing, validation and approval processes as set forth in this Agreement.    These limitations shall not be construed to limit Seller's indemnity obligations under this Section 9.1.2 where the Equipment was altered, combined, or otherwise used in a manner reasonably contemplated by Seller or T-Mobile.

9.1.3    Without limiting the generality of Section 9.1.1, Seller agrees to indemnify, defend, and hold harmless T-Mobile and the other T-Mobile Indemnified Parties from and against any Claims and Costs incurred by T-Mobile or any of the T-Mobile Indemnified Parties directly or indirectly, caused by, based upon, arising out of or relating to any Claim made by any third party alleging that any Equipment misappropriates, infringes or otherwise violates the copyright, trademark, trade secret, patent or other intellectual property or proprietary right (collectively, **"Third Party Intellectual Property Rights"**) of any third party.  In the event of any such Claim and without limiting Seller's indemnification, defense and hold harmless obligations, Seller shall, upon T-Mobile's reasonable demand and at no expense to T-Mobile or any of the other T-Mobile Indemnified, (a) obtain for T-Mobile the right to use the Equipment free from any Claim of infringement, or (b) modify the Equipment or substitute an equivalent item of Equipment acceptable to T-Mobile and extend these indemnity, defense and hold harmless obligations thereto, so that it does not infringe, in either case without reduction of functionality.  If Seller cannot obtain relief in parts (a) or (b) after using commercially reasonable efforts, and without limiting Seller's indemnification, defense and hold harmless obligations, Seller shall accept the return of the Equipment and reimburse T-Mobile the Purchase Price thereof (plus shipping and handling and any repackaging cost) for all alleged infringing Equipment that remains in T-Mobile's inventory.  With respect to affected Equipment that has previously been shipped to T-Mobile and that is not in T-Mobile's inventory, Seller shall accept the return of such Equipment and reimburse T-Mobile the depreciated Purchase Price thereof, based on a three (3) year depreciation schedule, plus shipping cost.  Under no circumstances shall T-Mobile be required to continue to purchase or Seller be required to produce and sell any Equipment hereunder where the sale or use of which has been enjoined. The indemnity provided under this Section 9.1.3 does not extend to any Claim based upon infringement or alleged infringement to the extent caused by the

Equipment: (1) being materially altered by T-Mobile or any third party on T-Mobile's behalf without Seller's authorization if the alleged infringement would not have occurred but for such unauthorized alteration; (2) being combined with any products or services not furnished, authorized, or reasonably contemplated by Seller or T-Mobile if the alleged infringement would not have occurred but for such combination; (3) which would have been avoided had the Indemnifying Party used a replacement or modified item or an update or Software release which was provided by the Indemnifying Party to Indemnified Parties specifically to avoid an infringement claim and accompanied by a written notice indicating such risk of potential infringement; provided, however, any such update or release remains subject to defined testing, validation and approval processes as set forth in this Agreement; or (4) settled by the Indemnified Parties without the Indemnifying Party's prior written consent. These limitations shall not be construed to limit Seller's indemnity obligations under this Section 9.1.3 where the Equipment was altered, combined, or otherwise used in a manner reasonably contemplated by Seller or T-Mobile.

9.1.4    Conditions to Indemnification.    The Indemnifying Party's obligation to indemnify, defend and hold harmless is subject to the conditions set forth in Sections 9.1.4 and 9.1.5. The Indemnifying Party shall be given prompt notice in writing of any such Claims, and, except as otherwise provided herein, shall be given sole control of and all requested and reasonable assistance (at the Indemnifying Party's cost) for the defense of such Claims (with counsel reasonably satisfactory to Indemnified Parties); provided, however, the Indemnifying Party will provide the Indemnified Party(ies) with reasonable communication on status and progress of such defense. The Indemnified Parties shall under no circumstances be required to admit liability. Any delay in notification shall not relieve the Indemnifying Party of its obligations hereunder except to the extent that the delay prejudices its ability reasonably to defend any such Claim(s). The Indemnifying Party shall advise the indemnified Parties within thirty (30) days of receiving notice whether it accepts the Indemnified Party's tender of the Claim, the identity of the counsel it proposes to retain to defend such Claim, and of any reservation of its rights with regard to its obligation hereunder to indemnify, defend and hold harmless the Indemnified Parties. The Indemnified Parties shall advise the Indemnifying Parties of any objection to the proposed retained counsel within thirty (30) days after such notice.   Without limiting the foregoing, the Indemnified Parties may participate in and employ separate counsel in connection with the defense of any Claim. The fees and expenses of the Indemnified Party's separate counsel retained to participate in the defense of any claim will be at the expense of the Indemnified Party unless: (i) the employment of counsel by the Indemnified Party has been authorized by the Indemnifying Party; (ii) the Indemnified Parties reasonably conclude that the Indemnifying Party and Indemnified Parties have conflicting interests or different defenses available with respect to such Claim (in which case the Indemnifying Party will not have the right to control or direct the defense of the action on behalf of the Indemnified Party); or (iii) the Indemnifying Party has not in fact employed acceptable counsel to assume the defense of the Claim and otherwise adequately responded to the defense of the Claim within a reasonable time following receipt of the written notice given pursuant to this Section, in each of which cases the fees and expenses of such separate counsel shall be considered Costs that are to be reimbursed by the Indemnifying Party under this Agreement.   For purposes of this section, conflicting interest shall include, but not be limited to, the reservation of any rights as to indemnification asserted by the Indemnifying Party. Without limiting the foregoing, if the Indemnifying Party accepts the Indemnified Party's tender of the defense of a Claim, or is otherwise obligated to defend the Claim, ("**Covered Claim**"), the Indemnifying Party shall reimburse the Indemnified Party and otherwise be responsible for all Costs incurred by the Indemnified Party in connection with the defense of a Covered Claim until such time that the Indemnifying Party has adequately assumed the defense of the claim unless such Costs were incurred due the lack of prompt written notice of the Claim to the Indemnifying Party. The Indemnifying Party will have adequately assumed the defense of the Claim upon (a) offering counsel without a conflict of interest that is reasonably acceptable to the Indemnified Party, (b) agreeing to reimburse Indemnified Party for prior Costs incurred in defense of the Claim (subject to conditions set

forth in this Section 9.1.5), and (c) agreeing to reimburse Indemnified Party for Costs arising from separate counsel in accordance with this Agreement (subject to conditions set forth in this Section 9.1.5). The Indemnifying Party shall pay 1.5 percent interest per month on any amounts that remain unpaid 60 days after the tender of the Claim to the Indemnifying Party.  The Indemnifying Party shall keep Indemnified Parties advised of the status of the Claims and the defense thereof and shall consider in good faith recommendations made by the Indemnified Parties with respect thereto. Notwithstanding any other provision of this Agreement, the Indemnifying Party shall not have the right to control the defense or settlement of any Claim unless (a) it has accepted without reservation of rights the obligation to indemnify, defend, and hold harmless the Indemnified Party from and against any third party Claim or other loss arising from a lawsuit in which such Claim has been asserted , (b) there are not conflicting interests between the Indemnifying Party and the indemnifying, and (c) the Claim does involve multi-party indemnification covered by Section 9.1.5.

9.1.5    Multi-party Indemnification.  In the event the Claim against the Indemnified Party would implicate potential indemnification by third parties not party to this Agreement, Indemnified Parties shall notify the Indemnifying Party if it reasonably believes that other parties who are not party to this Agreement may have an obligation to indemnify, defend or hold harmless the Indemnified Parties for the Claim or part of the Claim.  Potential indemnification by third parties shall not relieve or diminish Indemnifying Party's obligation to indemnify, defend and hold harmless the Indemnified Parties.  The Parties may elect to negotiate a Defense Cost Sharing Agreement that will govern the allocation of defense costs during the defense of the Claim and the control of the defense. Until the Parties have reached a written Defense Cost Sharing Agreement, the Indemnifying Party shall remain responsible for all reasonable attorneys' fees and costs incurred in the defense of the Claim. Until the Parties have reached a written Defense Cost Sharing Agreement or if the Parties are unable to reach a written Defense Cost Sharing Agreement, the allocation of defense costs shall (a) be within the sole and absolute discretion of the Indemnified Parties acting reasonably during the defense of the Claim, and (b) upon conclusion of the defense of the Claim be subject to the dispute resolution procedures of Section 9.27.  Where multiple parties have a contractual right to control the defense of the Claim, the Defense Cost Sharing Agreement shall include provisions addressing the following: (a) the Indemnifying Party shall have the right to control the settlement of any Claim to the extent it alleges infringement or other intellectual property violations of the Equipment provided by that Indemnifying Party, (b) Indemnified Parties shall not compromise the Claim as it relates to Indemnifying Party's equipment without the written consent of Indemnifying Party, (c) counsel retained by the Indemnified Party shall act as lead counsel, shall coordinate the defense of the Indemnified Party, shall notify counsel retained by Indemnifying Party of all material developments in the case, and shall consult with such counsel regarding the defense of the case, and (d) in the event of a conflict of strategy among counsel defending the Claim, the Indemnified Party will determine the direction of the defense  through the separate counsel retained by the Indemnified Party.

9.1.6    T-Mobile Indemnity.  Only to the extent that T-Mobile has supplied (and Seller has incorporated) for incorporation by Seller into the Equipment any T-Mobile-owned Intellectual Property Right for incorporation by Seller into the Equipment or Deliverables, T-Mobile will indemnify and hold harmless Seller, its officers, directors, managers, employee, from and against any and all Claims and Costs incurred by Seller or any of the directly or indirectly, caused by, relating to, based upon, or arising out of any Claim made by any third party alleging that any such T-Mobile-owned Intellectual Property Right misappropriates, infringes or otherwise violates the Third Party Intellectual Property Rights of any third party, subject to conditions set forth in Section 9.1.4.  The indemnity provided under this Section 9.1.6 does not extend to any Claim based upon infringement or alleged infringement to the extent caused by the Equipment: (1) being materially altered by Seller or any third party on Seller's behalf without T-Mobile's authorization if the alleged infringement would not have occurred but for such unauthorized alteration; (2) being combined with any products or services not

furnished, authorized, or reasonably contemplated by Seller or T-Mobile if the alleged infringement would not have occurred but for such combination; (3) which would have been avoided had the Indemnifying Party used a replacement or modified item or an update or Software release which was provided by the Indemnifying Party to Indemnified Parties specifically to avoid an infringement claim and accompanied by a written notice indicating such risk of potential infringement; provided, however, any such update or release remains subject to defined testing, validation and approval processes as set forth in this Agreement; or (4) settled by the Indemnified Parties without the Indemnifying Party's prior written consent.

9.2     Injunction Prohibiting Use.  If the use, sale, importation, or technical support of any Equipment furnished hereunder is enjoined as a result of any suit or governmental order or regulation and without limiting Seller's indemnification, defense and hold harmless obligations, Seller shall, at no expense to T-Mobile or any of the other T-Mobile Indemnified Parties, and at its sole discretion, either (a) obtain for T-Mobile the right to use, sell or re-sell said items as well as the right for T-Mobile or any of the other T-Mobile Indemnified Parties to continue to receive technical support from Seller or an alternate source of technical support that is acceptable to T-Mobile or (b) modify the Equipment or substitute an equivalent item of Equipment acceptable to T-Mobile and extend these indemnity, defense and hold harmless obligations thereto, in either case without material reduction of functionality.  If (a) or (b) cannot be attained, within a reasonable time not to exceed thirty (30) days from issuance of the injunction despite Seller's commercially reasonable best efforts, without limiting Seller's indemnification, defense and hold harmless obligations, Seller shall accept the return of the enjoined Equipment and reimburse T-Mobile the depreciated Purchase Price thereof (plus shipping and handling and any repackaging cost) for all such Equipment that remains in T-Mobile's inventory (e.g. in T-Mobile's distribution center and direct and indirect retail outlets, provided that with respect to indirect retail outlets, such injunction is also imposed on such indirect dealers or partners).  With respect to enjoined Equipment that has previously been shipped to T-Mobile and that is not in T-Mobile's inventory (e.g. in the hands of a customer) the use of which is also subject to such injunction, Seller shall accept the return of such Equipment and reimburse T-Mobile the depreciated Purchase Price thereof, based on a three (3) year depreciation schedule, plus shipping cost.  Under no circumstances shall T-Mobile be required to continue to purchase any Equipment hereunder the sale or use of which has been enjoined.

9.3     Software.  Seller hereby grants T-Mobile and its customers a nonexclusive, perpetual, non-terminable (except as expressly set forth in the customer license accompanying any Equipment or Software with respect to T-Mobile customers or T-Mobile's material breach of this Agreement and T-Mobile has failed to cure such breach as set forth in Section 4.1 ), worldwide, royalty-free, fully-paid right and license either derived from Seller's licensing arrangements with its suppliers or directly from Seller, as the case may be, to use and distribute all software associated with all Equipment delivered to T-Mobile for, and in connection with, compliance with the terms of this Agreement and T-Mobile agrees not to use such Software except in performance of this Agreement.

9.4     Confidential Information.

9.4.1     The Parties acknowledge that each may be given access to certain confidential, proprietary or secret information and material relating to or owned by the other, including but not limited to financial information, pricing information, supplier lists, customer lists, files and other information regarding individual customers, and information regarding that Party's business, organization and operations, business information, such as operations, planning, marketing interests, products and services, ) technical information, such as research, development, procedures, algorithms, data, designs, and know-how, any and all intellectual property, including without limitation, patents, copyrights, and trade secrets (collectively, **"Confidential Information"**) in the course of the performance under this Agreement.  For the avoidance of doubt, the T-Mobile Technology and T-

Mobile Materials are Confidential Information of T-Mobile. Confidential Information shall be the sole and exclusive property of the provider of such information or its licensors, and each Party agrees not to use such Confidential Information except in performance of this Agreement and that during the Term of this Agreement and at all times thereafter the receiving Party will not disclose such Confidential Information, or the terms of this Agreement, to any governmental agency, person, entity, firm or corporation (other than its Affiliates) without the explicit prior written consent of the other. This Section shall not apply to any information (a) previously known to either Party free of any obligation to keep it confidential; (b) that has been or which becomes publicly known, through no wrongful act of either Party; (c) which is rightfully received from a third party who is under no obligation of confidence to either Party; or (d) which is independently developed by the receiving Party without resort to information that has been disclosed pursuant to this Agreement. This Section shall also not apply to information which is disclosed: (e) as part of due diligence related to a potential purchase or change in control of a Party provided such disclosure is governed by a non-disclosure agreement, (f) if required to be disclosed in order to comply with applicable law or regulation (including, without limitation, SEC compliance) or (g) with any requirement imposed by judicial or administrative process or any governmental or court order, provided however that the Party making such disclosure pursuant to (f) or (g) must provide notice to the other Party, to the extent possible, at the earliest practicable time prior to such disclosure. Notwithstanding the foregoing, each Party acknowledges and represents that, in its judgment, this Agreement is not material to it within the definition of materiality under applicable securities and other laws and regulations and is not subject to any filing, reporting or any other disclosure requirements applicable to it under such laws and regulations.

9.4.2    The Parties agree that this Agreement shall be deemed to be Confidential Information and subject to the provisions set forth in Section 8.5.1, above.

9.4.3    In the event the receiving Party is required by law, regulation or court order to disclose any of the other Party's Confidential Information, the receiving Party will promptly notify the disclosing Party in writing prior to making any such disclosure in order to facilitate disclosing Party seeking a protective order or other appropriate remedy from the proper authority. The receiving Party agrees to reasonably cooperate with the disclosing Party, at the disclosing Party's expense, in seeking such order or other remedy. The receiving Party further agrees that if disclosing Party is not successful in precluding the requesting legal body from requiring the disclosure of the Confidential Information, it will furnish only that portion of the Confidential Information that is legally required and will exercise all reasonable efforts to obtain reliable assurances that confidential treatment will be accorded the Confidential Information.

9.4.4    In the event that either Party breaches the provisions of this Section 8.5, the other Party is likely to suffer irreparable injuries for which monetary damages will be insufficient. Therefore, in addition to any other remedies provided at law, equity, statute or this Agreement, the non-breaching Party will be entitled to seek injunctive relief, including, without limitation, specific performance of the breaching Party's obligations, without the requirement for the posting of a bond or other comparable security. This Section shall survive any termination of this Agreement.

9.4.5    <u>Return of Materials</u>. Upon termination or expiration of this Agreement and unless expressly set forth otherwise in a separate written agreement between the Parties, each Party will, within thirty (30) days, return to the other Party all copies in its possession or under its control of any Confidential Information of such other Party. Each Party will take all necessary steps to ensure that electronic copies of such the Party's Confidential Information is not retained by such Party or its agents, employees, or permitted contractors. Upon request, each Party will provide a declaration signed by an officer attesting that all copies of the other Party's Confidential Information and related materials have been returned by the other Party or destroyed.

9.5     Publicity.  Except as otherwise set forth in Article 8, each Party agrees to submit to the other for its prior written approval, all press releases, and publicity matters related to this Agreement (including without limitation, in the case of Seller but not T-Mobile, suggested retail prices for Equipment) or which otherwise reference the other Party hereto or their business operations, products or services.  Seller agrees to submit to T-Mobile for T-Mobile's prior written approval, all advertising prior to the release thereof, wherein T-Mobile's name or names are mentioned or language, signs, markings or symbols are used from which the connection of T-Mobile's name or names therewith may, in T-Mobile's judgment, be reasonably inferred or implied.

9.6     Relationship of Parties.  Seller shall have no right, power, or authority to make any representations or warranties regarding the telecommunications service or the services provided by T-Mobile hereunder except as expressly directed in writing and in advance by T-Mobile.  The Parties will act solely as independent contractors to each other in performing this Agreement, and nothing herein will be construed at any time to create the relationship of employer and employee, partnership, or joint venture between T-Mobile and Seller, or between T-Mobile's and Seller's officers, directors, employees, or agents.  Neither Party nor and its employees, agents, and subcontractors will have the right or authority to act for the other Party, and will not attempt to enter into any contract, commitment, or agreement, or incur any debt or liability, of any nature, in the name of or on behalf of the other Party.

9.7     Audits.  T-Mobile, or its agent, shall have the right to visit the premises of Seller, the manufacturer of the Equipment and any subcontractors or suppliers under contract with Seller for the components of the Equipment and to inspect, at T-Mobile's option, any and all raw materials, work in progress, or finished goods to be incorporated into the Equipment with regard to material, design, quality of workmanship and progress of the work; but such inspection shall not diminish any of Seller's obligations or warranties hereunder.  Such right to inspect is subject to T-Mobile giving seventy-two (72) hours prior written notice to Seller and is conducted during Seller's normal business hours and in such manner as not to interfere with normal business activities.

9.8     Time of Essence.  Time is of the essence with respect to any obligations to be performed hereunder.

9.9     Re-Sale by T-Mobile.  Subject to the express terms of this Agreement, T-Mobile shall have the right to resell the Equipment in the Territory upon such prices, terms, and conditions as determined by T-Mobile in its sole discretion.

9.10    Notices.  All notices and other communications required by this Agreement shall be given in writing and shall be deemed to have been duly given and effective (i) upon receipt if delivered in person, (ii) one day after deposit prepaid with a national overnight express delivery service, or (iii) five (5) days after deposit in the United States mail (registered or certified mail, postage prepaid, return receipt requested):

### T-Mobile

Vice President, Supply Chain Operations
T-Mobile USA, Inc.
12920 SE 38th Street
Bellevue, WA  98006

*with copies to*:

Deputy General Counsel
T-Mobile USA, Inc.
12920 SE 38th Street
Bellevue, WA 98006

*For purposes of billing and accounting remittance, please use:*

T-Mobile
Accounts Payable
PO BOX: 52690
Bellevue, WA 98015-2690

**Seller**

Jon Parrette
VP of Sales
North America Region
Wireless and Wireline Device Division
Huawei Technologies (USA)
10180 Telesis Ct., Suite 220
San Diego, CA 92121

*with a copy to*:
Charles J. Walters
Division Counsel
Huawei Technologies (USA)
10180 Telesis Ct., Suite 220
San Diego, CA 92121

9.11     Governing Law, Venue, and Jurisdiction. This Agreement and the rights and obligations of the Parties hereunder shall be construed and enforced in accordance with and shall be governed by the laws of the State of Washington, without regard to conflict of law or choice of law principles and notwithstanding the location of Seller's manufacturing or other facilities, the Delivery Location(s), or the location of the Parties. This Agreement will not be governed by the United Nations Convention on Contracts for the International Sale of Goods, the application of which is expressly disclaimed. Seller and T-Mobile hereby submit to exclusive venue, and personal and subject matter jurisdiction of any state court sitting in King County, Washington or any federal district court for the district in which such county is located, without regard to conflicts of law or choice of law principles.

9.12     Attorneys' Fees. If any Party to this Agreement commences litigation to enforce or construe any provision of this Agreement, the prevailing Party shall, in addition to other remedies, be entitled to recover its reasonable attorneys' fees and actual costs in such litigation and any appeal therefrom.

9.13     Assignability. T-Mobile may assign this Agreement to any Affiliate by giving notice to Seller, and to any other third party with Seller's prior written consent, which consent will not be

*Execution Copy*

unreasonably withheld or delayed.  The term **"Affiliate"** means any entity of which a Party owns at least fifteen percent (15%), a Party controls, controls a Party, or which are under common control with, or is a significant investor of or significant joint venture or wholesale partner with T-Mobile. The foregoing definition of Affiliate will also specifically include those entities with which T-Mobile has entered into an agreement to purchase all, or substantially all, of the relevant business, assets, or equity of the entity. Seller may assign this Agreement to any Seller Affiliate who is not a competitor of T-Mobile, as determined by T-Mobile, by giving notice to T-Mobile, and to any Seller Affiliate who is a competitor of T-Mobile, as determined by T-Mobile, or to any other third party with T-Mobile's prior written consent, such consent not to be unreasonably withheld or delayed. The term **"Seller Affiliate"** means any entity which Seller controls, controls Seller, or which are under common control with Seller, where **"control"** means direct or indirect ownership of at least fifty percent (50%) of the voting power of the shares or other securities for election of directors (or other managing authority) of the controlled or commonly controlled entity. Any attempted assignment or delegation which is in violation of this Section will be void and of no force or effect.  This Agreement will be binding upon the heirs, executors, administrators, successors and permitted assigns of the Parties, including, without limitation, those arising from merger, consolidation, sale of assets or otherwise, if not otherwise prohibited by this Agreement.

9.14    <u>Severability</u>.  If any term of this Agreement or the application thereof to any person, entity or circumstance shall at any time or to any extent be determined to be invalid or unenforceable under any provision of applicable law, to the full extent the applicable law may be waived, it is hereby waived. To the extent such law cannot be waived, the invalid or unenforceable term shall be replaced by a valid term which comes closest to the intentions of the Parties to this Agreement.  In case such replacement term cannot be agreed upon by the Parties, the invalidity of the term in question shall not affect the validity of any other term or this Agreement as a whole, unless the invalid term is of such essential importance that it can be reasonably assumed that the Parties would not have entered into this Agreement without the invalid term.

9.15    <u>Entire Agreement</u>.  This Agreement, including all exhibits and attachments hereto, sets forth the entire understanding between the Parties with respect to the subject matter hereof, and revokes, replaces and supersedes all prior or contemporaneous understandings, communications or agreements, whether written or oral, regarding such subject matter. For the avoidance of doubt, this Agreement will not circumvent, supplant, or modify the Parties' respective rights and obligations relating to transactions that occurred by and between Seller and T-Mobile prior to the Effective Date.

9.16    <u>Amendments</u>.  This Agreement may not be amended, modified or supplemented except by a writing executed by both Parties. As to T-Mobile, only a Vice President or higher shall have the authority to enter into or to amend this Agreement.  Any purported agreement or amendment signed without such authority shall be void and of no effect.

9.17    <u>Waivers</u>.  Any waiver by either Party of any breach of a term or provision of this Agreement must be in writing and will not be construed as a waiver of any subsequent breach of such term or provision or of any other term or provision. No delay or omission in the exercise of any power, remedy or right herein provided or otherwise available to a Party shall impair or affect the right of such Party thereafter to exercise the same. Any extension of time or other indulgence granted to another Party hereunder shall not otherwise alter or affect any power, remedy or right of any other Party; or the obligations of the Party to whom such extension or indulgence is granted.

9.18    <u>Survival</u>.  Any term of this Agreement which by its express terms or by its nature extends beyond expiration or termination of this Agreement shall survive any such expiration or termination and remain in effect until fulfilled and shall apply to respective successors and assigns.

9.19    <u>Attachments and Exhibits</u>.  The attachments and exhibits hereto constitute a part of this Agreement.

9.20    <u>Interpretation</u>.  Each of the Parties to this Agreement have participated in the negotiation and drafting hereof.  Accordingly, it is understood and agreed that the general rule that ambiguities are to be construed against the drafter shall not apply to this Agreement, and no presumptions made or inferences drawn because of the inclusion of a term not contained in a prior draft or the deletion of a term contained in a prior draft.

9.21    <u>Authority</u>.  Each Party hereto warrants that it has the authority to enter into this Agreement, and the signatories, by executing this Agreement, warrant that they have the authority to bind the respective Parties.

9.22    <u>Additional Documents or Acts</u>.  The Parties hereby agree for themselves and their successors and assigns to execute any documents and perform any acts that may be necessary and proper to carry on the express purposes of this Agreement or of any document furnished pursuant to this Agreement.

9.23    **<u>Force Majeure.</u>**  Neither Party will be deemed to be in default of or to have breached any provision of this Agreement as a result of any delay, failure in performance or interruption of service, resulting directly or indirectly from acts of God, acts of civil or military authorities, civil disturbances, wars, acts of terrorism, fires, failure of equipment and/or software, other catastrophes or any other occurrences which are beyond such Party's reasonable control.

9.24    <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

9.25    <u>Facsimiles and Scans</u>.  For purposes hereof, a facsimile or scanned copy of this Agreement, including the signature pages hereto, shall be deemed to be an original.  Notwithstanding the foregoing, the Parties shall deliver original execution copies of this Agreement to one another immediately after execution thereof.

9.26    <u>Export</u>.  The Parties agree to comply with all applicable international and national laws (including the U.S. Export Administration Regulations, as well as customer, end-use and destination restrictions issued by U.S. and other governments) that apply to the T-Mobile Technology or any Confidential Information, directly or indirectly.

*Execution Copy*

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the day and year first above written.

**T-MOBILE USA, INC.**

By: _____

Its: _____

Print: _____

**SELLER** *Futurewei Technologies, Inc. d/b/a Huawei Technologies (USA)*

By: _____

Its: _____

Print: *Karen Yu*



*Execution Copy*

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the day and year first above written.

T-MOBILE USA, INC.

By: _____

Its: _____ Scott T. Searle

Print: _____ VP

T-Mobile Legal Approval By:

K.E. Love
Senior Corporate Counsel

SELLER  Futurewei Technologies. Inc d/b/a Huawei Technologies (USA)

By: _____

Its: _____ EVP & COO

Print: _____ Karen Yu

# EXHIBIT B

1
2
3
4
5
6
7
8
9
10                                                        THE HONORABLE RICHARD A. JONES
11
12                              UNITED STATES DISTRICT COURT
13                      WESTERN DISTRICT OF WASHINGTON AT SEATTLE
14

15  T-MOBILE USA, INC., a Delaware
16  corporation,                                          NO.  2:14-cv-01351-RAJ
17
18                        Plaintiff,                      **DEFENDANT HUAWEI DEVICE**
19                                                        **USA, INC.'S SUPPLEMENTAL**
20           v.                                           **RESPONSES AND OBJECTIONS**
21                                                        **TO PLAINTIFF T-MOBILE,**
22  HUAWEI DEVICE USA, INC., a Texas                      **INC.'S REQUESTS FOR**
23  corporation; and HUAWEI TECHNOLOGIES                  **ADMISSION NOS. 7, 9, AND 11**
24  CO., LTD., a China company,
25
26                        Defendants.
27

28
29          Defendant Huawei Device USA, Inc. ("Huawei USA") hereby submits its Supplemental
30
31  Responses and Objections to Plaintiff T-Mobile, Inc.'s ("T-Mobile") Requests for Admission
32
33  Nos. 7, 9, and 11 to Defendant Huawei Device USA, Inc. (the "Requests").
34
35                              **PRELIMINARY STATEMENT**
36
37          Huawei USA has not yet completed its investigation of the facts of this case, search for
38
39  relevant documents, or preparation for trial.   The responses and objections to the Requests
40
41  provided herein are based on information now known to Huawei USA, following a reasonable
42
43
44
45

DEFENDANT HUAWEI DEVICE USA, INC.'S                 **GORDON TILDEN THOMAS & CORDELL LLP**
SUPPLEMENTAL RESPONSES AND OBJECTIONS                      1001 Fourth Avenue, Suite 4000
TO PLAINTIFF  T-MOBILE, INC.'S REQUESTS FOR                      Seattle, WA  98154
ADMISSION NOS. 7, 9, AND 11 - 1                              Phone (206) 467-6477
No. 2:14-cv-01351-RAJ                                         Fax (206) 467-6292

preliminary investigation.  Huawei USA reserves the right to amend, modify or supplement its responses as it learns of new information.

## OBJECTIONS AND RESPONSES TO SPECIFIC REQUESTS

**REQUEST FOR ADMISSION NO. 7**

Admit that Exhibit A is an authentic copy of the 2010 Handset and Accessory Supply Agreement between T-Mobile and Huawei.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  Subject to and without waiving any of its objections, Huawei USA states that pages 1 through 3 of Exhibit A appear to be an internal T-Mobile document.  Huawei USA assumes that these pages were inadvertently included as part of Exhibit A and denies Request No. 7 as it relates to those three pages.  The remainder of Exhibit A, pages 4 through 220, is the Handset and Accessory Supply Agreement between T-Mobile and Futurewei Technologies, Inc. d/b/a Huawei Technologies (USA), which was subsequently assigned to Huawei Device USA, Inc.  For pages 4 through 220 of Exhibit A, Huawei USA admits Request No. 7.

**REQUEST FOR ADMISSION NO. 9**

Admit that Exhibit B is an authentic copy of the 2012 Mutual Nondisclosure Agreement between T-Mobile and Huawei.

DEFENDANT HUAWEI DEVICE USA, INC.'S
SUPPLEMENTAL RESPONSES AND OBJECTIONS
TO PLAINTIFF  T-MOBILE, INC.'S REQUESTS FOR
ADMISSION NOS. 7, 9, AND 11 - 2
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  Subject to and without waiving any of its objections, Huawei USA denies Request No. 9.

**REQUEST FOR ADMISSION NO. 11**

Admit that Exhibit C is an authentic copy of the 2012 Letter Agreement between T-Mobile and Huawei.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  Subject to and without waiving any of its objections, Huawei USA states that Exhibit C is not a fully executed copy of the 2012 Letter Agreement and, further, that Huawei USA has in its possession a fully executed copy of the Letter Agreement.  Recognizing this, Huawei USA admits Request No. 11.

DEFENDANT HUAWEI DEVICE USA, INC.'S
SUPPLEMENTAL RESPONSES AND OBJECTIONS
TO PLAINTIFF  T-MOBILE, INC.'S REQUESTS FOR
ADMISSION NOS. 7, 9, AND 11 - 3
No. 2:14-cv-01351-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

DATED this 19th day of June, 2015.

**GORDON TILDEN THOMAS & CORDELL** LLP
Attorneys for Defendant Huawei Device USA, Inc.


By   *s/Franklin D. Cordell*
Franklin D. Cordell, WSBA #26392
Jeffrey M. Thomas, WSBA #21175
1001 Fourth Avenue, Suite 4000
Seattle, Washington 98154
Telephone:  (206) 467-6477
Facsimile:   (206) 467-6292
Email:  fcordell@gordontilden.com
Email:  jthomas@gordontilden.com

**STEPTOE & JOHNSON LLP**
Attorneys for Defendant Huawei Device USA, Inc.


By   *s/Timothy C. Bickham*
William F. Abrams*
James F. Hibey*
Timothy C. Bickham*
Jessica I. Rothschild*
1330 Connecticut Avenue NW
Washington, DC 20036
Telephone:  (202) 429-3000
Facsimile:  (202) 429-3902
Email:  jhibey@steptoe.com
Email:  wabrams@steptoe.com
Email:  tbickham@steptoe.com
Email:  jrothschild@steptoe.com
*  *Admitted Pro Hac Vice*

DEFENDANT HUAWEI DEVICE USA, INC.'S
SUPPLEMENTAL RESPONSES AND OBJECTIONS
TO PLAINTIFF  T-MOBILE, INC.'S REQUESTS FOR
ADMISSION NOS. 7, 9, AND 11 - 4
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL** LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 19th day of June 2015, a true and correct copy of Defendant

Huawei Device USA, Inc.'s Supplemental Responses and Objections to Plaintiff T-Mobile's

Requests for Admission Nos. 7, 9, and 11 was sent by electronic mail to the following counsel:


Michael E. Kipling, WSBA #7677
**KIPLING LAW GROUP PLLC**
4464 Fremont Avenue N., Suite 300
Seattle, WA  98103
(206) 545-0345
(206) 545-0350 (fax)
kipling@kiplinglawgroup.com

John Hueston (*Pro Hac Vice*)
jhueston@hueston.com
Alison Plessman (*Pro Hac Vice*)
aplessman@hueston.com
Eric Hayden (*Pro Hac Vice*)
ehayden@hueston.com
**HUESTON HENNIGAN LLP**
523 West 6th Street
Los Angeles, CA  90014
(213) 788-4340

***Counsel for Plaintiff T-Mobile USA, Inc.***


By   _s/Jessica I. Rothschild_
     Jessica I. Rothschild
     Steptoe & Johnson LLP
     *Counsel for Defendant Huawei Device USA, Inc.*

DEFENDANT HUAWEI DEVICE USA, INC.'S
SUPPLEMENTAL RESPONSES AND OBJECTIONS
TO PLAINTIFF  T-MOBILE, INC.'S REQUESTS FOR
ADMISSION NOS. 7, 9, AND 11 - 5
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

EXHIBIT C

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

T-MOBILE USA, INC., a Delaware
corporation,

                Plaintiff,

      v.

HUAWEI DEVICE USA, INC., a Texas
corporation; and HUAWEI TECHNOLOGIES
CO., LTD., a China company,

                Defendants.

NO.  2:14-cv-01351-RAJ

**DEFENDANT HUAWEI
TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES
TO PLAINTIFF T-MOBILE,
INC.'S FIRST SET OF
REQUESTS FOR ADMISSION**

Defendant Huawei Technologies Co., Ltd. ("Huawei Technologies") hereby submits its

Objections and Responses to Plaintiff T-Mobile, Inc.'s ("T-Mobile") First Set of Requests for

Admission to Defendant Huawei Technologies Co., Ltd. (the "Requests").

## PRELIMINARY STATEMENT

Huawei Technologies has not yet completed its investigation of the facts of this case,

search for relevant documents, or preparation for trial.  The responses and objections to the

Requests provided herein are based on information now known to Huawei Technologies,

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 1
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

following a reasonable preliminary investigation.  Huawei Technologies reserves the right to amend, modify or supplement its responses as it learns of new information.

## OBJECTIONS TO DEFINITIONS

Each of the following Objections to Definitions and General Objections is incorporated into each of the specific responses and objections below, as if set forth fully therein.

1.      Huawei Technologies objects to the Requests' Definitions to the extent that they seek to impose on Huawei Technologies obligations that exceed or contradict those imposed by the Federal Rules of Civil Procedure and/or the Local Rules of the Western District of Washington.

2.      Huawei Technologies objects to the definition of "You" and "Your" as overly broad and unduly burdensome due to the size of Huawei Technologies' work force and the scope of its operations.  Huawei Technologies further objects to the definition of "You" and "Your" as overly broad and unduly burdensome to the extent that T-Mobile seeks to impose on Huawei Technologies an obligation to provide information from or about any company other than Huawei Technologies Co., Ltd.  Huawei Technologies will not provide information that is not in its possession, custody, or control.

3.      Huawei Technologies objects to the definition of "Handsets" as vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent that T-Mobile seeks to deploy it to obtain discovery related to "all other consumer electronic devices sold by Huawei" other than mobile phones and tablets.

4.      Huawei Technologies objects to the definition of "Huawei's Testing Process" as vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 2
No: 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

the discovery of admissible evidence to the extent that T-Mobile seeks to deploy it to obtain

discovery unrelated to robotic handset reliability testing.  Huawei Technologies further objects to

the definition of "Huawei's Testing Process" as overly broad and unduly burdensome to the

extent that it seeks information from or about any company other than Huawei Technologies Co.,

Ltd.  Huawei Technologies will not provide information that is not in its possession, custody, or

control.

5.       Huawei Technologies objects to the definition of "Document" as overly broad and

unduly burdensome to the extent that it seeks to impose on Huawei Technologies an obligation

to identify documents in the possession, custody, or control of other entities.

## GENERAL OBJECTIONS

1.       Huawei Technologies objects to the Requests to the extent that they seek

information protected from disclosure by the attorney-client privilege, the work product doctrine,

the common interest doctrine, the joint defense doctrine, settlement immunity or any other

applicable evidentiary privilege or doctrine.  Huawei Technologies will not provide any such

protected information.  To the extent that any information that is properly the subject of any

privilege or protection is inadvertently identified in response to these Requests, such

identification is not intended as, and should not be construed as, a waiver of any such privilege

or protection.  Huawei Technologies will construe the Requests as not seeking information

created by Huawei Technologies or its counsel after the date on which this litigation was

commenced.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 3
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

2.      Huawei Technologies objects to the Requests to the extent that they seek information that is not relevant to the subject matter of this action and/or not reasonably calculated to lead to the discovery of admissible evidence.

3.      Huawei Technologies objects to the Requests to the extent that they seek information not in Huawei Technologies' possession, custody, or control and/or seek to circumvent Rule 45 of the Federal Rules of Civil Procedure by requesting information of persons and entities who are not parties to this lawsuit.  Huawei Technologies' responses will be based solely upon information in its possession, custody, or control.

4.      Huawei Technologies objects to the Requests to the extent that they require an unduly burdensome search for information that has little or no relevance to this lawsuit.  Huawei Technologies further objects to the Requests to the extent that they seek information already in T-Mobile's possession or obtainable by T-Mobile from public sources, including, but not limited to, court dockets and public information services, or to the extent that T-Mobile could compile the requested information from available sources with substantially equal or lesser effort and/or expense than Huawei Technologies.

5.      Huawei Technologies objects to the Requests to the extent that any failure to define the terms used in the Requests makes the Requests vague, ambiguous, overly broad, and/or unduly burdensome.  Huawei Technologies will interpret the terms used in the Requests in a common sense, ordinary, and reasonable fashion.

6.      Huawei Technologies objects to the Requests to the extent that the Requests are not limited to a reasonable time period on the grounds that such Requests are manifestly

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 4
No. 2:14-cv-01351-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

overbroad, call for the production of information that is irrelevant, and impose an undue burden and expense on Huawei Technologies.

7.     Huawei Technologies objects to the Requests to the extent that they seek information the disclosure of which would violate its privacy rights or the privacy rights of third parties.

8.     Huawei Technologies objects to each Request to the extent that it is repetitive of other discovery requests.

9.     These responses are made without in any way waiving or intending to waive: (a) any objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence, for any purpose in any action or proceeding, of any information provided in response to the Requests; and (b) the right to object on any ground to the use, for any purpose in any action or proceeding, of any information provided in response to the Requests.  By supplying information in response to the Requests, Huawei Technologies does not concede, and reserves all objections with respect to, the competency, relevancy, materiality, privilege, or admissibility of such information.

10.     By supplying information in response to the Requests, Huawei Technologies does not adopt any misleading statement, inaccurate assumption or mischaracterization of facts. Huawei Technologies' responses do not constitute an admission that any facts or allegations stated by T-Mobile are true or accurate.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 5
No. 2:14-cv-01351-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

## OBJECTIONS AND RESPONSES TO SPECIFIC REQUESTS

## REQUEST FOR ADMISSION NO. 1

Admit that xDeviceRobot and the T-Mobile Robot are both designed to simulate handset use by a human user.

## RESPONSE:

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to those objections, Huawei Technologies objects that the term "handset" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence to the extent it includes consumer electronic devices other than handset devices tested on robots.

Subject to and without waiving any of its objections, Huawei Technologies states that it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 1.


## REQUEST FOR ADMISSION NO. 2

Admit that xDeviceRobot is designed to conduct tests using the touchscreen of a handset.

## RESPONSE:

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to those objections, Huawei Technologies objects that the term "handset" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence to the extent it includes consumer electronic devices other than handset devices tested on robots.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 6
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

Subject to and without waiving any of its objections, Huawei Technologies admits that, among other things, xDeviceRobot was designed to conduct tests using the touchscreen of a handset.

**REQUEST FOR ADMISSION NO. 3**

Admit that Huawei xDeviceRobot is designed to conduct tests on the battery life of the handset.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to those objections, Huawei Technologies objects that the term "handset" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence to the extent it includes consumer electronic devices other than handset devices tested on robots.

Subject to and without waiving any of its objections, Huawei Technologies admits that, among other things, xDeviceRobot was designed to conduct tests on the battery life of a handset.

**REQUEST FOR ADMISSION NO. 4**

Admit that Huawei xDeviceRobot is designed to conduct software tests to determine how likely a handset is to crash.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to those objections, Huawei Technologies objects that the

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 7
No. 2:14-cv-01351-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

term "handset" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence to the extent it includes consumer electronic devices other than handset devices tested on robots.

Subject to and without waiving any of its objections, Huawei Technologies admits that, among other things, xDeviceRobot was designed to conduct software tests to determine how likely a handset is to crash.

**REQUEST FOR ADMISSION NO. 5**

Admit that Huawei xDeviceRobot is designed to conduct software tests to determine if applications on a handset will fail.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to those objections, Huawei Technologies objects that the term "handset" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence to the extent it includes consumer electronic devices other than handset devices tested on robots.

Subject to and without waiving any of its objections, Huawei Technologies admits that, among other things, xDeviceRobot was designed to conduct software tests to determine if applications on a handset would fail.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 8
NO. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**REQUEST FOR ADMISSION NO. 6**

Admit that Huawei xDeviceRobot is designed to record results of tests using two cameras.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.   Subject to and without waiving any of its objections, Huawei Technologies admits that, among other things, xDeviceRobot was designed to record results of tests using two cameras.

**REQUEST FOR ADMISSION NO. 7**

Admit that Huawei xDeviceRobot is designed to conduct tests on how a handset places phone calls.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.   In addition to those objections, Huawei Technologies objects that the term "handset" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence to the extent it includes consumer electronic devices other than handset devices tested on robots.

Subject to and without waiving any of its objections, Huawei Technologies denies Request No. 7.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 9
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**REQUEST FOR ADMISSION NO. 8**

Admit that Huawei xDeviceRobot is designed to conduct tests on how a handset receives phone calls.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to those objections, Huawei Technologies objects that the term "handset" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence to the extent it includes consumer electronic devices other than handset devices tested on robots.

Subject to and without waiving any of its objections, Huawei Technologies denies Request No. 8.


**REQUEST FOR ADMISSION NO. 9**

Admit that Huawei did not have a Handset testing robot before 2012.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to those objections, Huawei Technologies objects that the term "Handsets" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence to the extent it includes consumer electronic devices other than handset devices tested on robots.  Huawei Technologies also objects that the term "testing robot" is overly broad, vague, unduly burdensome and not

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 10
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

reasonably calculated to lead to the discovery of relevant or admissible evidence to the extent it seeks documents unrelated to robotic handset reliability testing.

Subject to and without waiving any of its objections, Huawei Technologies admits that xDeviceRobot was not complete before January 2012.   To the extent a further response is necessary, Huawei Technologies denies Request No. 9.

## REQUEST FOR ADMISSION NO. 10

Admit that Huawei personnel were not allowed access to T-Mobile's Labs without first receiving authorization from T-Mobile.

## RESPONSE:

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to those objections, Huawei Technologies objects that the failure to define the term "authorization" renders the request vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei Technologies states that it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 10.

## REQUEST FOR ADMISSION NO. 11

Admit that T-Mobile required Huawei employees to go through security clearance before entering T-Mobile's labs.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 11
No. 2:14-cv-01351-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein. In addition to those objections, Huawei Technologies objects that the failure to define the term "security clearance" renders the request vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei Technologies states that it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 11.


**REQUEST FOR ADMISSION NO. 12**

Admit that the 2010 Handset and Accessory Supply Agreement between T-Mobile and Huawei is a valid and enforceable contract.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein. In addition to those objections, Huawei Technologies objects to this request to the extent it seeks a legal conclusion.

Subject to and without waiving any of its objections, Huawei Technologies admits that Huawei Device USA, Inc. is a successor party to the 2010 Handset and Accessory Supply Agreement with T-Mobile. The document speaks for itself. To the extent a further response is necessary, Huawei Technologies denies Request No. 12.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 12
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

**REQUEST FOR ADMISSION NO. 13**

Admit that Exhibit A is an authentic copy of the 2010 Handset and Accessory Supply

Agreement between T-Mobile and Huawei.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions

as if fully set forth herein.   Subject to and without waiving any of its objections, Huawei

Technologies states that pages 1 through 3 of Exhibit A appear to be an internal T-Mobile

document.  Huawei Technologies assumes that these pages were inadvertently included as part of

Exhibit A and denies Request No. 7 as it relates to those three pages.   The remainder of Exhibit

A, pages 4 through 220, is the Handset and Accessory Supply Agreement between T-Mobile and

Futurewei Technologies, Inc. d/b/a Huawei Technologies (USA), which was subsequently

assigned to Huawei Device USA, Inc.   For pages 4 through 220 of Exhibit A, Huawei

Technologies admits Request No. 13.


**REQUEST FOR ADMISSION NO. 14**

Admit that the 2012 Mutual Nondisclosure Agreement between T-Mobile and Huawei is

a valid and enforceable contract.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions

as if fully set forth herein.  In addition to those objections, Huawei Technologies objects to this

request to the extent it seeks a legal conclusion.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 13
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

Subject to and without waiving any of its objections, Huawei Technologies admits that Huawei Device USA, Inc. is a signatory to the 2012 Mutual Nondisclosure Agreement with T-Mobile.  The document speaks for itself.  To the extent a further response is necessary, Huawei Technologies denies Request No. 14.

**REQUEST FOR ADMISSION NO. 15**

Admit that Exhibit B is an authentic copy of the 2012 Mutual Nondisclosure Agreement between T-Mobile and Huawei.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  Subject to and without waiving any of its objections, Huawei Technologies denies Request No. 15.

**REQUEST FOR ADMISSION NO. 16**

Admit that the 2012 Letter Agreement between T-Mobile and Huawei is a valid and enforceable contract.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to those objections, Huawei Technologies objects to this request to the extent it seeks a legal conclusion.

Subject to and without waiving any of its objections, Huawei Technologies admits that Huawei Device USA, Inc. is a signatory to the 2012 Letter Agreement with T-Mobile.  The

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 14
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

document speaks for itself.  To the extent a further response is necessary, Huawei Technologies

denies Request No. 16.

**REQUEST FOR ADMISSION NO. 17**

Admit that Exhibit C is an authentic copy of the 2012 Letter Agreement between T-Mobile and Huawei.

**RESPONSE**:

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  Subject to and without waiving any of its objections, Huawei Technologies states that Exhibit C is not a fully executed copy of the 2012 Letter Agreement and, further, that Huawei Technologies has in its possession a fully executed copy of the Letter Agreement.  Recognizing this, Huawei Technologies admits Request No. 17.

**REQUEST FOR ADMISSION NO. 18**

Admit that the 2012 Letter Agreement between T-Mobile and Huawei prohibits photography in T-Mobile's Labs.

**RESPONSE**:

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  Subject to and without waiving any of its objections, Huawei Technologies states that the 2012 Letter Agreement speaks for itself.  To the extent a further response is necessary, Huawei Technologies denies Request No. 18.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 15
No. 2:14-cv-01351-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**REQUEST FOR ADMISSION NO. 19**

Admit that signs in the T-Mobile Labs state "No Photography."

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein. In addition to these objections, Huawei Technologies objects that the request is not limited to a reasonable time period nor does the request specify which "Labs" possess a sign stating "No Photography," rendering it manifestly overbroad and unduly burdensome.

Subject to and without waiving any of its objections, Huawei Technologies denies Request No. 19.

**REQUEST FOR ADMISSION NO. 20**

Admit that the 2008 Supply Agreement between MetroPCS Wireless, Inc. and Huawei is a valid and enforceable contract.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein. In addition to those objections, Huawei Technologies objects to this request to the extent it seeks a legal conclusion.

Subject to and without waiving any of its objections, Huawei Technologies admits that Huawei Device USA, Inc. is a successor party to the 2008 Supply Agreement with MetroPCS Wireless, Inc. The document speaks for itself. To the extent a further response is necessary, Huawei Technologies denies Request No. 20.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 16
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**REQUEST FOR ADMISSION NO. 21**

Admit that Huawei was not given access to T-Mobile's Robot until it signed the 2012 Nondisclosure Agreement and the 2012 Letter Agreement.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein. In addition to these objections, Huawei Technologies objects to the phrase "given access to" as overly broad, vague and ambiguous, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei Technologies states that it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 21.

**REQUEST FOR ADMISSION NO. 22**

Admit that Huawei sent Yu "Frank" Wang to the United States with the intention that he access T-Mobile's Labs.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein. Subject to and without waiving any of its objections, Huawei Technologies admits that one of the purposes of Yu "Frank" Wang's visit to the United States in May 2013 was to visit T-Mobile's lab. To the extent a further response is necessary, Huawei Technologies denies Request No. 22.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 17
No. 2:14-cv-01351-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

**REQUEST FOR ADMISSION NO. 23**

Admit that Huawei sent Yu "Frank" Wang to the United States with the intention that he learn information about the T-Mobile Robot.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  Subject to and without waiving any of its objections, Huawei Technologies admits that one of the purposes of Yu "Frank" Wang's visit to the United States in May 2013 was to visit T-Mobile's lab.  To the extent a further response is necessary, Huawei Technologies denies Request No. 23.

**REQUEST FOR ADMISSION NO. 24**

Admit that Yu "Frank" Wang had never been to the United States on a business trip prior to May 2013.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to those objections, Huawei Technologies objects that the request is overly broad and unduly burdensome to the extent it is not limited to the period of Yu "Frank" Wang's employment.

Subject to and without waiving any of its objections, Huawei Technologies lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 24.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 18
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**REQUEST FOR ADMISSION NO. 25**

Admit that Yu "Frank" Wang had never been to T-Mobile's Labs prior to May 13, 2013.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  Subject to and without waiving any of its objections, Huawei Technologies admits that Yu "Frank" Wang had never been to T-Mobile's Labs prior to May 13, 2013, on behalf of his employer.  To the extent a further response is necessary, Huawei Technologies denies Request No. 25.

**REQUEST FOR ADMISSION NO. 26**

Admit that Yu "Frank" Wang was not authorized to enter T-Mobile's Labs on May 13, 2013.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  Subject to and without waiving any of its objections, Huawei Technologies admits Request No. 19.

**REQUEST FOR ADMISSION NO. 27**

Admit that Yu "Frank" Wang was told to leave T-Mobile's Labs on May 13, 2013.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 19
NO. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.   Subject to and without waiving any of its objections, Huawei Technologies admits Request No. 27.

**REQUEST FOR ADMISSION NO. 28**

Admit that Yu "Frank" Wang was not authorized to enter T-Mobile's Labs on May 14, 2013.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.   Subject to and without waiving any of its objections, Huawei Technologies denies Request No. 28.

**REQUEST FOR ADMISSION NO. 29**

Admit that Yu "Frank" Wang was told to leave T-Mobile's Labs on May 14, 2013.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.   Subject to and without waiving any of its objections, Huawei Technologies admits Request No. 29.

**REQUEST FOR ADMISSION NO. 30**

Admit that Yu "Frank" Wang took photographs of the T-Mobile Robot on May 14, 2013.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 20
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.   Subject to and without waiving any of its objections, Huawei Technologies admits Request No. 30.

**REQUEST FOR ADMISSION NO. 31**

Admit that Yu "Frank" Wang sent photographs of the T-Mobile Robot to other Huawei employees in China.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.   Subject to and without waiving any of its objections, Huawei Technologies admits Request No. 31.

**REQUEST FOR ADMISSION NO. 32**

Admit that Yu "Frank" Wang reported precise measurements and specifications for the T-Mobile Robot to Huawei employees in China.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.   In addition to these objections, Huawei Technologies objects that the failure to define the phrase "precise measurements and specifications" renders the request vague, ambiguous, overbroad, and unduly burdensome.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 21
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

Subject to and without waiving any of its objections, Huawei Technologies states that it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 32.

**REQUEST FOR ADMISSION NO. 33**

Admit that Xinfu "Adam" Xiong removed an end effector from T-Mobile's Labs without permission on May 29, 2013.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to these objections, Huawei Technologies objects that the failure to define the term "end effector" renders the request vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei Technologies states that, absent a definition of "end effector," it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 33.

**REQUEST FOR ADMISSION NO. 34**

Admit that Xinfu "Adam" Xiong denied taking the end effector when Trey Villanueva asked him if he took the end effector on May 29, 2013.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to these objections, Huawei Technologies objects that the

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 22
NO. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

failure to define the term "end effector" renders the request vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei Technologies states that, absent a definition of "end effector," it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 34.

**REQUEST FOR ADMISSION NO. 35**

Admit that Xinfu "Adam" Xiong took measurements of the end effector that he removed from T-Mobile's Labs.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to these objections, Huawei Technologies objects that the failure to define the term "end effector" renders the request vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei Technologies states that, absent a definition of "end effector," it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 35.

**REQUEST FOR ADMISSION NO. 36**

Admit that Yu "Frank" Wang photographed the end effector Xinfu "Adam" Xiong had removed from T-Mobile's Labs.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 23
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to these objections, Huawei Technologies objects that the failure to define the term "end effector" renders the request vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei Technologies states that, absent a definition of "end effector," it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 36.

**REQUEST FOR ADMISSION NO. 37**

Admit that Yu "Frank" Wang's photograph or photographs of the end effector Xinfu "Adam" Xiong had removed from T-Mobile's Labs contained measurements of the end effector.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to these objections, Huawei Technologies objects that the failure to define the term "end effector" renders the request vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei Technologies states that, absent a definition of "end effector," it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 37.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 24
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**REQUEST FOR ADMISSION NO. 38**

Admit that the dimensions of the end effector measured by Xinfu "Adam" Xiong are not published in any patent or patent application identified in Huawei's Motion to Dismiss.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to these objections, Huawei Technologies objects that the failure to define the term "end effector" renders the request vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei Technologies states that the documents speak for themselves.  To the extent a further response is necessary, Huawei Technologies denies Request No. 38.

**REQUEST FOR ADMISSION NO. 39**

Admit that the apertures of the cameras used with the T-Mobile Robot are not published in any patent or patent application identified in Huawei's Motion to Dismiss.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to these objections, Huawei Technologies objects that the failure to define the term "apertures" renders the request vague, ambiguous, overbroad, and unduly burdensome.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 25
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

Subject to and without waiving any of its objections, Huawei Technologies states that the documents speak for themselves.   To the extent a further response is necessary, Huawei Technologies denies Request No. 39.

**REQUEST FOR ADMISSION NO. 40**

Admit that the material out of which the tip of the end effector on the T-Mobile Robot was made in 2013 is not published in any patent or patent application identified in Huawei's Motion to Dismiss.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.   In addition to these objections, Huawei Technologies objects that the failure to disclose the "material" renders the request vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei Technologies states that the documents speak for themselves.   To the extent a further response is necessary, Huawei Technologies denies Request No. 40.

**REQUEST FOR ADMISSION NO. 41**

Admit that the companies from which T-Mobile buys parts for the T-Mobile Robot are not published in any patent or patent application identified in Huawei's Motion to Dismiss.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 26
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to these objections, Huawei Technologies objects that the failure to disclose the "companies from which T-Mobile buys parts for the T-Mobile Robot" renders the request vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei Technologies states that the documents speak for themselves.   To the extent a further response is necessary, Huawei Technologies denies Request No. 41.


**REQUEST FOR ADMISSION NO. 42**

Admit that Fei "Tom" Duan asked Xinfu "Adam" Xiong to provide measurements of the end effector.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to these objections, Huawei Technologies objects that the failure to define the term "end effector" renders the request vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei Technologies states that, absent a definition of "end effector," it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 42.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 27
No: 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**REQUEST FOR ADMISSION NO. 43**

Admit that in 2013, Huawei's xDeviceRobot could not produce the same testing results as T-Mobile's Robot.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to those objections, Huawei Technologies objects that the failure to define the term "same testing results" renders the request vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei Technologies states that, absent a definition of "same testing results," it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 43.


**REQUEST FOR ADMISSION NO. 44**

Admit that a reason Xinfu "Adam" Xiong provided Huawei with measurements of the end effector was to enable Huawei's XDeviceRobot to produce the same results as T-Mobile's Robot.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to those objections, Huawei Technologies objects that the failure to define the terms "end effector" and "same results" renders the request vague, ambiguous, overbroad, and unduly burdensome.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 28
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

Subject to and without waiving any of its objections, Huawei Technologies states that, absent definitions of "end effector" and "same results," it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 44.

### REQUEST FOR ADMISSION NO. 45

Admit that a Huawei employee attempted to re-activate a T-Mobile security badge on October 23, 2013.

### RESPONSE:

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to those objections, Huawei Technologies objects that the failure to define the term "re-activate" renders the request vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei Technologies states that it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 45.

### REQUEST FOR ADMISSION NO. 46

Admit that Xinfu "Adam" Xiong contacted Northwest Pneumatics in 2013 about building a robot testing platform in the T-Mobile configuration.

### RESPONSE:

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  Subject to and without waiving any of its objections, Huawei

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 29
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

Technologies states that it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 46.

**REQUEST FOR ADMISSION NO. 47**

Admit that a Neutral Expert concluded in 2003 that Huawei misappropriated Cisco's source code.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to those objections, Huawei Technologies objects that the request is vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

Subject to and without waiving any of its objections, Huawei Technologies states that this Request is based on a document, which speaks for itself.  To the extent a further response is necessary, Huawei Technologies denies Request No. 47.

**REQUEST FOR ADMISSION NO. 48**

Admit that since 2011, Huawei's use of the T-Mobile Robot for Handsets sold to T-Mobile has reduced as a percentage reports by customers that those Handsets have defects or malfunctioned.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to those objections, Huawei Technologies objects that the

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 30
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

term "handsets" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence to the extent it includes consumer electronic devices other than handset devices tested on robots.

Subject to and without waiving any of its objections, Huawei Technologies states that it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 48.

**REQUEST FOR ADMISSION NO. 49**

Admit that since 2011, Huawei's use of the T-Mobile Robot for Handsets sold to T-Mobile has reduced annual customer returns for those Handsets due to defective or malfunctioning equipment.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein. In addition to those objections, Huawei Technologies objects that the term "handsets" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence to the extent it includes consumer electronic devices other than handset devices tested on robots.

Subject to and without waiving any of its objections, Huawei Technologies states that it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 49.

**REQUEST FOR ADMISSION NO. 50**

Admit that Huawei disciplined Xinfu "Adam" Xiong in response to his actions in T-Mobile's robot labs.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 31
NO. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.   Subject to and without waiving any of its objections, Huawei Technologies states that, pursuant to Huawei Global Company Business Conduct Guidelines, it was involved in making the disciplinary decision regarding Xinfu "Adam" Xiong but that Huawei Technologies did not execute the decision.   To the extent a further response is necessary, Huawei Technologies denies Request No. 50.

**REQUEST FOR ADMISSION NO. 51**

Admit that Huawei disciplined Yu "Frank" Wang in response to his actions in T-Mobile's robot labs.

**RESPONSE:**

Huawei Technologies incorporates its General Objections and Objections to Definitions as if fully set forth herein.   Subject to and without waiving any of its objections, Huawei Technologies states that, pursuant to Huawei Global Company Business Conduct Guidelines, it was involved in making the disciplinary decision regarding Yu "Frank" Wang but that Huawei Technologies did not execute the decision.   To the extent a further response is necessary, Huawei Technologies denies Request No. 51.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 32
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

DATED this 25th day of August, 2015.

**GORDON TILDEN THOMAS & CORDELL LLP**
Attorneys for Defendant Huawei Technologies Co., Ltd.


By   *s/Franklin D. Cordell*
    Franklin D. Cordell, WSBA #26392
    Jeffrey M. Thomas, WSBA #21175
    1001 Fourth Avenue, Suite 4000
    Seattle, Washington 98154
    Telephone:  (206) 467-6477
    Facsimile:   (206) 467-6292
    Email:  fcordell@gordontilden.com
    Email:  jthomas@gordontilden.com

**STEPTOE & JOHNSON LLP**
Attorneys for Defendant Huawei Technologies Co., Ltd.


By   *s/Timothy C. Bickham*
    William F. Abrams*
    James F. Hibey*
    Timothy C. Bickham*
    Jessica I. Rothschild*
    1330 Connecticut Avenue NW
    Washington, DC 20036
    Telephone:  (202) 429-3000
    Facsimile:  (202) 429-3902
    Email:  jhibey@steptoe.com
    Email:  wabrams@steptoe.com
    Email:  tbickham@steptoe.com
    Email:  jrothschild@steptoe.com
    *  *Admitted Pro Hac Vice*

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 33
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 25th day of August 2015, a true and correct copy of

Defendant Huawei Technologies Co., Ltd.'s Objections and Responses to Plaintiff T-Mobile's

First Set of Requests for Admission was sent by electronic mail to the following counsel:


Michael E. Kipling, WSBA #7677
**KIPLING LAW GROUP PLLC**
4464 Fremont Avenue N., Suite 300
Seattle, WA 98103
(206) 545-0345
(206) 545-0350 (fax)
kipling@kiplinglawgroup.com

John Hueston (*Pro Hac Vice*)
jhueston@hueston.com
Alison Plessman (*Pro Hac Vice*)
aplessman@hueston.com
Eric Hayden (*Pro Hac Vice*)
ehayden@hueston.com
**HUESTON HENNIGAN LLP**
523 West 6th Street
Los Angeles, CA 90014
(213) 788-4340

*Counsel for Plaintiff T-Mobile USA, Inc.*



By   _s/Jessica I. Rothschild_
   Jessica I. Rothschild
   Steptoe & Johnson LLP
   *Counsel for Defendant Huawei Technologies Co., Ltd.*

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 34
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

# EXHIBIT D
# FILED UNDER SEAL

# EXHIBIT E
# FILED UNDER SEAL

# EXHIBIT F

## MUTUAL NONDISCLOSURE AGREEMENT

THIS MUTUAL NONDISCLOSURE AGREEMENT (this "Agreement") is made and entered into as of this __3 1__ day of July, 2012 (the "Effective Date") by and between T-MOBILE USA, Inc., a Delaware corporation formerly known as VoiceStream Wireless Corporation, on behalf of itself, its affiliates, subsidiaries, contract manufacturers, partner companies ("Carrier"), and HUAWEI DEVICE USA, INC., a Texas corporation, on behalf of itself, its parents, affiliates, subsidiaries, contract manufacturers, partner companies and alliances ("Supplier"). Individually, Carrier and Supplier may be referred to as a "Party." Collectively, Carrier and Supplier may be referred to as the Parties.

1.    Express Purposes. The Parties wish to initiate and collaborate in a handset testing protocol which shall include the testing of Supplier's handset and accessories on T-Mobile premises utilizing automated robotic testers, and in connection therewith, each Party may disclose and/or deliver (the "Disclosing Party") to the other party (the "Receiving Party") information that is confidential and/or proprietary that the Receiving Party agrees to treat as confidential.

2.    Confidential Information. "Confidential Information" shall mean any and all information clearly marked and identified as confidential and disclosed to or obtained by the Receiving Party from the Disclosing Party, or a third party acting on the other Party's behalf, that is confidential or proprietary in nature, and without prejudice to the generality of this definition, shall include but not be limited to information disclosed in writing, verbally, electronically, graphically and in any tangible form, in particular, Confidential Information includes drawings, schematics, designs, processes, techniques, product information, proprietary information, prices, customers, suppliers, sales, financial information, strategies, market opportunities, business plans and information, trade secrets, computer programs (source and object code), software documentation, templates and other work-product, formulae, test data, know-how, other works of authorship relating to the Disclosing Party's present or future products, employees, investors or business. Any and all Confidential Information which is disclosed in a verbal manner shall be identified as such and confirmed in writing within thirty (30) days of disclosure. "Confidential Information" does not include information that (a) is generally known to the public at the time of such disclosure or becomes generally known through no wrongful act of the Receiving Party; (b) is in the Receiving Party's possession at the time of such disclosure other than as a result of the Receiving Party's breach of any legal obligations; (c) becomes known to the Receiving Party without obligation of confidence through disclosure by sources other than the Disclosing Party having the legal rights to disclose such Confidential Information; (d) the Disclosing Party agrees in writing may be disclosed by the Receiving Party; or (e) has been independently developed by the Receiving Party.

3.    No Disclosure of Confidential Information. The Receiving Party shall hold in trust and confidence, and shall not disclose to any third party or any person outside its organization, agents, or legal representatives, any Confidential Information. The Receiving Party shall use such Confidential Information only for the purpose of accomplishing the handset testing protocol set forth above and shall not use or exploit such Confidential Information for any other purpose without the prior written consent of the Disclosing Party. The Receiving Party shall disclose Confidential Information only to persons within its organization (or its affiliates) and vendors who have a need to know such Confidential Information in the performance of their duties and who are bound to protect the confidentiality of such Confidential Information, each of whom shall be notified of the restrictions on use and disclosure of Confidential Information. The Receiving Party shall be responsible for any breach of this Agreement by such persons. The Receiving Party shall immediately notify the Disclosing Party in the event of any unauthorized use or disclosure.

4.    Ownership. Each party agrees that the Disclosing Party is and shall remain the exclusive owner of its Confidential Information, including Supplier test case results shared with T-Mobile for PRD test verification purposes, and all patent, copyright, mask work, trade secret, trademark, invention and other intellectual property rights related thereto. No license or conveyance of such rights to the Receiving Party or any third party is granted or implied under this Agreement.

5    Use Restrictions. The Receiving Party agrees (i) to use the Confidential Information solely for the express purpose; and (ii) not to assert any intellectual property right in any software or other invention or derivative information developed using the Confidential Information. The Receiving Party shall not attempt to (i) reverse engineer, decompile, disassemble or reverse translate any Confidential Information provided by the Disclosing Party (ii) attempt to discover the source code of or trade secrets in any such Confidential Information; (iii) circumvent any technological measure that controls access to such Confidential Information; (iv) capture photographs, make drawings or otherwise capture in any fashion the likeness or designs of the test facilities or robots used for testing; and (v) in any way copy any computer programs, source code, object code, or any software documentation, including but not limited to, downloading of files, information or test system software apart from files and information related to test data performed for supplier.

6.    Term. This Agreement shall be effective as of the date set forth above and shall continue for a period of five (5) years from such date. All obligations of confidentiality created by this Agreement shall survive expiration, change or termination of the parties' business relationship for a period of five (5) years from the date of initial disclosure.

Confidential                                                                                      TMHUA00461656

7      No Obligation. Nothing herein shall be deemed to commit or obligate either party to proceed with any transaction or business relationship, and each party reserves the right, in its sole discretion, to terminate the discussions contemplated by this Agreement concerning the testing protocol set forth above.

8.      Return of Materials. All Confidential Information, including all copies thereof, and other tangible objects containing or representing Confidential Information which have been disclosed, are and shall remain the exclusive property of the Disclosing Party. Upon the Disclosing Party's written request, the Receiving Party shall return to the Disclosing Party within thirty (30) days all materials and Confidential Information, including all copies and reproductions thereof, received by the Receiving Party from the Disclosing Party pursuant to this Agreement, or may destroy such Confidential Information and certify its destruction, in writing, within ten (10) days of destruction. T-Mobile may retain for its own benefit all test case results provided by Supplier with respect to the handset testing protocol.

9.      No Warranty. ALL CONFIDENTIAL INFORMATION IS PROVIDED "AS IS". EACH PARTY MAKES NO WARRANTIES, EXPRESS, IMPLIED OR OTHERWISE, REGARDING ITS ACCURACY, COMPLETENESS OR PERFORMANCE.

10.      Compliance with Laws and Import-Export Compliance. Each party shall comply with all applicable federal, state and local laws and regulations in connection with the performance of its rights and obligations under this Agreement. Neither party shall export, directly or indirectly, any technical data acquired from the other party pursuant to this Agreement or any product utilizing any such data to any country for which the Government or any agency thereof at the time of export requires an export license or other governmental approval without first obtaining such license or approval.

11.      Publicity. Except as otherwise required by applicable law, neither party shall issue or cause the issuance of any press release or other publication of the existence of this Agreement or the transactions contemplated hereby, without the prior written consent of the other party.

12.      Remedies. In the event of a breach or threatened breach by any party to this Agreement, the aggrieved party or parties may avail itself of all the appropriate legal and equitable remedies, including but not limited to injunctive relief without the necessity of proving actual damages. The Receiving Party waives any requirement related to securing or posting of a bond in connection with such remedy. The parties acknowledge the Disclosing Party's legal remedies may be inadequate to protect its interests in the event of a breach by the Receiving Party and that equitable relief may be authorized as an appropriate remedy for any such breach, in addition to any other available remedies. Should the Receiving Party becomes legally compelled in a judicial, administrative or governmental proceeding to disclose any of the Confidential Information then the Receiving Party shall promptly notify the Disclosing Party by telephone and in writing so that the Disclosing Party, at its expense, may seek a protective order or other appropriate remedy and/or waive compliance with this Agreement. The Receiving Party shall reasonably cooperate with the Disclosing Party in connection with the seeking of such court order or other remedy as the Disclosing Party may reasonably request, at the expense of the Disclosing Party.

13.      Miscellaneous. This Agreement may be executed in one or more counterparts, each of which shall be an original and all of which together shall constitute one instrument. A copy, facsimile, or electronic transmission of the signature on this Agreement of any authorized representative of either party shall have the same force and effect as an original thereof. This Agreement shall bind and inure to the benefit of the parties hereto and their legal and personal representatives, successors and assigns. This Agreement shall be governed in all respects by the domestic laws of New York State. In any action arising out of or related to this Agreement, the parties hereto consent to the exclusive jurisdiction and venue in the courts located in Washington State. Each party shall bear its own costs or expenses in connection with the performance of its rights and obligations under this Agreement. Each Party agrees to pay its own legal costs and attorney fees should a dispute arise from a breach or non-performance of this Agreement. This document contains the entire agreement between the parties with respect to the subject matter hereof, and neither party shall have any obligation, express or implied by law, with respect to trade secret or proprietary information of the other party except as set forth herein. Any failure to enforce any provision of this Agreement shall not constitute a waiver thereof or of any other provision. This Agreement may not be amended, nor any obligation waived, except in writing signed by both parties.

If any provision or portion of this Agreement is held invalid, illegal, void or unenforceable by reason of any rule of law, administrative or judicial provision or public policy, all other provisions of this Agreement shall nevertheless be construed so as to remain in full force and effect.

14.      Language. The language of this Agreement shall in all cases be construed simply, as a whole and in accordance with its fair meaning and not strictly for or against any party. The parties agree that this Agreement has been prepared jointly and has been the subject of arm's length and careful negotiation. Each party has been given the opportunity to independently review this Agreement with legal counsel and other consultants, and each party has the requisite experience and sophistication to understand, interpret, and agree to the particular language of the provisions. Accordingly, in the event of an ambiguity in or

Mutual Nondisclosure Agreement                                                                                                    Page – 2

                                                                      **TMHUA00461657**

dispute regarding the interpretation of this Agreement, the drafting of the language of this Agreement shall not be attributed to either party.

IN WITNESS WHEREOF, the authorized representatives of each party have executed this Agreement on the dates written below but effective as of the above Effective Date.

Carrier:
T-MOBILE USA, INC., a Delaware corporation

By: _____

Name:  Grant Castle
Title:   VP, Engineering Services & QA

Date: _____


Supplier:
HUAWEI DEVICE USA, INC., a Texas corporation

By: _____

Name:  Jiangao Cui
Title:   President

Date:  8 / 14 / 2012


T-Mobile Legal Approval By:

Name:  RICHARD HANSEN

Confidential                                                      TMHUA00461658

Confidential

TMHUA00461659

EXHIBIT G

August 16, 2012

**VIA FIRST CLASS MAIL AND E-MAIL**

Jiangao Cui
President
Huawei Device USA, Inc.
5700 Tennyson Parkway, Suite 600
Plano, TX 75024

Re:    **Handset and Accessory Supply Agreement dated June 2, 2010 and
        Letter Agreement Robot Tester Protocol**

Dear Mr. Cui :

In reviewing the above-referenced Handset and Accessory Supply Agreement ("Agreement")
entered into by and between T-Mobile USA Inc. ("T-Mobile") and Futurewei Technologies, Inc.
d/b/a Huawei Technologies, and thereafter assigned to Huawei Device USA Inc. ("Huawei") on
or about December 1, 2011, and in an effort in ensure compliance with the nondisclosure
provisions contained therein, T-Mobile has undertaken to identify and clarify certain
responsibilities and obligations of the parties with respect to the present efforts of the parties to
initiate an automated testing protocol for the testing of Huawei equipment in clean rooms on T-
Mobile's premises.

This letter is supplemental to the above-referenced Agreement, and is governed by the terms and
conditions set forth therein. This letter documents the general understanding and agreement
between the parties relating to the contemplated robot testing protocol.

For no additional monetary consideration, T-Mobile will provide an isolated clean room
("Cleanroom") for testing Huawei handsets and accessories. The Cleanroom will be equipped
with appropriate locks and reasonable safeguards and at least one (1) single robot per
Cleanroom. The Cleanroom will be screened for security purposes prior to testing and between
sessions. In addition, T-Mobile will provide appropriate and timely technical support and the
opportunity for Huawei to download test results upon request. As per the terms of the
Nondisclosure Agreement executed contemporaneously with this letter agreement and
incorporated herein by reference, T-Mobile will refrain from sharing Huawei's test results,
processes, designs, drawings, schematics, techniques or other proprietary information with third
parties.

Jiangao Cui
Huawei Device USA
August 16, 2012
Page 2

Conversely, in consideration of T-Mobile entering into this letter agreement and the above referenced Nondisclosure Agreement, Huawei is prohibited from (1) capturing photographs, making drawings or otherwise capturing the likeness or design, in whole or in part, of the test facilities or robots used for testing, and (2) in any way copying any computer programs, source code, object code, or any electronic or hard copy software documentation, including but not limited to downloading of  files, information or test system software apart from files and information related to test data performed specifically for Huawei.   Notwithstanding the foregoing, nothing in this letter prohibits or restricts Huawei's use of files or information previously owned, prepared or created by Huawei prior to any testing sessions that are similar to any computer programs, source code, object code, or software document provided by T-Mobile in connection with this letter. In addition, Huawei will be responsible for providing timely notice and sufficient information to T-Mobile relating to any problems, issues and errors that Huawei encounters, in an effort to provide T-Mobile with ample opportunity to debug testing systems. Huawei is permitted to save and download the appropriate test data resulting from any and all tests performed on its behalf.  T-Mobile will not be responsible or liable for lost data as the result of Huawei's actions in retrieving, restoring or downloading test data.  In addition, T-Mobile will not be responsible for deleting uncaptured data as necessitated by the clean room screening process.

The above-mentioned rights and responsibilities of T-Mobile and Huawei are a delineation and an expression of the intent of the parties as set forth in this letter agreement and constitute the commitments of each party with regard to the subject matter of this letter.

Either Party may terminate this letter agreement by providing a thirty (30) calendar day notice of termination to the other party.  The termination of this letter agreement shall not automatically terminate the Agreement, unless otherwise determined by the parties herein.

All other terms and conditions of the above referenced Agreement will remain in full force and effect and in the event of an inconsistency with the terms of this letter agreement, the terms of the Agreement will control.

Please feel free to contact T-Mobile if you have any questions related to this letter or the above-referenced Agreement.  Please sign below indicating your agreement with the terms of this letter agreement.

(signature page to follow)

                                        TMHUA00461653

Jiangao Cui
Huawei Device USA
August 16, 2012
Page 2


Sincerely,

T-MOBILE USA, INC.

Grant Castle
Title: Vice President, Engineering Services & Q.A.

Date:


HUAWEI DEVICE USA, INC.

By:

Title: President

Date: 8 / 16 / 2012

TMHUA00461654

Confidential

TMHUA00461655

# EXHIBIT H
# FILED UNDER SEAL

# EXHIBIT I

1                    UNITED STATES DISTRICT COURT

2           WESTERN DISTRICT OF WASHINGTON AT SEATTLE

3    _____

     T-MOBILE USA, INC., a Delaware    )
4    corporation,                      )
                                       )
5                    Plaintiff(s),     )
                                       )  2:14-cv-01351-RAJ
6          vs.                         )
                                       )
7    HUAWEI DEVICE USA, INC., a        )
     Texas corporation; and HUAWEI     )
8    TECHNOLOGIES CO., LTD., a         )
     China company,                    )
9                                      )
                     Defendant(s).     )
10   _____

11   VIDEOTAPED 30(B)(6) DEPOSITION UPON ORAL EXAMINATION OF

12                      T-MOBILE USA, INC

13                           AND

14                       SUMEET MANN

15        **CONFIDENTIAL - ATTORNEYS' EYES ONLY**

16   _____

17

18                        9:13 A.M.

19                     MAY 10, 2016

20            1001 FOURTH AVENUE, SUITE 4000

21               SEATTLE, WASHINGTON

22

23

24

25   REPORTED BY:  PATSY D. JACOY, CCR 2348

206 622 6875  |  800 831 6973
production@yomreporting.com
www.yomreporting.com

```
 1      A.  No, I was concerned on the amount of energy it

 2 takes to train a person.

 3      Q.  And then Helen writes back, Just to clarify

 4 there are actually four people.  I think Richard

 5 already told you that we have Prachi and Adam, Richard

 6 and me.

 7          And then she writes, Adam and Prachi will deal

 8 with the test and issues before R&D engineers coming?

 9          Did you train all four?

10      A.  I believe we ended up training Adam and

11 Prachi, mostly Adam.

12      Q.  What about Helen?

13      A.  No, we didn't train her.

14      Q.  And Richard?

15      A.  No.

16      Q.  Do you know what Helen meant when she said

17 that Adam and Prachi are going to deal with the test

18 and issues before R&D engineers coming?

19      A.  No.

20              (Deposition Exhibit 91 was

21              marked for identification.)

22      Q.  (BY MS. ROTHSCHILD)  Exhibit 91 is an

23 alternate version of that e-mail string about setting

24 up the robot testing training part one, and the last

25 e-mail in this chain is from Helen to Richard and you
```

206 622 6875 | 800 831 6973
production@yomreporting.com
www.yomreporting.com

1  have removed all of your badge access to NP4?

2      A.  Yes.

3      Q.  Who made that decision?

4      A.  As per my understanding it was Kathy.

5      Q.  Kathy Barnes?

6      A.  Katherine Barnes, yes.

7      Q.  And do you know what the basis was for this

8  decision?

9      A.  I think some incidents had been reported and

10  they decided to hold on -- hold off Huawei from coming

11  to the lab.

12      Q.  What incidents?

13      A.  One of them was the Frank incident where they

14  had asked -- they said that they had asked permission,

15  but then we found out that they did not ask permission.

16  That was another instance, so.  And I think the other

17  one was the -- the item incident that they took the end

18  effector.

19      Q.  Had T-Mobile ever revoked another OEM's

20  badges?

21      A.  No, not -- not in my understanding.

22      Q.  And still today, has T-Mobile ever revoked

23  another OEM's badges?

24              THE WITNESS:  Am I -- am I allowed to

25  talk about this?


206 622 6875 | 800 831 6973
production@yomreporting.com
www.yomreporting.com

```
 1                        REPORTER'S CERTIFICATE

 2

 3          I, PATRICIA D. JACOY, the undersigned Certified Court

 4   Reporter, pursuant to RCW 5.28.010 authorized to administer

 5   oaths and affirmations in and for the State of Washington, do

 6   hereby certify that the sworn testimony and/or proceedings, a

 7   transcript of which is attached, was given before me at the

 8   time and place stated therein; that any and/or all witness(es)

 9   were duly sworn to testify to the truth; that the sworn

10   testimony and/or proceedings were by me stenographically

11   recorded and transcribed under my supervision, to the best of

12   my ability; that the foregoing transcript contains a full,

13   true, and accurate record of all the sworn testimony and/or

14   proceedings given and occurring at the time and place stated

15   in the transcript; that a review of which was not requested;

16   that I am in no way related to any party to the matter, nor to

17   any counsel, nor do I have any financial interest in the event

18   of the cause.

19          WITNESS MY HAND AND DIGITAL SIGNATURE this 19th day of

20   May, 2016.

21   _____

22   PATRICIA D. JACOY
     Washington State Certified Court Reporter, #2348
23   pjacoy@yomreporting.com

24

25
```

206 622 6875 | 800 831 6973
production@yomreporting.com
www.yomreporting.com

# EXHIBIT J
# FILED UNDER SEAL

# EXHIBIT K
# FILED UNDER SEAL

# EXHIBIT L
# FILED UNDER SEAL

# EXHIBIT M
# FILED UNDER SEAL

# EXHIBIT N
# FILED UNDER SEAL

# EXHIBIT O
# FILED UNDER SEAL

# EXHIBIT P

Page 1

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON AT SEATTLE

_____

T-MOBILE USA, INC., a Delaware   )
corporation,                     )
                                 )
            Plaintiff(s),        )
                                 )   2:14-cv-01351-RAJ
     vs.                         )
                                 )
HUAWEI DEVICE USA, INC., a       )
Texas corporation; and HUAWEI    )
TECHNOLOGIES CO., LTD., a        )
China company,                   )
                                 )
            Defendant(s).        )
_____

VIDEOTAPED DEPOSITION UPON ORAL EXAMINATION OF

TREY VILLANUEVA

**CONFIDENTIAL - ATTORNEYS' EYES ONLY**

_____

9:13 A.M.

MAY 26, 2016

1001 FOURTH AVENUE, SUITE 4000

SEATTLE, WASHINGTON

REPORTED BY:  PATSY D. JACOY, CCR 2348

```
 1              MS. PLESSMAN:  Lacks foundation.

 2       A.  Based on my recollection of the setup of the

 3  chambers, it appears that this is coming from the angle

 4  and direction of where the camera was located.  So it

 5  seems like that's a -- plausible.

 6       Q.  (BY MR. ALLAN)  It looks like you're having a

 7  discussion with Helen and Frank there, do you see that?

 8       A.  Yes.

 9       Q.  Do you recall a discussion with Helen and

10  Frank on May 13th of 2013?

11       A.  I do recall discussions with Helen and Frank,

12  I am unclear on the exact date.  Based on this time

13  stamp, I can go along with that.

14       Q.  Tell me about what you recall from your

15  discussions with Helen and Frank.

16       A.  I recall an incident where I went to check on

17  Adam and his tests -- where he was going with the

18  testing, how things were being done, whatever, and when

19  I went into the chamber I saw Helen and Frank in there.

20  And Frank is not an authorized person, Helen is really

21  not supposed to be in there either, but Frank is

22  definitely not and was not an authorized person, I

23  indicated that to them and that he needed to leave.

24       Q.  So was that -- was that the first day that you

25  met Frank?
```

206 622 6875 | 800 831 6973
production@yomreporting.com
www.yomreporting.com

1        A.   Uh-huh.

2        Q.   With the time date of the next day, the day

3   we're talking about, May 14, 2014, at 2:56, or perhaps

4   2:59 p.m.  Do you see that?

5        A.   Sure, something like that.

6        Q.   Something like that.  And that's you, sir,

7   with the short-sleeved plaid shirt?

8        A.   Yes.

9        Q.   And who are the folks to the right?

10       A.   I can't be for certain.  It looks like the

11  closest individual to me may be Adam, but I'm not for

12  certain, I can't see the face.

13       Q.   Well, you don't have any reason to doubt that

14  that's Frank and Adam, do you?

15       A.   I do not, no.

16            MS. PLESSMAN:  Objection, calls for

17  speculation.

18       A.   I don't know who it is.

19       Q.   (BY MR. ALLAN)  Well, you saw Frank the day

20  before and you asked him to leave immediately and you

21  asked him to leave immediately today -- on May 14th,

22  right?

23       A.   Uh-huh.

24       Q.   And the gentleman who's facing the computer,

25  your testimony is you don't recognize even the back of

206 622 6875 | 800 831 6973
production@yomreporting.com
www.yomreporting.com

1  the events of Frank and Helen on the 13th and the 14th,

2  his first return?

3       A.  I can't recall when he returned, but I do know

4  that he did, yes.

5                      (Deposition Exhibit 21 was

6                      marked for identification.)

7       Q.  (BY MR. ALLAN)  Show you 21.  This is an

8  e-mail exchange between you and Adam on or around

9  May 23 and it appears that Adam is asking you for some

10  technical assistance on the testing and you provide

11  that assistance; is that right?

12      A.  I don't recall specifics, but it is my

13  practice to assist OEMs in -- with troubleshooting and

14  conducting their testing.

15      Q.  One of the other things -- you can set that

16  aside.  One of the other issues you just testified

17  about a few moments ago with Huawei was the end

18  effector issue?

19      A.  The end effector, yes.

20      Q.  What do you mean by "the end effector issue"?

21      A.  There was an end effector that went missing

22  and upon review of the video, Adam placed it in his bag

23  and took it off premises.

24      Q.  And what is an end effector?

25      A.  It is a part of the robot, T-Mobile's robotic

206 622 6875 | 800 831 6973
production@yomreporting.com
www.yomreporting.com

1      A.  No.

2      Q.  When you saw that there were only three and

3  not four end effectors in the testing chamber, what did

4  you do?

5      A.  I contacted Adam.

6      Q.  How did you contact Adam?

7      A.  I believe I called him.

8      Q.  And did you reach him on the phone?

9      A.  I believe so.

10      Q.  And tell me about that discussion.

11      A.  He -- I asked him about it, he said he didn't

12  have it, he didn't know where it was.  I explained to

13  him that I gave him four, there were only three, he

14  said he didn't take it.  I asked him several times, Are

15  you sure you didn't take it?

16          I let him know that this is not something

17  that's supposed to leave the property, he knew that

18  already anyway.  He repeatedly said he did not, but

19  that he would be willing to come in the next day to

20  help look for it.

21      Q.  Anything else in your discussion with Adam?

22      A.  Not that I can recall at that time, that

23  verbal discussion.

24      Q.  Did you have any other telephonic discussions

25  with Adam that day?

206 622 6875 | 800 831 6973
production@yomreporting.com
www.yomreporting.com

1       A.   Later I did receive -- I don't recall time

2  frame, I did receive a text message with him indicating

3  that he was sorry, but that he did take it by mistake

4  or something to that effect.

5       Q.   So on the day -- I'm just trying to get a

6  sense -- I guess let's just get a time frame of, in

7  your words, the end effector incident versus the Frank

8  and Helen incident.  Is it your understanding it was

9  within a couple of weeks; does that sound reasonable?

10      A.   I can't be for certain.  It's possible, it's

11 plausible, I don't know the exact dates.

12      Q.   Certainly wasn't months later?

13      A.   Again, I don't know, I don't remember the

14 exact time frame.

15      Q.   What time of day did you discover that there

16 were only three end effectors in a chamber where you

17 believe there should have been four?

18      A.   After I had indicated to Adam that the -- to

19 conclude his testing for the day, that I was concluding

20 my business for the day and that it was time to -- to

21 go, to leave.

22      Q.   And so you discovered one missing, you had

23 this phone call with Adam.  After you hung up the phone

24 with Adam, did you take any further action with respect

25 to this missing end effector?

206 622 6875 | 800 831 6973
production@yomreporting.com
www.yomreporting.com

1          A.   No.

2          Q.   When you saw that there were only three and

3    not four end effectors in the testing chamber, what did

4    you do?

5          A.   I contacted Adam.

6          Q.   How did you contact Adam?

7          A.   I believe I called him.

8          Q.   And did you reach him on the phone?

9          A.   I believe so.

10         Q.   And tell me about that discussion.

11         A.   He -- I asked him about it, he said he didn't

12   have it, he didn't know where it was.  I explained to

13   him that I gave him four, there were only three, he

14   said he didn't take it.  I asked him several times, Are

15   you sure you didn't take it?

16              I let him know that this is not something

17   that's supposed to leave the property, he knew that

18   already anyway.  He repeatedly said he did not, but

19   that he would be willing to come in the next day to

20   help look for it.

21         Q.   Anything else in your discussion with Adam?

22         A.   Not that I can recall at that time, that

23   verbal discussion.

24         Q.   Did you have any other telephonic discussions

25   with Adam that day?

1        A.  Not that evening, no.

2        Q.  Why not?

3        A.  It was close of business.

4        Q.  Well, is the end effector a highly proprietary

5    confidential piece of information from T-Mobile?

6               MS. PLESSMAN:  Objection, argumentative.

7    Also calls for speculation, expert testimony.

8        A.  The end effector was a piece of the robotics

9    system that I believe was deemed confidential.

10       Q.  (BY MR. ALLAN)  And if there was confidential

11   information -- information -- or strike that.

12            If there was a robotic piece that you deemed

13   to be confidential that had gone missing in a

14   laboratory that had videotape surveillance, why wasn't

15   the first thing you did to go look at the videotape to

16   see what happened?

17              MS. PLESSMAN:  Objection, misstates

18   testimony and also asked and answered.

19       A.  I do not have access to the video.  I would

20   have to request that access.  And I believe that this

21   incident was reported to T-Mobile's hands and that it

22   was not my place to take the initiative to do anything

23   without communications with my team and guidance on

24   what is the appropriate action.

25       Q.  (BY MR. ALLAN)  Why did you think it wasn't

206 622 6875 | 800 831 6973
production@yomreporting.com
www.yomreporting.com

```
 1   your place to take initiative to try and protect what
 2   you believed to be T-Mobile's confidential information?
 3       A.  I did take --
 4              MS. PLESSMAN:  Objection, misstates
 5   testimony, argumentative.
 6       A.  I did take the initiative to protect that by
 7   notifying my chain of command that this was a concern.
 8       Q.  (BY MR. ALLAN)  Your chain of command being
 9   Sumeet Mann?
10       A.  (Witness nodding head.)
11       Q.  And you didn't feel you had any obligation to
12   do anything more at that time?
13              MS. PLESSMAN:  Objection, misstates
14   testimony, asked and answered.
15       A.  No, I did not.
16       Q.  (BY MR. ALLAN)  You did indicate that you
17   requested videotape?
18       A.  That is correct.
19       Q.  When was that?
20       A.  I can't be for certain, but probably the next
21   day.
22       Q.  And did you watch that videotape?
23       A.  Yes, I did.
24       Q.  Did you watch it with anyone else?
25       A.  Yes, I did.
```


206 622 6875 | 800 831 6973
production@yomreporting.com
www.yomreporting.com

1   your place to take initiative to try and protect what

2   you believed to be T-Mobile's confidential information?

3       A.  I did take --

4              MS. PLESSMAN:  Objection, misstates

5   testimony, argumentative.

6       A.  I did take the initiative to protect that by

7   notifying my chain of command that this was a concern.

8       Q.  (BY MR. ALLAN)  Your chain of command being

9   Sumeet Mann?

10      A.  (Witness nodding head.)

11      Q.  And you didn't feel you had any obligation to

12  do anything more at that time?

13             MS. PLESSMAN:  Objection, misstates

14  testimony, asked and answered.

15      A.  No, I did not.

16      Q.  (BY MR. ALLAN)  You did indicate that you

17  requested videotape?

18      A.  That is correct.

19      Q.  When was that?

20      A.  I can't be for certain, but probably the next

21  day.

22      Q.  And did you watch that videotape?

23      A.  Yes, I did.

24      Q.  Did you watch it with anyone else?

25      A.  Yes, I did.

206 622 6875 | 800 831 6973
production@yomreporting.com
www.yomreporting.com

1          Q.   Who else was there?

2          A.   The automation team.

3          Q.   Who was the automation team?

4          A.   Again, that consists of Sumeet Mann, David

5    Jenkinson, Nha Tran and myself.

6          Q.   The four of you were in the room watching the

7    tape?

8          A.   Yes, Bobby Lee may or may not have been there.

9          Q.   What was done following that -- well, what did

10   you see on the tape?

11         A.   I saw Adam put the end effector in his bag and

12   leave the premises.

13         Q.   And following your viewing of that videotape

14   with the automation team, what action did you or anyone

15   on the automation team take next to deal with the

16   incident?

17         A.   I don't recall specific actions that I took.

18   I did whatever T-Mobile required of me at that point.

19         Q.   Do you recall what, if anything, T-Mobile

20   required of you at that point?

21         A.   I don't recall specifics.  At some point I may

22   have communicated my experience.

23              MS. PLESSMAN:  Just a sec.  You're going

24   to -- don't reveal any communications with attorneys or

25   corporate investigators.  Other than that you can

206 622 6875 | 800 831 6973
production@yomreporting.com
www.yomreporting.com

```
 1   foundation.  Calls for speculation.
 2        A.  Can you -- can you please elaborate on that
 3   question?
 4        Q.  (BY MR. ALLAN) It's fine, I'll withdraw it.
 5            10:28 he says, I'll be there right now.
 6            And then 11:13 says, Trey, Adam here.  I'm in
 7   the lobby.  Can you please pick me in? -- which I
 8   assume is ping me in or something like that.
 9            That's 11:13.  All of the texts that we just
10   read and focused on are before your phone call with
11   Adam about the missing end effector, right?
12        A.  Yes.
13        Q.  And then at 5:42 p.m. he texts you and he
14   says, Trey, I'm sorry to find it with my laptop.  If
15   you are available I can return it now.  Otherwise I
16   will bring it to TMO lab tomorrow morning.  I am so
17   sorry, it's my mistake.
18            Do you see that?
19        A.  Yes.
20        Q.  So he sent that text to you at 5:42 in the
21   afternoon offering to return the end effector.  Did you
22   respond to that text?
23        A.  I can't say for sure.
24        Q.  Did you -- is it fair to say that that text
25   came in following your phone call with Adam?
```

206 622 6875 | 800 831 6973
production@yomreporting.com
www.yomreporting.com

```
 1                     REPORTER'S CERTIFICATE

 2

 3        I, PATRICIA D. JACOY, the undersigned Certified Court

 4   Reporter, pursuant to RCW 5.28.010 authorized to administer

 5   oaths and affirmations in and for the State of Washington, do

 6   hereby certify that the sworn testimony and/or proceedings, a

 7   transcript of which is attached, was given before me at the

 8   time and place stated therein; that any and/or all witness(es)

 9   were duly sworn to testify to the truth; that the sworn

10   testimony and/or proceedings were by me stenographically

11   recorded and transcribed under my supervision, to the best of

12   my ability; that the foregoing transcript contains a full,

13   true, and accurate record of all the sworn testimony and/or

14   proceedings given and occurring at the time and place stated

15   in the transcript; that a review of which was not requested;

16   that I am in no way related to any party to the matter, nor to

17   any counsel, nor do I have any financial interest in the event

18   of the cause.

19        WITNESS MY HAND AND DIGITAL SIGNATURE this 6th day of

20   June, 2016.

21

22   PATRICIA D. JACOY
     Washington State Certified Court Reporter, #2348
23   pjacoy@yomreporting.com

24

25
```

206 622 6875 | 800 831 6973
production@yomreporting.com
www.yomreporting.com

# EXHIBIT Q

1
2
3
4
5
6
7
8
9
10                                                    THE HONORABLE RICHARD A. JONES
11
12                              UNITED STATES DISTRICT COURT
13                       WESTERN DISTRICT OF WASHINGTON AT SEATTLE
14

| | |
|---|---|
| T-MOBILE USA, INC., a Delaware corporation,<br><br>                   Plaintiff,<br><br>        v.<br><br>HUAWEI DEVICE USA, INC., a Texas corporation; and HUAWEI TECHNOLOGIES CO. LTD., a China company,<br><br>                   Defendants. | NO.  2:14-cv-01351-RAJ<br><br>**DEFENDANT HUAWEI DEVICE USA, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFF T-MOBILE, INC.'S FIRST SET OF REQUESTS FOR ADMISSION** |

        Defendant Huawei Device USA, Inc. ("Huawei USA") hereby submits its Objections and

Responses to Plaintiff T-Mobile, Inc.'s ("T-Mobile") First Set of Requests for Admission to

Defendant Huawei Device USA, Inc. (the "Requests").

                              **PRELIMINARY STATEMENT**

        Huawei USA has not yet completed its investigation of the facts of this case, search for

relevant documents, or preparation for trial.  The responses and objections to the Requests

provided herein are based on information now known to Huawei USA, following a reasonable

DEFENDANT HUAWEI DEVICE USA, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 1
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

preliminary investigation.  Huawei USA reserves the right to amend, modify or supplement its responses as it learns of new information.

## OBJECTIONS TO DEFINITIONS

Each of the following Objections to Definitions and General Objections is incorporated into each of the specific responses and objections below, as if set forth fully therein.

1.      Huawei USA objects to the Requests' Definitions to the extent that they seek to impose on Huawei USA obligations that exceed or contradict those imposed by the Federal Rules of Civil Procedure and/or the Local Rules of the Western District of Washington.

2.      Huawei USA objects to the definition of "You" and "Your" as overly broad and unduly burdensome due to the size of Huawei USA's work force and the scope of its operations. Huawei USA further objects to the definition of "You" and "Your" as overly broad and unduly burdensome to the extent that T-Mobile seeks to impose on Huawei USA an obligation to provide information from or about any company other than Huawei Device USA, Inc. Huawei USA will not provide information that is not in its possession, custody, or control including information from or about Huawei Technologies Co., Ltd.

3.      Huawei USA objects to the definition of "Handsets" as vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent that T-Mobile seeks to deploy it to obtain discovery related to "all other consumer electronic devices sold by Huawei" other than mobile phones.

4.      Huawei USA objects to the definition of "Huawei's Testing Process" as vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent that T-Mobile seeks to deploy it to obtain discovery unrelated to touchscreen handset reliability testing.  Huawei USA further objects to the

DEFENDANT HUAWEI DEVICE USA, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 2
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

definition of "Huawei's Testing Process" as overly broad and unduly burdensome to the extent that it seeks information from or about any company other than Huawei Device USA, Inc. Huawei USA will not provide information that is not in its possession, custody, or control including information from or about Huawei Technologies Co., Ltd.

5.      Huawei USA objects to the definition of "Document" as overly broad and unduly burdensome to the extent that it seeks to impose on Huawei USA an obligation to identify documents in the possession, custody, or control of Huawei Technologies Co., Ltd.

**GENERAL OBJECTIONS**

1.      Huawei USA objects to the Requests to the extent that they seek information protected from disclosure by the attorney-client privilege, the work product doctrine, the common interest doctrine, the joint defense doctrine, settlement immunity or any other applicable evidentiary privilege or doctrine.  Huawei USA will not provide any such protected information.  To the extent that any information that is properly the subject of any privilege or protection is inadvertently identified in response to these Requests, such identification is not intended as, and should not be construed as, a waiver of any such privilege or protection. Huawei USA will construe the Requests as not seeking information created by Huawei USA or its counsel after the date on which this litigation was commenced.

2.      Huawei USA objects to the Requests to the extent that they seek information that is not relevant to the subject matter of this action and/or not reasonably calculated to lead to the discovery of admissible evidence.

3.      Huawei USA objects to the Requests to the extent that they seek information not in Huawei USA's possession, custody, or control and/or seek to circumvent Rule 45 of the

DEFENDANT HUAWEI DEVICE USA, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 3
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

Federal Rules of Civil Procedure by requesting information of persons and entities who are not parties to this lawsuit.  Huawei USA's responses will be based solely upon information in its possession, custody, or control.

4.      Huawei USA objects to the Requests to the extent that they require an unduly burdensome search for information that has little or no relevance to this lawsuit.  Huawei USA further objects to the Requests to the extent that they seek information already in T-Mobile's possession or obtainable by T-Mobile from public sources, including, but not limited to, court dockets and public information services, or to the extent that T-Mobile could compile the requested information from available sources with substantially equal or lesser effort and/or expense than Huawei USA.

5.      Huawei USA objects to the Requests to the extent that any failure to define the terms used in the Requests makes the Requests vague, ambiguous, overly broad, and/or unduly burdensome.  Huawei will interpret the terms used in the Requests in a common sense, ordinary, and reasonable fashion.

6.      Huawei USA objects to the Requests to the extent that they seek Huawei USA's confidential business, commercial or proprietary information, prior to T-Mobile's identification, with specificity, of the trade secrets or other confidential business, commercial or proprietary information at issue in this litigation.

7.      Huawei USA objects to the Requests to the extent that the Requests are not limited to a reasonable time period on the grounds that such Requests are manifestly overbroad, call for the production of information that is irrelevant, and impose an undue burden and expense on Huawei USA.

DEFENDANT HUAWEI DEVICE USA, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 4
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

8.      Huawei USA objects to the Requests to the extent that they seek information the disclosure of which would violate its privacy rights or the privacy rights of third parties.

9.      Huawei USA objects to each Request to the extent that it is repetitive of other discovery requests.

10.      These responses are made without in any way waiving or intending to waive: (a) any objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence, for any purpose in any action or proceeding, of any information provided in response to the Requests; and (b) the right to object on any ground to the use, for any purpose in any action or proceeding, of any information provided in response to the Requests.  By supplying information in response to the Requests, Huawei USA does not concede, and reserves all objections with respect to, the competency, relevancy, materiality, privilege, or admissibility of such information.

11.      By supplying information in response to the Requests, Huawei USA does not adopt any misleading statement, inaccurate assumption or mischaracterization of facts.  Huawei USA's responses do not constitute an admission that any facts or allegations stated by T-Mobile are true or accurate.

## OBJECTIONS AND RESPONSES TO SPECIFIC REQUESTS

## REQUEST FOR ADMISSION NO. 1

Admit that Huawei entered into a supplier relationship with T-Mobile after participating in a competitive Request for Proposal process.

DEFENDANT HUAWEI DEVICE USA, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 5
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.   Subject to and without waiving any of its objections, Huawei USA admits Request No. 1.

**REQUEST FOR ADMISSION NO. 2**

Admit that xDeviceRobot and the T-Mobile Robot are both designed to simulate handset use by a human user.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to those objections, Huawei USA objects that the term "handsets" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence to the extent it includes consumer electronic devices other than touchscreen handset devices tested on robots.

Subject to and without waiving any of its objections, Huawei USA states that it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 2.

**REQUEST FOR ADMISSION NO. 3**

Admit that Huawei did not have a Handset testing robot before 2012.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to those objections, Huawei USA objects that the term "Handsets" is

DEFENDANT HUAWEI DEVICE USA, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 6
NO. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence to the extent it includes consumer electronic devices other than touchscreen handset devices tested on robots.  Huawei USA also objects that the term "testing robot" is overly broad, vague, unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence to the extent it seeks documents unrelated to touchscreen handset reliability testing.

Subject to and without waiving any of its objections, Huawei USA states that it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 3.


**REQUEST FOR ADMISSION NO. 4**

Admit that Huawei personnel were not allowed access to T-Mobile's Labs without first receiving authorization from T-Mobile.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to those objections, Huawei USA objects that the failure to define the term "authorization" renders the request vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei USA states that it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 4.

DEFENDANT HUAWEI DEVICE USA, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 7
NO. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**REQUEST FOR ADMISSION NO. 5**

Admit that T-Mobile required Huawei employees to go through security clearance before entering T-Mobile's labs.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to those objections, Huawei USA objects that the failure to define the term "security clearance" renders the request vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei USA states that it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 5.


**REQUEST FOR ADMISSION NO. 6**

Admit that the 2010 Handset and Accessory Supply Agreement between T-Mobile and Huawei is a valid and enforceable contract.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to those objections, Huawei USA objects to this request to the extent it seeks a legal conclusion.

Subject to and without waiving any of its objections, Huawei USA admits that it is a successor party to the 2010 Handset and Accessory Supply Agreement with T-Mobile.   The document speaks for itself.  To the extent a further response is necessary, Huawei USA denies Request No. 6.

DEFENDANT HUAWEI DEVICE USA, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 8
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**REQUEST FOR ADMISSION NO. 7**

Admit that Exhibit A is an authentic copy of the 2010 Handset and Accessory Supply Agreement between T-Mobile and Huawei.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  Subject to and without waiving any of its objections, Huawei USA states that T-Mobile did not append an Exhibit A to its Requests for Admission.  Huawei USA denies Request No. 7.

**REQUEST FOR ADMISSION NO. 8**

Admit that the 2012 Mutual Nondisclosure Agreement between T-Mobile and Huawei is a valid and enforceable contract.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to those objections, Huawei USA objects to this request to the extent it seeks a legal conclusion.

Subject to and without waiving any of its objections, Huawei USA admits that it is a signatory to the 2012 Mutual Nondisclosure Agreement with T-Mobile.  The document speaks for itself.  To the extent a further response is necessary, Huawei USA denies Request No. 8.

DEFENDANT HUAWEI DEVICE USA, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 9
No. 2:14-cv-01351-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**REQUEST FOR ADMISSION NO. 9**

Admit that Exhibit B is an authentic copy of the 2012 Mutual Nondisclosure Agreement between T-Mobile and Huawei.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  Subject to and without waiving any of its objections, Huawei USA states that T-Mobile did not append an Exhibit B to its Requests for Admission.  Huawei USA denies Request No. 9.

**REQUEST FOR ADMISSION NO. 10**

Admit that the 2012 Letter Agreement between T-Mobile and Huawei is a valid and enforceable contract.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to those objections, Huawei USA objects to this request to the extent it seeks a legal conclusion.

Subject to and without waiving any of its objections, Huawei USA admits that it is a signatory to the 2012 Letter Agreement with T-Mobile.  The document speaks for itself.  To the extent a further response is necessary, Huawei USA denies Request No. 10.

DEFENDANT HUAWEI DEVICE USA, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 10
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**REQUEST FOR ADMISSION NO. 11**

Admit that Exhibit C is an authentic copy of the 2012 Letter Agreement between T-Mobile and Huawei.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  Subject to and without waiving any of its objections, Huawei USA states that T-Mobile did not append an Exhibit C to its Requests for Admission.  Huawei USA denies Request No. 11.

**REQUEST FOR ADMISSION NO. 12**

Admit that the 2012 Letter Agreement between T-Mobile and Huawei prohibits photography in T-Mobile's Labs.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  Subject to and without waiving any of its objections, Huawei USA states that the 2012 Letter Agreement speaks for itself.  To the extent a further response is necessary, Huawei USA denies Request No. 12.

**REQUEST FOR ADMISSION NO. 13**

Admit that signs in the T-Mobile Labs state "No Photography."

DEFENDANT HUAWEI DEVICE USA, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 11
No. 2:14-cv-01351-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to these objections, Huawei USA objects that the request is not limited to a reasonable time period nor does the request specify which "Labs" possess a sign stating "No Photography," rendering it manifestly overbroad and unduly burdensome.

Subject to and without waiving any of its objections, Huawei USA denies Request No. 13.

**REQUEST FOR ADMISSION NO. 14**

Admit that the 2008 Supply Agreement between MetroPCS Wireless, Inc. and Huawei is a valid and enforceable contract.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to those objections, Huawei USA objects to this request to the extent it seeks a legal conclusion.

Subject to and without waiving any of its objections, Huawei USA admits that it is a successor party to the 2008 Supply Agreement with MetroPCS Wireless, Inc.  The document speaks for itself.  To the extent a further response is necessary, Huawei USA denies Request No. 14.

DEFENDANT HUAWEI DEVICE USA, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 12
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**REQUEST FOR ADMISSION NO. 15**

Admit that Exhibit D is an authentic copy of the 2008 Supply Agreement between MetroPCS Wireless, Inc. and Huawei.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  Subject to and without waiving any of its objections, Huawei USA states that T-Mobile did not append an Exhibit D to its Requests for Admission.  Huawei USA denies Request No. 15.

**REQUEST FOR ADMISSION NO. 16**

Admit that Huawei was not given access to T-Mobile's Robot until it signed the 2012 Nondisclosure Agreement and the 2012 Letter Agreement.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to these objections, Huawei USA objects to the phrase "given access to" as overly broad, vague and ambiguous, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei USA states that it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 16.

**REQUEST FOR ADMISSION NO. 17**

Admit that Huawei sent Yu "Frank" Wang to the United States with the intention that he access T-Mobile's Labs.

DEFENDANT HUAWEI DEVICE USA, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 13
No. 2:14-cv-01351-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  Subject to and without waiving any of its objections, Huawei USA admits that one of the purposes of Yu "Frank" Wang's visit to the United States in May 2013 was to visit T-Mobile's lab.  To the extent a further response is necessary, Huawei USA denies Request No. 17.

**REQUEST FOR ADMISSION NO. 18**

Admit that Huawei sent Yu "Frank" Wang to the United States with the intention that he learn information about the T-Mobile Robot.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  Subject to and without waiving any of its objections, Huawei USA admits that one of the purposes of Yu "Frank" Wang's visit to the United States in May 2013 was to visit T-Mobile's lab.  To the extent a further response is necessary, Huawei USA denies Request No. 18.

**REQUEST FOR ADMISSION NO. 19**

Admit that Yu "Frank" Wang was not authorized to enter T-Mobile's Labs on May 13, 2013.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  Subject to and without waiving any of its objections, Huawei USA admits Request No. 19.

DEFENDANT HUAWEI DEVICE USA, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 14
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**REQUEST FOR ADMISSION NO. 20**

Admit that Yu "Frank" Wang was told to leave T-Mobile's Labs on May 13, 2013.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  Subject to and without waiving any of its objections, Huawei USA admits Request No. 20.

**REQUEST FOR ADMISSION NO. 21**

Admit that Yu "Frank" Wang was not authorized to enter T-Mobile's Labs on May 14, 2013.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  Subject to and without waiving any of its objections, Huawei USA denies Request No. 21.

**REQUEST FOR ADMISSION NO. 22**

Admit that Yu "Frank" Wang was told to leave T-Mobile's Labs on May 14, 2013.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  Subject to and without waiving any of its objections, Huawei USA admits Request No. 22.

DEFENDANT HUAWEI DEVICE USA, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 15
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**REQUEST FOR ADMISSION NO. 23**

Admit that Richard Yao's email to Sumeet Mann regarding Yu "Frank" Wang's arrival was sent after Wang was told to leave T-Mobile's Labs on May 14, 2013.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein. Subject to and without waiving any of its objections, Huawei USA states that it lacks knowledge sufficient to admit or deny the specific timing of these events and therefore denies Request No. 23.

**REQUEST FOR ADMISSION NO. 24**

Admit that Yu "Frank" Wang took photographs of the T-Mobile Robot on May 14, 2013.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein. Subject to and without waiving any of its objections, Huawei USA admits Request No. 24.

**REQUEST FOR ADMISSION NO. 25**

Admit that Yu "Frank" Wang sent photographs of the T-Mobile Robot to other Huawei employees in China.

DEFENDANT HUAWEI DEVICE USA, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 16
NO. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  Subject to and without waiving any of its objections, Huawei USA admits Request No. 25.

**REQUEST FOR ADMISSION NO. 26**

Admit that Yu "Frank" Wang reported precise measurements and specifications for the T-Mobile Robot to Huawei employees in China.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to these objections, Huawei USA objects that the failure to define the phrase "precise measurements and specifications" renders the request vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei USA states that it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 26.

**REQUEST FOR ADMISSION NO. 27**

Admit that Xinfu "Adam" Xiong removed an end effector from T-Mobile's Labs without permission on May 29, 2013.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to these objections, Huawei USA objects that the failure to define

DEFENDANT HUAWEI DEVICE USA, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 17
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

the term "end effector" renders the request vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei USA states that, absent a definition of "end effector," it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 27.

**REQUEST FOR ADMISSION NO. 28**

Admit that Xinfu "Adam" Xiong denied taking the end effector when Trey Villanueva asked him if he took the end effector on May 29, 2013.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to these objections, Huawei USA objects that the failure to define the term "end effector" renders the request vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei USA states that, absent a definition of "end effector," it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 28.

**REQUEST FOR ADMISSION NO. 29**

Admit that Xinfu "Adam" Xiong took measurements of the end effector that he removed from T-Mobile's Labs.

DEFENDANT HUAWEI DEVICE USA, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 18
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to these objections, Huawei USA objects that the failure to define the term "end effector" renders the request vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei USA states that, absent a definition of "end effector," it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 29.


**REQUEST FOR ADMISSION NO. 30**

Admit that Yu "Frank" Wang photographed the end effector Xinfu "Adam" Xiong had removed from T-Mobile's Labs.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to these objections, Huawei USA objects that the failure to define the term "end effector" renders the request vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei USA states that, absent a definition of "end effector," it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 30.

DEFENDANT HUAWEI DEVICE USA, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 19
NO. 2:14-cv-01351-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**REQUEST FOR ADMISSION NO. 31**

Admit that Yu "Frank" Wang's photograph or photographs of the end effector Xinfu "Adam" Xiong had removed from T-Mobile's Labs contained measurements of the end effector.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to these objections, Huawei USA objects that the failure to define the term "end effector" renders the request vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei USA states that, absent a definition of "end effector," it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 31.

**REQUEST FOR ADMISSION NO. 32**

Admit that the dimensions of the end effector measured by Xinfu "Adam" Xiong are not published in any patent or patent application identified in Huawei's Motion to Dismiss.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to these objections, Huawei USA objects that the failure to define the term "end effector" renders the request vague, ambiguous, overbroad, and unduly burdensome.

DEFENDANT HUAWEI DEVICE USA, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 20
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

Subject to and without waiving any of its objections, Huawei USA states that the documents speak for themselves.  To the extent a further response is necessary, Huawei USA denies Request No. 32.

### REQUEST FOR ADMISSION NO. 33

Admit that the apertures of the cameras used with the T-Mobile Robot are not published in any patent or patent application identified in Huawei's Motion to Dismiss.

### RESPONSE:

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to these objections, Huawei USA objects that the failure to define the term "apertures" renders the request vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei USA states that the documents speak for themselves.  To the extent a further response is necessary, Huawei USA denies Request No. 33.

### REQUEST FOR ADMISSION NO. 34

Admit that the material out of which the tip of the end effector on the T-Mobile Robot was made in 2013 is not published in any patent or patent application identified in Huawei's Motion to Dismiss.

DEFENDANT HUAWEI DEVICE USA, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 21
NO. 2:14-cv-01351-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to these objections, Huawei USA objects that the failure to disclose the "material" renders the request vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei USA states that the documents speak for themselves.  To the extent a further response is necessary, Huawei USA denies Request No. 34.

**REQUEST FOR ADMISSION NO. 35**

Admit that the companies from which T-Mobile buys parts for the T-Mobile Robot are not published in any patent or patent application identified in Huawei's Motion to Dismiss.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to these objections, Huawei USA objects that the failure to disclose the "companies from which T-Mobile buys parts for the T-Mobile Robot" renders the request vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei USA states that the documents speak for themselves.  To the extent a further response is necessary, Huawei USA denies Request No. 35.

DEFENDANT HUAWEI DEVICE USA, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 22
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**REQUEST FOR ADMISSION NO. 36**

Admit that modifications made to the T-Mobile Robot after the publication of the patents and patent applications identified in Huawei's Motion to Dismiss are not published in those patents or patent applications.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to these objections, Huawei USA objects that the failure to disclose the "modifications made to the T-Mobile Robot" renders the request vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei USA states that the documents speak for themselves.  To the extent a further response is necessary, Huawei USA denies Request No. 36.

**REQUEST FOR ADMISSION NO. 37**

Admit that Fei "Tom" Duan asked Xinfu "Adam" Xiong to provide measurements of the end effector.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to these objections, Huawei USA objects that the failure to define the term "end effector" renders the request vague, ambiguous, overbroad, and unduly burdensome.

DEFENDANT HUAWEI DEVICE USA, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 23
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

Subject to and without waiving any of its objections, Huawei USA states that, absent a definition of "end effector," it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 37.

**REQUEST FOR ADMISSION NO. 38**

Admit that in 2013, Huawei's xDeviceRobot could not produce the same testing results as T-Mobile's Robot.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to those objections, Huawei USA objects that the failure to define the term "same testing results" renders the request vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei USA states that, absent a definition of "same testing results," it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 38.

**REQUEST FOR ADMISSION NO. 39**

Admit that a reason Xinfu "Adam" Xiong provided Huawei with measurements of the end effector was to enable Huawei's XDeviceRobot to produce the same results as T-Mobile's Robot.

DEFENDANT HUAWEI DEVICE USA, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 24
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to those objections, Huawei USA objects that the failure to define the terms "end effector" and "same results" renders the request vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei USA states that, absent definitions of "end effector" and "same results," it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 39.

**REQUEST FOR ADMISSION NO. 40**

Admit that a Huawei employee attempted to re-activate a T-Mobile security badge on October 23, 2013.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to those objections, Huawei USA objects that the failure to define the term "re-activate" renders the request vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving any of its objections, Huawei USA states that it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 40.

**REQUEST FOR ADMISSION NO. 41**

Admit that Xinfu "Adam" Xiong contacted Northwest Pneumatics in 2013 about building a robot testing platform in the T-Mobile configuration.

DEFENDANT HUAWEI DEVICE USA, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 25
No. 2:14-cv-01351-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  Subject to and without waiving any of its objections, Huawei USA states that it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 41.

**REQUEST FOR ADMISSION NO. 42**

Admit that a Neutral Expert concluded in 2003 that Huawei misappropriated Cisco's source code.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to those objections, Huawei USA objects that the request is vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.  T-Mobile's consumer protection claim, the only claim to which the request might plausibly relate, is preempted by the Washington Uniform Trade Secret Act. Huawei USA will not respond to Request No. 42.

**REQUEST FOR ADMISSION NO. 43**

Admit that since 2011, Huawei's use of the T-Mobile Robot for Handsets sold to T-Mobile has reduced as a percentage reports by customers that those Handsets have defects or malfunctioned.

DEFENDANT HUAWEI DEVICE USA, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 26
No. 2:14-cv-01351-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to those objections, Huawei USA objects that the term "handsets" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence to the extent it includes consumer electronic devices other than touchscreen handset devices tested on robots.

Subject to and without waiving any of its objections, Huawei USA states that it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 43.

**REQUEST FOR ADMISSION NO. 44**

Admit that since 2011, Huawei's use of the T-Mobile Robot for Handsets sold to T-Mobile has reduced annual customer returns for those Handsets due to defective or malfunctioning equipment.

**RESPONSE:**

Huawei USA incorporates its General Objections and Objections to Definitions as if fully set forth herein.  In addition to those objections, Huawei USA objects that the term "handsets" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence to the extent it includes consumer electronic devices other than touchscreen handset devices tested on robots.

Subject to and without waiving any of its objections, Huawei USA states that it lacks knowledge sufficient to admit or deny this request and therefore denies Request No. 44.

DEFENDANT HUAWEI DEVICE USA, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 27
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

DATED this 12th day of March, 2015.

**GORDON TILDEN THOMAS & CORDELL** LLP
Attorneys for Defendant Huawei Device USA, Inc.


By   _s/Franklin D. Cordell_
    Franklin D. Cordell, WSBA #26392
    Jeffrey M. Thomas, WSBA #21175
    1001 Fourth Avenue, Suite 4000
    Seattle, Washington 98154
    Telephone: (206) 467-6477
    Facsimile:  (206) 467-6292
    Email:  fcordell@gordontilden.com
    Email:  jthomas@gordontilden.com

**STEPTOE & JOHNSON LLP**
Attorneys for Defendant Huawei Device USA, Inc.


By   _s/Timothy C. Bickham_
    William F. Abrams*
    James F. Hibey*
    Timothy C. Bickham*
    Jessica I. Rothschild*
    1330 Connecticut Avenue NW
    Washington, DC 20036
    Telephone: (202) 429-3000
    Facsimile:  (202) 429-3902
    Email:  jhibey@steptoe.com
    Email:  wabrams@steptoe.com
    Email:  tbickham@steptoe.com
    Email:  jrothschild@steptoe.com
    *  _Admitted Pro Hac Vice_

DEFENDANT HUAWEI DEVICE USA, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 28
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL** LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

## CERTIFICATE OF SERVICE

I hereby certify that, on this 12th day of March 2015, a true and correct copy of

Defendant Huawei Device USA, Inc.'s Objections and Responses to Plaintiff T-Mobile's First

Set of Requests for Admission was sent by electronic mail to the following counsel:


Michael E. Kipling, WSBA #7677
**KIPLING LAW GROUP PLLC**
3601 Fremont Avenue N., Suite 414
Seattle, WA  98103
(206) 545-0345
(206) 545-0350 (fax)
kipling@kiplinglawgroup.com

John Hueston (*Pro Hac Vice*)
jhueston@hueston.com
Alison Plessman (*Pro Hac Vice*)
aplessman@hueston.com
Eric Hayden (*Pro Hac Vice*)
ehayden@hueston.com
**HUESTON HENNIGAN LLP**
523 West 6th Street
Los Angeles, CA  90014
(213) 788-4340

***Counsel for Plaintiff T-Mobile USA, Inc.***




By _s/Jessica I. Rothschild_
Jessica I. Rothschild
Steptoe & Johnson LLP
*Counsel for Defendant Huawei Device USA, Inc.*

DEFENDANT HUAWEI DEVICE USA, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF
T-MOBILE, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION - 29
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

# EXHIBIT R
# FILED UNDER SEAL

# EXHIBIT S
# FILED UNDER SEAL

# EXHIBIT T
# FILED UNDER SEAL

# EXHIBIT U
# FILED UNDER SEAL

# EXHIBIT V
# FILED UNDER SEAL

# EXHIBIT W
# FILED UNDER SEAL

# EXHIBIT X
# FILED UNDER SEAL

# EXHIBIT Y



# EXHIBIT Z



Confidential -- Attorneys' Eyes Only

TMHUA00463714

# EXHIBIT AA
# FILED UNDER SEAL

# EXHIBIT BB
# FILED UNDER SEAL

# EXHIBIT CC
# FILED UNDER SEAL

# EXHIBIT DD

```
 1                   UNITED STATES DISTRICT COURT

 2            WESTERN DISTRICT OF WASHINGTON AT SEATTLE

 3   _____

 4   T-MOBILE USA, INC., a Delaware      )
     corporation,                        )
 5                                        )
                 Plaintiff,               )
 6                                        )No. C14-1351 RAJ
        vs.                               )
 7                                        )
     HUAWEI DEVICE USA, INC., a Texas     )
 8   corporation; and HUAWEI             )
     TECHNOLOGIES CO. LTD., a China       )
 9   company,                            )
                                          )
10               Defendants.              )
     _____

11

12   VIDEOTAPED 30(b)(6) DEPOSITION UPON ORAL EXAMINATION OF

13                      T-MOBILE USA, INC.

14                     CORBAN CUNNINGHAM

15                       "CONFIDENTIAL"

16   _____

17                        9:03 a.m.

18                      MAY 13, 2016

19            1001 FOURTH AVENUE, SUITE 4000

20                    SEATTLE, WASHINGTON

21

22

23

24   REPORTED BY:  LORRIE R. CHINN, RPR, CCR 1902

25
```


206 622 6875 | 800 831 6973
production@yomreporting.com
www.yomreporting.com

```
 1        Q.  Without permission?

 2        A.  Without -- yes.

 3        Q.  So that's --

 4        A.  Two.

 5        Q.  -- the second violation?

 6        A.  Correct.

 7        Q.  Okay.

 8        A.  The third violation being that he took

 9   pictures of the robot.

10        Q.  When?

11        A.  I'm sorry?

12        Q.  When?

13        A.  On May 14th.

14        Q.  Okay.

15        A.  And then he sent those --

16        Q.  That's -- is that an independent -- that's the

17   third violation?

18        A.  Correct.

19        Q.  Or is there more to the third violation?

20        A.  Well, there's more to the third violation.  He

21   sent those pictures to Huawei headquarters.

22        Q.  So the taking and the sending is in its

23   entirety the third violation?

24        A.  Yes, sir.

25        Q.  Okay.  Do you know when he sent the pictures
```

206 622 6875 | 800 831 6973
production@yomreporting.com
www.yomreporting.com

1   as a corporate investigator and as T-Mobile today,

2   because you're here in your capacity as a T-Mobile

3   representative, what security measures were violated,

4   and we've talked about the first three.  I get that.

5           Now I'm talking about the fourth one, the

6   removal.  And you said to the extent it's theft, there

7   must be a written policy.  Okay?  I'll accept that and

8   I'll ask for that policy.

9           To the extent it wasn't theft, what security

10  measure was violated?

11              MS. PLESSMAN:  Objection.  Misstates

12  testimony.

13              THE WITNESS:  I'm not sure I understand.

14      Q.  BY MR. HIBEY:  If it wasn't theft, still

15  removal from the lab, is there a security measure that

16  was violated?

17              MS. PLESSMAN:  Objection.  Nonsensical.

18      Q.  BY MR. HIBEY:  Which TMO -- I'm sorry.  Go

19  ahead.

20              MS. PLESSMAN:  Are you done with your

21  question?

22      Q.  BY MR. HIBEY:  Not really.  Is there a

23  security measure that it violated, that Adam violated

24  by removing it from the lab?

25              MS. PLESSMAN:  Objection.  Asked and

206 622 6875 | 800 831 6973
production@yomreporting.com
www.yomreporting.com

1   NDA.

2       Q.  Anything else, any other policy statement by

3   T-Mobile?

4       A.  Not that I'm aware.

5       Q.  With respect to the entry and pictures, you

6   alluded to a policy.  I've made the request.  Do you

7   know if those policies were shared with Huawei?

8       A.  I don't know.

9       Q.  Is it fair to say that these five violations

10  of T-Mobile's security measures is what gave rise to

11  the investigation that was conducted?

12              MS. PLESSMAN:  Objection to the extent

13  it calls for speculation.

14              THE WITNESS:  All I can tell you is how

15  I was notified of the investigation.

16      Q.  BY MR. HIBEY:  How were you notified?

17      A.  My group was notified by Bruce Christofferson

18  that the end effector had been taken.

19      Q.  Was this towards the end of May?

20      A.  Correct.

21      Q.  And an investigation ensued?

22      A.  Yes, sir.

23      Q.  Before they told you about the end effector,

24  did anybody tell you or Dean Black or anybody in

25  corporate investigations about the entry into the lab

206 622 6875 | 800 831 6973
production@yomreporting.com
www.yomreporting.com

1        Q.   As part of your investigation, what documents

2   and -- what documents did you review?

3             MS. PLESSMAN:  I'm going to instruct you

4   not to answer as attorney work product unless it is

5   documents provided by Huawei or interviews of Huawei

6   employees.

7        Q.  BY MR. HIBEY:  Are you going to follow her

8   advice?

9        A.  Yes, sir.

10       Q.  Okay.  Ms. Plessman just alluded to Huawei

11   documents and interviews of Huawei employees.  That was

12   all part of your investigation, right?

13       A.  The interviews of Huawei employees, yes.

14       Q.  Frank and Adam, right?

15       A.  Correct.

16       Q.  Who else did you interview as part of your

17   investigation?

18             MS. PLESSMAN:  I'm going -- to the

19   extent that you're talking about your internal

20   investigation, I'm going to instruct you not to answer.

21       Q.  BY MR. HIBEY:  Are you going to follow her

22   advice?

23       A.  Yes, sir.

24       Q.  Okay.  She just used a word internal

25   investigation.  There wasn't any other investigation,

206 622 6875 | 800 831 6973
production@yomreporting.com
www.yomreporting.com

```
 1                   THE WITNESS:  I'm here to talk about
 2   costs, so I would assume that T-Mobile is claiming
 3   costs.
 4        Q.  BY MR. HIBEY:  Okay.  What are the costs --
 5   total costs of the investigation to date?
 6        A.  The cost for payroll, which is 15,300 -- I'm
 7   sorry, 15,500, and materials, which is 300.
 8        Q.  $300?
 9        A.  Correct.
10        Q.  Anything else?
11        A.  No, sir, not that I can remember.  That's all
12   that I'm aware of.
13        Q.  I'm sorry?
14        A.  I'm sorry.  That's all that I'm aware of.
15        Q.  Okay.  Let's go back to the 15,500.  How does
16   that break down?
17        A.  That would be the payroll for myself; for my
18   manager, Dean Black; for Marc Milstein; for Corey Riel;
19   and then for Jim Steele.
20        Q.  How was it calculated?
21        A.  Based on our hours, the hours that we've
22   worked.
23        Q.  So if somebody -- I'm just giving you a
24   hypothetical really just to try to understand what
25   you're saying.  If you worked for a week -- I'm not
```

206 622 6875 | 800 831 6973
production@yomreporting.com
www.yomreporting.com

1              MS. PLESSMAN:  Objection.  I'm going to

2   instruct you not to answer.

3        Q.  BY MR. HIBEY:  Are you going to follow her

4   advice?

5        A.  Yes, sir.

6        Q.  Is the total $300 attributable to the computer

7   hard drive?

8        A.  Yes, sir.

9        Q.  No other materials?

10       A.  No, sir.

11       Q.  So the sum total of costs for the

12   investigation is $15,800?

13       A.  Yes, sir.

14       Q.  When did Black become involved in the

15   investigation?  Same day as you did in May of 2013?

16       A.  Yes, sir.

17       Q.  What about Milstein?

18       A.  Same day.

19       Q.  Riel?

20       A.  Same day.

21       Q.  Steele?

22       A.  Same day.

23              MR. HIBEY:  I would simply ask that

24   you -- the record should reflect I'm talking to

25   Ms. Plessman.  Ask after -- just get me the date.  He


206 622 6875 | 800 831 6973
production@yomreporting.com
www.yomreporting.com

```
 1                      REPORTER'S CERTIFICATE

 2

 3          I, LORRIE R. CHINN, the undersigned Certified Court

 4   Reporter, pursuant to RCW 5.28.010 authorized to administer

 5   oaths and affirmations in and for the State of Washington, do

 6   hereby certify that the sworn testimony and/or proceedings, a

 7   transcript of which is attached, was given before me at the

 8   time and place stated therein; that any and/or all witness(es)

 9   were duly sworn to testify to the truth; that the sworn

10   testimony and/or proceedings were by me stenographically

11   recorded and transcribed under my supervision, to the best of

12   my ability; that the foregoing transcript contains a full,

13   true, and accurate record of all the sworn testimony and/or

14   proceedings given and occurring at the time and place stated

15   in the transcript; that a review of which was not requested;

16   that I am in no way related to any party to the matter, nor to

17   any counsel, nor do I have any financial interest in the event

18   of the cause.

19          WITNESS MY HAND AND DIGITAL SIGNATURE this 19h day of

20   May, 2016.

21

22   _____
     LORRIE R. CHINN
23   Washington State Certified Court Reporter, #1902
     lchinn@yomreporting.com
24

25
```



206 622 6675 | 800 831 6973
production@yomreporting.com
www.yomreporting.com

# EXHIBIT EE

THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| T-MOBILE USA, INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>      v.<br><br>HUAWEI DEVICE USA, INC., a Texas corporation; and HUAWEI TECHNOLOGIES CO., LTD., a China company,<br><br>        Defendants. | NO.  2:14-cv-01351-RAJ<br><br>**DEFENDANT HUAWEI DEVICE USA, INC.'S ANSWER AND AFFIRMATIVE DEFENSES**<br><br>**JURY DEMAND** |

Defendant Huawei Device USA, Inc. ("Huawei USA"), by and through undersigned counsel, answers the allegations of Plaintiff T-Mobile USA, Inc.'s ("T-Mobile") Complaint as follows:

## I.      INTRODUCTION

1.      Huawei USA is without sufficient information to form a belief as to the truth of the allegations in the first sentence of Paragraph 1 and therefore denies them.  Huawei USA denies the allegations in the second sentence of Paragraph 1.

2.     Huawei USA denies the allegations in the first two sentences of Paragraph 2 in full and the factual allegations in the third sentence.  The third sentence of Paragraph 2 states legal conclusions to which no response is required.  To the extent a response is required, Huawei USA denies the allegations in the third sentence of Paragraph 2.

3.     Paragraph 3 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Huawei USA denies the allegations in Paragraph 3.

4.     The first sentence of Paragraph 4 of the Complaint states legal conclusions to which no response is required.  Huawei USA denies the allegations in the second sentence and the factual allegations of the third and fourth sentences.  The third and fourth sentences also state legal conclusions to which no response is required.  To the extent a response is required, Huawei USA denies the allegations in Paragraph 4.

## II.     BACKGROUND

5.     Huawei USA is without sufficient information to form a belief as to the truth of the allegations in Paragraph 5 and therefore denies them.

6.     Huawei USA is without sufficient information to form a belief as to the truth of the allegations in the first two sentences of Paragraph 6 and therefore denies them.  Huawei USA admits that potential suppliers submit proposals to T-Mobile in a competitive RFP process and that Huawei USA used to be one such supplier.   Huawei USA denies the allegations in the fifth sentence of Paragraph 6, except to note that T-Mobile did select Huawei USA to supply handsets for particular segments of its customer base for several years prior to 2015.  Huawei USA is without sufficient information to form a belief as to the truth of the allegations in the last sentence of Paragraph 6 and therefore denies them.

DEFENDANT HUAWEI DEVICE USA, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 2
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

7. Huawei USA is without sufficient information to form a belief as to the truth of the allegations in Paragraph 7 and therefore denies them.

8. Huawei USA is without sufficient information to form a belief as to the truth of the allegations in Paragraph 8 and therefore denies them.

9. Huawei USA admits that T-Mobile has a robot nicknamed "Tappy." Huawei USA is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 9 and therefore denies them.

10. Huawei USA admits that certain aspects of the T-Mobile robot are patented or patent-pending. Huawei USA denies that "the remaining innovative aspects consist of closely-guarded trade secrets." Huawei USA is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 10 and therefore denies them.

11. Huawei USA is without sufficient information to form a belief as to the truth of the allegations in the first two sentences of Paragraph 11 and therefore denies them. Huawei USA admits that T-Mobile allowed its employees into T-Mobile's lab in Bellevue, Washington. Huawei USA is without sufficient information to form a belief as to the truth of the remaining allegations in the third sentence of Paragraph 11 and therefore denies them.

12. Huawei USA admits that it entered into contracts with T-Mobile. The first sentence of Paragraph 12 of the Complaint states legal conclusions to which no response is required. To the extent the allegations refer to contractual agreements, the agreements speak for themselves, and their legal significance in this case is a matter for the Court to decide. To the extent a response is required, Huawei USA denies the remaining allegations in the first sentence

DEFENDANT HUAWEI DEVICE USA, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 3
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

of Paragraph 12. Huawei USA is without sufficient information to form a belief as to the truth of the allegations in the second sentence of Paragraph 12 and therefore denies them.

13. Huawei USA admits that it entered into two contracts with T-Mobile and is a successor party to a third contract with T-Mobile. The agreements speak for themselves, and their legal significance in this case is a matter for the Court to decide. To the extent a response is required, Huawei USA denies the remaining allegations in the first sentence of Paragraph 13. The second sentence of Paragraph 13 states legal conclusions to which no response is required. To the extent a response is required, Huawei USA denies the allegations in the second sentence of Paragraph 13. Huawei USA admits that T-Mobile authorized its employees to use T-Mobile's robot to test their handsets, and otherwise denies the allegations in the third sentence of Paragraph 13.

14. Huawei USA admits that T-Mobile authorized Huawei USA employees to enter the T-Mobile lab. The agreements to which the first sentence of Paragraph 14 refers speak for themselves, and their legal significance in this case is a matter for the Court to decide. To the extent a response is required, Huawei USA denies the allegations in the first sentence of Paragraph 14. Huawei USA is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 14 and therefore denies them.

15. Huawei USA admits that T-Mobile gave its employees access to T-Mobile's robot in 2012. Paragraph 15 states legal conclusions to which no response is required. Huawei USA denies the remaining allegations in Paragraph 15.

DEFENDANT HUAWEI DEVICE USA, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 4
NO. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

16.     Huawei USA is without sufficient information to form a belief as to the truth of the allegations in the first sentence of Paragraph 16 and therefore denies them.  Huawei USA denies the remaining allegations in Paragraph 16.

17.     Huawei USA denies the allegations in Paragraph 17 of the Complaint.  To the extent the second sentence of Paragraph 17 states legal conclusions, no response is required.  To the extent the second sentence of Paragraph 17 refers to documents, the documents speak for themselves and their legal significance in this case is a matter for the Court to decide.

18.     Huawei USA admits that its former employee removed a part of the robot from T-Mobile's lab and that, while the former employee initially denied taking anything, the former employee later admitted to taking the part and returned it the next day.  Huawei USA denies the allegations in the first two sentences of Paragraph 18.  Huawei USA is without sufficient information to form a belief as to the truth of the allegations in the third and fourth sentences of Paragraph 18 and therefore denies them.  Huawei USA denies the remaining allegations in Paragraph 18.

19.     Huawei USA is without sufficient information to form a belief as to the truth of the allegations in the first two sentences of Paragraph 19 and therefore denies them.  Huawei USA denies the remaining allegations in Paragraph 19.

20.     Huawei USA denies the allegations of the first two sentences of Paragraph 20 of the Complaint.  Huawei USA is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 20 and therefore denies them.

21.     Huawei USA denies the allegations in the first sentence of Paragraph 21 of the Complaint.  To the extent the second sentence of Paragraph 21 relies on a document, the

DEFENDANT HUAWEI DEVICE USA, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 5
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

document speaks for itself, and its legal significance in this case is a matter for the Court to

decide.  To the extent a response is required, Huawei USA denies the allegations in the second

sentence of Paragraph 21.  Huawei USA denies the remaining allegations in the second sentence

of Paragraph 21.

22.     Huawei USA denies the allegations in Paragraph 22 of the Complaint.

### III.     PARTIES

23.     Huawei USA is without sufficient information to form a belief as to the truth of

the allegations in Paragraph 23 and therefore denies them.

24.     Huawei USA admits the first sentence of Paragraph 24.  Huawei USA admits that

it is a successor to Futurewei Technologies, Inc. and further avers that it is an indirect subsidiary

of Huawei Technologies Co., Ltd.

25.     Huawei USA admits the allegations in Paragraph 25 of the Complaint.

26.     Paragraph 26 of the Complaint states legal conclusions to which no response is

required.   To the extent a response is required, Huawei USA denies the allegations in Paragraph

26.

### IV.     JURISDICTION AND VENUE

27.     Huawei USA admits the allegations in Paragraph 27 of the Complaint, with

respect to its status in this case.

28.     Huawei USA admits the allegations in the first sentence of Paragraph 28 of the

Complaint.  To the extent the second sentence of Paragraph 28 relies on a document, the

document speaks for itself.  To the extent a response is required, Huawei USA admits the

allegations in the second sentence of Paragraph 28.

DEFENDANT HUAWEI DEVICE USA, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 6
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

## V.   GENERAL ALLEGATIONS

29.     Huawei USA is without sufficient information to form a belief as to the truth of the allegations in Paragraph 29 and therefore denies them.

30.     Huawei USA admits that T-Mobile has a testing robot.  Huawei USA is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 30 and therefore denies them.

31.     Huawei USA is without sufficient information to form a belief as to the truth of the allegations in Paragraph 31 and therefore denies them.

32.     Huawei USA is without sufficient information to form a belief as to the truth of the allegations in Paragraph 32 and therefore denies them.

33.     Huawei USA admits the first sentence of Paragraph 33 of the Complaint.  Huawei USA is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 33 and therefore denies them.  The third sentence also states legal conclusions to which no response is required.  To the extent a response is required, Huawei USA denies the allegations in the third sentence of Paragraph 33.

34.     Huawei USA admits that T-Mobile has testing facilities at its Bellevue, Washington campus.  Huawei USA admits that, for a period of nine and a half months, T-Mobile permitted Huawei USA employees to access parts of these facilities and to use the robot to test the devices.  Huawei USA is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 34 and therefore denies them.

35.     Huawei USA admits the first sentence of Paragraph 35.  The remaining allegations of Paragraph 35 state legal conclusions to which no response is required and refer to a

DEFENDANT HUAWEI DEVICE USA, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 7
NO. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

document that speaks for itself, and its legal significance in this case is a matter for the Court to decide. Huawei USA denies the remaining allegations of Paragraph 35.

36.     Huawei USA admits that Futurewei Technologies, Inc., d/b/a Huawei Technologies (USA) separated into three companies, one of which was Huawei USA, and that the Supply Agreement was assigned to Huawei USA. Huawei USA denies the remaining allegations of Paragraph 36.

37.     The allegations of Paragraph 37 state legal conclusions to which no response is required and refer to a document that speaks for itself. To the extent a response is required, Huawei USA denies the allegations in Paragraph 37.

38.     The allegations of Paragraph 38 state legal conclusions to which no response is required and refer to a document that speaks for itself. To the extent a response is required, Huawei USA denies the allegations in Paragraph 38.

39.     The allegations of the first three sentences of Paragraph 39 state legal conclusions to which no response is required and refer to documents that speaks for themselves. To the extent a response is required, Huawei USA denies the allegations in these sentences of Paragraph 39. Huawei USA is without sufficient information to form a belief as to the truth of the allegations in the last sentence of Paragraph 39 and therefore denies them.

40.     Huawei USA is without sufficient information to form a belief as to the truth of the allegations in the first sentence of Paragraph 40 and therefore denies them. The allegations in the second sentence of Paragraph 40 refer to a document that speaks for itself, and its legal significance in this case is a matter for the Court to decide. Huawei USA denies the remaining allegations of Paragraph 40.

DEFENDANT HUAWEI DEVICE USA, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 8
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

41.     Huawei USA is without sufficient information to form a belief as to the truth of the allegations in the first sentence of Paragraph 41 and therefore denies them. Huawei USA admits that its employees were first given access to T-Mobile's robot in 2012. Huawei USA is without sufficient information to form a belief as to the truth of the remaining allegations in the second sentence of Paragraph 41 and therefore denies them.

42.     Huawei USA admits that its employees were allowed to perform and monitor diagnostic tests for Huawei handsets using T-Mobile's robot and that they could obtain the test results for the devices they were testing. Huawei USA denies the remaining allegations of Paragraph 42.

43.     Huawei USA admits that some of its employees asked T-Mobile personnel questions about T-Mobile's robot. Huawei USA further avers that for a period of time, T-Mobile personnel were forthcoming with answers about T-Mobile's robot. Huawei USA is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 43 and therefore denies them.

44.     Huawei USA is without sufficient information to form a belief as to the truth of the allegations in Paragraph 44 and therefore denies them. To the extent Paragraph 44 relies on documents, the documents speak for themselves, and their legal significance in this case is a matter for the Court to decide.

45.     Huawei USA admits that Yu (Frank) Wang arrived in Bellevue and further avers that his arrival was in mid-May, 2013. Huawei USA admits that Mr. Wang was a system test engineer in China and that he had never before been to T-Mobile's Bellevue, Washington, facilities. Huawei USA is without sufficient information to form a belief as to the truth of the

DEFENDANT HUAWEI DEVICE USA, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 9
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

remaining allegations in the first two sentences of Paragraph 45 and therefore denies them.

Huawei USA admits that one purpose of Mr. Wang's trip was to visit the T-Mobile lab.  Huawei

USA denies the remaining allegations in the third sentence of Paragraph 45.

46.     Huawei USA admits that Mr. Wang went with Helen Lijingru to T-Mobile's

testing lab on May 13, 2013, and that Mr. Wang was asked to leave.  Huawei USA denies the

remaining allegations of Paragraph 46.

47.     Huawei USA is without sufficient information to form a belief as to the truth of

the allegations in Paragraph 47 and therefore denies them.

48.     Huawei USA admits that Mr. Wang entered the lab on May 14, 2013, and took

several photographs of the testing robot using his smartphone.  To the extent Paragraph 48 relies

on a document, the document speaks for itself, and its legal significance in this case is a matter

for the Court to decide.  Huawei USA denies the remaining allegations of Paragraph 48.

49.     Huawei USA admits that Mr. Wang was asked to leave T-Mobile's lab.  Huawei

USA denies the remaining allegations of Paragraph 49.

50.     Huawei USA admits that Mr. Wang sent some of the photographs he had taken of

the robot to engineers in China.  Huawei USA denies the remaining allegations of Paragraph 50.

51.     Huawei USA is without sufficient information to form a belief as to the truth of

the allegations in Paragraph 51 and therefore denies them.

52.     Huawei USA admits that Jennifer Ponder provided T-Mobile with four

photographs taken by Mr. Wang.  To the extent the allegations in Paragraph 52 rely on a

document, the document speaks for itself, and its legal significance in this case is a matter for the

DEFENDANT HUAWEI DEVICE USA, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 10
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

Court to decide. To the extent a response is required, Huawei USA denies the allegations in the second sentence of Paragraph 52.

53.    Huawei USA admits that Mr. Wang was sent back to China earlier than scheduled. Huawei USA denies the remaining allegations of Paragraph 53.

54.    Huawei USA is without sufficient information to form a belief as to the truth of the allegations in Paragraph 54 and therefore denies them.

55.    Huawei USA is without sufficient information to form a belief as to the truth of the allegations in Paragraph 55 and therefore denies them.

56.    To the extent the allegations in Paragraph 56 rely on a text message, the text speaks for itself, and its legal significance in this case is a matter for the Court to decide. Huawei USA is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 56 and therefore denies them.

57.    Huawei USA admits that Mr. Xiong took a robot part to Huawei USA's office and that measurements were taken. Huawei USA is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 57 and therefore denies them.

58.    Huawei USA is without sufficient information to form a belief as to the truth of the allegations in Paragraph 58 and therefore denies them.

59.    Huawei USA is without sufficient information to form a belief as to the truth of the allegations in Paragraph 59 and therefore denies them.

60.    Huawei USA is without sufficient information to form a belief as to the truth of the allegations in the first sentence of Paragraph 60 and therefore denies them. The second sentence of Paragraph 60 states legal conclusions to which no response is required. To the extent

DEFENDANT HUAWEI DEVICE USA, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 11
NO. 2:14-cv-01351-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

a response is required, Huawei USA denies the allegations in the second sentence of Paragraph 60. Huawei USA denies the allegations in the third sentence of Paragraph 60.

61.    Huawei USA is without sufficient information to form a belief as to the truth of the allegations in Paragraph 61 and therefore denies them. To the extent the second sentence of Paragraph 61 states legal conclusions, no response is required. To the extent a response is required, Huawei USA denies the allegations in this sentence of Paragraph 61.

62.    Huawei USA denies the allegations in the first sentence of Paragraph 62. To the extent the second sentence of Paragraph 62 relies on a document, the document speaks for itself, and its legal significance in this case is a matter for the Court to decide. To the extent a response is required, Huawei USA denies the allegations in the second sentence of Paragraph 62. Huawei USA is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 62 and therefore denies them.

63.    Huawei USA admits that T-Mobile recalled Huawei's security badges in May 2013. Huawei USA is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 63 and therefore denies them.

64.    To the extent that the first sentence of Paragraph 64 of the Complaint relies on a document, the document speaks for itself. To the extent a response is required, Huawei USA denies the allegations in the first sentence of Paragraph 64. Huawei USA is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 64 and therefore denies them.

65.    Huawei USA denies the allegations in Paragraph 65 of the Complaint.

DEFENDANT HUAWEI DEVICE USA, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 12
NO. 2:14-cv-01351-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

66.    To the extent that Paragraph 66 of the Complaint relies on a document, the document speaks for itself, and its legal significance in this case is a matter for the Court to decide.  To the extent a response is required, Huawei USA denies the allegations in Paragraph 66.

67.    Huawei USA is without sufficient information to form a belief as to the truth of the allegations in Paragraph 67 and therefore denies them.

68.    Huawei USA is without sufficient information to form a belief as to the truth of the allegations in Paragraph 68 and therefore denies them.

69.    Huawei USA admits that T-Mobile was permitted to interview Mr. Xiong on June 12, 2013.  Huawei USA is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 69 and therefore denies them.

70.    Huawei USA is without sufficient information to form a belief as to the truth of the allegations in Paragraph 70 and therefore denies them.

71.    Huawei USA admits that T-Mobile was permitted to interview Mr. Wang on June 17, 2013.  Huawei USA is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 71 and therefore denies them.

72.    Huawei USA denies the allegations in Paragraph 72 of the Complaint.

73.    The allegations of Paragraph 73 relate solely to Plaintiff's claim for violation of Washington Consumer Protection Act in Count IV, which was dismissed by the Court's Order of July 14, 2015, Dkt. 77, and therefore no response is required.  To the extent a response is required, Huawei USA denies the allegations in Paragraph 73.

DEFENDANT HUAWEI DEVICE USA, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 13
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

74. The allegations of Paragraph 74 relate solely to Plaintiff's claim for violation of Washington Consumer Protection Act in Count IV, which was dismissed by the Court's Order of July 14, 2015, Dkt. 77, and therefore no response is required. To the extent a response is required, Huawei USA denies the allegations in Paragraph 74.

75. The allegations of Paragraph 75 relate solely to Plaintiff's claim for violation of Washington Consumer Protection Act in Count IV, which was dismissed by the Court's Order of July 14, 2015, Dkt. 77, and therefore no response is required. To the extent a response is required, Huawei USA denies the allegations in Paragraph 75.

76. The allegations of Paragraph 76 relate solely to Plaintiff's claim for violation of Washington Consumer Protection Act in Count IV, which was dismissed by the Court's Order of July 14, 2015, Dkt. 77, and therefore no response is required. To the extent Paragraph 76 relies on a document, the document speaks for itself. To the extent a response is required, Huawei USA denies the allegations in Paragraph 76.

77. The allegations of Paragraph 77 relate solely to Plaintiff's claim for violation of Washington Consumer Protection Act in Count IV, which was dismissed by the Court's Order of July 14, 2015, Dkt. 77, and therefore no response is required. To the extent Paragraph 77 relies on a document, the document speaks for itself. To the extent a response is required, Huawei USA denies the allegations in Paragraph 77.

78. The allegations of Paragraph 78 relate solely to Plaintiff's claim for violation of Washington Consumer Protection Act in Count IV, which was dismissed by the Court's Order of July 14, 2015, Dkt. 77, and therefore no response is required. To the extent Paragraph 78 relies

DEFENDANT HUAWEI DEVICE USA, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 14
No. 2:14-cv-01351-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

on a document, the document speaks for itself. To the extent a response is required, Huawei

USA denies the allegations in Paragraph 78.

## VI.    FIRST CAUSE OF ACTION

### (Violation of Washington Uniform Trade Secrets Act
### Against Huawei China and Huawei USA)

79.    With respect to Paragraph 79 of the Complaint, Huawei USA restates and

incorporates by reference its responses to the allegations in Paragraphs 1-72 as if fully set forth

herein.

80.    Paragraph 80 of the Complaint states legal conclusions to which no response is

required. To the extent a response is required, Huawei USA denies the allegations in Paragraph

80.

81.    Paragraph 81 of the Complaint states legal conclusions to which no response is

required. To the extent a response is required, Huawei USA denies the allegations in Paragraph

81.

82.    Paragraph 82 of the Complaint states legal conclusions to which no response is

required. To the extent a response is required, Huawei USA denies the allegations in Paragraph

82.

83.    Huawei USA denies the allegations in the first three sentences of Paragraph 83 of

the Complaint. The fourth sentence of Paragraph 83 states legal conclusions to which no

response is required. To the extent a response is required, Huawei USA denies the remaining

allegations in this sentence of Paragraph 83.

DEFENDANT HUAWEI DEVICE USA, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 15
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

84. Huawei USA denies the allegations in the first sentence of Paragraph 84 of the Complaint. Huawei USA is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 84 and therefore denies them.

85. Paragraph 85 of the Complaint states legal conclusions to which no response is required. To the extent a response is required, Huawei USA denies the allegations in Paragraph 85. Huawei USA is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 85 and therefore denies them.

86. Paragraph 86 of the Complaint states legal conclusions to which no response is required. To the extent a response is required, Huawei USA denies the allegations in Paragraph 86. Huawei USA is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 86 and therefore denies them.

87. Paragraph 87 of the Complaint states legal conclusions to which no response is required. To the extent a response is required, Huawei USA denies the allegations in Paragraph 87.

88. Paragraph 88 of the Complaint states legal conclusions to which no response is required. To the extent a response is required, Huawei USA denies the allegations in Paragraph 88.

## VII.    SECOND CAUSE OF ACTION

### (Breach of Contract against Huawei China and Huawei USA)

89. With respect to Paragraph 89 of the Complaint, Huawei USA restates and incorporates by reference its responses to the allegations in Paragraphs 1-72 as if fully set forth herein.

DEFENDANT HUAWEI DEVICE USA, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 16
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

90.     Paragraph 90 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Huawei USA denies the allegations in Paragraph 90.

91.     Paragraph 91 of the Complaint states legal conclusions to which no response is required.  Paragraph 91 also relies on documents that speak for themselves, and their legal significance in this case is a matter for the Court to decide.  To the extent a response is required, Huawei USA denies the remaining allegations in Paragraph 91.

92.     Paragraph 92 of the Complaint relies on a document that speaks for itself, and its legal significance in this case is a matter for the Court to decide.  Paragraph 92 also states legal conclusions to which no response is required.  To the extent a response is required, Huawei USA denies the allegations in Paragraph 92.

93.     Paragraph 93 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Huawei USA denies the allegations in Paragraph 93.

94.     Paragraph 94 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Huawei USA denies the allegations in Paragraph 94.

95.     The first sentence of Paragraph 95 of the Complaint states legal conclusions to which no response is required.  The NDA speaks for itself, and its legal significance in this case is a matter for the Court to decide.  To the extent a response is required, Huawei USA denies the allegations in Paragraph 95.

DEFENDANT HUAWEI DEVICE USA, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 17
NO. 2:14-cv-01351-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

96.      Paragraph 96 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Huawei USA denies the allegations in Paragraph 96.

97.      Paragraph 97 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Huawei USA denies the allegations in Paragraph 97.

## VIII.   THIRD CAUSE OF ACTION

### (Interference with Business Expectancy and Contractual Relationship against Huawei China)

98.-106. Plaintiff's claim for Interference with Business Expectancy and Contractual Relationship was dismissed by the Court's Order of July 14, 2015.  Dkt. 77.  Accordingly, no response to the allegations contained in Paragraphs 98 through 106 is required.

## IX.      FOURTH CAUSE OF ACTION

### (Violation of Washington Consumer Protection Act against Huawei China and Huawei USA)

107.-111. Plaintiff's claim for Violation of Washington Consumer Protection Act was dismissed by the Court's Order of July 14, 2015.  Dkt. 77.  Accordingly, no response to the allegations contained in Paragraphs 107 through 111 is required.

## X.      RESPONSE TO PRAYER FOR RELIEF

Although a response to the Prayer for Relief is not required, Huawei USA denies that Plaintiff is entitled to any of the relief request, including injunctive relief, damages, enhanced damages, attorneys' fees, costs, expenses, interest, or any other relief of any kind.

DEFENDANT HUAWEI DEVICE USA, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 18
No. 2:14-cv-01351-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

## XI.     RESERVATION OF RIGHTS

The responses in this Answer, and the Affirmative Defenses set forth below, are based on the information currently known to Huawei USA.  Huawei USA reserves the right to amend this Answer and its Affirmative Defenses to the extent it learns of new or additional information during discovery or otherwise.  Any allegation in T-Mobile's Complaint that is not specifically admitted is denied.

## XII.     AFFIRMATIVE DEFENSES

Further answering the Complaint, Huawei USA asserts the following affirmative defenses, and in asserting such defenses does not concede that it bears the burden of proof as to any of them. Huawei USA reserves the right to supplement or amend this Answer, if necessary, after further investigation and as more information becomes known regarding Plaintiff's claims.

### First Affirmative Defense
#### *(Failure to State a Claim)*

1.     Plaintiff's Complaint fails to state a claim upon which relief can be granted for either trade secret misappropriation or for breach of any contract.

### Second Affirmative Defense
#### *(Readily Ascertainable by Proper Means)*

2.     The claims alleged in the Complaint are barred on the grounds that the alleged trade secret information was readily ascertainable by proper means at the time of the alleged improper acquisition, use and/or disclosure.  Without limitation, the readily available information was ascertainable in both domestic and foreign patents applications published before the acts of alleged misappropriation (Canada Patent Application No. 2721793, Canada Patent Application No. 2806546, China Patent Application No. 201310368737.4, China Patent Publication No. 200980122850.6, China Patent Application No. 201180041116.4, Europe Patent Application No.

09732725.8, Europe Patent Application No. 11801491.9, Hong Kong Patent Application No. 14106429.2, Hong Kong Patent Application No. 11112517.6, Japan Patent Application No. 2013-136319, Japan Patent Application No. 2011-505250, Japan Patent Application No. 2013-518757, South Korea Patent Application No. 10-2010-7025816, PCT/US2009/41094, PCT/US2011/28530, PCT/US2011/42799, United States Patent Application No. 13/832,436, United States Patent Application No. 14/281,745, United States Patent Application No. 12/239,271, United States Patent Application No. 61/046,355, United States Patent Application No. 12/729,154, United States Patent Application No. 12/830,142, United States Patent Application No. 14/314,339, and United States Patent Application No. 12/964,427), videos (Plaintiff's own video - http://www.tmonews.com/2012/09/t-mobile-shows-off-device-testing-robot-employees-do-the-robot-dance/, KOMO-TV's video - http://www.komonews.com/home/video/168716536.html, and *Seattle Times*'s video - http://old.seattletimes.com/html/technologybrierdudleysblog/2019077344_t-mobile_usa_turns_10_shows_of.html), and other published materials (including, but not limited to, news articles).

### Third Affirmative Defense
#### *(No Trade Secret)*

3.      The claims alleged in the Complaint are barred on the grounds that the alleged confidential and proprietary information referred to in the Complaint are not trade secrets under the Washington Uniform Trade Secret Act, in that such information was not in fact secret; Plaintiff did not take reasonable steps to protect or treat such information as secret; and such information lacks any independent economic value from its status as secret.

DEFENDANT HUAWEI DEVICE USA, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 20
No. 2:14-cv-01351-RAJ

**Fourth Affirmative Defense**
*(Failure to Establish Misappropriation)*

4.     The claims alleged in the Complaint are barred on the grounds that the Huawei robot referenced in the Complaint xDeviceRobot was independently developed without using any of Plaintiff's alleged trade secrets.

**Fifth Affirmative Defense**
*(Plaintiff Materially Breached the Agreements)*

5.     Plaintiff itself has materially breached its agreements with Huawei USA and therefore cannot bring an action enforcing those agreements.

**Sixth Affirmative Defense**
*(Estoppel)*

6.     Plaintiff is estopped from making the claims set forth in its Complaint.

**Seventh Affirmative Defense**
*(Bad Faith)*

7.     The claims alleged in the Complaint are barred because Plaintiff is prosecuting this litigation in bad faith and for an improper purpose, and Plaintiff's claims are frivolous and entitle Huawei USA to an award of reasonable expenses and attorneys' fees.  Plaintiff is wrongfully claiming as its own trade secrets information that it knows to be publicly available.

**Eighth Affirmative Defense**
*(Election of Remedies)*

8.     The remedy claims alleged in the Complaint are barred and precluded by the doctrine of election of remedies to the extent Plaintiff seeks inconsistent remedies or remedies that would result in a double recovery for Plaintiff.

DEFENDANT HUAWEI DEVICE USA, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 21
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

### Ninth Affirmative Defense
*(Adequacy of Remedy at Law)*

9.     The injury allegedly suffered by Plaintiff, if any, would be adequately compensated in an action at law for damages.  Accordingly, Plaintiff is not entitled to seek equitable relief.

### Tenth Affirmative Defense
*(Comparative Fault)*

10.     No conduct by or attributable to the Huawei USA was either the cause in fact or the proximate cause of the damages alleged by Plaintiff.  Rather, the damages alleged by Plaintiff were caused, either in whole or in part, by Plaintiff's own acts or omissions or by the acts or omissions of persons or entities other than Huawei USA, including but not limited to Plaintiff's failure to take reasonable and adequate measures to protect its allegedly proprietary information.  Plaintiff is therefore barred from recovery against Huawei USA, or alternatively, Plaintiff should have the recovery, if any, proportionately reduced.

### Eleventh Affirmative Defense
*(No Damages)*

11.     Plaintiff has not suffered any damages.

### Twelfth Affirmative Defense
*(No Punitive Damages)*

12.     Plaintiff is not legally entitled to punitive damages.

### Thirteenth Affirmative Defense
*(No Attorneys' Fees)*

13.     Plaintiff is not legally entitled to attorneys' fees.

DEFENDANT HUAWEI DEVICE USA, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 22
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

## Fourteenth Affirmative Defense
### *(Full Compliance with Obligations)*

14.     Huawei USA fully complied with its obligations to Plaintiff.

## XIII.   JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Defendant Huawei Device USA, Inc.

requests a trial by jury on all issues so triable.

## XIV.   PRAYER FOR RELIEF

WHEREFORE, Huawei USA prays for the following relief:

1.     That T-Mobile take nothing by way of its Complaint;

2.     That the Court enter judgment in favor of Huawei USA and against T-Mobile and

dismiss T-Mobile's Complaint against Huawei USA with prejudice; and

3.     That Huawei USA be awarded reasonable costs incurred in defending the

Complaint, including attorneys' fees as authorized by law; and

4.     That Huawei USA be awarded such further relief as the Court deems just, proper,

and equitable.

DEFENDANT HUAWEI DEVICE USA, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 23
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

DATED this 28th day of August, 2015.

**GORDON TILDEN THOMAS & CORDELL LLP**
Attorneys for Defendant Huawei Device USA, Inc.


By   _s/Franklin D. Cordell_
    Franklin D. Cordell, WSBA #26392
    Jeffrey M. Thomas, WSBA #21175
    1001 Fourth Avenue, Suite 4000
    Seattle, Washington 98154
    Telephone: (206) 467-6477
    Facsimile:  (206) 467-6292
    Email:  fcordell@gordontilden.com
    Email:  jthomas@gordontilden.com

**STEPTOE & JOHNSON LLP**
Attorneys for Defendant Huawei Device USA, Inc.


By   _s/Timothy C. Bickham_
    William F. Abrams*
    James F. Hibey*
    Timothy C. Bickham*
    Jessica I. Rothschild*
    1330 Connecticut Avenue NW
    Washington, DC 20036
    Telephone: (202) 429-3000
    Facsimile:  (202) 429-3902
    Email:  jhibey@steptoe.com
    Email:  wabrams@steptoe.com
    Email:  tbickham@steptoe.com
    Email:  jrothschild@steptoe.com
    *  _Admitted Pro Hac Vice_

DEFENDANT HUAWEI DEVICE USA, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 24
NO. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

## CERTIFICATE OF SERVICE

I hereby certify that, on this 28th day of August 2015, a true and correct copy of

Defendant Huawei Device USA, Inc.'s Answer and Affirmative Defenses was sent by electronic

mail to the following counsel:


Michael E. Kipling, WSBA #7677
**KIPLING LAW GROUP PLLC**
3601 Fremont Avenue N., Suite 414
Seattle, WA 98103
(206) 545-0345
(206) 545-0350 (fax)
kipling@kiplinglawgroup.com

John Hueston (*Pro Hac Vice*)
jhueston@hueston.com
Alison Plessman (*Pro Hac Vice*)
aplessman@hueston.com
Eric Hayden (*Pro Hac Vice*)
ehayden@hueston.com
**HUESTON HENNIGAN LLP**
523 West 6th Street
Los Angeles, CA 90014
(213) 788-4340

***Counsel for Plaintiff T-Mobile USA, Inc.***


s/ *Franklin D. Cordell*
  Franklin D. Cordell, WSBA #26392

DEFENDANT HUAWEI DEVICE USA, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 25
NO. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

# EXHIBIT FF
# FILED UNDER SEAL

EXHIBIT HH

1
2
3
4
5
6
7
8
9
10                                                    THE HONORABLE RICHARD A. JONES
11
12                                UNITED STATES DISTRICT COURT
13                        WESTERN DISTRICT OF WASHINGTON AT SEATTLE
14
15   T-MOBILE USA, INC., a Delaware
16   corporation,                                      NO.  2:14-cv-01351-RAJ
17
18                      Plaintiff,                     **DEFENDANT HUAWEI**
19                                                     **TECHNOLOGIES CO., LTD.'S**
20          v.                                         **ANSWER AND AFFIRMATIVE**
21                                                     **DEFENSES**
22   HUAWEI DEVICE USA, INC., a Texas
23   corporation; and HUAWEI TECHNOLOGIES             **JURY DEMAND**
24   CO., LTD., a China company,
25
26                      Defendants.
27
28
29          Defendant Huawei Technologies Co., Ltd. ("Huawei Technologies"), by and through
30
31   undersigned counsel, answers the allegations of Plaintiff T-Mobile USA, Inc.'s ("T-Mobile")
32
33   Complaint as follows:
34
35                            **I.      INTRODUCTION**
36
37          1.      Huawei Technologies is without sufficient information to form a belief as to the
38
39   truth of the allegations in Paragraph 1 and therefore denies them.
40
41          2.      Huawei Technologies denies the allegations in the first two sentences of
42
43   Paragraph 2 and the factual allegations in the third sentence.  The third sentence of Paragraph 2
44
45

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S            **GORDON TILDEN THOMAS & CORDELL LLP**
ANSWER AND AFFIRMATIVE DEFENSES - 1                  1001 Fourth Avenue, Suite 4000
No. 2:14-cv-01351-RAJ                                Seattle, WA  98154
                                                     Phone (206) 467-6477
                                                     Fax (206) 467-6292

states legal conclusions to which no response is required. To the extent a response is required, Huawei Technologies denies the allegations in the third sentence of Paragraph 2.

3. Paragraph 3 of the Complaint states legal conclusions to which no response is required. To the extent a response is required, Huawei Technologies denies the allegations in Paragraph 3.

4. The first sentence of Paragraph 4 of the Complaint states legal conclusions to which no response is required. Huawei Technologies denies the allegations in the second sentence and the factual allegations of the third and fourth sentences. The third and fourth sentences also state legal conclusions to which no response is required. To the extent a response is required, Huawei Technologies denies the allegations in Paragraph 4.

## II.    BACKGROUND

5. Huawei Technologies is without sufficient information to form a belief as to the truth of the allegations in Paragraph 5 and therefore denies them.

6. Huawei Technologies is without sufficient information to form a belief as to the truth of the allegations in the first two sentences of Paragraph 6 and therefore denies them. Huawei Technologies admits that potential suppliers submit proposals to T-Mobile in a competitive RFP process and that Huawei Device USA, Inc. ("Huawei USA") used to be one such supplier. Huawei Technologies denies the allegations in the fifth sentence of Paragraph 6, except to note that T-Mobile did select Huawei USA to supply handsets for particular segments of its customer base for several years prior to 2015. Huawei Technologies is without sufficient information to form a belief as to the truth of the allegations in the last sentence of Paragraph 6 and therefore denies them.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
ANSWER AND AFFIRMATIVE DEFENSES - 2
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

7.      Huawei Technologies is without sufficient information to form a belief as to the truth of the allegations in Paragraph 7 and therefore denies them.

8.      Huawei Technologies is without sufficient information to form a belief as to the truth of the allegations in Paragraph 8 and therefore denies them.

9.      Huawei Technologies admits that T-Mobile has a robot nicknamed "Tappy." Huawei Technologies is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 9 and therefore denies them.

10.     Huawei Technologies admits that certain aspects of the T-Mobile robot are patented or patent-pending.  Huawei Technologies denies that "the remaining innovative aspects consist of closely-guarded trade secrets."  Huawei Technologies is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 10 and therefore denies them.

11.     Huawei Technologies is without sufficient information to form a belief as to the truth of the allegations in the first two sentences of Paragraph 11 and therefore denies them. Huawei Technologies admits that T-Mobile allowed employees of Huawei USA into T-Mobile's lab in Bellevue, Washington.  Huawei Technologies is without sufficient information to form a belief as to the truth of the remaining allegations in the third sentence of Paragraph 11 and therefore denies them.

12.     Huawei Technologies admits that Huawei USA entered into contracts with T-Mobile.  The first sentence of Paragraph 12 of the Complaint states legal conclusions to which no response is required.  To the extent the allegations refer to contractual agreements, the agreements speak for themselves, and their legal significance in this case is a matter for the

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
ANSWER AND AFFIRMATIVE DEFENSES - 3
NO. 2:14-cv-01351-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

Court to decide. To the extent a response is required, Huawei Technologies denies the remaining allegations in the first sentence of Paragraph 12. Huawei Technologies is without sufficient information to form a belief as to the truth of the allegations in the second sentence of Paragraph 12 and therefore denies them.

13.     Huawei Technologies admits that Huawei USA entered into two contracts with T-Mobile and that Huawei USA is a successor party to a third contract with T-Mobile. Huawei Technologies denies that it entered into any of the agreements referenced in Paragraph 13 of the Complaint. The agreements speak for themselves, and their legal significance in this case is a matter for the Court to decide. To the extent a response is required, Huawei Technologies denies the remaining allegations in the first sentence of Paragraph 13. The second sentence of Paragraph 13 states legal conclusions to which no response is required. To the extent a response is required, Huawei Technologies denies the allegations in the second sentence of Paragraph 13. Huawei Technologies admits that T-Mobile authorized Huawei USA employees to use T-Mobile's robot to test handsets, and otherwise denies the allegations in the third sentence of Paragraph 13.

14.     Huawei Technologies admits that T-Mobile authorized Huawei USA employees to enter the T-Mobile lab. The agreements to which the first sentence of Paragraph 14 refers speak for themselves, and their legal significance in this case is a matter for the Court to decide. To the extent a response is required, Huawei Technologies denies the allegations in the first sentence of Paragraph 14. Huawei Technologies is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 14 and therefore denies them.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
ANSWER AND AFFIRMATIVE DEFENSES - 4
NO. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

15. Huawei Technologies admits that T-Mobile gave Huawei USA employees access to T-Mobile's robot in 2012. Paragraph 15 states legal conclusions to which no response is required. Huawei Technologies denies the remaining allegations in Paragraph 15.

16. Huawei Technologies admits that a robot was made. Huawei Technologies is without sufficient information to form a belief as to the truth of the remaining allegations in the first sentence of Paragraph 16 and therefore denies them. Huawei Technologies denies the remaining allegations in Paragraph 16.

17. Huawei Technologies denies the allegations in Paragraph 17 of the Complaint. To the extent the second sentence of Paragraph 17 states legal conclusions, no response is required. To the extent the second sentence of Paragraph 17 refers to documents, the documents speak for themselves and their legal significance in this case is a matter for the Court to decide.

18. Huawei Technologies admits that a former employee of Huawei USA removed a part of the robot from T-Mobile's lab and that, while the former employee initially denied taking anything, the former employee later admitted to taking the part and returned it the next day. Huawei Technologies denies the allegations in the first two sentences of Paragraph 18. Huawei Technologies is without sufficient information to form a belief as to the truth of the allegations in the third and fourth sentences of Paragraph 18 and therefore denies them. Huawei Technologies denies the remaining allegations in Paragraph 18.

19. Huawei Technologies is without sufficient information to form a belief as to the truth of the allegations in the first two sentences of Paragraph 19 and therefore denies them. Huawei Technologies denies the remaining allegations in Paragraph 19.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
ANSWER AND AFFIRMATIVE DEFENSES - 5
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

20.     Huawei Technologies denies the allegations of the first two sentences of Paragraph 20 of the Complaint.  Huawei Technologies is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 20 and therefore denies them.

21.     Huawei Technologies denies the allegations in the first sentence of Paragraph 21 of the Complaint.  To the extent the second sentence of Paragraph 21 relies on a document, the document speaks for itself, and its legal significance in this case is a matter for the Court to decide.  To the extent a response is required, Huawei Technologies denies the allegations in the second sentence of Paragraph 21.  Huawei Technologies denies the remaining allegations in the second sentence of Paragraph 21.

22.     Huawei Technologies denies the allegations in Paragraph 22 of the Complaint.

### III.     PARTIES

23.     Huawei Technologies is without sufficient information to form a belief as to the truth of the allegations in Paragraph 23 and therefore denies them.

24.     Huawei Technologies admits the first sentence of Paragraph 24.  Huawei Technologies admits that Huawei USA is a successor to Futurewei Technologies, Inc. and further avers that Huawei USA is an indirect subsidiary of Huawei Technologies Co., Ltd.

25.     Huawei Technologies admits the allegations in Paragraph 25 of the Complaint.

26.     Paragraph 26 of the Complaint states legal conclusions to which no response is required.   To the extent a response is required, Huawei Technologies denies the allegations in Paragraph 26.

### IV.     JURISDICTION AND VENUE

27.     Huawei Technologies denies the allegations in Paragraph 27 of the Complaint, with respect to its status in this case.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
ANSWER AND AFFIRMATIVE DEFENSES - 6
No. 2:14-cv-01351-RAJ

28. Huawei Technologies denies the allegations in the first sentence of Paragraph 28 of the Complaint. To the extent the second sentence of Paragraph 28 relies on a document, the document speaks for itself. To the extent a response is required, Huawei Technologies denies the allegations in the second sentence of Paragraph 28.

## V. GENERAL ALLEGATIONS

29. Huawei Technologies is without sufficient information to form a belief as to the truth of the allegations in Paragraph 29 and therefore denies them.

30. Huawei Technologies admits that T-Mobile has a testing robot. Huawei Technologies is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 30 and therefore denies them.

31. Huawei Technologies is without sufficient information to form a belief as to the truth of the allegations in Paragraph 31 and therefore denies them.

32. Huawei Technologies is without sufficient information to form a belief as to the truth of the allegations in Paragraph 32 and therefore denies them.

33. Huawei Technologies admits the first sentence of Paragraph 33 of the Complaint. Huawei Technologies is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 33 and therefore denies them. The third sentence also states legal conclusions to which no response is required. To the extent a response is required, Huawei Technologies denies the allegations in the third sentence of Paragraph 33.

34. Huawei Technologies admits that T-Mobile has testing facilities at its Bellevue, Washington campus. Huawei Technologies admits that, for a period of nine and a half months, T-Mobile permitted Huawei USA employees to access parts of these facilities and to use the

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
ANSWER AND AFFIRMATIVE DEFENSES - 7
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

robot to test the devices.  Huawei Technologies is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 34 and therefore denies them.

35.     Huawei Technologies admits the first sentence of Paragraph 35.  The remaining allegations of Paragraph 35 state legal conclusions to which no response is required and refer to a document that speaks for itself, and its legal significance in this case is a matter for the Court to decide.  Huawei Technologies denies the remaining allegations of Paragraph 35.

36.     Huawei Technologies admits that Futurewei Technologies, Inc., d/b/a Huawei Technologies (USA) separated into three companies, one of which was Huawei Device USA, Inc., and that the Supply Agreement was assigned to Huawei USA.  Huawei Technologies denies the remaining allegations of Paragraph 36.

37.     The allegations of Paragraph 37 state legal conclusions to which no response is required and refer to a document that speaks for itself.   To the extent a response is required, Huawei Technologies denies the allegations in Paragraph 37.

38.     The allegations of Paragraph 38 state legal conclusions to which no response is required and refer to a document that speaks for itself.   To the extent a response is required, Huawei Technologies denies the allegations in Paragraph 38.

39.     The allegations of the first three sentences of Paragraph 39 state legal conclusions to which no response is required and refer to documents that speaks for themselves.   To the extent a response is required, Huawei Technologies denies the allegations in these sentences of Paragraph 39.  Huawei Technologies is without sufficient information to form a belief as to the truth of the allegations in the last sentence of Paragraph 39 and therefore denies them.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
ANSWER AND AFFIRMATIVE DEFENSES - 8
NO. 2:14-cv-01351-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

40.     Huawei Technologies is without sufficient information to form a belief as to the truth of the allegations in the first sentence of Paragraph 40 and therefore denies them.  The allegations in the second sentence of Paragraph 40 refer to a document that speaks for itself, and its legal significance in this case is a matter for the Court to decide.  Huawei Technologies denies the remaining allegations of Paragraph 40.

41.     Huawei Technologies is without sufficient information to form a belief as to the truth of the allegations in the first sentence of Paragraph 41 and therefore denies them.  Huawei Technologies admits that Huawei USA employees were first given access to T-Mobile's robot in 2012.  Huawei Technologies is without sufficient information to form a belief as to the truth of the remaining allegations in the second sentence of Paragraph 41 and therefore denies them.

42.     Huawei Technologies admits that Huawei USA employees were allowed to perform and monitor diagnostic tests for Huawei handsets using T-Mobile's robot and that they could obtain the test results for the devices they were testing.  Huawei Technologies denies the remaining allegations of Paragraph 42.

43.     Huawei Technologies admits that some of Huawei USA's employees asked T-Mobile personnel questions about T-Mobile's robot.  Huawei Technologies further avers that for a period of time, T-Mobile personnel were forthcoming with answers about T-Mobile's robot.  Huawei Technologies is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 43 and therefore denies them.

44.     Huawei Technologies is without sufficient information to form a belief as to the truth of the allegations in Paragraph 44 and therefore denies them.  To the extent Paragraph 44

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
ANSWER AND AFFIRMATIVE DEFENSES - 9
NO. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

relies on documents, the documents speak for themselves, and their legal significance in this case is a matter for the Court to decide.

45. Huawei Technologies admits that Yu (Frank) Wang arrived in Bellevue and further avers that his arrival was in mid-May, 2013. Huawei Technologies admits that Mr. Wang was a system test engineer in China and that he had never before been to T-Mobile's Bellevue, Washington, facilities. Huawei Technologies is without sufficient information to form a belief as to the truth of the remaining allegations in the first two sentences of Paragraph 45 and therefore denies them. Huawei Technologies admits that one purpose of Mr. Wang's trip was to visit the T-Mobile lab. Huawei Technologies denies the remaining allegations in the third sentence of Paragraph 45.

46. Huawei Technologies admits that Mr. Wang went with Helen Lijingru to T-Mobile's testing lab on May 13, 2013, and that Mr. Wang was asked to leave. Huawei Technologies denies the remaining allegations of Paragraph 46.

47. Huawei Technologies is without sufficient information to form a belief as to the truth of the allegations in Paragraph 47 and therefore denies them.

48. Huawei Technologies admits that Mr. Wang entered the lab on May 14, 2013, and took several photographs of the testing robot using his smartphone. To the extent Paragraph 48 relies on a document, the document speaks for itself, and its legal significance in this case is a matter for the Court to decide. Huawei Technologies denies the remaining allegations of Paragraph 48.

49. Huawei Technologies admits that Mr. Wang was asked to leave T-Mobile's lab. Huawei Technologies denies the remaining allegations of Paragraph 49.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
ANSWER AND AFFIRMATIVE DEFENSES - 10
NO. 2:14-cv-01351-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

50.     Huawei Technologies admits that Mr. Wang sent some of the photographs he had taken of the robot to engineers in China.  Huawei Technologies denies the remaining allegations of Paragraph 50.

51.     Huawei Technologies is without sufficient information to form a belief as to the truth of the allegations in Paragraph 51 and therefore denies them.

52.     Huawei Technologies admits that Jennifer Ponder provided T-Mobile with four photographs taken by Mr. Wang.  To the extent the allegations in Paragraph 52 rely on a document, the document speaks for itself, and its legal significance in this case is a matter for the Court to decide.  To the extent a response is required, Huawei Technologies denies the allegations in the second sentence of Paragraph 52.

53.     Huawei Technologies admits that Mr. Wang was sent back to China earlier than scheduled.  Huawei Technologies denies the remaining allegations of Paragraph 53.

54.     Huawei Technologies is without sufficient information to form a belief as to the truth of the allegations in Paragraph 54 and therefore denies them.

55.     Huawei Technologies is without sufficient information to form a belief as to the truth of the allegations in Paragraph 55 and therefore denies them.

56.     To the extent the allegations in Paragraph 56 rely on a text message, the text speaks for itself, and its legal significance in this case is a matter for the Court to decide.  Huawei Technologies is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 56 and therefore denies them.

57.     Huawei Technologies admits that Mr. Xiong took a robot part to Huawei USA's office and that measurements were taken.  Huawei Technologies is without sufficient

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
ANSWER AND AFFIRMATIVE DEFENSES - 11
No. 2:14-cv-01351-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

information to form a belief as to the truth of the remaining allegations in Paragraph 57 and therefore denies them.

58.     Huawei Technologies is without sufficient information to form a belief as to the truth of the allegations in Paragraph 58 and therefore denies them.

59.     Huawei Technologies is without sufficient information to form a belief as to the truth of the allegations in Paragraph 59 and therefore denies them.

60.     Huawei Technologies is without sufficient information to form a belief as to the truth of the allegations in the first sentence of Paragraph 60 and therefore denies them.  The second sentence of Paragraph 60 states legal conclusions to which no response is required.  To the extent a response is required, Huawei Technologies denies the allegations in the second sentence of Paragraph 60.  Huawei Technologies denies the allegations in the third sentence of Paragraph 60.

61.     Huawei Technologies is without sufficient information to form a belief as to the truth of the allegations in Paragraph 61 and therefore denies them.  To the extent the second sentence of Paragraph 61 states legal conclusions, no response is required.  To the extent a response is required, Huawei Technologies denies the allegations in this sentence of Paragraph 61.

62.     Huawei Technologies denies the allegations in the first sentence of Paragraph 62. To the extent the second sentence of Paragraph 62 relies on a document, the document speaks for itself, and its legal significance in this case is a matter for the Court to decide.  To the extent a response is required, Huawei Technologies denies the allegations in the second sentence of

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
ANSWER AND AFFIRMATIVE DEFENSES - 12
No. 2:14-cv-01351-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

Paragraph 62.  Huawei Technologies is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 62 and therefore denies them.

63.  Huawei Technologies admits that T-Mobile recalled Huawei's security badges in May 2013.  Huawei Technologies is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 63 and therefore denies them.

64.  To the extent that the first sentence of Paragraph 64 of the Complaint relies on a document, the document speaks for itself.  To the extent a response is required, Huawei Technologies denies the allegations in the first sentence of Paragraph 64.  Huawei Technologies is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 64 and therefore denies them.

65.  Huawei Technologies denies the allegations in Paragraph 65 of the Complaint.

66.  To the extent that Paragraph 66 of the Complaint relies on a document, the document speaks for itself, and its legal significance in this case is a matter for the Court to decide.  To the extent a response is required, Huawei Technologies denies the allegations in Paragraph 66.

67.  Huawei Technologies is without sufficient information to form a belief as to the truth of the allegations in Paragraph 67 and therefore denies them.

68.  Huawei Technologies is without sufficient information to form a belief as to the truth of the allegations in Paragraph 68 and therefore denies them.

69.  Huawei Technologies admits that T-Mobile was permitted to interview Mr. Xiong on June 12, 2013.  Huawei Technologies is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 69 and therefore denies them.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
ANSWER AND AFFIRMATIVE DEFENSES - 13
NO. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

70.     Huawei Technologies is without sufficient information to form a belief as to the truth of the allegations in Paragraph 70 and therefore denies them.

71.     Huawei Technologies admits that T-Mobile was permitted to interview Mr. Wang on June 17, 2013.  Huawei Technologies is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 71 and therefore denies them.

72.     Huawei Technologies denies the allegations in Paragraph 72 of the Complaint.

73.     The allegations of Paragraph 73 relate solely to Plaintiff's claim for violation of Washington Consumer Protection Act in Count IV, which was dismissed by the Court's Order of July 14, 2015, Dkt. 77, and therefore no response is required.  To the extent a response is required, Huawei Technologies denies the allegations in Paragraph 73.

74.     The allegations of Paragraph 74 relate solely to Plaintiff's claim for violation of Washington Consumer Protection Act in Count IV, which was dismissed by the Court's Order of July 14, 2015, Dkt. 77, and therefore no response is required.  To the extent a response is required, Huawei Technologies denies the allegations in Paragraph 74.

75.     The allegations of Paragraph 75 relate solely to Plaintiff's claim for violation of Washington Consumer Protection Act in Count IV, which was dismissed by the Court's Order of July 14, 2015, Dkt. 77, and therefore no response is required.  To the extent a response is required, Huawei Technologies denies the allegations in Paragraph 75.

76.     The allegations of Paragraph 76 relate solely to Plaintiff's claim for violation of Washington Consumer Protection Act in Count IV, which was dismissed by the Court's Order of July 14, 2015, Dkt. 77, and therefore no response is required.  To the extent Paragraph 76 relies

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
ANSWER AND AFFIRMATIVE DEFENSES - 14
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

on a document, the document speaks for itself. To the extent a response is required, Huawei Technologies denies the allegations in Paragraph 76.

77. The allegations of Paragraph 77 relate solely to Plaintiff's claim for violation of Washington Consumer Protection Act in Count IV, which was dismissed by the Court's Order of July 14, 2015, Dkt. 77, and therefore no response is required. To the extent Paragraph 77 relies on a document, the document speaks for itself. To the extent a response is required, Huawei Technologies denies the allegations in Paragraph 77.

78. The allegations of Paragraph 78 relate solely to Plaintiff's claim for violation of Washington Consumer Protection Act in Count IV, which was dismissed by the Court's Order of July 14, 2015, Dkt. 77, and therefore no response is required. To the extent Paragraph 78 relies on a document, the document speaks for itself. To the extent a response is required, Huawei Technologies denies the allegations in Paragraph 78.

## VI.    FIRST CAUSE OF ACTION

### (Violation of Washington Uniform Trade Secrets Act
### Against Huawei China and Huawei USA)

79. With respect to Paragraph 79 of the Complaint, Huawei Technologies restates and incorporates by reference its responses to the allegations in Paragraphs 1-72 as if fully set forth herein.

80. Paragraph 80 of the Complaint states legal conclusions to which no response is required. To the extent a response is required, Huawei Technologies denies the allegations in Paragraph 80.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
ANSWER AND AFFIRMATIVE DEFENSES - 15
No. 2:14-cv-01351-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

81.      Paragraph 81 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Huawei Technologies denies the allegations in Paragraph 81.

82.      Paragraph 82 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Huawei Technologies denies the allegations in Paragraph 82.

83.      Huawei Technologies denies the allegations in the first three sentences of Paragraph 83 of the Complaint.  The fourth sentence of Paragraph 83 states legal conclusions to which no response is required.  To the extent a response is required, Huawei Technologies denies the remaining allegations in this sentence of Paragraph 83.

84.      Huawei Technologies denies the allegations in the first sentence of Paragraph 84 of the Complaint.  Huawei Technologies is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 84 and therefore denies them.

85.      Paragraph 85 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Huawei Technologies denies the allegations in Paragraph 85.  Huawei Technologies is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 85 and therefore denies them.

86.      Paragraph 86 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Huawei Technologies denies the allegations in Paragraph 86.  Huawei Technologies is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 86 and therefore denies them.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
ANSWER AND AFFIRMATIVE DEFENSES - 16
NO. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

87.     Paragraph 87 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Huawei Technologies denies the allegations in Paragraph 87.

88.     Paragraph 88 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Huawei Technologies denies the allegations in Paragraph 88.

## VII.     SECOND CAUSE OF ACTION

### (Breach of Contract against Huawei China and Huawei USA)

89.     With respect to Paragraph 89 of the Complaint, Huawei Technologies restates and incorporates by reference its responses to the allegations in Paragraphs 1-72 as if fully set forth herein.

90.     Paragraph 90 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Huawei Technologies denies the allegations in Paragraph 90.

91.     Paragraph 91 of the Complaint states legal conclusions to which no response is required.  Paragraph 91 also relies on documents that speak for themselves, and their legal significance in this case is a matter for the Court to decide.  To the extent a response is required, Huawei Technologies denies the remaining allegations in Paragraph 91.

92.     Paragraph 92 of the Complaint relies on a document that speaks for itself, and its legal significance in this case is a matter for the Court to decide.  Paragraph 92 also states legal conclusions to which no response is required.  To the extent a response is required, Huawei Technologies denies the allegations in Paragraph 92.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
ANSWER AND AFFIRMATIVE DEFENSES - 17
NO. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

93.     Paragraph 93 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Huawei Technologies denies the allegations in Paragraph 93.

94.     Paragraph 94 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Huawei Technologies denies the allegations in Paragraph 94.

95.     The first sentence of Paragraph 95 of the Complaint states legal conclusions to which no response is required.  The NDA speaks for itself, and its legal significance in this case is a matter for the Court to decide.  To the extent a response is required, Huawei Technologies denies the allegations in Paragraph 95.

96.     Paragraph 96 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Huawei Technologies denies the allegations in Paragraph 96.

97.     Paragraph 97 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Huawei Technologies denies the allegations in Paragraph 97.

## VIII.   THIRD CAUSE OF ACTION

### (Interference with Business Expectancy and Contractual Relationship against Huawei China)

98.-106. Plaintiff's claim for Interference with Business Expectancy and Contractual Relationship was dismissed by the Court's Order of July 14, 2015.  Dkt. 77.  Accordingly, no response to the allegations contained in Paragraphs 98 through 106 is required.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
ANSWER AND AFFIRMATIVE DEFENSES - 18
No. 2:14-cv-01351-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

## IX.   FOURTH CAUSE OF ACTION

### (Violation of Washington Consumer Protection Act
### against Huawei China and Huawei USA)

107.-111. Plaintiff's claim for Violation of Washington Consumer Protection Act was dismissed by the Court's Order of July 14, 2015.  Dkt. 77.  Accordingly, no response to the allegations contained in Paragraphs 107 through 111 is required.

## X.   RESPONSE TO PRAYER FOR RELIEF

Although a response to the Prayer for Relief is not required, Huawei Technologies denies that Plaintiff is entitled to any of the relief request, including injunctive relief, damages, enhanced damages, attorneys' fees, costs, expenses, interest, or any other relief of any kind.

## XI.   RESERVATION OF RIGHTS

The responses in this Answer, and the Affirmative Defenses set forth below, are based on the information currently known to Huawei Technologies.  Huawei Technologies reserves the right to amend this Answer and its Affirmative Defenses to the extent it learns of new or additional information during discovery or otherwise.  Any allegation in T-Mobile's Complaint that is not specifically admitted is denied.

## XII.   AFFIRMATIVE DEFENSES

Further answering the Complaint, Huawei Technologies asserts the following affirmative defenses, and in asserting such defenses does not concede that it bears the burden of proof as to any of them. Huawei Technologies reserves the right to supplement or amend this Answer, if necessary, after further investigation and as more information becomes known regarding Plaintiff's claims.

### First Affirmative Defense
### (Lack of Personal Jurisdiction)

1.   The Court lacks personal jurisdiction over Huawei Technologies.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
ANSWER AND AFFIRMATIVE DEFENSES - 19
No. 2:14-cv-01351-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**Second Affirmative Defense**
*(Failure to State a Claim)*

2.      Plaintiff's Complaint fails to state a claim upon which relief can be granted for either trade secret misappropriation or for breach of any contract.

**Third Affirmative Defense**
*(Readily Ascertainable by Proper Means)*

3.      The claims alleged in the Complaint are barred on the grounds that the alleged trade secret information was readily ascertainable by proper means at the time of the alleged improper acquisition, use and/or disclosure.  Without limitation, the readily available information was ascertainable in both domestic and foreign patents applications published before the acts of alleged misappropriation (Canada Patent Application No. 2721793, Canada Patent Application No. 2806546, China Patent Application No. 201310368737.4, China Patent Publication No. 200980122850.6, China Patent Application No. 201180041116.4, Europe Patent Application No. 09732725.8, Europe Patent Application No. 11801491.9, Hong Kong Patent Application No. 14106429.2, Hong Kong Patent Application No. 11112517.6, Japan Patent Application No. 2013-136319, Japan Patent Application No. 2011-505250, Japan Patent Application No. 2013-518757, South Korea Patent Application No. 10-2010-7025816, PCT/US2009/41094, PCT/US2011/28530, PCT/US2011/42799, United States Patent Application No. 13/832,436, United States Patent Application No. 14/281,745, United States Patent Application No. 12/239,271, United States Patent Application No. 61/046,355, United States Patent Application No. 12/729,154, United States Patent Application No. 12/830,142, United States Patent Application No. 14/314,339, and United States Patent Application No. 12/964,427), videos (Plaintiff's own video - http://www.tmonews.com/2012/09/t-mobile-shows-off-device-testing-

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
ANSWER AND AFFIRMATIVE DEFENSES - 20
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

robot-employees-do-the-robot-dance/, KOMO-TV's video -

http://www.komonews.com/home/video/168716536.html, and *Seattle Times*'s video -

http://old.seattletimes.com/html/technologybrierdudleysblog/2019077344_t-

mobile_usa_turns_10_shows_of.html), and other published materials (including, but not limited

to, news articles).

### Fourth Affirmative Defense
### *(No Trade Secret)*

4.     The claims alleged in the Complaint are barred on the grounds that the alleged

confidential and proprietary information referred to in the Complaint are not trade secrets under

the Washington Uniform Trade Secret Act, in that such information was not in fact secret;

Plaintiff did not take reasonable steps to protect or treat such information as secret; and such

information lacks any independent economic value from its status as secret.

### Fifth Affirmative Defense
### *(Failure to Establish Misappropriation)*

5.     The claims alleged in the Complaint are barred on the grounds that the Huawei

robot referenced in the Complaint xDeviceRobot was independently developed without using

any of Plaintiff's alleged trade secrets.

### Sixth Affirmative Defense
### *(Plaintiff Materially Breached the Agreements)*

6.     Plaintiff itself has materially breached its agreements and therefore cannot bring

an action enforcing those agreements.

### Seventh Affirmative Defense
### *(Estoppel)*

7.     Plaintiff is estopped from making the claims set forth in its Complaint.

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
ANSWER AND AFFIRMATIVE DEFENSES - 21
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

**Eighth Affirmative Defense**
*(Bad Faith)*

8.     The claims alleged in the Complaint are barred because Plaintiff is prosecuting this litigation in bad faith and for an improper purpose, and Plaintiff's claims are frivolous and entitle Huawei Technologies to an award of reasonable expenses and attorneys' fees.  Plaintiff is wrongfully claiming as its own trade secrets information that it knows to be publicly available.

**Ninth Affirmative Defense**
*(Election of Remedies)*

9.     The remedy claims alleged in the Complaint are barred and precluded by the doctrine of election of remedies to the extent Plaintiff seeks inconsistent remedies or remedies that would result in a double recovery for Plaintiff.

**Tenth Affirmative Defense**
*(Adequacy of Remedy at Law)*

10.     The injury allegedly suffered by Plaintiff, if any, would be adequately compensated in an action at law for damages.  Accordingly, Plaintiff is not entitled to seek equitable relief.

**Eleventh Affirmative Defense**
*(Comparative Fault)*

11.     No conduct by or attributable to the Huawei Technologies was either the cause in fact or the proximate cause of the damages alleged by Plaintiff.  Rather, the damages alleged by Plaintiff were caused, either in whole or in part, by Plaintiff's own acts or omissions or by the acts or omissions of persons or entities other than Huawei Technologies, including but not limited to Plaintiff's failure to take reasonable and adequate measures to protect its allegedly proprietary information.  Plaintiff is therefore barred from recovery against Huawei

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
ANSWER AND AFFIRMATIVE DEFENSES - 22
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

Technologies, or alternatively, Plaintiff should have the recovery, if any, proportionately

reduced.

### Twelfth Affirmative Defense
### *(No Damages)*

12.     Plaintiff has not suffered any damages.

### Thirteenth Affirmative Defense
### *(No Punitive Damages)*

13.     Plaintiff is not legally entitled to punitive damages.

### Fourteenth Affirmative Defense
### *(No Attorneys' Fees)*

14.     Plaintiff is not legally entitled to attorneys' fees.

### Fifteenth Affirmative Defense
### *(Full Compliance with Obligations)*

15.     Huawei Technologies fully complied with its obligations to Plaintiff.

## XIII.   JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Defendant Huawei Technologies Co.,

Ltd. requests a trial by jury on all issues so triable.

## XIV.   PRAYER FOR RELIEF

WHEREFORE, Huawei Technologies prays for the following relief:

1.     That T-Mobile take nothing by way of its Complaint;

2.     That the Court enter judgment in favor of Huawei Technologies and against T-

Mobile and dismiss T-Mobile's Complaint against Huawei Technologies with prejudice; and

3.     That Huawei Technologies be awarded reasonable costs incurred in defending the

Complaint, including attorneys' fees as authorized by law; and

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
ANSWER AND AFFIRMATIVE DEFENSES - 23
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

4. That Huawei Technologies be awarded such further relief as the Court deems just, proper, and equitable.

DATED this 28th day of August, 2015.

**GORDON TILDEN THOMAS & CORDELL** LLP
Attorneys for Defendant Huawei Technologies Co., Ltd.

By   *s/Franklin D. Cordell*
Franklin D. Cordell, WSBA #26392
Jeffrey M. Thomas, WSBA #21175
1001 Fourth Avenue, Suite 4000
Seattle, Washington 98154
Telephone: (206) 467-6477
Facsimile:  (206) 467-6292
Email:  fcordell@gordontilden.com
Email:  jthomas@gordontilden.com

**STEPTOE & JOHNSON LLP**
Attorneys for Defendant Huawei Technologies Co., Ltd.

By   *s/Timothy C. Bickham*
William F. Abrams*
James F. Hibey*
Timothy C. Bickham*
Jessica I. Rothschild*
1330 Connecticut Avenue NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile:  (202) 429-3902
Email:  jhibey@steptoe.com
Email:  wabrams@steptoe.com
Email:  tbickham@steptoe.com
Email:  jrothschild@steptoe.com
*  *Admitted Pro Hac Vice*

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
ANSWER AND AFFIRMATIVE DEFENSES - 24
No. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL** LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

## CERTIFICATE OF SERVICE

I hereby certify that, on this 28th day of August 2015, a true and correct copy of

Defendant Huawei Technologies Co., Ltd.'s Answer and Affirmative Defenses was sent by

electronic mail to the following counsel:


Michael E. Kipling, WSBA #7677
**KIPLING LAW GROUP PLLC**
3601 Fremont Avenue N., Suite 414
Seattle, WA 98103
(206) 545-0345
(206) 545-0350 (fax)
kipling@kiplinglawgroup.com

John Hueston (*Pro Hac Vice*)
jhueston@hueston.com
Alison Plessman (*Pro Hac Vice*)
aplessman@hueston.com
Eric Hayden (*Pro Hac Vice*)
ehayden@hueston.com
**HUESTON HENNIGAN LLP**
523 West 6th Street
Los Angeles, CA 90014
(213) 788-4340

***Counsel for Plaintiff T-Mobile USA, Inc.***



s/ *Franklin D. Cordell*
Franklin D. Cordell, WSBA #26392

DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.'S
ANSWER AND AFFIRMATIVE DEFENSES - 25
NO. 2:14-cv-01351-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292