1

2

3

4

5                                                      HONORABLE RICHARD A. JONES

6

7                      UNITED STATES DISTRICT COURT
                  FOR THE WESTERN DISTRICT OF WASHINGTON
8                                AT SEATTLE

9   T-MOBILE USA, INC., a Delaware          | Case No. 14-cv-01351-RAJ
    corporation,
10                                          | **T-MOBILE USA, INC.'S MOTION**
                  Plaintiff,                | **FOR PARTIAL SUMMARY**
11                                          | **JUDGMENT ON BREACH OF**
           v.                               | **CONTRACT**
12
    HUAWEI DEVICE USA, INC., a Texas        | **NOTED ON MOTION CALENDAR:**
13  corporation; and HUAWEI TECHNOLOGIES    | November 11, 2016
    CO. LTD, a China corporation,
14                                          | **ORAL ARGUMENT REQUESTED**
                  Defendants.
15

16

17

18

19

20

21

22

23

24

25

26

27

T-MOBILE USA, INC.'S MOTION FOR PARTIAL                    KIPLING LAW GROUP PLLC
SUMMARY JUDGMENT ON BREACH OF CONTRACT                     4464 FREMONT AVE N, SUITE 300
(14-cv-01351-RAJ)                                          SEATTLE, WASHINGTON  98103
                                                           telephone (206) 545-0345
                                                           fax (206) 545-0350

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................. 1

II.    STATEMENT OF UNDISPUTED FACTS ..................................................... 2

    A.     T-Mobile and Huawei Entered a Series of Contracts Governing the Use of Confidential Information, Prohibiting Photography, and Requiring Huawei to Instruct its Employees to Comply .................................................................... 2

        1.     The 2010 Supply Agreement ..................................................... 2

        2.     The 2012 Mutual Nondisclosure Agreement ............................ 3

        3.     The August 2012 "Clean Room Letter" ..................................... 4

    B.     Huawei Employees Photographed the Tappy Testing System and the Testing Lab, and Removed Parts of Tappy to Photograph Them ........................ 4

        1.     October 2012: Photo by Kathale ................................................ 5

        2.     November 2012: Photos by Xiong ............................................. 5

        3.     May 2013: Photos by Wang and Xiong and Removal of End Effector by Xiong ...................................................................... 6

        4.     T-Mobile's Investigation of the Breaches ............................... 10

III.   LEGAL STANDARDS AND ELEMENTS OF BREACH CLAIM ............. 11

    A.     Summary Judgment and Partial Summary Judgment ......................... 11

    B.     Breach of Contract under Washington and New York Laws .............. 11

IV.    ARGUMENT ................................................................................................ 12

    A.     Huawei and T-Mobile Indisputably Entered Into Valid Contracts .... 12

    B.     The Relevant Terms of the Contracts Are Clear and Unambiguous ... 13

    C.     Huawei Indisputably Breached the Contracts .................................... 14

        1.     Huawei Breached the NDA and Clean Room Letter by Photographing T-Mobile's Testing Facilities and Robots, and by Removing Robot Parts From the Lab ...................................... 14

    D.     Huawei's Breach Indisputably Damaged T-Mobile .......................... 15

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

## **TABLE OF CONTENTS (cont.)**

<u>**Page**</u>

V.      CONCLUSION ...................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

1

**Cases**

2

*Burberry Ltd. v. Euro Moda, Inc.*,
3
   2009 WL 1675080 (S.D.N.Y. 2009)...................................................................... 15

*Childress v. Liberty Mutual Fire Ins. Co.*,
4
   2011 WL 485868 (W.D. Wash. Feb. 7, 2011) ................................................ 2, 11

5
*Consedine v. Portville Cent. School Dist.*,
   12 N.Y.3d 286 (2009) ................................................................................ 13
6

*Curtis v. Illumination Arts, Inc.*,
7
   No. C12–0991JLR, 2013 WL 6173799 (W.D. Wash. Nov. 21, 2013)............ 11

8
*First Inv'rs Corp. v. Liberty Mut. Ins. Co.*,
   152 F.3d 162 (2d Cir. 1998)......................................................................... 12
9

*Hearst Commc'ns, Inc. v. Seattle Times Co.*,
10
   115 P.3d 262 (Wash. 2005) ......................................................................... 13

11
*Hexcel Corp. v. Ineos Polymers, Inc.*,
   681 F.3d 1055 (9th Cir. 2012) ..................................................................... 11
12

*Lehrer v. State, Dept. of Social and Health Services*,
13
   101 Wash. App. 509 (2000) ......................................................................... 13

14
*Myers v. Washington*,
   218 P.3d 241 (Wash. App. 2009) ................................................................ 11
15

*Nw. Indep. Forest Mfrs. v. Dept. of Labor & Indust.*,
16
   899 P.2d 6 (Wash. App. 1995) ..................................................................... 11

17
*Olin Corp. v. American Home Assurance Co.*,
   704 F.3d 89 (2d Cir. 2012).......................................................................... 13
18

*Puget Soundkeeper Alliance v. Louis Dreyfus Commodities LLC*,
19
   No. C14-803RAJ, 2016 WL 3458346 (W.D. Wash. June 24, 2016)............. 11

20
*RUS, Inc. v. Bay Indus., Inc.*,
   No. 01–CV–6133, 2004 WL 1240578 (S.D.N.Y. May 25, 2004) .................. 12
21

*Terwilliger v. Terwilliger*,
22
   206 F.3d 240 (2d Cir. 2000)......................................................................... 13

23
*U.S. v. King Features Entertainment, Inc.*,
   843 F.2d 394 (9th Cir. 1988) ........................................................................ 1
24

*Wachter v. Kim*,
25
   920 N.Y.S.2d 66 (App. Div. 2011) .............................................................. 12

26
T-MOBILE USA, INC.'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON BREACH OF
CONTRACT - iii
27
(14-cv-01351-RAJ)

K<small>IPLING</small> L<small>AW</small> G<small>ROUP</small> PLLC
4464 F<small>REMONT</small> A<small>VE</small> N, S<small>UITE</small> 300
S<small>EATTLE</small>, W<small>ASHINGTON</small> 98103
telephone (206) 545-0345
fax (206) 545-0350

**TABLE OF AUTHORITIES (cont.)**

**Page(s)**

*Wash. State Major League Baseball Stadium Public Facilities Dist. v. Huber,*
*  Hunt, & Nichols-Kiewit Construction Co.,*
   176 Wash. 2d 502 (2013)............................................................................. 13

**Rules**

Fed. R. Civ. P. 56(a) ...........................................................................2, 11, 15

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

I.    **INTRODUCTION**

In 2012, Huawei signed a Mutual Nondisclosure Agreement ("NDA") and "Clean Room Letter" with T-Mobile in which Huawei agreed—as a precondition to gaining entry to T-Mobile's robot testing lab—that it was "prohibited from…capturing photographs, making drawings or otherwise capturing the likeness or design, in whole or in part, of the test facilities or robots used for testing."  The prohibitions are unambiguous and there were no caveats, no carve-outs, and no exceptions: Huawei was barred from taking pictures or otherwise capturing the likeness of T-Mobile's labs and robot testing system.  Yet, once confronted with video footage and other equally damning evidence, Huawei has *admitted* that it breached its contracts with T-Mobile in at least two ways: (1) by taking unauthorized photographs of T-Mobile's robot testing system on multiple occasions, and (2) by removing parts of the robot from T-Mobile's lab.  Thus, while the full extent of Huawei's breach of contract will be shown at trial,[1] these two grounds for breach of contract are fully developed in the record, not in dispute, and are ripe for summary judgment.

Similarly, although the *amount* of damage suffered by T-Mobile as a result of these and other breaches of contract will be determined at trial, Huawei cannot dispute the *fact* that T-Mobile suffered economic damage as a result of Huawei's admitted violations of the NDA and Clean Room Letter.  At a bare minimum, Huawei has not rebutted T-Mobile's evidence that T-Mobile incurred direct costs in its investigation of Huawei's admitted misconduct.

Where there is no dispute as to the validity and enforceability of the relevant terms in a contract and the terms themselves are clear and unambiguous, it is appropriate to determine liability for breach of contract at summary judgment.  *U.S. v. King Features Entertainment, Inc.*, 843 F.2d 394 (9th Cir. 1988) ("Summary judgment is appropriate when the contract terms are clear and unambiguous….").  And where summary judgment is appropriate on the issue of

---

[1] Among other things, at trial T-Mobile will show that Huawei used T-Mobile's confidential information without permission to improve Huawei's own testing systems and to bolster Huawei's profits by tens if not hundreds of millions of dollars, with the complicity of over 40 Huawei employees.

T-MOBILE USA, INC.'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON BREACH OF
CONTRACT - 1
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

liability for breach of contract, courts hold the power to award partial summary judgment on the limited issue of liability while reserving the amount of damages for trial.  *See* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); *Childress v. Liberty Mutual Fire Ins. Co.*, 2011 WL 485868, at *6 (W.D. Wash. Feb. 7, 2011) (granting plaintiff's partial summary judgment motion for liability on its breach of contract claim while reserving the amount of damages for trial).

Here, as to the NDA and Clean Room Letter that are the subject of this motion, all elements of T-Mobile's breach of contract claim are undisputed, and partial summary judgment on the limited issue of Huawei's liability for breach of the NDA and Clean Room Letter on the bases identified in this motion is therefore warranted.

## II.     STATEMENT OF UNDISPUTED FACTS

### A.     T-Mobile and Huawei Entered a Series of Contracts Governing the Use of Confidential Information, Prohibiting Photography, and Requiring Huawei to Instruct its Employees to Comply

T-Mobile is a Delaware corporation located in Bellevue, Washington, that sells wireless communications devices and services, including voice, messaging, and data services, in the United States.  In the telecommunications industry, T-Mobile is referred to as a "wireless carrier."  Wireless carriers purchase mobile devices from device manufacturers for resale to their consumers.  Huawei is one such manufacturer.  T-Mobile and Huawei began their wireless carrier-manufacturer relationship in 2010.  Pursuant to this relationship, Huawei sold wireless devices it manufactured to T-Mobile for sale to T-Mobile's customers and use on its wireless network.  Between 2010 and 2012, Huawei and T-Mobile entered into at least three contracts that are discussed below.

### 1.     The 2010 Supply Agreement

In June 2010, the parties executed an agreement that governed the overall supply relationship.  This Handset and Accessory Supply Agreement (the "Supply Agreement") was signed by Huawei USA's predecessor Futurewei Technologies, Inc. and T-Mobile USA.  *See*

T-MOBILE USA, INC.'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON BREACH OF
CONTRACT - 2
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

Supply Agreement (Ex. A) at 42-43.[2]  The Supply Agreement was then assigned to Huawei

Device USA, Inc. ("Huawei USA").  *See* Huawei USA RFA Responses (Ex. B) at 9; Huawei

USA Answer (Ex. EE) ¶ 36; Huawei Technologies Co. Ltd. RFA Responses (Ex. C) at 12;

Huawei Technologies Co. Ltd. Answer (Ex. HH) ¶ 36.

   The Supply Agreement did more than govern the terms of ordering, selling, testing, and

returning mobile devices.  Because the parties knew that any close business relationship of this

nature would necessitate exposure to T-Mobile's confidential information and require Huawei

employees to work in T-Mobile's facilities, the contract set forth several general rules that

governed Huawei's behavior with respect to T-Mobile's information and its presence on

T-Mobile's premises.  Supply Agreement (Ex. A) § 9.4.1 ("Confidential Information shall be the

sole and exclusive property of the provider of such information or its licensors, and each Party

agrees not to use such Confidential Information except in the performance of this

Agreement….").

## 2.  The 2012 Mutual Nondisclosure Agreement

   In 2012, T-Mobile instituted a program in which device manufacturers like Huawei

would work directly with the robot testing system (also called "Tappy" or the "Tappy Testing

System") on T-Mobile's premises to improve their devices.  Before allowing Huawei to access

its robot testing lab, however, T-Mobile required Huawei to execute a Mutual Nondisclosure

Agreement (the "NDA") to protect the information in T-Mobile's lab from unauthorized

disclosure. ██████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████  Effective July 31, 2012, Huawei Device USA, Inc., on behalf of itself, its

parents, affiliates, subsidiaries, contract manufacturers, partner companies and alliances,

executed the NDA and agreed to its provisions.  NDA (Ex. F) at 1, 3.

---

[2] All citations to Exhibits are references to exhibits attached to the Declaration of Xinlin Li Morrow in Support of T-Mobile's Motion for Partial Summary Judgment.

T-MOBILE USA, INC.'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON BREACH OF
CONTRACT - 3
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

The NDA explicitly governed "handset testing protocol which shall include the testing of [Huawei's] handset and accessories on T-Mobile's premises." *Id.* § 1. Among other prohibitions, the NDA expressly stated that Huawei was not permitted to "capture photographs, make drawings or otherwise capture in any fashion the likeness or designs of the test facilities or robots used for testing…" or "in any way copy any computer programs, source code, object code, or any software documentation[.]" *Id.* § 5. The NDA holds Huawei "responsible for any breach of this Agreement by such persons" and requires Huawei to "immediately notify [T-Mobile] in the event of any unauthorized use or disclosure." *Id.* § 3.

### 3.     The August 2012 "Clean Room Letter"

To ensure the integrity of its robot testing lab and Huawei's compliance with the Supply Agreement and NDA, T-Mobile required Huawei to sign yet another agreement in August 2012, entitled "Letter Agreement Robot Tester Protocol" (the "Clean Room Letter").   Clean Room Letter (Ex. G); *see also* Huawei USA RFA Responses (Ex. Q) at 10 (admitting that Huawei USA is a signatory to the Clean Room Letter and it "speaks for itself"); Huawei Technologies Co. Ltd. RFA Responses (Ex. C) at 16-18 (same).  This Clean Room Letter specifically addressed the rules for Huawei's interactions with Tappy.  *See* Clean Room Letter (Ex. G) at 1 (governing "the present efforts of the parties to initiate an automated testing protocol for the testing of Huawei equipment in clean rooms on T-Mobile's premises.").

Among other prohibitions, the Clean Room Letter reiterated the NDA prohibition against "capturing photographs, making drawings or otherwise capturing the likeness or design, in whole or in part, of the test facilities or robots used for testing…." and "*in any way* copying any computer programs, source code, object code, or any electronic or hard copy software documentation, including but not limited to downloading of files, information or test system software apart from files and information related to test data performed specifically for Huawei." *Id.* at 2 (emphasis added).

### B.     Huawei Employees Photographed the Tappy Testing System and the Testing Lab, and Removed Parts of Tappy to Photograph Them

T-MOBILE USA, INC.'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON BREACH OF
CONTRACT - 4
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1   After the NDA and Clean Room Letter were executed, T-Mobile gave a limited number

2   of specific Huawei employees access to use the Tappy Testing System in T-Mobile's labs to test

3   devices Huawei developed for use on T-Mobile's networks.  Specifically, two engineers at

4   Huawei were authorized to access the T-Mobile robot lab.  ███████████████████

5   ████████████████████████████████████████████████████

6   ████████████████████    Those two Huawei USA engineers—Xinfu "Adam" Xiong and

7   Prachi Kathale—were trained to operate T-Mobile's Tappy Testing System.  Mann Tr. (Ex. I)

8   213:10-15.  ███████████████████████████████████

9   ████████████████████████████████████████████████████

10  ██████████████

11  As described below, these and other Huawei employees repeatedly and flagrantly

12  violated the NDA and Clean Room Letter by taking photographs of the Tappy Testing System

13  (or sneaking in others to do the same) and by removing robot parts from the robot lab without

14  permission.

15              **1.      October 2012: Photo by Kathale**

16  ████████████████████████████████████

17  ████████████████████████████████████████████

18  ████████████████████████████████████████████

19  ████████████████████████████████████████████████

20  ████████████████████████████████████████████████████

21  ██████████████████████  ████████████████████████

22  ████████████████████████  ████████████████████

23              **2.      November 2012: Photos by Xiong**

24  ████████████████████████████████████████████

25  ████████████████████████████████████████████████████

26  ████████████████████████████████████████████

27  ████████████████████████████████████████████



1

2

3

4

5

6

7

8

9        **3.**     **May 2013: Photos by Wang and Xiong and Removal of End Effector by Xiong**

10

11

12

13

14

15

16

17

18

19

20

21

22

23  . Attempting to conceal Mr. Wang's visit and the reason for

24 it, no one at Huawei informed T-Mobile about his planned arrival.

25 Villanueva Tr. (Ex. P) 152:16-23; Mann Tr. (Ex. I) 248:13-18.

26

27

T-MOBILE USA, INC.'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON BREACH OF
CONTRACT - 6
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350



T-Mobile did not authorize Wang to be in the lab.  Huawei USA RFA Responses (Ex. Q) at 14.

Later, Trey Villanueva, a T-Mobile lab engineer, discovered Wang's unauthorized presence in the lab and, like Mr. Mann, told Wang to leave the lab immediately.  Villanueva Tr. (Ex. P) 175:13-22.

T-MOBILE USA, INC.'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON BREACH OF
CONTRACT - 7
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350



This time Xiong actually removed part of Tappy – an end effector – from the lab.

Villanueva Tr. (Ex. P) 193:20-23 (testifying that, on May 29, 2013, robotic components "went missing" from the lab "and upon review of the [security] video," Villanueva discovered that "Adam [Xiong] placed [those components] in his bag and took [them] off premises"):

Xiong initially denied any knowledge of the missing end effector.

T-MOBILE USA, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON BREACH OF CONTRACT - 8 (14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1   Villanueva Tr. (Ex. P) 200:2-20█ ███████████████████████████████████████████

2   ███████████████████████████████████████████████   Later Xiong informed

3   Villanueva that Xiong "found" the end effector in the laptop bag and Xiong was "sorry" for the

4   "mistake" and would return the end effector the next day.  Villanueva Tr. (Ex. P) 200:2-201:3,

5   212:13-19 (Xiong initially told Villanueva that he "didn't have" the missing robotic components,

6   but later sent him a text message saying "I'm sorry to find [the components] with my laptop. . . .

7   I am so sorry, it's my mistake."); TMHUA00463712 (Ex. Y) (text message showing the same);

8   TMHUA00463714 (Ex. Z) (same).

9   ████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████

11  ████████████████████████   ██████████████████████████

12  ██████████████████████████████████████████████████████

13  ██████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████

16  ██████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████

18  ██████████████████████████████████████████████████████

19  ██████████████████████████████████████████████████████

20  ██████████████████████████████████████████████████████

21  ██████████████████████████████████████████████████████

22  ██████████████████████████████████████████████████████

23  ████████████████████████████████

24       In sum, Huawei employees removed Tappy components from T-Mobile's lab and, on at

25  least five different occasions, improperly photographed the robot in violation of Huawei's

26  contractual obligations.  Worse, they then used those photographs to report back to Huawei's

27  headquarters and Research & Development department to assist Huawei in improperly

T-MOBILE USA, INC.'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON BREACH OF
CONTRACT - 9
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

replicating the Tappy Testing System.

### 4. T-Mobile's Investigation of the Breaches

After Villanueva found the end effector missing, he also notified his manager Sumeet Mann.  Villanueva Tr. (Ex. P) 204:25-205:10.  Villanueva and Mann then reviewed video footage from the surveillance camera inside the Tappy chamber.  *Id*. at 205:16-206:8.  ████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████  ███████████████████████

███████████████████  Upon witnessing Xiong's act on video, the T-Mobile engineers escalated their concerns to T-Mobile's management.

At the end of May 2013, T-Mobile's corporate investigation team was notified of Huawei's security violations including unauthorized photographing and removal of robot parts and T-Mobile initiated a full investigation.  Cunningham Tr. (Ex. DD) 23:8–24, 30:9-20.  T-Mobile's investigation included a review of the security violations – including by interviewing Huawei employees – and was conducted with the efforts of five T-Mobile employees.  *Id.* at 32:10-15, 38:4-22.  In all, the investigation cost T-Mobile at least $15,800.[4]  *Id.* at 38:4-7, 42:11-13.

████████████████████████████████████████

████████████████████████████████████████████

██████████████████  ████████████████████████████

████████████████████████████████████████

████████████████████████████████

---

[4] This is of course a small component of the damages claim that T-Mobile will prove at trial.

T-MOBILE USA, INC.'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON BREACH OF
CONTRACT - 10
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1   **III.   LEGAL STANDARDS AND ELEMENTS OF BREACH CLAIM**

2       **A.    Summary Judgment and Partial Summary Judgment**

3           Summary judgment is appropriate when there is no genuine dispute as to any material

4   fact and the moving party is entitled to judgment as a matter of law.  *Puget Soundkeeper Alliance*

5   *v. Louis Dreyfus Commodities LLC*, No. C14-803RAJ, 2016 WL 3458346, at *2 (W.D. Wash.

6   June 24, 2016) (citing Fed. R. Civ. P. 56(a)).  Rule 56 authorizes a court to render summary

7   judgment on all or "part" of a claim.  Fed. R. Civ. P. 56(a).  Specifically, the Rule permits the

8   court to enter partial summary judgment as to liability for breach of contract while reserving the

9   amount of damages as an issue for trial.  *Childress*, 2011 WL 485868, at *6.

10          When the moving party has the burden of proof on a specific issue, the moving party has

11  the burden of establishing a prima facie case as to that issue on its motion for summary

12  judgment.  *Curtis v. Illumination Arts, Inc.*, No. C12–0991JLR, 2013 WL 6173799, at *7 (W.D.

13  Wash. Nov. 21, 2013).  Once the moving party has satisfied its burden, it is entitled to summary

14  judgment if the non-moving party fails to identify specific factual disputes that must be resolved

15  at trial.  *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1059 (9th Cir. 2012).

16      **B.    Breach of Contract under Washington and New York Laws**

17          Under Washington law, to prevail on a claim for breach of contract, T-Mobile must

18  show:  "(1) a contract that imposed a duty; (2) breach of that duty; and (3) an economic loss as a

19  result of the breach."  *Myers v. Washington*, 218 P.3d 241, 243 (Wash. App. 2009) (citing *Nw.*

20  *Indep. Forest Mfrs. v. Dept. of Labor & Indust.*, 899 P.2d 6 (Wash. App. 1995)).

21          Under New York law the standard is similar.[5]  To establish a breach of contract,

22  T-Mobile needs to show "(1) a contract; (2) performance of the contract by one party; (3) breach

23  by the other party; and (4) damages."  *First Inv'rs Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162,

24  168 (2d Cir. 1998).

25
26          [5] Washington law governs the Supply Agreement and Clean Room Letter.  *See* Supply Agreement (Ex. A), § 9.11;
    Clean Room Letter (Ex. G) at 2 (noting that "[a]ll other terms and conditions of the above referenced Agreement
27  [the Supply Agreement] will remain in full force and effect").  And New York law governs the NDA.  *See* NDA
    (Ex. F) § 13.

T-MOBILE USA, INC.'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON BREACH OF
CONTRACT - 11
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1  **IV.   ARGUMENT**

2         The following undisputed material facts establish that T-Mobile entered into valid

3  contracts with Huawei, Huawei breached those contracts, and T-Mobile suffered damage as a

4  result.[6]  Given these undisputed facts, T-Mobile is entitled to partial summary judgment

5  concerning Huawei's liability for breach of contract on the NDA and Clean Room Letter.[7]

6         **A.       Huawei and T-Mobile Indisputably Entered Into Valid Contracts**

7         As discussed above, two contracts expressly govern Huawei's use of T-Mobile's Tappy

8  Testing System and test facilities: the NDA (Ex. F) and the Clean Room Letter (Ex. G).  Huawei

9  did not challenge the validity or enforceability of the NDA or Clean Room Letter in discovery –

10 it simply stated that "[t]he document speaks for itself."  *See* Huawei USA RFA Responses

11 (Ex. Q) at 8-10.

12        Huawei USA is a signatory to the NDA and Clean Room Letter.  *See* Huawei USA RFA

13 Responses (Ex. Q) at 8-10.  Moreover, Huawei USA entered into the NDA "on behalf of itself,

14 its parents, affiliates, subsidiaries, contract manufacturers, partner companies, and alliances,"

15 which includes Huawei China.  NDA (Ex. F) at 1.  The Clean Room Letter, in turn, expressly

16 incorporates the NDA by reference. Clean Room Letter (Ex. G) at 1-2. Thus, by the plain

17 language of the contracts, both Huawei USA and Huawei China are bound by the NDA and

18 Clean Room Letter.  *See, e.g., RUS, Inc. v. Bay Indus., Inc.*, No. 01–CV–6133, 2004 WL

19 1240578, at *20–21 (S.D.N.Y. May 25, 2004) (applying New York law and finding that non

20 signatory was liable for breach of contract because "the totality of its expressed words and deeds

21 manifests an intent to be bound"); *Wachter v. Kim*, 920 N.Y.S.2d 66, 70-71 (App. Div. 2011)

22 (reversing dismissal of breach of contract claim against defendant because the contract applied to

23 "affiliates" of certain entities, including the defendant).

24

25        [6] It is also undisputed that T-Mobile performed its obligations under these contracts by, among other things, allowing Huawei into its robot testing lab to test its devices.

26

27        [7] Other contracts, such as the Supply Agreements between the parties, as well as other terms of the NDA and Clean Room letter, provide bases for breach of contract that T-Mobile will address at trial.

T-MOBILE USA, INC.'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON BREACH OF
CONTRACT - 12
(14-cv-01351-RAJ)

**B.**     **The Relevant Terms of the Contracts Are Clear and Unambiguous**

The parties are bound by the plain language of these agreements.  *Olin Corp. v. American Home Assurance Co.*, 704 F.3d 89 (2d Cir. 2012) (applying New York law) ("[T]he words and phrases in a contract should be given their plain meaning…." (internal quotations omitted)); *Wash. State Major League Baseball Stadium Public Facilities Dist. v. Huber, Hunt, & Nichols-Kiewit Construction Co.*, 176 Wash. 2d 502, 509-10 (2013) ("Words in a contract are given their ordinary, usual, and popular meaning…."). Courts "do not interpret what was intended to be written but what was written."  *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005); *Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000) (applying New York law) ("A court may neither rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous, nor redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case.").

Here, as discussed above, the contracts between T-Mobile and Huawei plainly and unambiguously prohibit Huawei and its employees from taking any photographs or otherwise capturing the likeness or design of T-Mobile's test facilities or Tappy Testing System.  NDA (Ex. F) § 5 (disallowing parties to "capture photographs, make drawings or otherwise capture in any fashion the likeness or designs of the test facilities or robots used for testing"); Clean Room Letter (Ex. G) at 2 (prohibiting Huawei from "capturing photographs, making drawings or otherwise capturing the likeness or design, in whole or in part, of the test facilities or robots used for testing").  The contracts do not provide any exception to this categorical bar.  *Id*; *see also Consedine v. Portville Cent. School Dist.*, 12 N.Y.3d 286, 293 (2009) ("Courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." (internal quotations omitted)); *Lehrer v. State, Dept. of Social and Health Services*, 101 Wash. App. 509, 515 (2000) ("If the language is clear and unambiguous, the court must enforce the contract as written; it may not modify the contract or create ambiguity where none exists.").

T-MOBILE USA, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON BREACH OF CONTRACT - 13 (14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

**C.      Huawei Indisputably Breached the Contracts**

      **1.      Huawei Breached the NDA and Clean Room Letter by Photographing T-Mobile's Testing Facilities and Robots, and by Removing Robot Parts From the Lab.**

As described extensively above, Huawei indisputably photographed and captured the likeness and design of the Tappy Testing System in violation of the NDA and Clean Room Letter.  To briefly recap these breaches and the undisputed evidence supporting them:



1)

2)

3)

4)

5)      On May 29, 2013, Xiong removed a component of Tappy – an end effector – from the lab.

                        Villanueva Tr. (Ex. P) 193:20-23 (testifying that, on May 29, 2013, robotic components "went missing" from the lab "and upon review of the [security] video," Villanueva discovered that "Adam [Xiong] placed [those components] in his bag and took [them] off premises").

6)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

In taking these photographs and removing robot parts from the lab without authorization, Huawei breached the express terms of the Clean Room Letter and NDA.  *See* Clean Room Letter (Ex. G) at 2 (categorically barring any such photographs); NDA (Ex. F) § 5 (same).[8]

### D.      Huawei's Breach Indisputably Damaged T-Mobile

At a minimum, unrebutted evidence shows that T-Mobile incurred direct costs of at least $15,800 from investigating Huawei employees' misconduct in T-Mobile's robot lab.  Upon discovering security violations by Huawei employees, including the unauthorized photographing and removal of robot parts, T-Mobile initiated an investigation in approximately late May 2013.  Cunningham Tr. (Ex. DD) 23:8-24, 30:9-20.  That investigation involved both labor and material costs.  *Id.* at 28:4-19 ("The cost for payroll, which is … 15,500, and materials, which is 300.").  While these direct costs are not the only damages T-Mobile will seek at trial in connection with its breach of contract and other claims, they are undisputed and therefore establish the last element of T-Mobile's breach of contract claim: that as a matter of law it suffered some damage as a result of Huawei's breach of the NDA and Clean Room Letter.[9]  *See Burberry Ltd. v. Euro Moda, Inc*., 2009 WL 1675080, at *17 (S.D.N.Y. 2009).

## V.      CONCLUSION

For these reasons, the Court should grant T-Mobile's motion for partial summary judgment on Huawei's liability for breaching certain provisions of the 2012 Mutual Nondisclosure Agreement and the August 2012 "Clean Room Letter."

---

[8] As noted above, Huawei has also breached other provisions of these contracts and T-Mobile has suffered extensive damages as a result, but T-Mobile reserves those issues for trial.

[9] Moreover, even if T-Mobile could not establish this element beyond dispute, partial summary judgment will still be proper on the remaining elements.  Fed. R. Civ. P. 56(a) (summary judgment may be sought on "part" of a claim or defense).

T-MOBILE USA, INC.'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON BREACH OF
CONTRACT - 15
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1    DATED this 20th day of October, 2016.

2

3    s/ Michael E. Kipling                          John Hueston (admitted *pro hac vice*)
     Michael E. Kipling, WSBA #7677                 Alison Plessman (admitted *pro hac vice*)
4    Marjorie A. Walter, WSBA #40078                Eric Hayden (admitted *pro hac vice*)
     kipling@kiplinglawgroup.com                    jhueston@hueston.com
5    walter@kiplinglawgroup.com                     aplessman@hueston.com
6    **KIPLING LAW GROUP PLLC**                     ehayden@hueston.com
     4464 Fremont Avenue N., Suite 300              **HUESTON HENNIGAN LLP**
7    Seattle, WA 98103                              620 Newport Center Drive, Suite 1300
     (206) 545-0345                                 Newport Beach, CA 92660
8    (206) 545-0350 (fax)                           (949) 229-8640

9                    *Counsel for Plaintiff T-Mobile USA, Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

T-MOBILE USA, INC.'S MOTION FOR PARTIAL                    KIPLING LAW GROUP PLLC
SUMMARY JUDGMENT ON BREACH OF                             4464 FREMONT AVE N, SUITE 300
CONTRACT - 16                                              SEATTLE, WASHINGTON 98103
(14-cv-01351-RAJ)                                          telephone (206) 545-0345
                                                          fax (206) 545-0350

1

## **CERTIFICATE OF SERVICE**

2       I hereby certify that on the 20th day of October, 2016, I electronically filed the foregoing

3  with the Clerk of the Court using the CM/ECF system which will send notification of such filing

4  to all counsel of record.

5

6       DATED this 20th day of October, 2016.

7

8                                    s/ Xinlin Li Morrow
                                     Xinlin Li Morrow (admitted *pro hac vice*)
9                                    **HUESTON HENNIGAN LLP**
                                     620 Newport Center Drive, Suite 1300
10                                   Newport Beach, CA 92660
                                     (949) 229-8640
11

12                                   *Counsel Plaintiff T-Mobile USA, Inc.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

T-MOBILE USA, INC.'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON BREACH OF
CONTRACT - 17
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350