1

2

3

4

5                                                          HONORABLE RICHARD A. JONES

6                              UNITED STATES DISTRICT COURT
                          FOR THE WESTERN DISTRICT OF WASHINGTON
7                                         AT SEATTLE

8   T-MOBILE USA, INC., a Delaware
    corporation,                                      Case No. 14-cv-01351-RAJ
9
                      Plaintiff,                      **T-MOBILE USA, INC.'S**
10                                                    **OPPOSITION TO HUAWEI**
              v.                                      **DEVICE USA, INC.'S MOTION**
11                                                    **FOR SUMMARY JUDGMENT**
    HUAWEI DEVICE USA, INC., a Texas
12  corporation; and HUAWEI TECHNOLOGIES              **NOTED ON MOTION CALENDAR:**
    CO. LTD, a China corporation,                     November 14, 2016
13
                      Defendants.                     **ORAL ARGUMENT REQUESTED**
14

15

16

17

18

19

20

21

22

23

24

25

26

27

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI                          KIPLING LAW GROUP PLLC
DEVICE USA, INC.'S MOTION FOR SUMMARY                              4464 FREMONT AVE N, SUITE 300
JUDGMENT                                                           SEATTLE, WASHINGTON 98103
(14-cv-01351-RAJ)                                                  telephone (206) 545-0345
                                                                   fax (206) 545-0350

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................... 1

II.  STATEMENT OF FACTS ......................................................................................... 2

    A.  T-Mobile Develops A Valuable And Secret Phone Testing System ................... 2

    B.  Huawei Engages In a Scheme To Steal T-Mobile's TTS Trade Secrets ............. 3

    C.  After Being Caught, Huawei Lies About Its Scheme .......................................... 5

III.  LEGAL STANDARD .................................................................................................. 6

IV.  ARGUMENT ............................................................................................................... 6

    A.  T-Mobile Has Sufficiently Defined Its Trade Secrets, As This Court Has
        Repeatedly Found .................................................................................................. 6

        1.  Huawei's Argument Ignores the Record In This Case ............................. 7

        2.  T-Mobile's Combination Trade Secret is Sufficiently Defined ............... 7

        3.  T-Mobile's Other Trade Secrets Are Also Sufficiently Defined ............. 9

    B.  The Evidence Unequivocally Shows That T-Mobile's Trade Secrets Were
        Not Publicly Disclosed ....................................................................................... 11

        1.  T-Mobile's Patents Do Not Disclose the TTS Trade Secrets ................ 12

        2.  No Trade Secrets Were Revealed Through Disclosures To Vendors
            Or Through Lab Tours .......................................................................... 16

    C.  Huawei's Argument on the Well-Accepted Doctrine of Functional
        Equivalence Is Without Merit ............................................................................ 17

    D.  The Record is Replete with Evidence Regarding the Value of T-Mobile's
        Trade Secrets ...................................................................................................... 19

V.  HUAWEI'S BREACH OF CONTRACT ARGUMENTS FAIL ................................ 20

    A.  Both Parties Executed the Contracts Before May 2013 ..................................... 20

    B.  Huawei USA Breached the NDA And Clean Room Letter ................................ 21

    C.  Huawei USA Breached the Master Supply Agreement ...................................... 23

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

## TABLE OF CONTENTS (cont.)

**Page**

D.    Lack of Assignment and Venue Are Not Defenses To Huawei's Breach Of the MetroPCS Supply Agreement ..................................................................... 24

VI.    CONCLUSION .......................................................................................... 24

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA, INC.'S MOTION FOR SUMMARY
JUDGMENT - ii
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*3M v. Pribyl*,
  259 F.3d 587 (7th Cir. 2001) ..................................................... 9

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................. 6

*Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*,
  134 S. Ct. 568 (2013) ............................................................. 24

*Bldg. Serv. Employees Int'l Union, Lodge No. 6 v. Seattle Hosp. Council*,
  18 Wash. 2d 186 (1943) .......................................................... 21

*Boeing Co. v. Sierracin Corp.*,
  108 Wash. 2d 38 (1987) ................................................ 7, 11, 14

*Brigham Young Univ. v. Pfizer, Inc.*,
  861 F. Supp. 2d 1320 (D. Utah 2012) ..................................... 8

*Dana Ltd. v. Am. Axle & Mfg. Holdings, Inc.*,
  2012 WL 2524008 (W.D. Mich. June 29, 2012) ..................... 14

*Do It Best Corp. v. Passport Software, Inc.*,
  2005 WL 743083 (N.D. Ill. Mar. 31, 2005) ............................ 8

*Droeger v. Welsh Sporting Goods Corp.*,
  541 F.2d 790 (9th Cir. 1976) ................................................. 16

*Eagle Harbor Holdings, LLC v. Ford Motor Co.*,
  2015 WL 574911 (W.D. Wash. Feb. 11, 2015) ...................... 14

*Ed Nowogroski Ins., Inc. v. Rucker*,
  137 Wash. 2d 427 (1999) ........................................................ 20

*Flores v. Lower East Side Serv. Center, Inc.*,
  4 N.Y.3d 363 (2005) ............................................................... 21

*Ford v. Trendwest Resorts, Inc.*,
  146 Wash.2d 146 (2002) ......................................................... 23

*Formfactor, Inc. v. Micro-Probe, Inc.*,
  2012 WL 6554220 (N.D. Cal. Nov. 21, 2012) ........................ 11

*Forro Precision, Inc. v. International Business Machines Corp.*,
  673 F.2d 1045 (9th Cir. 1982) ......................................... 10, 11

*Goldman v. Standard Ins. Co.*,
  341 F.3d 1023 (9th Cir. 2003) ............................................... 14

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA, INC.'S MOTION FOR SUMMARY
JUDGMENT - iii
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

# TABLE OF AUTHORITIES (cont.)

**Page(s)**

*Grellner v. Raabe,*
2016 WL 3876438 (E.D. Wash. July 15, 2016)......................................................... 12

*Harris v. Extendicare Homes, Inc.,*
2012 WL 1327816 (W.D. Wash. Apr. 17, 2012).......................................................... 14

*Henry Hope X-Ray Prod., Inc. v. Marron Carrel, Inc.,*
674 F.2d 1336 (9th Cir. 1982) .................................................................................... 12

*Hunt v. City of Los Angeles,*
638 F.3d 703 (9th Cir. 2011) ........................................................................................ 6

*IDX Sys. Corp. v. Epic Sys. Corp.,*
285 F.3d 581 (7th Cir. 2002) ...................................................................................... 11

*Imax Corp. v. Cinema Techs., Inc.,*
152 F.3d 1161 (9th Cir. 1998) .............................................................................. 10, 11

*Kendall Holdings, Ltd. v. Eden Cryogenics, LLC,*
2011 WL 3652696 (S.D. Ohio Aug. 18, 2011) .......................................................... 10

*Mangren Res. & Dev. Corp. v. Nat'l Chem. Co., Inc.,*
87 F.3d 937 (7th Cir. 1996) ........................................................................................ 19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574 (1986).......................................................................................................6

*Medinol Ltd. v. Boston Scientific Corp.,*
346 F. Supp. 2d 575 (S.D.N.Y. 2004) ........................................................................ 23

*Microsoft Corp. v. Immersion Corp.,*
2008 WL 2998238 (W.D. Wash. Aug. 1, 2008) ........................................................ 23

*Mike's Train House, Inc. v. Lionel, L.L.C.,*
472 F.3d 398 (6th Cir. 2006) ...................................................................................... 14

*Misch v. Zee Enters.,*
879 F.2d 628 (9th Cir. 1989) ...................................................................................... 25

*OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.,*
2016 WL 3626383 (E.D. Wash. Jan. 20, 2016) ................................................... 10, 11

*Pulver v. Battelle Mem'l Inst.,*
2009 WL 224490 (E.D. Wash. Jan. 29, 2009) ........................................................... 11

*Scheck v. Francis,*
26 N.Y.2d 466 (1970) .................................................................................................. 21

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA, INC.'S MOTION FOR SUMMARY
JUDGMENT - iv
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

## <u>TABLE OF AUTHORITIES (cont.)</u>

<u>Page(s)</u>

*Shelcon Const. Grp., LLC v. Haymond*,
   187 Wash. App. 878 (2015) ........................................................................... 21

*Speech Tech. Assoc. v. Adaptive Comm. Sys., Inc.*,
   1994 WL 449032 (N.D. Cal., Aug. 16, 1994) .............................................. 19

*Sutra, Inc. v. Iceland Express*,
   2008 WL 2705580 (D. Mass. July 10, 2008) ............................................... 11

*Theoharis v. Rongen*,
   2014 WL 3563386 (W.D. Wash. July 18, 2014) .......................................... 12

*TouchPoint Sols., Inc. v. Eastman Kodak Co.*,
   345 F.Supp.2d 23 (D. Mass. 2004) .............................................................. 16

*UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*,
   617 F. Supp. 2d 938 (N.D. Cal. 2007) ......................................................... 16

*Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*,
   707 F. Supp. 1170 (C.D. Cal. 1989), *aff'd*, 914 F.2d 1256 (9th Cir. 1990) ............. 8

*Veritas Operating Corp. v. Microsoft Corp.*,
   2008 WL 474248 (W.D. Wash. Feb. 4, 2008) .............................................. 14

**Statutes**

28 U.S.C. § 1391(b)(2) ...................................................................................... 24

8 Del. C. § 259(a) .............................................................................................. 24

Cal. Code Civ. Proc. § 2019.210 ...................................................................... 10

**Rules**

Fed. R. Evid. 702 .............................................................................................. 17

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON  98103
telephone (206) 545-0345
fax (206) 545-0350

## I.    INTRODUCTION

In its motion for summary judgment, Huawei Device USA ("Huawei") rehashes arguments this Court correctly rejected when it denied Huawei's motion to dismiss.  Indeed, since that motion, T-Mobile has (1) developed an evidentiary record showing – through internal Huawei documents – that Huawei plotted and executed a scheme to steal T-Mobile's trade secrets for the purpose of building its own robotic testing system and then lied about it, (2) presented affirmative expert testimony from a leading engineering and robotics expert, showing that the patents and alleged public disclosures Huawei cites did not disclose T-Mobile's trade secrets, and that Huawei incorporated T-Mobile's trade secrets into its robotic testing system, and (3) provided Huawei additional detailed descriptions of its trade secrets.

In contrast, Huawei's motion offers virtually nothing more than it offered in its motion to dismiss.  Perhaps most critically, because Huawei failed to designate an affirmative expert witness, it presents no expert analysis on the issue at the center of its motion – whether patents and patent applications disclosed T-Mobile's trade secrets.  Huawei's failure is fatal to its motion, given that this Court explicitly warned in its earlier order that this was an issue of fact that would require expert testimony to resolve.  Huawei is thus left only with the same bald assertions it made at the motion to dismiss phase.  Those assertions are directly contradicted by T-Mobile's affirmative expert testimony and the factual record in this case.  Indeed, Huawei still has no answer to the fundamental question this Court previously posed: if, as Huawei contends, T-Mobile's trade secrets were in the public domain, then why did it plot and execute a detailed scheme to steal them?  Any reasonable juror would conclude that Huawei knew the trade secrets were *not* in the public domain – especially when Huawei spent more than a year executing a complex plan to steal them.

Likewise, while Huawei complains that T-Mobile has not defined its trade secrets with sufficient particularity, it ignores the fact that this Court has rejected this argument *three separate times*, correctly holding that T-Mobile has provided sufficient detail regarding its trade secrets, under well-established precedent.  Huawei's motion thus resorts to citing cases that are

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA, INC.'S MOTION FOR SUMMARY
JUDGMENT - 1
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

clearly inapposite, and misrepresenting the record and T-Mobile's position on several issues.

Simply put, there is substantial evidence in the record from which a reasonable juror could conclude that Huawei misappropriated T-Mobile's trade secrets, and breached its confidentiality obligations under applicable – and, contrary to Huawei's arguments, legally enforceable – contracts.  Accordingly, summary judgment must be denied.

## II.      STATEMENT OF FACTS[1]

### A.      T-Mobile Develops A Valuable And Secret Phone Testing System

In early 2006, T-Mobile set out to develop a unique robotic testing system, one that would improve its mobile phones' performance by pre-testing how people interact with their devices in the real world.  Declaration of Steven N. Feldman in Support of T-Mobile's Opposition to Huawei Device USA's Motion for Summary Judgment ("Feldman Declaration"), Ex. 1 (Jenkinson Dep.) 41:15-18, 43:14-44:8.[2]  That system, which T-Mobile has developed at great expense in the intervening years, is known as Tappy or the Tappy Testing System ("TTS").  Ex. 34 (Davies Rep.) ¶ 191.  Built with a proprietary combination of off-the-shelf and custom components, the TTS is designed to test up to three weeks of real world usage over a period of 24-plus hours.  Ex. 2 at 35563, 66; Ex. 34 (Davies Rep.) ¶ 26.  The TTS performs tasks, such as making a call, receiving a text, and playing a game in the same way that a person would, only faster.  Ex. 34 (Davies Rep.) ¶¶ 24, 26.  The TTS thus allows T-Mobile to more easily identify and resolve phone problems before they are sold to consumers, leading to higher customer satisfaction and lower device returns.  *Id*. ¶¶ 223-28; Ex. 3 (Hayes Dep.) 47:8–19.  ██████

█████████████████████████████████████████████████

████████████████  Ex. 34 (Davies Rep.) ¶ 224.  The TTS has given T-Mobile a competitive advantage, as it has enabled T-Mobile to more effectively differentiate itself in the market with high quality, low cost devices.  *Id.* ¶¶ 227-28.  No other U.S. carrier has a robotic testing system

---

[1] Although Huawei's own motion describes its statement of the facts as "undisputed," T-Mobile strongly disputes Huawei's inaccurate recitation.

[2] All citations to Exhibits are references to exhibits attached to the Feldman Declaration.

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA, INC.'S MOTION FOR SUMMARY
JUDGMENT - 2
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

like the TTS.  *Id.* ¶ 29.

T-Mobile employs extensive security features and other measures to protect the confidentiality of the TTS.  For example, it is guarded by restricted badge access behind locked doors, and employees with access to the TTS are bound by strict confidentiality obligations not to disclose the TTS technology.  Ex. 4 (Kathale Dep.) 61:24-63:2; Ex. 5.  T-Mobile also prohibits unauthorized recording or photographs of the TTS.  Ex. 7 (Barnes Dep.) 156:14-22.

█████████████████████████████████████████████████████████
████████████  Ex. 6 at 98332.

In 2012, T-Mobile initiated a new program that, subject to strict safeguards, allowed certain handset suppliers to use the TTS to test their T-Mobile devices directly.  Beginning in September 2012, T-Mobile provided Huawei with limited access to the TTS for this purpose.[3] Before doing so, and despite the clear confidentiality protections of the parties' Master Supply Agreement ("MSA"), T-Mobile made clear that the technology was highly confidential and should be protected when it required Huawei to sign two more agreements specifically addressing the TTS.  Ex. 9 (July 31, 2012 Nondisclosure Agreement); Ex. 10 (August 16, 2012 Clean Room Letter) ("Huawei is prohibited from (1) capturing photographs…or otherwise capturing the likeness or design…of the test facilities or robots used for testing, and (2) in any way copying any computer programs…").

**B.     Huawei Engages In a Scheme To Steal T-Mobile's TTS Trade Secrets**

In May 2012, Huawei ████████████████████████████████████
██████████████████████████████████████████████
███████████████████████████████████████████████████████
███████  Ex. 12 at 1883349.  ██████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████  Ex. 13 at 48029, 31.  As Huawei

---

[3] Prior to September 2012, Huawei had some access to TTS information, but Huawei employees were not permitted to test devices on their own.  Ex. 8.

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA, INC.'S MOTION FOR SUMMARY
JUDGMENT - 3
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1  wrote at the time, ███████████████████████████████████████

2  ███████████████████████████████████████████████████

3  █████████████████  Ex. 14 at 1940785; Ex. 54 at 48165, 170.

4      Unbeknownst to T-Mobile, Huawei's illicit scheme (which included dozens of employees

5  throughout the company, in both China and the U.S.) was well underway by the time T-Mobile

6  entrusted Huawei with unescorted access to the TTS in September 2012.  Ex. 8 at 2395492 ████

7  █████████████████████████████████████████████████

8  ███████████████████████████████████████████████████

9  ███████████████████████████████████████████████████

10 ███████████████████████████████████████████████

11 Ex. 14 at 1940786.  ███████████████████████████████████

12 ██████████████████████████████████  Ex. 15 at 1927402-03.  Indeed, the

13 record shows that this scheme continued throughout 2012 and into 2013:

14     ● ███████████████████████████████████████

15 ██████████████████████████████  Ex. 14 at 1940785-86.

16     ● ███████████████████████████████████████

17 ███████████████████████████████████████

18 ████████████████  Ex. 16  at 326768.

19     ● ███████████████████████████████████████

20 ███████████████████████  Ex. 17 at
   HUA01954416.

21     ● ███████████████████████████████████████

22 ████████████████  Id. at 1954415.

23     ● ███████████████████████████████████

24 ████████████████████████  Ex. 18 at 1928196.

25 ███████████████████████████████████████████

26 ███████████████████████████████████████████

27 ███████████████████████████████████████████████

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA, INC.'S MOTION FOR SUMMARY
JUDGMENT - 4
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

Ex. 20 at 1177729, 31. ████████████████████████

████████████████████████████████████

*Id.* at 1177728.  As described in further detail in T-Mobile's motion for partial summary judgment, once in Bellevue, Wang secretly entered T-Mobile's robot lab on two separate occasions.  *See* Dkt. 245 at 6-9.  T-Mobile caught him and kicked him out both times.  *Id.*  As T-Mobile would later discover, however, before being ejected, Wang had taken pictures and measurements of the TTS in express violation of Huawei's contractual promises to T-Mobile.  *Id.* ████████████████

*Id.* True to Wang's words, Xiong not only transmitted additional photos of the TTS to other Huawei employees, but also **physically removed a TTS end effector** from the lab – which he then **photographed**, **measured**, and **provided to Huawei China engineers working on xDeviceRobot** during a conference call that same day.  *Id.* ████████████████

Ex. 22 at § II.  After T-Mobile discovered that Xiong had in fact stolen the end effector, it revoked all Huawei access to the testing lab and vendor rooms in June 2013.  Ex. 21 at 74823-24.

### C.   After Being Caught, Huawei Lies About Its Scheme

After T-Mobile notified Huawei of the breaches, Huawei attempted to cover up its scheme. ████████████████

Ex. 22 at 1. ████████████████

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI DEVICE USA, INC.'S MOTION FOR SUMMARY JUDGMENT - 5
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1 ████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ████████████████████████████████████████████████

4 ██████████████████████████████ [5] *See, e.g.*, Exs. 11-12, 14, 20, 25-

5 27. ████████████████████████████████████████████

6 ██████████    *See, e.g.*, Ex. 16 at 326766-69.

## III.   LEGAL STANDARD

Summary judgment is only proper where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court may not weigh conflicting evidence, draw its own inferences, or make credibility determinations, as those functions are reserved for the trier of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) at 249, 255. Instead, the court must view the evidence in the light most favorable to the nonmoving party and draw all inferences in favor of the nonmoving party. *See Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011); *see also Anderson*, 477 U.S. 242, 255 ("The evidence of the non-movant is to be believed.").

## IV.   ARGUMENT

### A.   T-Mobile Has Sufficiently Defined Its Trade Secrets, As This Court Has Repeatedly Found

Huawei argues that T-Mobile has not identified its trade secrets with "sufficient particularity" and that on this basis alone, it is entitled to summary judgment; however, the record shows that T-Mobile has gone above and beyond what is required by the law. Tellingly, on three prior occasions when Huawei came to this Court making the same argument, the Court

---

[4] ███████████████████████████████████████
█████████████████████████ Ex. 22. ████████████████████████████████████

[5] ████████████████████████████████████████████
*See* Ex. 23 (May 5, 2016 Yao Dep.) 76:10–78:16, 86:5–87:8. ████████
███████████████████████████████████ Ex. 24 (Cui Dep.) 64:18–23.

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA, INC.'S MOTION FOR SUMMARY
JUDGMENT - 6
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

rejected Huawei's position – correctly holding that T-Mobile has provided sufficient detail regarding its trade secrets.  In short, the record is clear that Huawei's feigned ignorance on this point is nothing more than a litigation strategy, unsupported by the record or case law.

### 1.   Huawei's Argument Ignores the Record In This Case

While Huawei's motion conspicuously fails to mention it, this Court has already rejected Huawei's argument *three times*.  In its October 2014 order denying Huawei's motion to dismiss on this issue, the Court held:

> T-Mobile ***has done enough to identify its trade secrets***…Huawei's claims that it cannot be expected to know what is a trade secret are unconvincing. Mr. Xiong stole an end effector, analyzed it, and sent the results of that analysis to Huawei China...there is no reason to force it to declare exactly which aspects of the end effector it believes are secret.

Dkt. 77 at 9.  This Court also rejected Huawei's contention that T-Mobile's identification of "sequence files" was "unduly broad."  *Id*.  During discovery, Huawei filed a motion to compel, asking this Court to order T-Mobile to further define its trade secrets as set forth in its response to Huawei Interrogatory No. 1 ("Describe with particularity each trade secret…that you contend Huawei misappropriated…").  Dkt. 65.  Again, this Court denied Huawei's motion.  Dkt. 78.  In May 2016, Huawei filed yet another motion to compel T-Mobile to further define its trade secrets in response to Interrogatory No. 1.  Dkt. 134.  In its July 2016 ruling, this Court again chose not to grant Huawei's request.  Dkt. 205 (holding only that T-Mobile must supplement its responses to Interrogatory Nos. 2, 7-9).  Critically, the only thing that has changed since that time is that, as discovery progressed, T-Mobile provided *even more detail* regarding its trade secrets.  Ex. 28 at 9 (T-Mobile Sept. 3, 2016 Supp. Interrogatory Resp.).[6]

### 2.   T-Mobile's Combination Trade Secret is Sufficiently Defined

It is well-established that a plaintiff may claim a trade secret in a combination of elements or materials that, in and of themselves, are publicly disclosed so long as the

---

[6] *See also* Ex. 29 at 9–11 (T-Mobile March 19, 2015 Interrogatory Resp.); Ex. 30 at 8–9 (T-Mobile April 19, 2016 Supp. Interrogatory Resp.); Ex. 34 (Davies Rep.) 91-105, fig. 12; Ex. 57 (Davies Supp. Rep.) 40-71.

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA, INC.'S MOTION FOR SUMMARY
JUDGMENT - 7
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

combination meets the elements for trade secrets protection.  *Boeing Co. v. Sierracin Corp.*, 108 Wash.2d 38, 50 (1987) (en banc).  Huawei contends, with minimal argument, that T-Mobile's combination trade secret fails for lack of specificity.  Mot. 17.  This argument lacks merit.  As Huawei itself acknowledges, a plaintiff need only "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade."  *Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*, 707 F. Supp. 1170, 1177 (C.D. Cal. 1989), *aff'd*, 914 F.2d 1256 (9th Cir. 1990).  T-Mobile has plainly done so here by identifying ███████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

Michael Davies, T-Mobile's affirmative expert on telecommunications, engineering and robotics, has analyzed the issue and concluded that the TTS so defined is not a matter of general or specialized trade knowledge.  Ex. 34 (Davies Rep.) ¶ 232 (no one else in the industry had a robot system "in any way similar" to the TTS). ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████  Ex. 31 (Wolfe Dep.) 126:12-127:1.  Under these circumstances, courts routinely deny summary judgment.  *See Brigham Young Univ. v. Pfizer, Inc.*, 861 F. Supp. 2d 1320, 1324 (D. Utah 2012) (holding that plaintiff's combination trade secret, described in part as "research project and plan for the selection, testing, and modifying of nonsteroidal anti-inflammatory drugs" was sufficiently identified to withstand summary judgment); *Do It Best Corp. v. Passport Software, Inc.*, 2005 WL 743083, at *12 (N.D. Ill. Mar. 31, 2005) (denying summary judgment where combination trade secrets were defined as, among other things, 831 pages of source code and "the processes and methodologies encompassed in" software features).

Indeed, courts have noted that the standard for claiming a combination trade secret is, if

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA, INC.'S MOTION FOR SUMMARY
JUDGMENT - 8
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1   anything, *less stringent*, as the plaintiff need not separate out which elements of the combination

2   may have been publicly disclosed.  *See 3M v. Pribyl*, 259 F.3d 587, 595–96 (7th Cir. 2001)

3   (JMOL inappropriate even where plaintiff did not identify "what specific information contained

4   within the more than 500 hundred pages of materials could be considered secret," because it

5   asserted that the manuals' compilation of information was protected).  Regardless, under any

6   applicable standard, T-Mobile has sufficiently identified its combination trade secret for trial.

### 3.   T-Mobile's Other Trade Secrets Are Also Sufficiently Defined

8        The same conclusion applies equally to T-Mobile's other trade secrets.  In its

9   interrogatory responses, Ex. 28 at 7–9, T-Mobile provided extensive detail regarding the

10  additional, protected components of the TTS, including:[7]



---

[7] Contrary to Huawei's assertions, T-Mobile's trade secrets are fully identified in its interrogatory responses.  T-Mobile's expert reports do not describe different or additional trade secrets, though they do provide descriptive detail about the TTS technology at issue in this case.

[8] Mr. Davies did not, as Huawei contends, admit there was no sequence files copying.  Far from it; he testified that Huawei "exact[ly] copied" ██████████████████  Ex. 32 (Davies Dep.) 239:6–240:1.

[9] Huawei incorrectly asserts that T-Mobile claims the mere existence of a three-axis robot, without more, as a trade secret.  As Huawei recognizes in its motion, T-Mobile never listed such a trade secret in its discovery responses.  T-Mobile has, however, consistently claimed that its trade secrets include ████████████████ ██████████████████████████████████  Ex. 28 at 9.

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350



While Huawei's litigation strategy has been to push T-Mobile to provide an unending level of detail – including specific dimensions for each component of the TTS – its argument is unsupported by the record or the law.[10]   Critically, in what appears to be the only Washington case to address a similar situation, the court denied summary judgment for the defendant, holding that a high degree of particularity is not required where – as here – the defendant "improperly acquired what it knew to be Plaintiffs' proprietary information."[11]   *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 2016 WL 3626383, at *1 (E.D. Wash. Jan. 20, 2016).   Importantly, the *OTR* court analogized its case to the Ninth Circuit's decision in *Forro Precision, Inc. v. International Business Machines Corp.*, 673 F.2d 1045 (9th Cir. 1982), in which Forro wrongfully acquired copies of IBM's confidential disk storage device drawings in part by surreptitiously copying drawings provided to it for another purpose, then manufactured products based on the drawings.   There, the Ninth Circuit held that where circumstances reflect clear evidence of misappropriation, even "vague references to 'dimensions and tolerances'" were sufficient to adequately identify IBM's trade secrets. *Id.* at 1057.   And because the *OTR* plaintiff had similarly presented evidence of improper acquisition, the court concluded that its relatively minimal identification of its trade secrets as "technical drawings, build instructions, green tire specifications, and finish tire specifications" was sufficient to proceed to trial.   *OTR Wheel,* 2016 WL 3626383, at *2.   The same result is justified here.

---

[10] *See Kendall Holdings, Ltd. v. Eden Cryogenics, LLC*, 2011 WL 3652696, at *3 (S.D. Ohio Aug. 18, 2011) (identification of trade secrets as the unique combination of characteristics and components that embody the specifications, tolerances, and diagrams that allow a knowledgeable manufacturer to produce'…four products" was adequate for trial even where plaintiff had not listed any specifications or tolerances).

[11] As an initial matter, several cases Huawei cites discuss California trade secrets law, which is distinguishable as it contains a statutory provision requiring plaintiffs to identify their trade secrets with particularity. *See* Cal. Code Civ. Proc. § 2019.210 ("before commencing discovery…the party alleging the misappropriation shall identify the trade secret with reasonable particularity.").   The WUTSA contains no such requirement.

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA, INC.'S MOTION FOR SUMMARY
JUDGMENT - 10
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

The *OTR Wheel* court also distinguished the case before it from *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1163 (9th Cir. 1998), the authority Huawei mistakenly relies upon – noting that, unlike here, the *Imax* defendant had not engaged in any theft or scheme, but rather had simply examined public material.[12]  *OTR Wheel*, 2016 WL 3626383, at *1-2.  In fact, the *Imax* court explicitly acknowledged that *Forro* would control had there been ample evidence of wrongful acquisition, as is present here.  *Imax*, 152 F.3d. at 1166-67.  The other cases Huawei cites to are similarly inapposite.  *See IDX Sys. Corp. v. Epic Sys. Corp*., 285 F.3d 581, 584 (7th Cir. 2002) (no evidence defendant had improper access to trade secrets); *Sutra, Inc. v. Iceland Express*, 2008 WL 2705580, at *4 (D. Mass. July 10, 2008) (plaintiff conceded it was "impossible…to say" whether defendant accessed more than it was authorized to); *Pulver v. Battelle Mem'l Inst.*, 2009 WL 224490, at *7 (E.D. Wash. Jan. 29, 2009) (plaintiff had "simply failed to even identify what trade secrets existed and what conduct of Defendants constituted misappropriation," only vaguely referencing "factual statements" and a declaration).[13]

In sum, for the reasons set forth above, T-Mobile has sufficiently defined its trade secrets, and summary judgment should be denied.

## B. The Evidence Unequivocally Shows That T-Mobile's Trade Secrets Were Not Publicly Disclosed

Contrary to Huawei's assertions, the record is clear that neither T-Mobile's patents and patent applications, nor any media reports, disclose "every aspect of Tappy."  Mot. 4.  As T-Mobile has proven through fact and expert discovery, T-Mobile's innovative trade secrets – including the unique combination of public and non-public materials that comprise the TTS – were never disclosed.  *See Boeing*, 108 Wash. 2d at 50 (noting trade secrets "frequently contain elements that by themselves may be in the public domain but together qualify as trade secrets.").

---

[12] *Imax* is also distinguishable given that the district court had repeatedly found plaintiff's interrogatory responses defining its trade secrets to be insufficient.  In contrast, this Court has repeatedly upheld the sufficiency of T-Mobile's responses, including as recently as July.  *Imax* also involved the application of California trade secrets law, which unlike Washington law, contains a specific "particularity" requirement.  *See* Note 11.

[13] Huawei also misleadingly and improperly cites to a vacated district court order in *Formfactor, Inc. v. Micro-Probe, Inc.*, Mot. 8:4–5; *see* 2012 WL 6554220 (N.D. Cal. Nov. 21, 2012) (vacating order).  Huawei's citation must therefore be disregarded.

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA, INC.'S MOTION FOR SUMMARY
JUDGMENT - 11
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1

### 1.    T-Mobile's Patents Do Not Disclose the TTS Trade Secrets

For a patent, patent application or other public disclosure to destroy trade secret protection, the disclosure must actually reflect the secret information. *See Henry Hope X-Ray Prod., Inc. v. Marron Carrel, Inc.*, 674 F.2d 1336, 1342 (9th Cir. 1982) ("general depiction" disclosed in patent insufficient to destroy trade secrets related to film processing equipment); *see also* Milgrim on Trade Secrets § 1.05 ("[N]ot every instance of seeming 'public disclosure' of a trade secret actually results in loss of trade secrecy."). In support of its argument that T-Mobile's patents and patent applications publicly disclosed the TTS and various trade-secret protected components, Huawei offers nothing more than it did in its motion to dismiss, which this Court correctly denied.[14]  Dkt. 32. Critically, this Court rejected Huawei's arguments for two reasons, both of which apply with even more force at summary judgment.

*First*, this Court held that "even if those patent applications disclosed every aspect of Tappy, the court could not reach that conclusion on its own…It would need to compare the disclosures in the patent applications to features of Tappy, *something that likely requires expert testimony*." Dkt. 32 at 7; *see also Grellner v. Raabe*, 2016 WL 3876438, at *3 (E.D. Wash. July 15, 2016) (determining whether plaintiff's patent applications disclose its trade secrets is an "intensive factual inquiry" that "would likely require expert testimony."). Despite this Court's ruling, Huawei failed to name an affirmative expert witness on these issues. Consequently, Huawei has no expert testimony to present in support of its motion. *See Theoharis v. Rongen*, 2014 WL 3563386, at *9 (W.D. Wash. July 18, 2014) (Jones, J.) (the "consequences of Defendant's decision to offer certain expert testimony solely as rebuttal" include that it "may not use that evidence to support his own summary judgment motion or any other pretrial motion").

T-Mobile, on the other hand, has designated Michael Davies – a leading expert in

---

[14] Notably, at the motion to dismiss stage, this Court assumed it could rely on Huawei's "collection of public material," yet still found it did not suffice to prevail. *See* Dkt. 32 at 6.

engineering, robotics, and the telecommunications industry – as its affirmative expert witness.[15]

Mr. Davies thoroughly analyzed the issue, and concluded that T-Mobile's trade secrets **were not**

publicly disclosed.  Indeed, Mr. Davies dedicated an entire section of his expert report to this

issue.  Ex. 34 (Davies Rep.) Sec. IX, 114-24; *see also* Ex. 33 (Davies Rep. Materials

Considered); Ex. 32 (Davies Dep.) 179:3-8.  As Mr. Davies concluded based on his expert

analysis of the patents and other alleged disclosures:

- "Many elements of the TTS were not disclosed by the patents, and were not otherwise disclosed publicly. These elements are trade secrets and confidential. ███████████████████████████████████ Ex. 34 (Davies Rep.) ¶ 240.

- "It is not possible to build the TTS or a functionally equivalent system using only publicly available information." *Id.* ¶ 239.

- While the media reports and videos disclose "some basic methods for testing devices," the "TTS consists of much more than just these publicly-disclosed elements … Moreover, the precise way in which these elements [of the TTS] were combined was by no means public information." *Id.* ¶ 242.[16]

- The public disclosures are "at way too high a level … to enable the independent development of a system, such as the xDeviceRobot, or to mimic the functionality of the [TTS]."  The public disclosures are "incomplete" in that they are "missing key elements that are trade secrets."  Ex. 32 (Davies Dep.) 250:1-19.

  Notably, in several instances, the alleged disclosures Huawei points to actually disclose

something *entirely different* than what T-Mobile's system uses.  For example, Huawei argues

that the '355 Application discloses the TTS camera.  Mot. 13:4. ████████████████

████████████████████████████████████████

██████████ Ex. 32 (Davies Dep.) 102:11-13, 103:20-104:16. ████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████ *Id*. 105:8-12. ██████

████████████████████████████████████████

---

[15] Mr. Davies is currently a Senior Lecturer at MIT, which is consistently ranked as the country's top engineering school, and is Founder & Chairman of Endeavour Partners, a firm focused on strategic technology consulting for high-tech, mobile and digital business companies.

[16] With respect to the media reports and public videos specifically, T-Mobile's public relations department had final review of all media materials, ensuring that no trade secrets were disclosed.  Ex. 7 (Barnes Dep.) 58:23-59:4.

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA, INC.'S MOTION FOR SUMMARY
JUDGMENT - 13
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1 ████████████████ Ex. 35 (Smith Dep.) 205:4-18 ████████████████████

2 ███████████████████████████████████████████████████████████████

3 Similarly, while Huawei claims that "the '355 Application discloses the software used in

4 Tappy," even a basic review shows this is false.  Mot. 15.  Not only does the Application not

5 include any detail about the software TTS actually uses, it doesn't contain a single disclosure

6 about ██████████████████████████████████████████████

7       Given that Mr. Davies' expert analysis *alone* would allow a reasonable juror to conclude

8 that T-Mobile's trade secrets were not in the public domain, summary judgment must be

9 denied.[17]  Mr. Davies' testimony also highlights why affirmative expert evidence – which

10 Huawei failed to present – is so critical in determining the fact-intensive issue of whether

11 specific trade secrets have been publicly disclosed, and explains why courts routinely deny

12 summary judgment in these circumstances *even where both parties present such testimony*.  *See*

13 *Eagle Harbor Holdings, LLC v. Ford Motor Co.*, 2015 WL 574911, at *4 (W.D. Wash. Feb. 11,

14 2015) (denying summary judgment where "the information [alleged to be a trade secret] itself

15 may [have] be[en] in the public domain," but there was a factual issue as to whether "the specific

16 compilation that [the plaintiff had] created" was publicly available); *Veritas Operating Corp. v.*

17 *Microsoft Corp.*, 2008 WL 474248, at *3 (W.D. Wash. Feb. 4, 2008) (denying summary

18 judgment where plaintiff put forward "expert testimony … to substantiate its claims that [its

19 systems] do contain trade secrets").[18]

20

21     [17] As noted above, even a system consisting solely of publicly-disclosed components can qualify as a combination

22 trade secret.  *Boeing*, 108 Wash. 2d  at 50.  And contrary to Huawei's assertions, with respect to the combination trade secret specifically, T-Mobile has no obligation to identify which individual components of the combination

23 may have been publicly disclosed.  *See Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 411 (6th Cir. 2006) (where, as here, a trade secret is "based on a unique combination of both protected and unprotected material, a plaintiff should not be obligated to identify which components of the protected material is secret."); *Dana Ltd. v.*

24 *Am. Axle & Mfg. Holdings, Inc.*, 2012 WL 2524008, at *9 (W.D. Mich. June 29, 2012) (holding the same and denying summary judgment). Regardless, Mr. Davies examined the alleged disclosures and concluded that components T-Mobile identified as trade secrets were not disclosed.  Ex. 34 (Davies Rep.) ¶ 242.

25     [18] Even if Huawei had presented its own affirmative expert testimony, summary judgment would still have been

26 improper.  *See Goldman v. Standard Ins. Co.*, 341 F.3d 1023, 1036 (9th Cir. 2003) ("Who is correct in this battle of experts is not for us to decide. We do conclude, however, that [plaintiff's] expert evidence is sufficient to deny [defendant] summary judgment…"); *Harris v. Extendicare Homes, Inc.*, 2012 WL 1327816, *1 (W.D. Wash. Apr.

27 17, 2012) ("[Plaintiff] argues, and the court agrees, that the competing expert opinions create a genuine issue of material fact … and that, as a result, Summary Judgment … is not warranted.").

1     *Second,* Huawei's motion conspicuously ignores the mountain of evidence showing that

2 **even Huawei recognized** the TTS was not publicly disclosed. As this Court previously noted:

3       Because it is unusual to steal what one can freely obtain in the public domain, it is
      plausible to infer that Huawei was stealing trade secret information … Why, for

4       example, did Mr. Xiong steal an end effector and analyze it if he could have
      obtained the same information by looking at patent applications? … The same

5       concerns apply to the videos and photographs on which Huawei asks the court to

6       rely. They plainly disclose some aspects of Tappy. But if they disclosed every
      aspect, why did Mr. Wang take surreptitious photographs? Why behave furtively if

7       he could obtain the same information by simply downloading videos?"

8 Dkt. 77 at 6-8. This rationale applies with even more force now, as discovery has revealed that

9 Huawei engaged in a complex scheme of more than a year to steal T-Mobile's trade secrets,

10 involving dozens of employees and executives across multiple continents. For example:



11
12
13   at 1940785-86.
14
15     Ex. 16 at 326768.
16
17     Ex. 20 at 1177728.
18
19       Ex. 36 at 2184401.
20
21

22     As this Court has correctly recognized, it defies common sense to believe that a company

23 as large and sophisticated as Huawei – one that claims to spend more than $9 billion annually on

24 R&D – would engage in such a scheme to steal TTS information if it were all in the public

25 domain. The far more reasonable conclusion a juror would reach is that the T-Mobile trade

26 secrets that Huawei now claims were "in the public domain," in fact were not. Given this wealth

27 of highly relevant circumstantial evidence, summary judgment is inappropriate. *See, e.g.,*

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA, INC.'S MOTION FOR SUMMARY
JUDGMENT - 15
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

*UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co*., 617 F. Supp. 2d 938, 944 (N.D. Cal. 2007) ("Plaintiffs alleging trade secret misappropriation may prove such misappropriation by circumstantial as well as direct evidence.") (*citing Droeger v. Welsh Sporting Goods Corp*., 541 F.2d 790, 792 (9th Cir. 1976) (circumstantial evidence "clearly created a question for the jury" as to misappropriation)); *TouchPoint Sols., Inc. v. Eastman Kodak Co.*, 345 F.Supp.2d 23, 28-29 (D. Mass. 2004) (finding defendant's argument that plaintiff's system contained "no trade secret information…undercut by [defendant's] own interest…[defendant's] engineers did not act as though [plaintiff's system] contained only widely available or previously known information. To the contrary, they asked up to 15 technical questions per day….").

Regardless, discovery has also revealed direct evidence showing that – at the time it was scheming to steal T-Mobile's trade secrets – Huawei was fully aware of T-Mobile's patents, and yet continued with their thefts. ██████████████████████████████████ ████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████████████ ████████████████████ Ex. 37 at 2327632.  There can be no doubt that Huawei knew about T-Mobile's public patent disclosures, and yet continued with its scheme to steal T-Mobile's trade secrets because Huawei recognized the patents did not contain the information it needed.

### 2. No Trade Secrets Were Revealed Through Disclosures To Vendors Or Through Lab Tours

In short bullet points, Huawei argues that T-Mobile revealed its trade secrets to the public when it disclosed materials to vendors and gave high-level lab tours.  Both arguments fail.

- <u>Vendors Had Confidentiality Obligations</u>: While Huawei argues that T-Mobile made unprotected disclosures about the TTS to vendors such as Synaptics and Aegis, the reality is that T-Mobile had written agreements with both of those companies that specifically prohibited them from disclosing T-Mobile's trade secrets or other confidential information.  *See* Ex. 38 at 20

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI DEVICE USA, INC.'S MOTION FOR SUMMARY JUDGMENT - 16
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

§ 22; Ex. 39 at 1912423 § 22; Exs. 40-41; Ex. 42 at § VII(6).[19]  What is more, both Synaptics and Aegis deponents testified that they were obligated to keep T-Mobile's information confidential.  Ex. 44 (Denkewalter Dep.) 144:20-145:10; Ex. 45 (Wevers Dep.) 183:22-184:5, 185:13-186:13.  Also, trade secret protection would still exist even absent express agreement since the relationship of the parties indicates that confidentiality was implied.  *See Direct Techs., LLC v. Elec. Arts, Inc.*, 2016 WL 4608150, at *7 (9th Cir. Sept. 6, 2016).

- Lab Tours Did Not Disclose Trade Secrets:  Huawei does not (because it cannot) argue that what T-Mobile claims as trade secrets were actually revealed in these tours, which were escorted and monitored by T-Mobile personnel.[20]  Ex. 7 (Barnes Dep.) 176:11-16.  Aside from the media, whose footage T-Mobile reviewed and approved, lab visitors were not permitted to take photographs or in any way record the labs.  *Id.* 156:14-22.  In reality, visitors learned no more than what they would have seen in T-Mobile's approved publicity videos.  *See Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.*, 920 F.2d 171, 174 (2d Cir. 1990) (trade secrets not disclosed in promotional literature that described the technology at length, because the literature contained only "a user-oriented description of the [technology's] advantages").

Given the weight of fact and expert evidence showing that T-Mobile's trade secrets were not in the public domain, genuine issues of material fact exist that preclude summary judgment.

### C.    Huawei's Argument on the Well-Accepted Doctrine of Functional Equivalence Is Without Merit

In several critical ways, Huawei's argument regarding "functional equivalence" misunderstands and misrepresents the doctrine, its relevance and application to T-Mobile's case, and Mr. Davies' testimony regarding it.[21]

*First*, while Huawei asserts, without any evidentiary or legal basis, that the doctrine of "functional equivalence" is "fictitious," T-Mobile's robotics and engineering expert has explained, "[t]here's probably no concept more fundamental in engineering."  Ex. 32 (Davies

---

[19] With respect to Synaptics, T-Mobile's Master Supply Agreement with Huawei stated that all Huawei subcontractors were only permitted to use "T-Mobile's Confidential Information" under "terms and conditions at least as restrictive as those set forth in this Agreement," which prohibited unauthorized disclosure. Dkt. 249, Ex. A to T-Mobile's Motion for Partial Summary Judgment (MSA) at §§ 7.7, 9.4.  Synaptics was a subcontractor who supplied touchscreens to Huawei, Ex. 43 (Mann Dep.) 287:5-7, and thus was required to maintain the confidentiality of any disclosures beginning at least as of June 2, 2010, the date of the MSA.  Dkt. 249, Ex. A, at 1.

[20] Although T-Mobile provided more detailed information to Synaptics, that tour was pursuant to express and implied confidentiality restrictions, as discussed above at Note 19.  In any event, the nature and purpose of the disclosures to Synaptics involve questions of fact inappropriate for resolution at the summary judgment phase.

[21] Huawei's argument is a premature *Daubert* challenge dressed up as a summary judgment argument.  The Court thus need not address it at all at this time.  Even so, Mr. Davies' method and doctrine easily meet the standards set forth by Fed. R. Evid. 702.

Dep.) 54:4-21.  In fact, Mr. Davies has cited numerous leading engineering textbooks and publications discussing the doctrine; numerous engineering courses at MIT that teach the doctrine; and numerous cases in which Mr. Davies had applied the doctrine before in this context.  *See id.* 54:4-21, 55:22-57:4, 60:1–61:2.  Based on his experience in the field of robotics and engineering, Mr. Davies testified that functional equivalence is "the relevant practical test and theoretical test" for determining whether there was copying between two robotics systems.  *Id.* 224:9-15, 54:4-21, 68:2-19, 134:11-135:14.  Notably, even Huawei's own rebuttal experts have experience with this standard – one referred to "functional equivalence" in his own patents, and the other was aware that his longtime co-author in patents and publications wrote a passage on "functional equivalence" in a popular engineering book.  *See* Ex. 46 at 9:18; Ex. 47 at 41 ("Instead of trying to copy the construction of an instrument, it's possible to copy its function.").  Consequently, Huawei's argument on this issue can and should be easily rejected.

*Second*, Huawei falsely states that Mr. Davies "readily admits" that Huawei did not engage in any "exact copying" and that he "merely" contends that TTS and xDeviceRobot "have similar functions."  Mot. 19.  In fact, Mr. Davies testified that "functionally equivalent is an exact copy for the purpose of reproducing functionality…If [like here] you set out to copy the function of something, you wouldn't necessarily end up with the same form.  So copying does not require a one-to-one correspondence."  Ex. 32 (Davies Dep.) 62:1-4, 115:22-23.  Mr. Davies thus concluded that the xDeviceRobot is a copy of the TTS and that it is "not plausible" that it "was developed independently."  *Id.* 223:16-21, 134:11-135:14.

While Huawei appears to be arguing that one cannot prove copying unless two systems are identical – *i.e.*, unless two systems have the exact same form – it cites no legal authority or expert support for that proposition.  These critical omissions are unsurprising, however, given that Huawei's assertion is both fundamentally wrong as a matter of engineering practice and theory.  Huawei's argument is particularly illogical in the context of this case – where, the evidence shows, Huawei was "not trying to produce a counterfeit," but rather "an exact functional equivalent," *i.e.,* a system that could perform the same unique functions as the TTS.

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA, INC.'S MOTION FOR SUMMARY
JUDGMENT - 18
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

Ex. 32 (Davies Dep.) 220:21–221:3;  Ex. 14 at 1940786 ███████████████

██████████████████████████

     Huawei's proposed standard is also wrong as a matter of law.  *See* Restatement (Third) of Unfair Competition § 40 ("[T]he actor need not use the trade secret in its original form. Thus, an actor is liable for using the trade secret … if the result is substantially derived from the trade secret."); *Speech Tech. Assoc. v. Adaptive Comm. Sys., Inc.,* 1994 WL 449032 at *9–10 (N.D. Cal., Aug. 16, 1994) ("The incidental differences between Prototype # 1 and the redesigned Alltalks do not absolve defendants from liability for misappropriation of trade secrets."); *Mangren Res. & Dev. Corp. v. Nat'l Chem. Co., Inc.*, 87 F.3d 937, 944–45 (7th Cir. 1996) ("[R]easonable jurors could conclude from the evidence in this case that [defendants' product] was substantially derived from [plaintiff's] trade secret, for defendants could not have produced their product without using that secret.").

     *Third*, Huawei incorrectly argues that "T-Mobile's sole theory of use is that aspects of Tappy and xDeviceRobot…are functionally equivalent."  Mot. 20.  In fact, Mr. Davies' expert analysis is only one part of T-Mobile's evidence on use.  T-Mobile has additional evidence, including Huawei's own documents and internal emails, showing Huawei orchestrated a scheme to illicitly obtain and use T-Mobile's TTS-related trade secrets.  *See, e.g.*, Ex. 14 at 1940785

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

███████████████████     *See* Sec. II., *supra*; Ex. 32 (Davies Dep.) 218:23-219:12; Ex. 34 (Davies Rep.) 137-38, fig. 19; Ex. 57 (Davies Supp. Rep.) 40-43, fig. 17-23.  This evidence is more than sufficient for a reasonable juror to find in T-Mobile's favor.

    **D.**    **The Record is Replete with Evidence Regarding the Value of T-Mobile's Trade Secrets**

     In just three sentences, Huawei argues that T-Mobile "has not produced any evidence of

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA, INC.'S MOTION FOR SUMMARY
JUDGMENT - 19
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

the value" of its trade secrets.  Mot. 19.  In truth, T-Mobile has put forth extensive, detailed evidence on the great effort and expense T-Mobile went to in developing the TTS – which, as the Washington Supreme Court has held, is a "key factor[] used by the courts…[i]n determining whether information has 'independent economic value' under the Uniform Trade Secrets Act." *Ed Nowogroski Ins., Inc. v. Rucker*, 137 Wash. 2d 427, 438 (1999) (en banc).  *See* Ex. 48 ¶¶ 46-49 (report of T-Mobile's damages expert, Dr. Ryan Sullivan, analyzing the evidence); Ex. 34 (Davies Rep.) ¶¶ 179-192, 223-226; Ex. 3 (Hayes Dep.) 64:18-24.  ██████████

██████████████████████████████████████ Ex. 6 at 98331 ████

████████████████████████████████████████████████████████

Ex. 49 at 48157 █████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████ Huawei's argument should therefore be rejected.

## V.   HUAWEI'S BREACH OF CONTRACT ARGUMENTS FAIL

Huawei's photographing of T-Mobile's robotic testing system and theft of T-Mobile's confidential information are unambiguous breaches of its contracts with T-Mobile.  Faced with these clear breaches, Huawei offers a number of flawed arguments unsupported by law or material facts.  These arguments must be rejected.

### A.   Both Parties Executed the Contracts Before May 2013

Huawei USA executed the NDA on August 14, 2012, and the Clean Room Letter on August 16, 2012.  Ex. 9 at 461658 (NDA); Ex. 10 at 461654 (Clean Room Letter).  T-Mobile signed these agreements in August 2012, as well – a fact uncontested by Huawei.  *See* Ex. 50 (email attaching copies of NDA and Clean Room Letter signed by T-Mobile in August 2012).  The NDA expressly states it is effective July 31, 2012 and the Clean Room Letter is dated August 16, 2012 (the same date Huawei signed).  Ex. 9 at 461656; Ex. 10 at 461652.  Yet Huawei USA argues that it should not be bound by the NDA or Clean Room Letter because T-Mobile did not *date* the documents until June 2013.  Mot. 21.  It is uncontested that Huawei USA fully signed and dated both contracts in 2012, which is sufficient in and of itself to bind Huawei.

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA, INC.'S MOTION FOR SUMMARY
JUDGMENT - 20
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1   *See Shelcon Const. Grp., LLC v. Haymond*, 187 Wash. App. 878, 895 (2015) ("[C]ontracts must

2   bear the signature of the person **against whom enforcement is sought**."(emphasis added)).  The

3   lack of a date placed by T-Mobile's signature until later is irrelevant.

4        Furthermore, Huawei's cited cases do not apply to these facts.  None of the cases Huawei

5   cites involve contracts signed by both parties.  *Scheck v. Francis*, 26 N.Y.2d 466, 469 (1970)

6   (noting that the defendant "never signed" the agreements that required both parties to sign);

7   *Bldg. Serv. Employees Int'l Union, Lodge No. 6 v. Seattle Hosp. Council*, 18 Wash.2d 186, 190-

8   91 (1943) (involving a contract that had "never been signed" by *either* party).  Neither says the

9   agreement must be *dated* by both parties before it goes into effect, even though Huawei cites

10  them for this principle.[22]  Huawei's sole "authority" for its position that a contract is invalid and

11  unenforceable unless "dated" is the statement of a T-Mobile lay witness who only said that in his

12  "personal experience" he tries to date contracts when he signs them.  Ex. 51 (Young Dep.)

13  111:1-21 ("[B]ut that's just my own personal experience.").  This has no relevance to the

14  question of whether the contracts at issue are legally enforceable.  Huawei's argument is contrary

15  to law and disputed by evidence and should be rejected.

16  **B.    Huawei USA Breached the NDA And Clean Room Letter**

17       Huawei USA breached numerous provisions of the NDA and Clean Room Letter.  In fact,

18  some of these breaches are undisputed (*see* Dkt. 245, T-Mobile Mot. Partial Summary Judgment

19  at 12, 14-15), and the others are supported by ample evidence.

20       *First*, Huawei notes that the NDA only restricts Confidential Information that is "clearly

21  marked and identified as confidential."  Mot. 26.  Yet T-Mobile *did* mark and identify the testing

22

23  ───────────────

    [22] Even had T-Mobile *never* signed the contracts, they would still be enforceable under New York and
    Washington law, as long as evidence shows that the parties intended to be bound by the contract.  *Flores v. Lower

24  East Side Serv. Center, Inc.*, 4 N.Y.3d 363, 369 (2005) ("[A]n unsigned contract may be enforceable, provided there
    is objective evidence establishing that the parties intended to be bound."); *Shelcon*, 187 Wash. App. at 895

25  ("[Washington] law allows the enforcement of unsigned contracts, even where a signature is required, when it is
    clear from the parties' actions that such a contract existed.").  T-Mobile granted access to its confidential robot
    testing lab to Huawei employees pursuant to and contingent on the execution of confidentiality agreements.  Ex. 10

26  at 2 (Clean Room Letter).  It is uncontested that Huawei employees accessed T-Mobile's robot testing lab and
    therefore both parties unambiguously acted as if the NDA and Clean Room Letter were effective contracts.  *See

27  infra* Section II.C.

───────────────

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

robot and its components as confidential and proprietary, as evidenced by the NDA and Clean

Room Letter themselves.  Ex. 9 at 461656, § 1 (NDA) (identifying purpose of NDA as

establishing "protocol…[for] utilizing *automated robotic testers*, and in connection

therewith,…[information] that the Receiving Party agrees to treat as confidential"); Ex. 10 at

461652 (Clean Room Letter) (entered into "in an effort [to] ensure compliance with the

nondisclosure provisions…with respect to the present efforts of the parties to initiate an

*automated testing protocol…on T-Mobile's premises*").  Huawei was on notice that the testing

robot and its components were confidential.  *Id.* ██████████████████████████████████

██████████████████████████████████████████████████████████████████████████

███████████████████   Ex. 18 at 1928198.

        *Second*, Huawei argues that there is no evidence that Huawei copied computer programs

and source code in violation of the NDA and Clean Room Letter.  Mot. 22-23.  There is a

mountain of such evidence.  ████████████████████████████████████████████████

███████████████████████████████████████████████████   Ex. 32

(Davies Dep.) 239:6-240:1 (testifying that Huawei "exact[ly] copied" ████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████   *Id.*, 218:23-219:12; Ex. 34

(Davies Rep.) 137-38, fig. 19; Ex. 57 (Davies Supp. Rep.) 40-43, fig. 17-23.  ████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

        *Third*, Huawei admits that it violated contractual provisions prohibiting photographs of

T-Mobile's robot but argues that it cannot be held liable because T-Mobile was not damaged.

But, as explained in T-Mobile's Motion for Partial Summary Judgment, it is uncontested that T-

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA, INC.'S MOTION FOR SUMMARY
JUDGMENT - 22
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

Mobile spent $15,800 in related investigation costs.  Ex. 52  (Cunningham Dep.) 38:4-7, 42:11-13.  *See Microsoft Corp. v. Immersion Corp.*, 2008 WL 2998238, at *3 (W.D. Wash. Aug. 1, 2008) ("Consequential damages are sustainable if they flow naturally and inevitably from a breach of contract…." (internal quotations omitted)).[23]  Moreover, Huawei's material breach led T-Mobile to cancel several devices it planned to sell from Huawei because Huawei could no longer be trusted with the essential testing process.  Ex. 51 (Young Dep.) 161:24-162:25; Ex. 53 (May 16, 2016 Rossi Dep.) 21:14- 22:14, 40:20-41:21.  This led T-Mobile to lose millions of dollars.  Ex. 48 (Sullivan Rep.) ¶¶ 61-67.  ███████████████████████████████
█████████████████████████████████  *Id.*, ¶¶ 100-01.

### C.   Huawei USA Breached the Master Supply Agreement

Huawei claims that there is not a breach of the MSA because there is no evidence that Huawei USA used or disclosed T-Mobile's "Confidential Information" except in "performance of its duties under the MSA," Mot. 23, a claim plainly contradicted by the facts.  ████████████
██████████████████████████████████████████████████████████████████████
████████████████  Ex. 54 at 48165, 170.  ████████████████████████████████
██████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████  Ex. 57 (Davies Supp. Rep.) ¶¶ 87, 112, 129, 136-39, Exs. 4-5.   Additionally, internal Huawei communications show that Huawei stole and relied on T-Mobile's Confidential Information to reverse engineer its own robot.  Ex. 6; Sec. II, *supra*.

---

[23] Furthermore, under New York and Washington law, nominal damages are sufficient to maintain a breach of contract claim.  *See Medinol Ltd. v. Boston Scientific Corp.*, 346 F. Supp. 2d 575, 599 (S.D.N.Y. 2004) ("Even if [plaintiff] cannot prove any damages…, it may still maintain its claim for breach of contract and, if it is successful, recover nominal damages."); *Ford v. Trendwest Resorts, Inc.*, 146 Wash.2d 146, 158 (2002) (ordering an entry of nominal damages on breach of contract claim).

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA, INC.'S MOTION FOR SUMMARY
JUDGMENT - 23
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON  98103
telephone (206) 545-0345
fax (206) 545-0350

**D.     Lack of Assignment and Venue Are Not Defenses To Huawei's Breach Of the MetroPCS Supply Agreement**

Huawei claims that MetroPCS did not properly assign its interest in the MetroPCS Supply Agreement ("MetroPCS MSA") to T-Mobile and therefore T-Mobile cannot recover its damages for violations of the MetroPCS MSA.  Mot. 24.  But this incorrectly assumes that T-Mobile's claim is based on an assignment of the MetroPCS contract.  In fact, MetroPCS *combined* with T-Mobile pursuant to a business combination agreement.  Ex. 55 at 483296 § 2.3(b) (Business Combination Agreement) ("Immediately following the MetroPCS Merger… MetroPCS shall cause MetroPCS OpCo [MetroPCS Wireless, Inc.] to merge with and into TMUS… TMUS shall continue its existence as the surviving corporation under the laws of the State of Delaware.").  Section 15.2 of the MSA does not require consent in this circumstance.  Ex. 56 at § 15.2 (MetroPCS MSA) (requiring consent only when Agreement or right or interest therein is "assigned").  As the surviving corporation, T-Mobile assumes the contractual rights of MetroPCS by operation of law.  *See* 8 Del. C. § 259(a).  Indeed, T-Mobile continued to purchase Huawei devices for the MetroPCS channel, yet Huawei did not secure or provide a consent for assignment – because it did not need to.

Huawei's separate basis of "improper venue" should also be rejected.  A claim cannot be dismissed for venue based on a forum selection clause unless the moving party proves that the current venue is an *improper* venue.  *See Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 579-80 (2013).  Venue is proper in the Western District of Washington under 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim occurred" in Washington.  Sec. II, *supra*.  Furthermore, Huawei's request for dismissal for improper venue in a motion for summary judgment rather than in a previously-filed motion to dismiss is a "tacit admission…that venue is properly laid…" and thus the case should proceed "on its merits."  *Misch v. Zee Enters.*, 879 F.2d 628, 631-32 (9th Cir. 1989).

**VI.     CONCLUSION**

For the forgoing reasons, Huawei's motion for summary judgment should be denied.

DATED this 7th day of November, 2016.

s/ *John C. Hueston*
John C. Hueston (admitted *pro hac vice*)
Alison L. Plessman (admitted *pro hac vice*)
Eric Hayden (admitted *pro hac vice*)
Steven N. Feldman (admitted *pro hac vice*)
jhueston@hueston.com
aplessman@hueston.com
ehayden@hueston.com
sfeldman@hueston.com
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660
(949) 229-8640

s/ *Michael E. Kipling*
Michael E. Kipling, WSBA #7677
Marjorie A. Walter, WSBA #40078
kipling@kiplinglawgroup.com
walter@kiplinglawgroup.com
**KIPLING LAW GROUP PLLC**
4464 Fremont Avenue N., Suite 300
Seattle, WA 98103
(206) 545-0345
(206) 545-0350 (fax)

***Counsel for Plaintiff T-Mobile USA, Inc.***

T-MOBILE USA, INC.'S OPPOSITION TO HUAWEI
DEVICE USA, INC.'S MOTION FOR SUMMARY
JUDGMENT - 25
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1

## **CERTIFICATE OF SERVICE**

2        I hereby certify that on the 7th day of November, 2016, I electronically filed the foregoing

3  with the Clerk of the Court using the CM/ECF system which will send notification of such filing

4  to all counsel of record.

5

6        DATED this 7th day of November, 2016.

7

8                                   s/ Xinlin Li Morrow

                                     Xinlin Li Morrow (admitted *pro hac vice*)

9                                     **HUESTON HENNIGAN LLP**

10                                    523 W. 6th Street, Suite 400

                                    Los Angeles, CA  90014

11                                    (213) 788-4340

12                                    *Counsel Plaintiff T-Mobile USA, Inc.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27