HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| T-MOBILE USA, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>v.<br><br>HUAWEI DEVICE USA, INC., a Texas corporation; and HUAWEI TECHNOLOGIES CO. LTD, a China corporation,<br><br>    Defendants. | Case No. 14-cv-01351-RAJ<br><br>**PLAINTIFF T-MOBILE USA, INC.'S REPLY TO MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**Noted on Motion Calendar:**<br>**NOVEMBER 11, 2016** |

PLAINTIFF T-MOBILE USA, INC.'S REPLY TO MOTION
FOR PARTIAL SUMMARY JUDGMENT
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

# TABLE OF CONTENTS

Page

I. INTRODUCTION ....................................................................................................... 1

II. ARGUMENT .............................................................................................................. 2

    A. The NDA and Clean Room Letter Are Valid and Enforceable Against Huawei ............................................................................................................. 2

        1. Huawei USA and Huawei China Are Both Bound by the Contracts ........ 2

        2. The NDA and Clean Room Letter Were Executed in August 2012 ......... 5

    B. Huawei's After-the-Fact Excuses for Its Misconduct Are No Defense ................ 5

        1. T-Mobile Has Never Granted Huawei a Waiver ...................................... 5

        2. Huawei's Theft of the End Effector Is Part and Parcel of Huawei's Breach ......................................................................................................... 7

        3. T-Mobile Has Not Limited Its Contract Claims to Only May 2013 Breaches ..................................................................................................... 8

    C. Huawei's Breach Indisputably Damaged T-Mobile ........................................... 9

    D. Huawei's Attempt to Strike Unfavorable Evidence Should be Rejected ........... 10

        1. Huawei's Investigation Report Is Not Protected Settlement Communication ........................................................................................ 11

        2. Evidence of Theft that Huawei Seeks to Strike Is Admissible ............... 11

        3. Translations of Huawei Internal Emails Comply with Rules 604 and 901 ..................................................................................................... 12

III. CONCLUSION .......................................................................................................... 12

PLAINTIFF T-MOBILE USA, INC.'S REPLY TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - i
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Absher Constr. Co. v. Kent School Dist. No. 415*,
    77 Wash. App. 137 (1995) .................................................................................................. 6

*Burberry Ltd. v. Euro Moda, Inc.*,
    2009 WL 1675080 (S.D.N.Y. 2009) .................................................................................... 9

*Chao v. Tyson Foods, Inc.*,
    569 F. Supp. 2d 1300 (N.D. Ala. 2008) ............................................................................. 11

*Childress v. Liberty Mut. Fire Ins. Co.*,
    2011 WL 485868 (W.D. Wash. Feb. 7, 2011) .................................................................... 9

*Credit Index, LLC v. RiskWise Int'l LLC*,
    746 N.Y.S.2d 885 (Sup. Ct. 2002) ................................................................................. 1, 3

*Destefano v. Zynga, Inc.*,
    2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .................................................................... 10

*Fin. Techs. Int'l, Inc. v. Smith*,
    247 F. Supp. 2d 397 (S.D.N.Y. 2002) ................................................................................ 6

*Freedom Chem. Co. v. BC Sugar Refinery, Ltd.*,
    1998 WL 289736 (S.D.N.Y. June 4, 1998), *aff'd*, 166 F.3d 1200 (2d Cir. 1998) ............... 6

*Gilbert Frank Corp. v. Fed. Ins. Co.*,
    70 N.Y.2d 966 (1988) ......................................................................................................... 7

*In re Bd. of Com'rs of Wash. Park*,
    52 N.Y. 131 (1873) ............................................................................................................. 4

*Jones v. Best*,
    134 Wash. 2d 232 (1998) ................................................................................................ 6, 7

*Kenford Co., Inc. v. Cnty. of Erie*,
    73 N.Y.2d 312 (1989) ....................................................................................................... 10

*Kesey, LLC v. Francis*,
    2009 WL 909530 (D. Or. Apr. 3, 2009), *aff'd*, 433 F. App'x 565 (9th Cir. 2011) ............ 11

*Lax v. Greater N.Y. Frozen Food Distribution Co.*,
    924 N.Y.S.2d 310 (Sup. Ct. 2011) ...................................................................................... 5

*Levinson v. Linderman*,
    51 Wash.2d 855 (1958) ...................................................................................................... 4

*Mfrs. & Traders Trust Co. v. Erie Cnty. Indus. Dev. Agency*,
    703 N.Y.S.2d 636 (2000) ................................................................................................... 4

PLAINTIFF T-MOBILE USA, INC.'S REPLY TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - ii
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

## TABLE OF AUTHORITIES (cont.)

Page(s)

*Microsoft Corp. v. Immersion Corp.*,
  2008 WL 2998238 (W.D. Wash. Aug. 1, 2008) .................................................................... 9

*MKB Contractors v. Am. Zurich Ins. Co.*,
  49 F. Supp. 3d 814 (W.D. Wash. 2014) ............................................................................... 9

*Nau v. Vulcan Rail & Constr. Co.*,
  286 N.Y. 188 (1941) ............................................................................................................ 4

*Oakley, Inc. v. Bugaboos Eyewear Corp.*,
  2010 WL 4117223 (S.D. Cal. Oct. 15, 2010) .................................................................... 12

*Peterson v. Kitsap Community Fed. Credit Union*,
  171 Wash. App. 404 (2012) ................................................................................................ 8

*Pinky Originals, Inc. v. Bank of India*,
  1996 WL 603969 (S.D.N.Y. Oct. 21, 1996) .................................................................. 6, 7

*Prospect Energy Corp. v. Dallas Gas Partners, LP*,
  761 F. Supp. 2d 579 (2011) ................................................................................................ 4

*Quezada v. Schneider Logistics Transloading and Distrib.*,
  2013 WL 129676 (C.D. Cal. Mar. 25, 2013) .................................................................... 12

*Reape v. N.Y. News, Inc.*,
  504 N.Y.S.2d 469 (1986) .................................................................................................... 8

*Stuart v. Radioshack Corp.*,
  259 F.R.D. 200 (N.D. Cal. 2009) ........................................................................................ 5

*Telewizja Polska USA, Inc. v. Echostar Satellite Corp.*,
  2004 WL 2367740 (N.D. Ill. Oct. 15, 2004) ..................................................................... 12

*Trs. of the Constr. Indus. v. Redland Ins. Co.*,
  460 F.3d 1253 (9th Cir. 2006) .......................................................................................... 10

*Turner v. Wexler*,
  14 Wash. App. 143 (1975) ............................................................................................ 1, 4

*Wash. State MLB Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Const. Co.*, 176 Wash. 2d 502 (2013) ........................................................................................ 4

**Rules**

Fed. R. Civ. P. 26(b)(3)(A) ..................................................................................................... 11

Fed. R. Civ. P. 56(a) ................................................................................................................ 9

Fed. R. Civ. P. 408 ................................................................................................................ 11

PLAINTIFF T-MOBILE USA, INC.'S REPLY TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - iii
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

**Other Authorities**

11 M<small>OORE'S</small> F<small>EDERAL</small> P<small>RACTICE</small> § 56.40(1)(c) .............................................................................. 10

PLAINTIFF T-MOBILE USA, INC.'S REPLY TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - iv
(14-cv-01351-RAJ)

K<small>IPLING</small> L<small>AW</small> G<small>ROUP</small> PLLC
4464 F<small>REMONT</small> A<small>VE</small> N, S<small>UITE</small> 300
S<small>EATTLE</small>, W<small>ASHINGTON</small> 98103
telephone (206) 545-0345
fax (206) 545-0350

## I.     INTRODUCTION

Huawei does not dispute two fundamental bases of T-Mobile's motion: (1) valid contracts expressly prohibit Huawei from photographing and otherwise capturing the likeness and design of T-Mobile's robot testing system, and (2) Huawei employees photographed and removed parts of the robot testing system from T-Mobile's lab without permission. Huawei's opposition offers implausible excuses, but raises no legal defense or material factual disputes.

*First*, Huawei asserts that Huawei China is not bound by the NDA and Clean Room Letter, because it is not a signatory to either. Obviously, this is no defense as to Huawei USA. As for Huawei China, the plain language of the NDA expressly binds it as a "parent" and "affiliate" of Huawei USA. *See Credit Index, LLC v. RiskWise Int'l LLC*, 746 N.Y.S.2d 885, 889 (Sup. Ct. 2002). The Clean Room Letter—which expressly incorporates the NDA by reference and was signed by the same Huawei executive at the same time and for the same purpose as the NDA—is equally binding on Huawei China. Where two contracts are contemporaneously executed for the same purpose in the same transaction, both are to be read as one comprehensive contract. *See, e.g., Turner v. Wexler*, 14 Wash. App. 143, 146–147 (1975).

*Second*, Huawei boldly claims, despite overwhelming evidence submitted in T-Mobile's opening brief and its own admissions, that "there is no evidence of breach of either contract." Huawei's primary argument is that a *limited, supervised* media tour that T-Mobile conducted in 2012 somehow "waives" a clear contractual provision prohibiting *Huawei* from photographing and capturing the likeness of the robot system. A waiver must be express—in this case written— and Huawei presents no evidence that T-Mobile "waived" Huawei's obligations.

Huawei also claims that stealing a robot part, photographing it, and then sending information about it to Huawei's R&D division in China did not violate the contracts because they do not explicitly prohibit theft. Putting aside the absurdity of the claim, Huawei stole the robot part *for the express purpose* of photographing and measuring it. Notably, Huawei does not dispute the theft, measurement, or photography. It merely argues the Court should adopt a

PLAINTIFF T-MOBILE USA, INC.'S REPLY TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - 1
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

narrow reading of the express prohibitions that completely eviscerates the contracts' purpose.

***Third***, Huawei makes the novel claim, without any legal basis, that the contracts are not valid until "dated" by T-Mobile. There is no dispute the contracts were signed by both Huawei and T-Mobile in August 2012. There is also no dispute that both contracts are in fact "dated"—the NDA indisputably provides that its effective date is July 31, 2012 and the Clean Room Letter is dated August 16, 2012 at the top of the letter. Huawei also included dates by its signature on both contracts. The fact that T-Mobile did not initially include a date by its signature does not undermine the legal effect and validity of the contracts executed in August 2012.

***Fourth***, Huawei disputes that T-Mobile's investigation costs are "contract damages." Yet for partial summary judgment, T-Mobile only needs to establish nominal damages. Huawei further argues that it does not believe the sworn testimony of T-Mobile's 30(b)(6) witness, but does not challenge his statements with evidence. Moreover, Huawei claims that investigative costs are unrecoverable as attorney's fees, but they are in fact consequential damages and Huawei cites no authority to the contrary. Regardless, with this motion, T-Mobile only seeks partial summary judgment that Huawei breached the contracts.

***Lastly***, Huawei asks this Court to strike certain evidence unfavorable to Huawei. For multiple legal and factual reasons, Huawei's requests should be denied.

## II.     ARGUMENT

### A.     The NDA and Clean Room Letter Are Valid and Enforceable Against Huawei

#### 1.     Huawei USA and Huawei China Are Both Bound by the Contracts

Huawei does not dispute that Huawei USA is bound by both the NDA and Clean Room Letter. Huawei China is also bound by both contracts, as established by plain language of the NDA, undisputed facts about the contemporaneous signing of both contracts, and governing law.

##### a.     Huawei China Is Bound by the NDA

Huawei USA signed the NDA "on behalf of its parents and affiliates." It is undisputed that Huawei China is a parent or affiliate of Huawei USA. Dkt. 253 at 1–2. Under governing law,

PLAINTIFF T-MOBILE USA, INC.'S REPLY TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - 2
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON  98103
telephone (206) 545-0345
fax (206) 545-0350

Huawei China, "a non-signatory entity [that is] an 'affiliate' … [may] be bound by the [agreement]." *Credit Index*, 746 N.Y.S.2d at 889. Huawei also manifested an intent to be bound by the NDA by directing the actions of Huawei USA employees in T-Mobile's lab for its own benefit. This argument is addressed in more detail in T-Mobile's opposition to Huawei China's motion for summary judgment, incorporated by reference here. *See* Dkt. 270 at 11–13.

### b. Huawei China Is Bound by the Clean Room Letter[1]

Huawei suggests that binding Huawei China to the Clean Room Letter would be a "gotcha," analogizing to John Hancock and the Declaration of Independence. Opp. at 14–15. This analogy, however, does not fit legally or factually because the NDA—to which Huawei China is bound as an "affiliate" and a "parent"—and the Clean Room Letter were a package deal, and the law treats them as one contract. As such, *not* binding Huawei China to the Clean Room Letter it benefited from is legally unsupported and would be a "gotcha" to the disadvantage of T-Mobile, not Huawei.

Unlike the Declaration of Independence and some hypothetical agreement incorporating it, the Clean Room Letter and NDA were negotiated and executed by Huawei at the same time for the same purpose—to access T-Mobile's robot lab—which Huawei does not contest. Mot. at 3–4. This is reflected in the Clean Room Letter, which incorporates by reference "the Nondisclosure Agreement *executed contemporaneously* with the [L]etter." Dkt. 249 Ex. G (emphasis added). As such, the NDA and Clean Room Letter were a package deal, which Huawei recognized. *See* Ex. 1[2]; Dkt. 285-4 ("I already sent the NDA to TMO. However, it isn't done yet. A letter for clarification of the NDA needs to be signed by Huawei. … Once TMO confirmed the changes, Mr. Cui will sign the letter. After that, we can access the robot lab."); Dkt. 252-1

---

[1] Huawei also argues the complaint does not allege that Huawei China is subject to the NDA and the Clean Room Letter. Opp. at 3. But the complaint alleges that "Huawei is liable under the terms of the contracts for breaches committed by its employees," where "Huawei" is defined as both Huawei defendants. *See* Dkt. 1 ¶ 93.

[2] All exhibits cited herein refer to exhibits to the Declaration of Xinlin Li Morrow, filed herewith.

PLAINTIFF T-MOBILE USA, INC.'S REPLY TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - 3
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

███████████████████████████████████████. Huawei also executed them as a package: *contemporaneously* by the *same* Huawei executive—Jiangao Cui, then-CEO of Huawei USA and now board member employed by Huawei China. Dkt. 249 Exs. F–G.

Under settled law, the NDA and Clean Room Letter must be read as one contract because they were part of the same transaction, related to the same subject matter, and executed at the same time. *Turner*, 14 Wash. App. at 146–147; *Levinson v. Linderman*, 51 Wash.2d 855, 859 (1958); *Mfrs. & Traders Trust Co. v. Erie Cnty. Indus. Dev. Agency*, 703 N.Y.S.2d 636, 638 (2000); *Nau v. Vulcan Rail & Constr. Co.*, 286 N.Y. 188, 197 (1941).[3] This is also so because the Clean Room Letter expressly incorporates by reference the NDA. *Wash. State MLB Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Const. Co.*, 176 Wash. 2d 502, 518 (2013) ("[I]f the parties to a contract clearly and unequivocally incorporate by reference into their contract some other document, that document becomes part of their contract."); *In re Bd. of Com'rs of Wash. Park*, 52 N.Y. 131, 134 (1873). Reading the Clean Room Letter and the NDA together, as they must be as a matter of law, Huawei China is bound to both.

Separately, Huawei's claim that "Huawei Device China" is responsible rather than "Huawei Technologies" is unsupported and contradicted by evidence. T-Mobile addressed this argument in Section I.B of its Opposition (Dkt. 270) to Huawei China's motion for summary judgment, incorporated by reference here. In short, while Huawei claims that key actors involved in the breaches were employees of "Huawei Device China," ████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████ *See* Dkt. 270 at 5–7 and exhibits cited therein. But more importantly, this shell-game argument is irrelevant. A party bound by a contract cannot evade responsibility for breach by conspiring with an affiliate to do what is prohibited. *See, e.g., Prospect Energy Corp. v. Dallas Gas Partners, LP*, 761 F. Supp. 2d 579, 600 (S.D. Tex. 2011).

---

[3] Whether the NDA and Clean Room Letter "constitute one contract … is a question of interpretation or law for the court and does not create a factual issue." *Turner*, 14 Wash. App. at 147.

PLAINTIFF T-MOBILE USA, INC.'S REPLY TO MOTION FOR PARTIAL SUMMARY JUDGMENT - 4
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

### 2. The NDA and Clean Room Letter Were Executed in August 2012

There is no dispute the contracts were signed by both Huawei and T-Mobile in August 2012. *See* Opp. at 12; Dkt. 283 at 20 and Dkt. 284-2 Ex. 50 (August 2012 email transmitting both contracts signed by both parties). There is also no dispute that the effective dates of the contracts are July 31, 2012 (express date of effectiveness of NDA) and August 16, 2012 (date of the Clean Room Letter). Dkt. 249 Exs. F-G. Later, in June 2013, T-Mobile *dated* its signature. Huawei makes the novel claim, without legal authority, that the contracts are not valid until a party "dates" his or her signature. Huawei thus argues that it was free to both benefit from and breach the contracts signed by both parties in August 2012 until T-Mobile dated its signature line in June 2013. This is a red herring with no legal effect or support. *See* Dkt. 283 § V.A.

### B. Huawei's After-the-Fact Excuses for Its Misconduct Are No Defense

#### 1. T-Mobile Has Never Granted Huawei a Waiver

Huawei argues that because T-Mobile allowed limited, chaperoned media tours, allowed certain photographs to be taken of its robot testing system under supervision, and allowed Huawei to take screenshots for a limited purpose, it waived all photography and capture restrictions contained in the contracts Huawei signed. Huawei has not met its burden on this extraordinary claim. *Stuart v. Radioshack Corp.*, 259 F.R.D. 200, 202 (N.D. Cal. 2009) (the party opposing summary judgment bears the burden of proof with respect to waiver).

##### a. The Contracts Unequivocally Prohibit Waivers

The NDA and Clean Room Letter expressly prohibit waiver except in writing. NDA § 13 (failure to enforce any provision "shall not constitute a waiver thereof or of any other provision" and that the NDA "may not be amended, nor any obligation waived, except in writing signed by both parties."); Supply Agreement § 9.17 ("Any waiver by either Party of any breach of a term or provision of this Agreement must be in writing and will not be construed as a waiver of any subsequent breach ..."); Clean Room Letter at 1 (incorporating the NDA by reference and further stating, "This letter…is governed by the terms and conditions" of the Supply Agreement). Numerous courts have found such non-waiver clauses enforceable. *See, e.g., Lax v. Greater N.Y.*

PLAINTIFF T-MOBILE USA, INC.'S REPLY TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - 5
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

*Frozen Food Distribution Co.*, 924 N.Y.S.2d 310 (Sup. Ct. 2011) (granting summary judgment for plaintiff on contract with similar no waiver clause); *Freedom Chem. Co. v. BC Sugar Refinery, Ltd.*, 1998 WL 289736, at *4 (S.D.N.Y. June 4, 1998), *aff'd*, 166 F.3d 1200 (2d Cir. 1998) (same); *Fin. Techs. Int'l, Inc. v. Smith*, 247 F. Supp. 2d 397, 407 (S.D.N.Y. 2002); *Absher Constr. Co. v. Kent School Dist. No. 415*, 77 Wash. App. 137, 143–44 (1995) (enforcing "contract [that] made it clear that any waiver of notice had to be in writing"). There is no written waiver, which defeats Huawei's argument as a matter of law.

### b.   T-Mobile Has Not Waived the Photography Prohibition

Huawei nevertheless asserts that T-Mobile's other actions constitute implied waiver of the contracts' clear prohibitions. Even if implied waiver were not precluded by the agreements themselves, Huawei's arguments lack legal and evidentiary support.

#### (i)   No Waiver from the 2012 Media Tour

There is no waiver based on a limited media tour. Waiver of a contract provision "will not be inferred unless the intent to waive is clear." *Pinky Originals, Inc. v. Bank of India*, 1996 WL 603969, at *18 (S.D.N.Y. Oct. 21, 1996); *Jones v. Best*, 134 Wash. 2d 232, 241–42 (1998), *as corrected* (Feb. 20, 1998). Here, as T-Mobile's 30(b)(6) witness testified, the media tours (and any other visitors for that matter) were supervised by T-Mobile and any photos taken by the media were subject to T-Mobile's review. Ex. 2 156:17–18, 227:2–14. Moreover, lab tours did not provide the extensive access to the robot that Huawei received due to the contractual promises it made (but ultimately violated). *See id.* It is undisputed that Huawei personnel took photographs without escort, review, or authorization by T-Mobile, and there is no evidence that T-Mobile ever relieved Huawei of its obligations under the contracts. Instead, the evidence shows Huawei understood its obligations but proceeded to violate them. *See*, *e.g.*, Dkts. 252-7 at 3-4, 252-8, 252-20.

It also goes without saying that those involved in lab tours were not parties to Huawei's contracts with T-Mobile. Yet Huawei argues that T-Mobile's actions with respect to third parties,

PLAINTIFF T-MOBILE USA, INC.'S REPLY TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - 6
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

who had more limited lab and testing system access than that enjoyed by Huawei, somehow modify *Huawei's* contracts with T-Mobile. Huawei cites no support for its claim.

### (ii) Allowing Screenshots for a Limited Purpose is Not Waiver

T-Mobile never granted Huawei a waiver to photograph any and all computer screens in the robot lab, and Huawei has presented no such evidence. *See Pinky Originals*, 1996 WL 603969 at *18. T-Mobile specifically permitted Huawei on occasions to take screenshots of *test results* on the robot computer to troubleshoot when expressly allowed and only for such limited purpose. Ex. 3 202:21–203:25.[4] That limited allowance does not and cannot waive the entire photography and capture provision. *See also Gilbert Frank Corp. v. Fed. Ins. Co.*, 70 N.Y.2d 966, 968 (1988) (waiver must be intentional); *Jones v. Best*, 134 Wash. 2d at 241–42 (same). In any case, Huawei far exceeded any such allowance, including indisputably photographing various robot parts, model number, and robot computer screens (as opposed to screenshots, which may leave a digital file record) showing—in Xiong's own words— ▓▓▓▓▓▓ (not *test results*), all in secret and without T-Mobile's permission. *See*, *e.g.*, Dkts. 252-3–5, 252-10, 252-14, 252-18–19.

### 2. Huawei's Theft of the End Effector Is Part and Parcel of Huawei's Breach

Tellingly, Huawei does not dispute the fact that Xiong removed the end effector nor the fact that he photographed and measured it. Opp. at 15-16. In fact, Huawei does not even dispute that Xiong's photography and measurements violated the contracts. *Id*. Huawei instead argues that the act of removal without authorization *alone* does not violate the contracts. Physically taking the end effector to transmit information about it over the phone to a R&D team[5] is

---

[4] T-Mobile witness Sumeet Mann described the limited purpose of sharing "test results" with vendors—so that the vendor could "work on debugging the [phone] software" and "improve their device performance" after T-Mobile "give[s] them … the issues which [T-Mobile] reproduced," but specifically *not* for the vendors "to align their testing environment with T-Mobile's." Ex. 3; c*ompare* Dkt. 252-5 ▓▓▓▓▓▓▓▓.

[5] Huawei mischaracterizes Mr. Mann's testimony as saying the theft was "no big deal." Opp. at 5. But that comment was based on his *mistaken* belief that the end effector was misplaced but remained in the secured lab, based on Xiong's lie. *See* Opp. Ex. 5 260:13-14 ("[Xiong] said that he had left [the end effector] on the table."). It does not take into account that the end effector had been improperly removed or that information about it was transmitted to Huawei's R&D division in China.

PLAINTIFF T-MOBILE USA, INC.'S REPLY TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - 7
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

indisputably "otherwise captur[ing] in any fashion the likeness or design" of the robot. *See* Dkt. 252-7 at 4. Indeed, the combination of stealing robot parts for the purpose of uninterrupted and precise measurement *and* photographing the parts is an undeniably greater violation than taking photographs alone. Any other interpretation is absurd. *See, e.g., Peterson v. Kitsap Community Fed. Credit Union*, 171 Wash. App. 404, 430 (2012) (interpret contract to avoid absurd results); *Reape v. N.Y. News, Inc.*, 504 N.Y.S.2d 469, 470 (1986) (same).

### 3. T-Mobile Has Not Limited Its Contract Claims to Only May 2013 Breaches

Although Huawei does not dispute that the May 2013 breaches are within the scope of T-Mobile's claims, it tries to shield earlier breaches by suggesting T-Mobile limited its claims to cover *only* the May 2013 incidents. But the complaint contains no such limitation. Dkt. 1 ¶¶ 89–97. Instead, Huawei cites only the testimony of T-Mobile's 30(b)(6) witness, Jason Young, where he referenced the May 2013 incidents when discussing breaches of the Clean Room Letter. But Mr. Young *never* suggested that these were the *only* breaches, and Huawei's counsel never asked. Indeed, earlier in his testimony, Mr. Young did not refer to any dates when he described Huawei's conduct that breached the Supply Agreement and NDA. *See* Ex. 4 90:16–95:13; Dkt. 262-62 at 106:9–107:15.

Moreover, that Mr. Young did not highlight Huawei's earlier breaches is hardly surprising: Huawei designated much of the evidence of pre-May 2013 breaches as "Confidential – Attorneys' Eyes Only," [6] which precluded anyone other than outside counsel from reviewing such evidence under the parties' agreement. *See*, *e.g.*, Dkt. 252-3–5. Thus, Mr. Young could not have been told about or relied on this evidence. Huawei's self-serving over-designation of evidence cannot limit the scope of T-Mobile's claims and, in any event, certainly cannot create a material factual dispute precluding partial summary judgment.[7]

---

[6] Months after Mr. Young's deposition, Huawei agrees that these documents may be filed publicly. Dkt. 288.

[7] Huawei's attempt to use a lay witness for legal conclusions such as what claims for breach exist in this case—particularly when it prevented that witness from seeing key evidence on the subject at issue—is why T-Mobile objected to and opposed this broad-ranging 30(b)(6) topic.

PLAINTIFF T-MOBILE USA, INC.'S REPLY TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - 8
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

Lastly, *MKB Contractors v. Am. Zurich Ins. Co.*, 49 F. Supp. 3d 814, 829 (W.D. Wash. 2014), which Huawei cites for support, says *nothing* about using 30(b)(6) testimony (and such testimony was not provided in this case in any event) to limit the scope of a party's legal claims; rather, it reaffirms the long-established principle that a party cannot create material disputes of fact by submitting a declaration to contradict its own earlier testimony.

### C. Huawei's Breach Indisputably Damaged T-Mobile

T-Mobile's investigation into Huawei's misconduct was a natural and direct consequence of Huawei's breach. There is no dispute that the investigation was performed after discovery of Huawei's breach, nor that T-Mobile incurred costs as a result. Opp. at 18–20. Rather, Huawei characterizes the damage as "attorney fees" and urges the Court to accept its bald argument—with no evidence or law—and to ignore sworn testimony. These arguments are meritless.

*First*, this Court can grant partial summary judgment on liability without regard to damages. *See* Fed. R. Civ. P. 56(a). As demonstrated in T-Mobile's moving brief, courts have repeatedly recognized this principle and have granted partial summary judgment on liability alone while reserving an award of damages. *See e.g.*, *Childress v. Liberty Mut. Fire Ins. Co.*, 2011 WL 485868, at *6 (W.D. Wash. Feb. 7, 2011) (granting partial summary judgment on liability while reserving damages for trial); *Burberry Ltd. v. Euro Moda, Inc.*, 2009 WL 1675080, at *17 (S.D.N.Y. 2009) (same). None of Huawei's attacks on damages prevents this Court from granting summary judgment on liability. In any event, the fact of damage is undisputed here—once liability has been established, the injured party is entitled to recover "nominal damages," even if a breach "caused no loss." *Burberry*, 2009 WL 1675080, at *17.[8]

*Second*, investigation costs are valid contract damages. T-Mobile initiated the investigation as a direct result of Huawei's misconduct and to determine the scope and impact of Huawei's breach; such costs are properly consequential damages. *See Microsoft Corp. v.*

---

[8] Huawei flatly mischaracterizes the holding of *Burberry*. There, the court granted summary judgment on the issue of liability, even though the moving party did not provide *any* evidence of damages. *Burberry*, 2009 WL 1675080, at *17. The amount of damages was reserved for trial.

PLAINTIFF T-MOBILE USA, INC.'S REPLY TO MOTION FOR PARTIAL SUMMARY JUDGMENT - 9
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

*Immersion Corp.*, 2008 WL 2998238, at *3 (W.D. Wash. Aug. 1, 2008); *Kenford Co., Inc. v. Cnty. of Erie*, 73 N.Y.2d 312, 319 (1989). To get around this, Huawei argues that T-Mobile's investigation costs are not recoverable because they "constitute attorney fees." Opp. at 18–19. In fact, none of the costs described by Mr. Cunningham were fees paid to attorneys. Mot. at 15. Moreover, there is no authority supporting the principle that T-Mobile's work-product claim over select (and appropriate) aspects of its investigation precludes recovery of these costs.[9] It does not.

***Third***, T-Mobile has produced sufficient evidence to substantiate its investigation costs. *See* Mot. at 15 (citing Cunningham Dep.). Mr. Cunningham testified in detail about the purpose, scope, and cost of the investigation. *Id.* (citing Ex. DD at 23:8–24, 30:9–20, 38:4–19). Huawei offered no evidence to rebut or contradict such testimony. Huawei selectively excerpted Mr. Cunningham's testimony and argued that T-Mobile did not present "competent evidence." But as Huawei's authority confirms, T-Mobile need only put forth "evidence" that "would conclusively support its right to a judgment." 11 MOORE'S FEDERAL PRACTICE § 56.40(1)(c). T-Mobile has done precisely that, as demonstrated by the testimony cited by Huawei. *See* Dkt. 279–8 38:4–42:13 (noting, *inter alia*, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓).

In sum, this Court should rule that Huawei's breach indisputably damaged T-Mobile and allow T-Mobile to present evidence of additional damages at trial.

**D.    Huawei's Attempt to Strike Unfavorable Evidence Should be Rejected**

Huawei requests that the Court strike three categories of unfavorable evidence: (1) Huawei's own investigation report, which makes a number of admissions that it originally

---

[9] Huawei's cited authorities do not support such a broad principle. Neither *Redlands* nor *Destefano* address a breach of contract. *Trs. of the Constr. Indus. v. Redland Ins. Co.*, 460 F.3d 1253, 1256–57 (9th Cir. 2006); *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *19 (N.D. Cal. Feb. 11, 2016). Further, *Redlands* does not discuss an investigation, let alone a party's ability to seek contract damages for investigation costs. *See* 460 F.3d at 1256–57. *Destefano* addresses a wholly separate issue, namely the ability to recover outside counsel's investigator costs in the context of post-settlement class action attorneys' fees. *See* 2016 WL 537946, at *19.

PLAINTIFF T-MOBILE USA, INC.'S REPLY TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - 10
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

concealed from T-Mobile; (2) the video and related testimony showing Xiong deliberately stealing the end effector and placing it into his backpack; and (3) translations of Huawei's own emails discussing the scheme to steal T-Mobile's trade secrets. This request is baseless.

### 1. Huawei's Investigation Report Is Not Protected Settlement Communication

Huawei argues that it shared its internal investigation report—which contains a number of admissions—during "settlement discussions." That is unsupported by any evidence. The report was intentionally sent to T-Mobile by Huawei in 2013 before this litigation even commenced without any reference to "compromise" of a disputed claim, let alone to Rule 408. *See, e.g.*, Dkts. 184 Ex. 3, 184-1 Ex. 4. In fact, Huawei admits that the documents were shared in an effort to "restore full business relations with T-Mobile . . . ." Dkt. 192 at 2. The Ninth Circuit draws a "clear distinction between communications in furtherance of business interests and settlement negotiations arising from actual disputes, and it imposes the requirement that settlement discussions must have first 'crystallized' before Rule 408's bar will apply." *Kesey, LLC v. Francis*, 2009 WL 909530, at *9 (D. Or. Apr. 3, 2009), *aff'd*, 433 F. App'x 565 (9th Cir. 2011). Huawei's investigation report is a non-settlement communication that does not qualify for Rule 408 protection. In any event, the report is not necessary to grant T-Mobile's motion. Other evidence plainly shows Huawei breached the contracts. *See*, *e.g.*, Mot. at 14-15.

### 2. Evidence of Theft that Huawei Seeks to Strike Is Admissible

Huawei moves to strike the video showing Xiong deliberately stealing the end effector as well as related testimony by Trey Villanueva about the video.[10] Dkts. 249 Ex. P at 204-206, 262, 249 Ex. DD. In support, Huawei cites a single out-of-circuit case for the unremarkable rule that a litigant cannot use the privilege as a sword and shield. *See Chao v. Tyson Foods, Inc.*, 569 F. Supp. 2d 1300, 1327-28 (N.D. Ala. 2008). But the video is not work product, as the recording was not prepared by an attorney in anticipation of litigation. *See* Fed. R. Civ. P. 26(b)(3)(A). Nor is

---

[10] Huawei also moves to strike testimony regarding the existence of and costs of the investigation, over which Huawei admits T-Mobile has never asserted privilege. *Cf.* Opp. at 10. This is akin to claiming that a party cannot recover attorney fees because it has not shared the substance of the privileged work product or communications.

PLAINTIFF T-MOBILE USA, INC.'S REPLY TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - 11
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

Villanueva's review of the video, which preceded the corporate investigation, work product, and T-Mobile has never claimed that it is. *See, e.g.* Ex. 5 at 165:13–17 (counsel providing general instruction to answer questions regarding personal investigation but not the later corporate investigation); Dkt. 262 (testifying regarding review of video as part of personal investigation). Thus, the shield/sword argument, which applies only when a party selectively discloses *some* privileged information but withholds other information, simply does not apply. *See Oakley, Inc. v. Bugaboos Eyewear Corp.*, 2010 WL 4117223, at *5 (S.D. Cal. Oct. 15, 2010).

### 3.     Translations of Huawei Internal Emails Comply with Rules 604 and 901

Huawei also moves to strike the translations of its incriminating internal emails. But under Rules 604 and 901, translations of evidence from a foreign language are admissible if they are accompanied by a sworn declaration stating the competency of the translator and an affirmation that the translation is accurate. *See, e.g.*, *Quezada v. Schneider Logistics Transloading and Distrib.*, 2013 WL 129676, at *3-4 (C.D. Cal. Mar. 25, 2013); *see also, e.g.*, Dkt. 252-1 (translation with certification by Mr. Ledbetter stating that he is fluent in English and Chinese and that the attached translation is "true and accurate"); Decl. of Translator Theodore E. MacInnes.

Huawei does not challenge the competency of the translator, nor does Huawei provide its own admissible translations. *See Telewizja Polska USA, Inc. v. Echostar Satellite Corp.*, 2004 WL 2367740 (N.D. Ill. Oct. 15, 2004) ("[A] party challenging the authenticity or accuracy of a translation bears the burden of presenting a competing translation, permitting the trier of fact to choose which version to credit."). Without a single citation to evidence, Huawei claims the translations are wrong. Not only is this inadmissible argument, none of the purported differences in translation are material or would affect the outcome of this motion.

### III.     CONCLUSION

For the reasons stated above, T-Mobile's motion for partial summary judgment should be granted.

PLAINTIFF T-MOBILE USA, INC.'S REPLY TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - 12
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

DATED this 14th day of November, 2016.

| | |
|---|---|
| s/ Michael E. Kipling<br>Michael E. Kipling, WSBA #7677<br>Marjorie A. Walter, WSBA #40078<br>kipling@kiplinglawgroup.com<br>walter@kiplinglawgroup.com<br>**KIPLING LAW GROUP PLLC**<br>4464 Fremont Avenue N., Suite 300<br>Seattle, WA 98103<br>(206) 545-0345<br>(206) 545-0350 (fax) | John Hueston (admitted *pro hac vice*)<br>Alison Plessman (admitted *pro hac vice*)<br>Eric Hayden (admitted *pro hac vice*)<br>jhueston@hueston.com<br>aplessman@hueston.com<br>ehayden@hueston.com<br>**HUESTON HENNIGAN LLP**<br>660 Newport Center Drive, Suite 1300<br>Newport Beach, CA 92660<br>(949) 229-8640 |

*Counsel for Plaintiff T-Mobile USA, Inc.*

PLAINTIFF T-MOBILE USA, INC.'S REPLY TO MOTION FOR PARTIAL SUMMARY JUDGMENT - 13
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of November, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

DATED this 14th day of November, 2016.

<u>s/ Xinlin Li Morrow</u>
Xinlin Li Morrow (admitted *pro hac vice*)
**HUESTON HENNIGAN LLP**
523 W. 6th Street, Suite 400
Los Angeles, CA  90014
(213) 788-4340

***Counsel Plaintiff T-Mobile USA, Inc.***

PLAINTIFF T-MOBILE USA, INC.'S REPLY TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - 14
(14-cv-01351-RAJ)

KIPLING LAW GROUP PLLC
4464 FREMONT AVE N, SUITE 300
SEATTLE, WASHINGTON  98103
telephone (206) 545-0345
fax (206) 545-0350