1
2
3
4
5
6

The Honorable Richard A. Jones

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8

| | |
|---|---|
| T-MOBILE USA, INC., a Delaware corporation, | NO.  C14-1351 RAJ |
| Plaintiff, | **DEFENDANT HUAWEI DEVICE USA, INC.'S TRIAL BRIEF** |
| v. | |
| HUAWEI DEVICE USA, INC., a Texas corporation. | |
| Defendants. | |

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT HUAWEI DEVICE USA'S
TRIAL BRIEF
NO. C14-1351 RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 FOURTH AVENUE, SUITE 4000
SEATTLE, WA 98154
PHONE (206) 467-6477
Fax (206) 467-6292

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 3

ARGUMENT ..................................................................................................................... 5

I.     T-Mobile Seeks to Expand this Case to Recover Damages that Were Not Pleaded in Its Complaint and Are Not Authorized By Law ........................................................................ 5

    A.     T-Mobile Cannot Recover from Huawei Device USA Benefits Obtained by Other Entities .................................................................................... 5

        1.     Huawei Device USA Can Be Liable Only for the Amounts by Which It Was Unjustly Enriched ................................................ 6

        2.     It Is Too Late for T-Mobile to Seek to Hold Huawei Device USA Liable for Benefits to Huawei Device China ........................... 10

    B.     T-Mobile Must Prove Sales Attributable to the Trade Secret Theft Before the Burden Shifts Back to Huawei Device USA ................................... 12

    C.     A Reasonable Royalty Is Not Available as a Form of Damages ........................... 14

II.    T-Mobile Must Prove that the Trade Secrets Were Used to Improve Devices Sold by Huawei Device USA .............................................................................. 17

III.   Jury Questionnaire and Voir Dire ....................................................................... 19

GORDON TILDEN THOMAS & CORDELL LLP
1001 FOURTH AVENUE, SUITE 4000
SEATTLE, WA 98154
PHONE (206) 467-6477
FAX (206) 467-6292

1   In the past week, Plaintiff T-Mobile USA has attempted to radically re-orient this case to

2   hold Huawei Device USA liable for alleged unjust enrichment to upstream corporate entities –

3   particularly Huawei Device USA's grandparent company, Huawei Device China – that are not

4   defendants in this case.  On the due date of the Pretrial Order (January 30, 2017), T-Mobile

5   revised its statements of claims and legal issues to include questions relating to joint and several

6   liability under "acting in concert," alter ego, and conspiracy theories.  These concepts were not

7   pled, were never previously addressed in this case, and were never the subject of discovery.

8        Later last week, T-Mobile revised its draft proposed jury instructions to include, for the

9   first time, a statement that the jury may hold Huawei Device USA liable for the unjust

10  enrichment of "entities acting in concert with" it.  This evening, T-Mobile again revised its

11  instructions to assert that Huawei Device USA is liable for unjust enrichment accruing to its

12  affiliates.  On this basis, T-Mobile now seeks to recover against Huawei Device USA unjust

13  enrichment allegedly accruing to Huawei Device China, an entity T-Mobile chose not to sue.  T-

14  Mobile's eleventh-hour reconstruction of its case is at odds with the law and, if permitted, would

15  severely prejudice Huawei Device USA and dramatically enlarge the scope of trial.

16       T-Mobile's gambit also exacerbates the prejudicial effect of its misreading of unjust

17  enrichment law, which was defective even before T-Mobile attempted to hold Huawei Device

18  USA liable for the purported enrichment of nonparties.  In contravention of Washington

19  precedent and the applicable pattern jury instruction, T-Mobile has taken the position that it can

20  meet its burden to establish unjust enrichment simply by pointing to sales (full stop), whereupon

21  the burden shifts to Huawei Device USA to prove that the sales were not attributable to

22  misappropriation.  This is wrong.  Under Washington law, T-Mobile bears the burden of

23  identifying sales *attributable to misappropriation*, whereupon the burden shifts to Huawei

24  Device USA to identify the *portion* of those sales not attributable to misappropriation or that do

25  not constitute profits.  T-Mobile's interpretation of the law was wrong before, but it comes into

26  sharper focus now that T-Mobile contends that it need merely identify the worldwide sales of

27

28
DEFENDANT HUAWEI DEVICE USA'S
TRIAL BRIEF                          - 2 -
NO. C14-1351 RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 FOURTH AVENUE, SUITE 4000
SEATTLE, WA 98154
PHONE (206) 467-6477
FAX (206) 467-6292

other nonparty Huawei entities – dozens of entities with over one hundred thousand employees and billions in annual sales – before the burden shifts to Huawei Device USA to prove that every Huawei entity's worldwide sales were not attributable to the misappropriation.

T-Mobile also misinterprets unjust enrichment law by contending that the jury may, as an alternative form of unjust enrichment, award it a reasonable royalty on its misappropriation and breach claims.  Washington's trade secret statute precludes an award of a reasonable royalty as a measure of damages.  The Washington legislature has clearly and unambiguously stated that only the *Court* may award a reasonable royalty and only as part of an injunction order.  Further, a reasonable royalty is not an appropriate measure of contract damages as a matter of law. Restitution damages are available in Washington only when the injured party, *i.e.*, T-Mobile, has remaining duties to perform under the contract.  As both parties acknowledge, the contracts at issue here have now expired.

Finally, T-Mobile should not be permitted to re-write either its liability theories or its experts' opinions now that Huawei Device USA is the sole defendant.  There are substantial gaps in T-Mobile's proof that Huawei Device USA benefitted from use of T-Mobile's alleged trade secrets.  T-Mobile's expert Michael Davies does not even mention Huawei Device USA in his report, much less suggest use or copying of the trade secrets by Huawei Device USA.  Nor does Mr. Davies connect his opinions regarding alleged use of T-Mobile information in China with Huawei Device USA or to the improvement of any phone sold by Huawei Device USA.

## BACKGROUND

This is not a competitor-versus-competitor case but a dispute between a large telecommunications service provider, T-Mobile USA, and its former supplier, Huawei Device USA.  At the time, T-Mobile USA was Huawei Device USA's biggest customer and the key focus of Huawei Device USA's efforts.  But the relationship soured after a series of disputes centered around Huawei Device USA's attempts to support and expand its business with T-Mobile.  The disputes resulted in T-Mobile's allegations of trade secret misappropriation and

DEFENDANT HUAWEI DEVICE USA'S
TRIAL BRIEF                              - 3 -
NO. C14-1351 RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 FOURTH AVENUE, SUITE 4000
SEATTLE, WA 98154
PHONE (206) 467-6477
FAX (206) 467-6292

breach of contract against Huawei Device USA.

When T-Mobile USA filed this case, it sued two distinct corporate entities: Huawei Technologies Co. Ltd., a Chinese company based in Shenzhen, and Huawei Device USA, an indirect Texas subsidiary.  ECF No. 1 (Compl.) ¶¶ 24-25.  T-Mobile sought as relief on its misappropriation claim "damages in the amount of T-Mobile's actual losses and Huawei's unjust enrichment," and defined "Huawei" as Huawei Device USA, Inc. ("Huawei USA") and Huawei Technologies Co. LTD."  *Id.* at 1, 21 (Pmbl. & Prayer for Relief).

T-Mobile never attempted to sue Huawei Device Co., Ltd. – the direct subsidiary of Huawei Technologies and the Chinese grandparent of Huawei Device USA.  *See id.*; Dkt. 253 ¶ 3.  T-Mobile made this pleading decision despite knowing that Huawei Device Co. Ltd. ("Huawei Device China") developed and manufactured the handsets that Huawei Device USA sold to T-Mobile, and employed most of the individuals accused of wrongdoing in this case.  In its April 20, 2015 Motion to Dismiss and in supporting declarations, Huawei Technologies stated unequivocally:

> Huawei Technologies was not involved in the actions set forth in the Complaint.  At no time relevant to the allegations in the Complaint did Huawei Technologies employ either of the two individuals T-Mobile identifies as having misappropriated its alleged trade secret(s) or any of the other individuals identified in the Complaint.  At no time did Huawei Technologies engage in any of the activities alleged in the Complaint.  Moreover, Huawei Technologies, which does not develop, manufacture, or sell handsets, was never a signatory or party-in-interest to any of the contracts T-Mobile identifies in the Complaint.

ECF No. 50 at 6; *see also* ECF No. 51 at ¶¶ 11-19; ECF No. 59 at 1; ECF No. 250 at 2-3.

T-Mobile did not amend its Complaint before the Court-imposed deadline of December 23, 2015, ECF No. 41, and proceeded to summary judgment on the theory that it could obtain complete relief from Huawei Device USA and its great-grandparent, Huawei Technologies.  On January 26, 2017, however, this Court granted summary judgment to Huawei Technologies for lack of personal jurisdiction, holding that "T-Mobile cannot carry its burden to show, by a

DEFENDANT HUAWEI DEVICE USA'S
TRIAL BRIEF                                         - 4 -
NO. C14-1351 RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 FOURTH AVENUE, SUITE 4000
SEATTLE, WA 98154
PHONE (206) 467-6477
FAX (206) 467-6292

preponderance of the evidence, that Huawei Technologies committed an intentional act expressly aimed at Washington causing harm in that state." ECF No. 334 at 11.  As a result, T-Mobile will proceed to trial against one defendant: Huawei Device USA.

In an attempt to evade the consequences of its pleading choices and to expand the scope and presentation of evidence at trial, T-Mobile has announced, on the eve of trial, that it intends to pursue a novel theory of the case: to wit, that Huawei Device USA should be held liable for any damages and unjust enrichment "caused by Huawei Device USA *in concert with its corporate family*, including, but not limited to, Huawei Device China." ECF No. 348 at 2:11-14 (emphasis added).  T-Mobile takes the position that, although it never sued Huawei Device China, it may hold Huawei Device USA liable for all the acts and purported damages caused by other Huawei entities and, in addition, recover the unjust enrichment of all Huawei entities from the single Huawei entity now a defendant.

T-Mobile's allegations suffer from factual and legal defects.  To that end, Huawei Device USA submits the following arguments for the Court's consideration.

## ARGUMENT

### I.   T-Mobile Seeks to Expand this Case to Recover Damages that Were Not Pleaded in Its Complaint and Are Not Authorized By Law

#### A.   T-Mobile Cannot Recover from Huawei Device USA Benefits Obtained by Other Entities

T-Mobile's strategic decision to limit its Complaint to one American subsidiary and a great-grandparent over which jurisdiction is lacking has serious consequences for T-Mobile's trade secret case.  To establish trade secret misappropriation under Washington law, T-Mobile bears the burden of proving, *inter alia*, (1) that T-Mobile had a trade secret; (2) that Huawei Device USA misappropriated the trade secret; and (3) that Huawei Device USA's misappropriation was a proximate cause of damages to T-Mobile and/or that, as a result of the misappropriation, Huawei Device USA received money or benefits that in justice and fairness belong to T-Mobile.  WPI 351.01 (2013).  Yet, T-Mobile now seeks to recover unjust enrichment

GORDON TILDEN THOMAS & CORDELL LLP
1001 FOURTH AVENUE, SUITE 4000
SEATTLE, WA 98154
PHONE (206) 467-6477
FAX (206) 467-6292

allegedly received by *other* Huawei entities on a theory of joint and several liability asserted on the eve of trial.  This novel theory was waived and is, in any event, not actionable as a matter of law.

### 1.      Huawei Device USA Can Be Liable Only for the Amounts by Which It Was Unjustly Enriched

"Unjust enrichment occurs when one retains money or benefits which in justice and equity belong to another."  *Bailie Communications v. Trend Business Systems*, 810 P.2d 12, 16 (Wash. App. 1991).  Courts have considered and rejected the proposition that a corporate entity may be held responsible for the unjust enrichment conferred on its affiliates.  *See Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504, 517 (E.D. Pa. 2012) (rejecting unjust enrichment claim against corporate entity that did not receive any benefit though it allegedly participated in the unlawful scheme along with its affiliates).

The Restatement (Third) of Restitution and Unjust Enrichment – which has been adopted by the Washington courts, *see Cox v. O'Brien*, 150 Wash. App. 24, 36-37 (2009) – makes clear that a plaintiff entitled to restitution is limited to "a judgment for money in the amount of the *defendant*'s unjust enrichment."  *Id.* § 49(1) (2011) (emphasis added); *see also id.* § 42 cmt. b ("There is no unjust enrichment (and no claim by the rule of § 42) unless the *defendant* has obtained a benefit in violation of the claimant's right to exclude others from the interests in question.") (emphasis added).

The Restatement provision concerning interference with intellectual property and similar rights – the very provision implicated in this case – provides two illustrations confirming that a plaintiff may not obtain from the defendant benefits conferred on a co-defendant or nonparty.  In one example, the Restatement explains that, if a Publisher copies a chapter of an Author's work and the infringing work is printed by a Printer, both the Publisher and Printer may be jointly liable for the Author's *actual* damages.  *Id.* § 42 illus. 8 (2011).  But the Printer is *not* liable for any unjust enrichment conferred upon the Publisher.  *Id.*  Likewise, if a Competitor hires an Engineer from Seller and induces him to divulge the Seller's trade secrets, the Engineer may be

DEFENDANT HUAWEI DEVICE USA'S
TRIAL BRIEF                                      - 6 -
NO. C14-1351 RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 FOURTH AVENUE, SUITE 4000
SEATTLE, WA 98154
PHONE (206) 467-6477
FAX (206) 467-6292

jointly liable for actual damages, but not for the Competitor's unjust enrichment. *Id.* illus. 11.

Over the past week, T-Mobile's draft jury instructions have changed to assert for the first time that Huawei Device USA is liable for alleged unjust enrichment to its affiliates. First, in revised instructions circulated last week, T-Mobile suggested that, under the doctrine of joint and several liability, it may recover from Huawei Device USA benefits obtained by by other entities with which it was "acting in concert." This is wrong as a matter of law. The purpose of joint and several liability is to permit a plaintiff to obtain a full "recovery for *his injuries*" where multiple defendants are at fault. *Rudelson v. United States*, 602 F.2d 1326, 1332 (9th Cir. 1979) (emphasis added). Thus, the pattern instruction on which T-Mobile relies imposes joint liability where two parties "were acting in concert" and their joint "act or omission was a proximate cause of the plaintiff's *injuries*." WPI 50.21[1] (emphasis added) (cited in T-Mobile Proposed Instructions at XX). That rationale has no application to unjust enrichment, which is not designed to compensate the plaintiff but to deprive the defendant of benefits *it* received at the plaintiff's expense. *See Norcon Builders, LLC v. GMP Homes VG, LLC*, 161 Wash. App. 474, 490 (2011).

While parties sued for actual damages "may be held jointly liable in tort," "only those who have benefited" are liable for unjust enrichment, "and then only to the extent thereof." *Myzel v. Fields*, 386 F.2d 718, 744 (8th Cir. 1967). In short, unjust enrichment is not subject to joint and several liability because unjust enrichment must be "based upon a calculation of each defendant's *own* profits from misappropriation." *Mike's Train House, Inc. v. Lionel L.L.C.*, No. 00 Civ. 71729(JCO), 2004 WL 2472644, at *3 (E.D. Mich. Nov. 1, 2004); *see also Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 722 n.6 (S.D.N.Y. 2011) (rejecting

---

[1] T-Mobile's proposed instruction is based on a statute that does not apply in this case. The relevant joint and several liability statute is RCW § 4.22.030, which imposes joint and several liability "if more than one person is liable to a claimant on an indivisible claim for the same injury…." But any unjust enrichment of Huawei Device USA *is* divisible from any unjust enrichment to other Huawei entities. Indeed, T-Mobile's expert has identified the purported unjust enrichment to Huawei Device USA, as distinguished from non-USA entities. *See* ECF No. 273-8 at 131.

DEFENDANT HUAWEI DEVICE USA'S
TRIAL BRIEF
NO. C14-1351 RAJ

- 7 -

argument for joint and several liability on a claim for unjust enrichment on the ground that "[j]oint and several liability is a tort principle"); *Bankers Trust Co. v. Dukes*, No. 97 Civ. 1417(CCN), 1997 WL 727616, at *6 (E.D. Pa. Nov. 21, 1997) (finding that defendant is "not jointly and severally liable for the unjust enrichment of all the members of the conspiracy"); *Phoenix Airline Servs., Inc. v. Metro Airlines, Inc.*, 390 S.E.2d 219, 226 (Ga. App. 1989), *rev'd on other grounds*, 397 S.E.2d 699 (1990) (noting that application of joint and several liability "would appear to be of doubtful applicability where the sole purpose of the award is to prevent unjust enrichment rather than to compensate a claimant for actual loss").[2]

Then, this evening, the day jury instructions were due, T-Mobile revised its instructions to largely abandon its "acting in concert" theory in favor of the notion that Huawei Device USA is automatically liable for unjust enrichment accruing to its "related corporate entities." This also is not the law.

Under Washington law, a parent company may be liable for unjust enrichment based on the wrongful acts of its subsidiary if, and only if, "the subsidiary is liquidated and its affairs are settled." *In re Washington Mut., Inc.*, 418 B.R. 107, 113 (Bankr. D. Del. 2009) (applying Washington law): *see also United States v. Dean Van Lines, Inc.*, 531 F.2d 289, 293 (5th Cir.

---

[2] In the Monday night version of the Pretrial Order, T-Mobile cited *Salton, Inc. v. Philips Domestic Appliances & Pers. Care B.V.*, 391 F.3d 871, 877 (7th Cir. 2005), for the principle that "joint and several liability … governs … the common law tort of misappropriation of trade secrets." *Salton*, however, concerned a different question than the one presented here – to wit, whether a potential co-defendant was an "indispensible party" (sic) in a case for trade secret misappropriation. *Salton's dicta* is not even relevant to the question here – whether one defendant can be liable for another's unjust enrichment, not just the plaintiff's damages.

T-Mobile has also suggested that *Allied Erecting & Dismantling Co. v. Genesis Equip. & Manufac., Inc.*, 511 Fed. Appx. 398 (6th Cir. 2013), supports joint and several liability for unjust enrichment damages. In that case, however, the defendants were before the Court and never challenged application of the unjust enrichment award to both. *See id.*; *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, No. 4:06CV114, 2010 WL 4818367, at *14 (N.D. Ohio Nov. 19, 2010). The trial court overturned the unjust enrichment award on other grounds, and in reversing that decision, the Sixth Circuit did not address whether a defendant may be jointly and severally liable for the benefit obtained by another entity. *See Fields v. Palmdale Sch. Dist. (PSD)*, 447 F.3d 1187, 1190 (9th Cir. 2006).

DEFENDANT HUAWEI DEVICE USA'S
TRIAL BRIEF                                          - 8 -
NO. C14-1351 RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 FOURTH AVENUE, SUITE 4000
SEATTLE, WA 98154
PHONE (206) 467-6477
FAX (206) 467-6292

1976).  In that limited circumstance, it is appropriate to hold the parent company liable because the unjust enrichment conferred on its subsidiary has already flowed to the parent company's shareholders.  *See id.*  But that limited principle has no application here, where T-Mobile seeks to hold a *subsidiary* liable for the unjust enrichment conferred on *existing* upstream entities.  "[S]uch a 'theory would eviscerate [the] long established respect for the corporate form' because it would mean that 'whenever a corporation is liable for some unlawful activity, any [affiliate] of that corporation ... could be liable on a claim of unjust enrichment.'"  *N. Cent. EMS Corp. v. Bound Tree Med., LLC*, No. CV 15-2793 (JRT/LIB), 2016 WL 544472, at *10 (D. Minn. Feb. 10, 2016); *In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*, 921 F. Supp. 2d 56, 89–90 (S.D.N.Y. 2013) (same); *cf. State, Dep't of Revenue v. Nord Nw. Corp.*, 164 Wash. App. 215, 230 (2011) ("It is well settled that a parent and subsidiary are for legal purposes generally treated as separate entities.").  In short, if T-Mobile seeks to recover unjust enrichment conferred on Huawei Technologies, Huawei Device China, or any other Huawei entity, T-Mobile must sue that distinct corporate entity (in the proper forum).  But it is too late for T-Mobile to do so here.

Indeed, in its proposed jury instructions, T-Mobile does not cite a single case in which an entity was held liable for unjust enrichment accruing to another under principles of joint and several liability.  T-Mobile primarily relies *Mangren R&D Corp. v. Nat'l Chem. Co.*, 87 F.3d 937, 945-46 (7th Cir. 1995).  But that case involved an award of actual damages in the form of the *plaintiff's* lost sales, not unjust enrichment to the defendant.  *See id.* ("[Plaintiff] Mangren demonstrated to the jury's satisfaction that absent defendants' misappropriation, it would have made the sales ultimately made by Bash. . . . A reasonable jury could therefore conclude that but for defendants' misappropriation, Mangren would have made the disputed sales.").[3]  By contrast,

---

[3] T-Mobile also argues that, because a plaintiff "may recover for the unjust enrichment caused by misappropriation," RCW 19.108.030, it may recover from Huawei Device USA "regardless of whether the unjust enrichment accrued to a third party."  This misreads the statute.  The reference to unjust enrichment "caused by" misappropriation *limits* its scope by imposing a causation requirement – just as the statute limits a plaintiff to "the actual loss caused by misappropriation."  Although the statute does not specify "plaintiff's" actual loss or "defendant's" unjust enrichment, plaintiffs cannot recover unjust enrichment flowing to third

DEFENDANT HUAWEI DEVICE USA'S
TRIAL BRIEF
NO. C14-1351 RAJ

- 9 -

relevant authority holds that defendants are not liable for unjust enrichment accruing to third parties. *See, e.g., Montanez*, 876 F. Supp. 2d at 517; *Mike's Train House*, 2004 WL 2472644, at *3.

### 2.    It Is Too Late for T-Mobile to Seek to Hold Huawei Device USA Liable for Benefits to Huawei Device China

Regardless of the merits, T-Mobile waived its novel theories of joint and several liability and benefit to "related corporate entities" by failing to allege them in the Complaint.  It is well-settled that a party may not proceed to trial on "an unpleaded theory of recovery" without "express or implied consent of the parties." *Pinkley, Inc. v. City of Frederick, MD.*, 191 F.3d 394, 401 (4th Cir. 1999).  As the court explained in *Kirby v. City of Tacoma*, 124 Wash. App. 454, 472 (2004), "[a] party who does not plead a cause of action or theory of recovery cannot finesse the issue by later inserting the theory into trial briefs and contending it was in the case all along."  Yet, that is precisely what T-Mobile seeks to do here.

T-Mobile's Complaint never uses the words "acting in concert" or "joint and several liability."  Not only did T-Mobile fail to bring any claim or count asserting that Huawei Device USA should be held vicariously liable for the conduct of its affiliates.  Instead, T-Mobile limited its request for unjust enrichment to "Huawei's unjust enrichment," with "Huawei" defined as "Huawei Device USA, Inc. ("Huawei USA") and Huawei Technologies Co. LTD."  Dkt. 1 at 1, 21 (Compl. at Pmbl. & Prayer for Relief).  Huawei Technologies is now out of the case, leaving only Huawei Device USA.[4]

---

parties any more than they can recover actual losses that have been suffered by third parties.  *See* WPI 351.01 (requiring that "defendant[] received money or benefits that in justice and fairness belong to . . . plaintiff[]").  WPI 351.01; *Bailie Communications*, 810 P.2d at 16 ("Unjust enrichment occurs when ***one retains*** money or benefits which in justice and equity belong to another." (emphasis added)).

[4] In its Complaint, T-Mobile vaguely alleged, on information and belief, that "***each of the Defendants*** was the agent, servant and employee, co-venturer, alter ego, and co-conspirator ***of the other***, and was at all times herein mentioned, acting within the course, scope, and purpose of such agency, employment, joint venture, and conspiracy, and with the consent, knowledge, ratification, and authorization of such agency, employment, joint venture, and conspiracy."  ECF No. 1 ¶ 26 (emphasis added).  But Huawei Device China was never a defendant in this case, so

DEFENDANT HUAWEI DEVICE USA'S
TRIAL BRIEF                                         - 10 -
NO. C14-1351 RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 FOURTH AVENUE, SUITE 4000
SEATTLE, WA 98154
PHONE (206) 467-6477
FAX (206) 467-6292

It is now the eve of trial, and the statute of limitations, as well as the deadline for amending the pleadings, has long since run.  *See* ECF No. 41.  Huawei Device USA was entitled to be notified at the outset of this case if T-Mobile intended to hold Device USA jointly and severally liable for unjust enrichment accruing to its affiliates.  *See* 9 Wash. Prac., Civil Procedure Forms § 8.34 cmt. (3d ed. 2016) (observing that plaintiffs "have the responsibility of alleging a joint and several liability theory against the defendants as a separate claim in the complaint").  Instead, T-Mobile first broached this concept the afternoon the Pretrial Order was due, and amended its draft proposed jury instructions to include it only last Thursday evening.  Because "joint and several liability … must be pleaded to be actionable at trial," *United States v. Cochran*, 79 F. Supp. 3d 578, 585 (E.D.N.C. 2015), and because T-Mobile has never alleged joint and several liability as between Huawei Device USA and Huawei Device China, it cannot do so now.

---

this allegation cannot be read to assert any agency, alter ego relationship, or conspiracy with Huawei Device China or any other Huawei entity.  Nor would T-Mobile's summary allegation be sufficient to put Huawei Device USA on notice of a full blown alter ego or conspiracy claim for relief.

In any event, Huawei Device USA could not have "conspired" with Huawei Device China as a matter of law.  Huawei Device USA is a wholly-owned subsidiary of Huawei Device China.  The Washington Supreme Court has precluded "the possibility of establishing a conspiracy between a parent corporation … and its wholly-controlled subsidiary…." *Corbit v. J. I. Case Co.*, 70 Wash. 2d 522, 528 n.3 (1967).

And T-Mobile's suggestion that Huawei Device USA (the subsidiary) may be held liable as the principal for its grand-parent and great-grandparent entities, as agents, is fanciful.  Under common law principles, control is the *sine qua non* of agency.  *See* Restatement (Third) Of Agency § 1.01 cmt. c (2006) ("A relationship is not one of agency within the common-law definition unless ... the principal has the right ... to control the agent's acts.").  There is no evidence that Huawei Device USA ever controlled the acts of Huawei Device China or Huawei Technologies.

That leaves alter ego liability, which applies only "when 'the corporate entity has been disregarded by the principals themselves so that there is such a unity of ownership and interest that the separateness of the corporation has ceased to exist.'" *Grayson v. Nordic Constr. Co.*, 92 Wash.2d 548, 553 (1979) (citation omitted).  Again, there is no evidence that Huawei Device USA and any other Huawei entity "were attempting to perpetrate a fraud on [T-Mobile] by maintaining separate identities." *Minton v. Ralston Purina Co.*, 146 Wash. 2d 385, 399 (2002).  Thus, all of T-Mobile's alleged bases for vicarious liability would fail as a matter of law or fact, even if its Complaint were properly pled.

DEFENDANT HUAWEI DEVICE USA'S
TRIAL BRIEF
NO. C14-1351 RAJ

- 11 -

GORDON TILDEN THOMAS & CORDELL LLP
1001 FOURTH AVENUE, SUITE 4000
SEATTLE, WA 98154
PHONE (206) 467-6477
FAX (206) 467-6292

**B.     T-Mobile Must Prove Sales Attributable to the Trade Secret Theft Before the Burden Shifts Back to Huawei Device USA**

The prejudicial impact of T-Mobile's novel and far-reaching theory of damages is compounded by its position that, to recover unjust enrichment, it need only identify Huawei's sales, whereupon the burden shifts to Huawei Device USA to prove that the sales are not attributable to misappropriation.  T-Mobile's position effectively shifts the burden of causation in a trade secret case to the defendant and cannot be squared with Washington law.

Washington's jury instructions explain the appropriate burden-shifting scheme as follows:  "once the plaintiff proves sales *attributable to the use of a trade secret*, the burden shifts to the defendant to establish 'any portion of the sales not attributable to the trade secret and any expenses to be deducted in determining net profits.'"  WPI 351.01 cmt. (quoting *Petters v. Williamson & Assocs., Inc.*, 151 Wn.App. 154, 165 (2009)) (emphasis added); *see also* 4-15 Milgrim on Trade Secrets § 15.02[3][i] (2016) (plaintiff's burden is "to establish that the defendant achieved revenues *from use of the trade secret*" (emphasis added)).  This formulation makes ample sense.  The plaintiff bears the burden of proving a causal link between the alleged misappropriation and the defendant's enrichment, and the defendant then bears the burden of demonstrating that a *portion* of the sale is attributable to some other factor, such as other features of the product, sales and marketing techniques, and reputation and goodwill.

As the Washington Court of Appeals held in *Petters*, the burden shifts to the defendant only after the plaintiff has identified that portion of defendant's total revenue that was "wrongfully obtained." 210 P.3d at 1054 ("burden is on the misappropriating party to prove that any portion of the *wrongfully obtained* revenue is not attributable to the misappropriation"). Specifically, "the defendant [has] the burden of demonstrating which portion, if any, of the revenue obtained through the transfer of a trade secret was not, in fact, attributable to the transfer." *Id*.  In other words, the plaintiff must identify not just the defendant's total revenue, but the portion of revenue obtained as a result of the misappropriation, at which point the defendant must "explain why any *particular portion* of the money that it received as a result of

DEFENDANT HUAWEI DEVICE USA'S
TRIAL BRIEF
NO. C14-1351 RAJ

- 12 -

GORDON TILDEN THOMAS & CORDELL LLP
1001 FOURTH AVENUE, SUITE 4000
SEATTLE, WA 98154
PHONE (206) 467-6477
FAX (206) 467-6292

the misappropriating transaction should not be considered." *Id.* (emphasis added).  Thus, in *Petters*, the plaintiff "met his burden of demonstrating the total value" not of defendant's sales but of a particular contract secured with the plaintiff's trade secret.  *Id.*

In arguing otherwise, T-Mobile relies upon comment f to Restatement (Third) of Unfair Competition § 45, which provides that "The traditional form of restitutionary relief in an action for the appropriation of a trade secret is an accounting of the defendant's profits on sales attributable to the use of the trade secret. . . . The plaintiff has the burden of establishing the defendant's sales; defendant has the burden of establishing any portion of the sales not attributable to the trade secret and any expenses to be deducted in determining net profits." According to T-Mobile, this means the plaintiff need only establish sales period, not sales attributable to the use of a trade secret.

While the Restatement is arguably ambiguous on the point, the cases cited in the Restatement itself and case law interpreting it make clear that a plaintiff cannot carry its burden merely by establishing sales untethered to the use of a trade secret.  The Restatement, for example, directs readers to *USM Corp. v. Marson Fastener Corp.*, 392 Mass. 334 (1984), as a case properly applying the burden shifting scheme.  Restatement (Third) of Unfair Competition § 45 Reporter's Notes.  In that case, however, the court held that "[o]nce a plaintiff demonstrates that a defendant made a profit from the sale of products *produced by improper use of a trade secret*, the burden shifts to the defendant to demonstrate those costs properly to be offset against its profit and the portion of its profit attributable to factors other than the trade secret."  392 Mass. at 338.  The court did not hold, as T-Mobile would have it, that proof of sales is itself sufficient.[5]

---

[5] In its summary judgment papers, T-Mobile relied on *Ada Motors v. Butler*, 183 Wn. App. 1002, 2014 WL 4067876, at *2-3 (Aug. 18, 2014), to suggest that the plaintiff's only obligation is to show total sales, not sales attributable to the misappropriation.  But *Ada Motors* contrasted "sales" and "damages from sales," not total sales versus sales attributable to the misappropriation.  The opinion acknowledges that the plaintiff has the "burden to prove that the misappropriation of a trade secret proximately caused the sales at issue."  *Id.* at *3.

DEFENDANT HUAWEI DEVICE USA'S
TRIAL BRIEF
NO. C14-1351 RAJ

- 13 -

1    Cases interpreting the Restatement have adopted this view.  Under this precedent, the

2    plaintiff must "demonstrate[] that a defendant made a profit from the sale of products produced

3    by improper use of a trade secret," and only then does the burden shift to the defendant.  *Cartel*

4    *Asset Mgmt. v. Ocwen Fin. Corp.*, 249 F. App'x 63, 79 (10th Cir. 2007) (quoting *Data Gen.*

5    *Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1174 n.48 (1st Cir. 1994)); *see also Curtis*

6    *Mfg. Co. v. Plasti-Clip Corp.*, 933 F. Supp. 94, 104 (D.N.H. 1995) ("Once the plaintiffs

7    demonstrate that the defendants have made profits from sales of products incorporating the

8    misappropriated trade secrets, the burden shifts to the defendants to demonstrate the portion of

9    their profits which is not attributable to the trade secrets.").[6]

10   **C.      A Reasonable Royalty Is Not Available as a Form of Damages**

11   Because T-Mobile's unjust enrichment award must be limited to the benefit unjustly

12   conferred on Huawei Device USA, if any, T-Mobile continues to press its theory that the jury

13   may award a reasonable royalty as an alternative form of disgorgement.  Thus, T-Mobile seeks a

14   jury instruction providing that, "[a]s an alternative means of calculating unjust enrichment, you

15   may award a reasonable royalty."

16   The Washington legislature, however, has expressly limited a jury's damages award to

17   "actual loss caused by the misappropriation" and "unjust enrichment."  Wash. Rev. Stat.

18   § 19.108.030(1).  In 1985, the model Uniform Trade Secrets Act was amended to specifically

19   provide for a reasonable royalty measure of past damages.  *See* Uniform Trade Secrets Act § 3

20   (1985) ("In lieu of damages measured by any other methods, the damages caused by

21   misappropriation may be measured by imposition of liability for a reasonable royalty for a

22   misappropriator's unauthorized disclosure or use of a trade secret.").  But the Washington

23   legislature never amended Washington's trade secret statute to include a reasonable royalty as an

24

25           [6] Not even T-Mobile's own unjust enrichment expert premised his report on the notion
     that T-Mobile need only point to Huawei's sales.  While his analysis is defective and unreliable,
26   Dr. Sullivan purports to identify a particular volume of increased sales that he attributes to
     improved device quality. *See* Dkt. 285, Ex. 48 § 6.3.
27

28   DEFENDANT HUAWEI DEVICE USA'S                                    GORDON TILDEN THOMAS & CORDELL LLP
     TRIAL BRIEF                        - 14 -                         1001 FOURTH AVENUE, SUITE 4000
     NO. C14-1351 RAJ                                                        SEATTLE, WA 98154
                                                                          PHONE (206) 467-6477
                                                                           FAX (206) 467-6292

appropriate measure of damages.  T-Mobile cannot by fiat rewrite the Washington statute's

unambiguous language.  *See Xi v. U.S. I.N.S.*, 298 F.3d 832, 839 (9th Cir. 2002) ("a decision to

[rearrange] or rewrite the statute falls within the legislative, not the judicial, prerogative").

        Rewriting Washington trade secrets law in the manner T-Mobile suggests would be

particularly inappropriate because the legislature has considered the role of a reasonable royalty

in a trade secret case and determined that a royalty may be awarded, but only by the Court and

only in a limited circumstance.  As the Court recognized in its summary judgment order, the

Washington Uniform Trade Secrets act permits the Court to issue an injunction conditioning

future use upon payment of a reasonable royalty "for no longer than the period of time the use

could have been prohibited."  Dkt. 334 at 22:15-19 (quoting Wash. Rev. Stat. § 19.108.020(2)).

T-Mobile's proposed "lump sum" royalty – based on hypothetical rather than actual use – is at

odds with this conditional royalty approach and would sidestep the fact that Huawei does not

continue to use the technology in suit.  The Washington legislature's decision to permit a

reasonable royalty (by the court) in one circumstance, but not as an alternative measure of

damages, must be respected.  *Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307, 1312–13 (9th

Cir. 1992); *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 86 (1994).[7]

        The imprudence of rewriting Washington law is particularly apparent in the context of a

reasonable royalty, as different state legislatures have reached different conclusions about the

availability of royalty damages in the trade secret context.  T-Mobile asks the Court to submit the

question of reasonable royalty to the jury, without limitation.  But there is no basis for assuming

that the Washington legislature would endorse that approach even if it did adopt a reasonable

royalty as a basis for trade secret damages.  In California, for example, a royalty is available to

the plaintiff but must be ordered by the *court* and only "[i]f neither damages nor unjust

---

[7] The non-binding decision in *Veritas Operating Corp. v. Microsoft Corp.*, No. C06-0703, 2008 WL 7404617, at *2 (W.D. Wash. Feb. 26, 2008), does not address these principles and is not a reliable predictor of how the Washington Supreme Court would decide the issue. *See Matsuura v. Alston & Bird*, 166 F.3d 1006, 1009 n.3 (9th Cir. 1999).

DEFENDANT HUAWEI DEVICE USA'S
TRIAL BRIEF
NO. C14-1351 RAJ

- 15 -

GORDON TILDEN THOMAS & CORDELL LLP
1001 FOURTH AVENUE, SUITE 4000
SEATTLE, WA 98154
PHONE (206) 467-6477
FAX (206) 467-6292

enrichment … are provable." Cal. Civ. Code § 3426.3(b).  If Washington is to permit a trade secret plaintiff to recover a reasonable royalty for past harm, it will be the legislature's job to enact the rule and decide on its proper contours.  It is not T-Mobile's prerogative to write the law for itself.

Similarly misguided is T-Mobile's contention that the jury should be permitted to award restitution or a reasonable royalty as an alternative measure of *contract* damages.  According to T-Mobile's latest proposed jury instructions, unjust enrichment and a reasonable royalty are permissible alternative measures of restitutionary contract damages.  But, prior to last week, T-Mobile had never asserted that unjust enrichment or reasonable royalty was available on a claim for breach of contract.  T-Mobile's complaint sought "unjust enrichment" and "reasonable royalty" on its misappropriation claim but only "expectation damages, consequential damages, and incidental damages" on its contract claim.  Dkt. 1 at 21.  And its initial set of jury instructions sought only "actual damages" on its contract claim.  T-Mobile's request for unjust enrichment and reasonable royalty on its contract claim is therefore waived.

It is also not the law.  Under Washington law, restitution "is an alternative remedy to damages for breach of contract."  *Dravo Corp. v. L.W. Moses Co.*, 6 Wash. App. 74, 90 (1971).  But restitution is available only when "the injured party [has] remaining duties to perform under the contract," which is not the case here.  *Bailie Commc'ns v. Trend Bus. Sys.*, 53 Wash. App. 77, 81-82 (1988).

Further, the "purpose of restitution is to remedy unjust enrichment."  *Ehsani v. McCullough Family P'ship*, 160 Wash. 2d 586, 594 (2007).  But it is well-settled that "a plaintiff who is a party to a 'valid express contract ...' may not bring a claim for unjust enrichment for issues arising under the contract's subject matter."  *Minnick v. Clearwire US*, 683 F. Supp. 2d 1179, 1186 (W.D. Wash. 2010); *Strategic All. Partners v. Dress Barn*, 386 F. Supp. 2d 312, 318 (S.D.N.Y. 2005).  That is why Washington's jury instructions limit restitution damages to cases involving *quasi-contracts* (*i.e.*, contracts implied at law), not to breach of express contract cases,

DEFENDANT HUAWEI DEVICE USA'S
TRIAL BRIEF
NO. C14-1351 RAJ

- 16 -

GORDON TILDEN THOMAS & CORDELL LLP
1001 FOURTH AVENUE, SUITE 4000
SEATTLE, WA 98154
PHONE (206) 467-6477
FAX (206) 467-6292

as here.  *See* WPI 303.08.  Accordingly, T-Mobile is limited to an award of actual damages on its breach of contract claim.

## II.     T-Mobile Must Prove that the Trade Secrets Were Used to Improve Devices Sold by Huawei Device USA

As described above, T-Mobile "has the burden of proving . . . that, as a result of the misappropriation, [Huawei Device USA] received money or benefits that in justice and fairness belong to [T-Mobile]."  6A Wash. Practice, Wash. Pattern Jury Instructions Civil, WPI 351.01. The only possible benefit from the mobile device testing technology at issue in this case arises from improvements to devices sold by Huawei Device USA.  Thus, to prove its case, T-Mobile must identify concrete improvements made to devices sold by Huawei Device USA as a result of the alleged misappropriation.

In his reports and at his deposition, T-Mobile's expert Michael Davies identified no such benefit.  Indeed, there is not a single mention of Huawei Device USA in either of Mr. Davies' expert reports.  *See* Dkt. 330-3, 330-4.  Mr. Davies offers no opinions regarding acquisition or disclosure of the trade secrets.  Dkt. 330-5 (Davies Tr.) at 69:6-24 (no "opinion specifically on how they obtained that information," or whether they "stole" or "obtained it through theft"); 47:14-48:1 ("I have been informed there was disclosure" and "that it is alleged that Huawei disclosed information" but "don't recall the specifics" and am not offering those opinions).  His opinions in this area are limited to:  (1) whether Tappy contains a T-Mobile trade secret or confidential information; (2) whether xDeviceRobot incorporates any aspects of Tappy that are "T-Mobile's by patents, trade secrets, or other confidential information"; and (3) whether xDeviceRobot was used to "test" any devices.  *See* Dkt. 330-3 ¶ 30, § XIII; Dkt. 330-5 (Davies Tr.) at 45:3-6, 124:17-22.

But xDeviceRobot was neither developed nor used by Huawei Device USA, and Mr. Davies does not connect the xDeviceRobot testing to any improvements in devices sold by Huawei Device USA (or any other Huawei entity) from which Huawei Device USA might benefit.  T-Mobile's failure to prove that Huawei Device USA benefitted from the alleged

DEFENDANT HUAWEI DEVICE USA'S
TRIAL BRIEF
NO. C14-1351 RAJ

- 17 -

misappropriation is a fatal gap in its case.[8]

To the extent Mr. Davies is allowed to testify,[9] he must be strictly limited to the opinions disclosed in his reports and should not be permitted to fill this gap *ex post*.  See Fed. R. Civ. P. 26(a)(2)(B)(i); Fed. R. Civ. P. 37(c).  "The purpose of the expert disclosure rule is to provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps

---

[8] T-Mobile USA also lacks any evidence that xDevice Robot was "substantially derived" from any T-Mobile trade secret.  *Mangren Research & Dev. Corp. v. National Chem. Co.*, 87 F.3d 937, 944 (7th Cir. 1996).  Robot automation test technology was readily available on the market and was mastered by Huawei Device China before it developed xDeviceRobot in 2012. Dkt. 330-6 (Wolfe Report) ¶¶ 123-128.  Meanwhile, Tappy and xDeviceRobot are fundamentally different.  Tappy is a SCARA-model robot, and xDeviceRobot is a Cartesion model.  Tappy runs on off-the-shelf third-party software from National Instruments, while xDeviceRobot uses Huawei Device China's proprietary xDevice software – software that was developed and in use by Huawei Device China before the events that gave rise to this case.

Mr. Davies acknowledges these difference but infers causation from the notion that xDeviceRobot is "functionally equivalent" to Tappy. Dkt. 330-5 (Davies Tr.) at 66:1-68:19, 159:10-25, 223:22-226:8.  But misappropriation cannot be inferred simply because two devices exhibit equivalent functions.  There must be some additional evidence of actual copying of a secret; otherwise, trade secret law would preclude independent development of systems with equivalent functionality – something it does not do.  *See Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 476 (1974) ("[T]rade secret law . . . does not offer protection against discovery by fair and honest means."); *Warehouse Sols., Inc. v. Integrated Logistics, LLC*, No. 1:11-CV-02061-RLV, 2014 WL 12647878, at *6 (N.D. Ga. July 7, 2014) ("A user . . .can readily ascertain the appearance and functionality of the system and, thus, the visible output cannot be a trade secret.").

As a result, T-Mobile must prove that "defendants could not have [created their device] without use of [plaintiff's] trade secret."  *Mangren*, 87 F.3d at 944.  This Mr. Davies's functional equivalence opinion does not do.  To be sure, it is not the law that "just because Tappy and xDeviceRobot are not precisely identical robots, it cannot be shown that misappropriation of trade secrets occurred." Dkt. 334 at 21.  A defendant can use and incorporate trade secrets in a device without duplicating the plaintiff's device exactly.  But there must be some affirmative evidence of copying beyond mere functional equivalence; otherwise a jury could infer misappropriation from the fact that a Ford is functionally equivalent to a Chevy.  *See Contour Design, Inc. v. Chance Mold Steel Co.*, 693 F.3d 102, 110 (1st Cir. 2012) (finding no misappropriation because "there is no evidence to establish any connection between [an allegedly similar] feature and the allegedly misappropriated information").

[9] Defendants previously moved to exclude all or part of Mr. Davies' opinions. See Dkt. 329. Now that Huawei Device USA is the sole defendant, Mr. Davies' opinions are even less relevant and more likely to confuse the jury. Huawei Device USA submits this is further reason to grant its motion in limine. *Id.*

DEFENDANT HUAWEI DEVICE USA'S
TRIAL BRIEF                              - 18 -
NO. C14-1351 RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 FOURTH AVENUE, SUITE 4000
SEATTLE, WA 98154
PHONE (206) 467-6477
FAX (206) 467-6292

1    arrange for expert testimony from other witnesses." *Rembrandt Vision Techs., L.P. v. Johnson &*

2    *Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (Fed. Cir. 2013) (quotations omitted).  Having

3    failed to disclose any opinions of improper use by Huawei Device USA, Mr. Davies cannot now

4    be allowed to offer any such opinions at trial.  *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,

5    259 F.3d 1101, 1107 (9th Cir. 2001) (affirming exclusion); *Asetek Danmark A/S v. CMI USA,*

6    *Inc.*, No. 13-cv-00457-JST, Dkt. 201 Order (N.D. Cal. Dec. 9, 2014); *Med. Instrumentation &*

7    *Diagnostics Corp. v. Elekta AB*, 2002 WL 34714563, at *2 n.1, *7 (S.D. Cal. Jan. 14, 2002).

8    **III.    Jury Questionnaire and Voir Dire**

9         The Parties have submitted a special juror questionnaire and preliminary voir dire

10   questions for the jury selection process for this trial.  Copies of the proposed questionnaire and

11   voir dire questions are being filing concurrently.  Both sets of jury selection materials would

12   provide the Parties with basic information about the members of the panel while identifying

13   potential prejudices that may exist against Chinese companies.  We would be pleased to discuss

14   these materials at the pretrial conference, or at the Court's convenience.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT HUAWEI DEVICE USA'S
TRIAL BRIEF                                            - 19 -
NO. C14-1351 RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 FOURTH AVENUE, SUITE 4000
SEATTLE, WA 98154
PHONE (206) 467-6477
FAX (206) 467-6292

1   DATED this 7th day of February, 2017.

2                                    **GORDON TILDEN THOMAS & CORDELL** LLP
                                     Attorneys for Defendants Huawei Device USA, Inc. and
3                                    Huawei Technologies Co., Ltd.

4                                    By   *s/Franklin D. Cordell*
5                                         Franklin D. Cordell, WSBA #26392
                                          Jeffrey M. Thomas, WSBA #21175
6                                         1001 Fourth Avenue, Suite 4000
                                          Seattle, Washington 98154
7                                         Telephone:  (206) 467-6477
                                          Facsimile:   (206) 467-6292
8                                         Email:  fcordell@gordontilden.com
9                                         Email:  jthomas@gordontilden.com

10                                   **STEPTOE & JOHNSON LLP**
                                     Attorneys for Defendants Huawei Device USA, Inc. and
11                                   Huawei Technologies Co., Ltd.

12                                   By   *s/Timothy C. Bickham*
13                                        Timothy C. Bickham*
                                          James F. Hibey*
14                                        Michael J. Allan*
                                          Jeffrey M. Theodore*
15                                        Jessica I. Rothschild*
16                                        1330 Connecticut Avenue NW
                                          Washington, DC 20036
17                                        Telephone: (202) 429-3000
                                          Facsimile:  (202) 429-3902
18                                        Email:  jhibey@steptoe.com
19                                        Email:  tbickham@steptoe.com
                                          Email:  jrothschild@steptoe.com
20
21                                        William F. Abrams*
                                          Meg Kammerud*
22                                        Michael Flynn-O'Brien*
                                          1891 Page Mill Road, Suite 200
23                                        Palo Alto, CA 94394
                                          Telephone: (650) 687-9500
24                                        Facsimile: (650) 687-9499
                                          Email: wabrams@steptoe.com
25                                        Email: mkammerud@steptoe.com
                                          Email: mflynnobrien@steptoe.com
26                                        * Admitted *Pro Hac Vice*
27
28   DEFENDANT HUAWEI DEVICE USA'S                          GORDON TILDEN THOMAS & CORDELL LLP
     TRIAL BRIEF                           - 20 -                1001 FOURTH AVENUE, SUITE 4000
     NO. C14-1351 RAJ                                                 SEATTLE, WA 98154
                                                                    PHONE (206) 467-6477
                                                                     FAX (206) 467-6292

**CERTIFICATE OF SERVICE**

I hereby certify that on February 7, 2017, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to the

following:

Michael E. Kipling
Marjorie A. Walter
KIPLING LAW GROUP PLLC
3601 Fremont Avenue N., Suite 414
Seattle, WA 98103
kipling@kiplinglawgroup.com
walter@kiplinglawgroup.com


John Hueston
Alison Plessman
Eric Hayden
HUESTON HENNIGAN LLP
523 West 6th Street
Los Angeles, CA 90014
(213) 788-4340
jhueston@hueston.com
aplessman@hueston.com
ehayden@hueston.com

                                        s/ *Jessica I. Rothschild*
                                        Jessica I. Rothschild*
                                        (*admitted *pro hac vice*)

DEFENDANT HUAWEI DEVICE USA'S
TRIAL BRIEF                              - 21 -
NO. C14-1351 RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 FOURTH AVENUE, SUITE 4000
SEATTLE, WA 98154
PHONE (206) 467-6477
FAX (206) 467-6292