HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| T-MOBILE USA, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>HUAWEI USA, INC., a Texas corporation,<br><br>    Defendant. | Case No. 14-cv-01351-RAJ<br><br>**T-MOBILE USA, INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS TRIAL BRIEF**<br><br>**TRIAL DATE: APR. 25, 2017**<br><br>**[REDACTED VERSION FILED PUBLICLY]** |

T-MOBILE USA, INC.'S SUPPLEMENTAL BRIEF IN
SUPPORT OF ITS TRIAL BRIEF
(14-cv-01351-RAJ)

In its Trial Brief, Huawei USA seeks to absolve itself of responsibility for the damages it caused by stealing, using, and disclosing T-Mobile's trade secrets. To justify its position, Huawei USA argues that the Court's jurisdictional ruling dismissing Huawei Technologies fundamentally changed this case by dramatically limiting the scope of damages for which Huawei USA is liable. Huawei USA's arguments should be rejected for several reasons.

*First*, contrary to the assertions in Huawei USA's Trial Brief, it is Huawei USA that seeks to "radically re-orient" this case on the eve of trial, by arguing that T-Mobile should not be permitted to pursue allegations it has asserted since the inception of this case. T-Mobile has consistently pleaded and argued that multiple Huawei employees and entities participated in a conspiracy to steal, use, and disclose T-Mobile's trade secrets and confidential information, which resulted in greater profits from the sale of Huawei handsets throughout the world. And T-Mobile's damages expert has always included the unjust enrichment accruing to Huawei USA's Chinese affiliates "caused by the misappropriation" of T-Mobile's trade secrets. Moreover, Huawei USA's *own* damages expert, in a report she submitted last July, explicitly considered and discussed the conduct of multiple non-defendant Huawei entities*, including Huawei Device China,* when she conducted her own unjust enrichment damages rebuttal analysis. Thus, not only did Huawei USA have notice of (and respond to) T-Mobile's theories, but Huawei USA's expert understood that a proper damages analysis includes the actions of other Huawei entities. This Court's jurisdictional ruling does not change this analysis – T-Mobile will rely on the same individuals and evidence at trial as before.

*Second*, Huawei USA's argument that it need not pay for the full damages caused by its misappropriation is foreclosed by the plain language of the controlling statute, which clearly states that a trade secret plaintiff may recover for "unjust enrichment *caused by* misappropriation that is not taken into account in computing damages for actual loss." Wash Rev. Code. Ann. § 19.108.030 (emphasis added). Tellingly, Huawei USA's Trial Brief relegated its response to this dispositive point to a footnote that contained no persuasive, contradictory authority.

*Third*, Huawei USA's arguments against T-Mobile's ability to recover damages under the

T-MOBILE USA, INC.'S SUPPLEMENTAL BRIEF IN
SUPPORT OF ITS TRIAL BRIEF - 1
(14-cv-01351-RAJ)

well-established reasonable royalty doctrine hinge on a fundamental misreading of the remedies available under WUTSA and the persuasive authority on this very issue.  *See Veritas Operating Corp. v. Microsoft Corp.*, No. C06-0703-JCC, 2008 WL 7404617, at *4 (W.D. Wash. Feb. 26, 2008).  Likewise, Huawei USA does not and cannot dispute that a hypothetical reasonable royalty negotiation must account for the benefits that would flow to the purchaser's affiliates. *See Storagecraft Tech. Corp. v. Kirby*, 744. F.3d 1183, 1185 (10th Cir. 2014).

*Finally*, Huawei USA incorrectly asserts T-Mobile cannot recover under a joint and several liability theory because it was not specifically "pled."  First, Huawei USA is wrong on the law; the sole authority it cites contradicts its position.  Second, T-Mobile consistently pleaded and argued Huawei affiliates' concerted effort to misappropriate T-Mobile's trade secrets.

The Court should maintain the status quo, and allow the parties to present their full case to the jury.

## I.     T-MOBILE HAS CONSISTENTLY MAINTAINED ITS DAMAGES THEORIES

### A.     T-Mobile Consistently Pleaded Conspiracy and Joint Conduct

T-Mobile has continually alleged Huawei USA's coordinated conduct in acquiring, disclosing, and using T-Mobile's trade secrets.  Huawei USA's claim that it lacked notice of T-Mobile's claims of conspiracy, agency, alter ego, joint action, and benefits to other Huawei entities from those actions can be dismissed out of hand, because T-Mobile included these allegations in its Complaint.  *E.g.,* Dkt. 1 (Complaint) at ¶ 26 (alleging conspiracy, alter ego, agency, and joint venture); *id*. ¶¶ 3, 15-17, 45-46, 48, 50, 57-58, 69-72, 82 (describing coordinated theft, involvement by, direction by, and disclosure to "Huawei R&D," "Huawei headquarters in China," "X-Device Robot Team' in China," and the "development team involved in Huawei's efforts to build its own testing robot"); *id.* ¶¶ 19, 83 (alleging effects of conspiracy were to benefit Huawei handset sales worldwide).

Furthermore, T-Mobile has consistently asserted these claims throughout the litigation. *See, e.g.,* Dkt. 37 (T-Mobile Opp. To MTD) at 5 ("T-Mobile alleges that Huawei engaged in a *campaign* and conspiracy."); Dkt. 283 (T-Mobile Opp. to MSJ) at 3-5 (alleging "illicit

scheme…includ[ing] dozens of employees…in both China and the U.S."); *id.* (identifying "Huawei HQ in China" requested information); Dkt. 245 (T-Mobile PSJ) at 5-9 (detailing conspiracy between Huawei employees in USA and China to obtain T-Mobile information). In fact, Huawei itself recognized that these claims were part of this case. Dkt. 278 (Huawei Opp. to PSJ) at 2 (writing that T-Mobile was "using…'Huawei' to mean all three [(1) Huawei Device USA, (2) Huawei Technologies, and (3) Huawei Device China]…as well as other Huawei entities"); Dkt. 329 (Huawei MILs) at 14 (writing about T-Mobile's use of the term "conspiracy"). Huawei USA cannot now feign ignorance.[1]

### B. Huawei USA's Notice is Confirmed by the Parties' Damages Reports

The fact that Huawei USA understood – and originally agreed – that the actions of other entities and co-conspirators besides Huawei USA were relevant to unjust enrichment can be found in the parties' expert reports. T-Mobile's expert report requires no supplementation or revision in response to the Court's summary judgment ruling; T-Mobile's damages expert, Dr. Ryan Sullivan, discussed in his report the benefits that flowed from Huawei USA's theft of the technology-in-suit in aggregate between the various Huawei entities. *See* Dkt. 285-9 (Sullivan Report) ¶¶ 93-94, 97 (referencing global sales data, writing "From an economic perspective, it is reasonable to infer that Huawei would have used the technology-in-suit to benefit *all* of their devices in order to reduce costs…." (emphasis added)); *id.* ¶¶ 38-40 (discussing Huawei Investment & Holding and Huawei global sales and revenues); *id.* ¶ 99 (writing about effect of use of technology-in-suit on increase of global Huawei sales).[2]

---

[1] With respect to Huawei USA's comments about T-Mobile's revisions to jury instructions, T-Mobile provided Huawei USA with its draft instructions by the required deadline (before the summary judgment ruling), subject to further revision. Huawei USA, on the other hand, did not provide T-Mobile with its proposed instructions (other than its mistaken instruction on estoppel) until *the day before* instructions were due to be submitted to the Court. Huawei USA cannot use its own neglect and T-Mobile's diligence as a basis for substantive argument.

[2] Dr. Sullivan relied on the global sales data Huawei produced in discovery, which *Huawei itself did not break out by entity.* Dkt. 352-1, Ex. M at 6-7; Steven N. Feldman Declaration in Support of T-Mobile's Supplemental Brief ("Feldman Decl."), Ex. R (April 18, 2016 Huawei Device USA's Responses to T-Mobile's Interrogatories Set 3) at 6-7. It is Huawei's burden to identify the sales not attributable to the trade secret. *See Petters v. Williamson & Assocs., Inc.*, 151 Wash. App. 154, 165 (2009) ("The plaintiff has the burden of establishing the defendant's sales; the defendant has the burden of establishing any portion of the sales not attributable to the

T-MOBILE USA, INC.'S SUPPLEMENTAL BRIEF IN
SUPPORT OF ITS TRIAL BRIEF - 3
(14-cv-01351-RAJ)

1. ████████████████████████████████████████████
2. ████████████████████████████████████████████
3. ██████████████████████████████████████.[3]
4. ████████████████████████████████
5. ████████████████████████████████████████████
6. ████████████████████████████████████████████
7. ████████████████████████████████████████████
8. ████████████████████████████████████████████
9. ████████████████████████████████████████████
10. ████████████████████████████████████████████
11. ████████████████████████████████████████████
12. ████████████████████████████████████████████
13. ████████████████████████████████████████████
14. ████████████████████████████████████████████
15. ████████████████████████████████████████████
16. ████████████████████████████████████████████
17. ██████████ In short, Huawei's own damages expert admitted that the analysis of T-Mobile's damages in this case must include an assessment of Huawei's testing capabilities, and these capabilities must be aggregated among multiple defendant and non-defendant Huawei entities whose research and development facilities were also aggregated. Huawei USA thus cannot credibly argue that it "lacks notice" and cannot be responsible for its own coordination with other Huawei entities.

---

trade secret...."). Obviously, Huawei was on notice that Dr. Sullivan was using the aggregate data Huawei produced. Dkt. 330-2 (Aron Rep.) ¶ 56; Feldman Decl. Ex. S (Sullivan Dep.) at 242:5-18. Separately, Huawei also argues that before "last week," it did not know that T-Mobile sought unjust enrichment and reasonable royalty damages for breach of contract. This is false – Dr. Sullivan explicitly stated that his unjust enrichment and reasonable royalty opinions applied to breach of contract. Dkt. 285-9 (Sullivan Report) at 6.

[3] In line with the evidence of joint manufacture and research, Huawei has admitted in other cases that it jointly conducts R&D activities. Complaint at ¶ 18 (Dkt. 1), *Huawei Tech. Co., Ltd. v. Samsung Electronics Co., Ltd.*, No. 3:16-cv-02787-WHO (N.D. Cal. May 24, 2016). Huawei's research capabilities flow between its entities and ultimately to China and consequently it was impossible for Huawei USA to only "benefit itself" through its theft.

T-MOBILE USA, INC.'S SUPPLEMENTAL BRIEF IN
SUPPORT OF ITS TRIAL BRIEF - 4
(14-cv-01351-RAJ)

### C. Huawei Concealed Evidence About its Co-Conspirators During Discovery

In addition to Huawei's repeated lies to T-Mobile about the extent of Huawei corporate involvement in the theft of T-Mobile's trade secrets, Huawei USA also intentionally concealed the involvement of Huawei Device China from T-Mobile until the end of discovery. ████
████
████
████
████
████

This concealment continued until close to the end of discovery. For example, in interrogatory responses dated August 25, 2015, and March 12, 2016, Huawei USA failed to identify Huawei Device China as a relevant entity in response to an interrogatory asking for "all individuals, working groups, teams, or business units that have requested or received information about the T-Mobile Robot." It was not until approximately April and May 2016 that Huawei USA began to identify in depositions "Huawei Device China Co Ltd." as the entity employing several individuals involved in the thefts, contradicting its earlier documents and interrogatory responses. Indeed, the evidence this Court relied on to conclude that Huawei Device China – rather than Huawei Technologies – employed and directed the Huawei USA employees involved in misconduct was based on depositions given in April and May 2016.[4] In short, Huawei USA cannot conceal facts and then argue that it did not have adequate notice of those facts.

## II. WUTSA PLAINLY ALLOWS DAMAGES CAUSED BY MISAPPROPRIATION

Washington law is clear that plaintiffs can recover damages for "unjust enrichment

---

[4] In its summary judgment ruling, the Court found – based on the deposition testimony of Huawei witnesses in April and May 2016 – that Huawei "HQ" refers to Huawei Device China and that the R&D team responsible for building the X-Device Robot and testing handsets was employed by Huawei Device China. Dkt. 334 (T-Mobile Order) at 5-6, 11-13. As detailed above, Huawei USA knew this from the outset of the litigation, although it did not disclose the information to T-Mobile until the close of discovery (contradicting its interrogatory responses). Huawei's Trial Brief quotes from Huawei's motion to dismiss to try to "prove" Huawei had disclosed these facts earlier. *See* Dkt. 357 (Huawei Tr. Br.) at 4. But *Huawei Device China* is not mentioned anywhere in that quotation.

T-MOBILE USA, INC.'S SUPPLEMENTAL BRIEF IN
SUPPORT OF ITS TRIAL BRIEF - 5
(14-cv-01351-RAJ)

*caused by misappropriation* that is not taken into account in computing damages for actual loss." Wash Rev. Code. Ann. § 19.108.030 (emphasis added). T-Mobile alleges, and will prove at trial, that Huawei USA improperly acquired, used, and disclosed T-Mobile's trade secrets – each an independent basis for misappropriation in Washington. *Id.* § 19.108.010(2). Under the clear language of § 19.108.030, the factfinder may award T-Mobile all unjust enrichment *caused by* Huawei USA's improper acquisition, use, and/or disclosure of T-Mobile's trade secrets. *See HomeStreet, Inc. v. State, Dep't. of Revenue*, 166 Wash.2d 444, 451 (2009) ("A statute that is clear on its face is not subject to judicial construction." (internal quotations omitted)).

Tellingly, Huawei USA fails to take on this dispositive issue – relegating its response to a footnote that confusingly argues that the term "caused by" limits the scope of damages by imposing a "causation" requirement. Of course, the statute does contain a causation requirement: it clearly states that a plaintiff may recover unjust enrichment damages that were "caused by misappropriation." Wash Rev. Code. Ann. § 19.108.030. T-Mobile's request for damages fits squarely within this language: T-Mobile seeks to recover the unjust enrichment *caused by* Huawei USA's intentional acquisition, use and disclosure of T-Mobile's trade secrets to its affiliate co-conspirators. *Id.*

At bottom, Huawei USA is requesting that, instead of reading and applying the statute's clear, plain language, the Court should read in words that would only allow a trade secret plaintiff to recover "*defendant's* unjust enrichment caused by misappropriation," as opposed to – as the statute plainly states – "unjust enrichment caused by misappropriation." Wash Rev. Code. Ann. § 19.108.030.[5] Unsurprisingly, Huawei does not cite any legal authority in support of its

---

[5] If the Washington legislature wished to break with the UTSA to expressly limit recovery to only the defendant's unjust enrichment as Huawei USA alleges, it could have done so. *See generally Davis v. State ex rel. Dep't of Licensing*, 137 Wash.2d 957, 963-64 (1999). Huawei USA's citation of *Bailie Comms. v. Trend Bus. Sys.*, 61 Wash. App. 151, 156-57 (1991), does not support its point. *Bailie* is not a trade secrets case and not a case about the *remedy* of unjust enrichment. *Id.* (interpreting the *cause of action* of unjust enrichment, not the *remedy* of unjust enrichment). In any event, T-Mobile *is* alleging that Huawei Device China and/or Huawei Technologies retained "money or benefits which in justice or equity belong to another." *Id.* at 159.

Huawei USA's citation to the pattern jury instructions, WPI 351.01, is similarly meritless. A pattern jury instruction cannot change the clear language and remedies of the statute itself. WPI 351.01 itself recognizes that instructions may need to be "modified" in unique circumstances. Indeed, the typical trade secret case does not involve a defendant who steals the trade secret for the primary purpose of then disclosing it to its overseas affiliates.

misguided argument. Accordingly, under well-established law, this Court must follow the plain language of the statute.

### III. A REASONABLE ROYALTY IS AVAILABLE AS DAMAGES

Under Washington law, a reasonable royalty: (1) is available as a measure of damages; and (2) necessarily takes into account benefits flowing to affiliates from the hypothetical license. Huawei USA incorrectly disputes the first point and ignores the second.

#### A. A Reasonable Royalty is Allowed Under the WUTSA

Huawei USA is wrong that WUTSA must expressly allow reasonable royalty as a remedy for it to be available. *First*, Huawei USA ignores the holdings in *McCormack* and *Veritas* expressly allowing a reasonable royalty as a calculation of damages under WUTSA. *McCormack & Dodge Corp. v. ABC Management Sys.*, 1983 WL 51859, at *8 (Wash. Superior Ct. Dec. 22, 1983) (Under WUTSA, "[s]uch a reasonable royalty is the most appropriate means of measuring damages for M&D's misappropriation of AMS's trade secrets."); *Veritas*, 2008 WL 7404617, at *4 (allowing for a reasonable royalty as a calculation of damages in Washington). Huawei does not address *McCormack*, and asks this Court in a footnote to ignore the reasoning in *Veritas* without any substantive reasoning. Judge Coughenour in *Veritas* undertook a lengthy and in-depth analysis similar to how the Washington Supreme Court would analyze the issue, including by reviewing legislative history and examining other UTSA jurisdictions. *Veritas*, 2008 WL 7404617, at *4. Huawei cites no authority to the contrary.

*Second*, a ruling that reasonable royalty is not available would conflict with the Washington legislature's express directive to maintain conformity with the UTSA by construing WUTSA to "effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it." Wash. Rev. Code Ann. § 19.108.910; *see Thola v. Henschell*, 140 Wash. App. 70, 78 (2007) ("Accordingly, when possible, we construe the UTSA to achieve uniformity among jurisdictions that have enacted it."). The UTSA allows reasonable royalty as a calculation of damages. *See, e.g.*, Feldman Decl., Ex. X (UTSA) at 10 ("[D]amages caused by misappropriation may be measured by imposition of liability for a reasonable

T-MOBILE USA, INC.'S SUPPLEMENTAL BRIEF IN
SUPPORT OF ITS TRIAL BRIEF - 7
(14-cv-01351-RAJ)

royalty…."); Restatement (Third) of Unfair Competition § 45, comment c, g.  Huawei USA fails to point to any UTSA jurisdiction – or any state or federal court decision from such a jurisdiction – that expressly prohibits the use of a reasonable royalty as a calculation of damages, effectively requesting this Court to be the first authority to do so, thus rendering Washington an outlier.

*Third*, Huawei USA offers no authority to support its assertion that Washington *rejected* a reasonable royalty measure of unjust enrichment.  Instead, Huawei USA argues that because the *model UTSA* was amended in 1985 to explicitly identify reasonable royalty, and Washington did not go back and adopt the *new* UTSA, Washington effectively rejected reasonable royalty.  Not so.  In fact, as noted above, Washington courts *before* 1985 recognized that under WUTSA – the same statute that exists today – reasonable royalty is a proper calculation of damages.  *See McCormack*, 1983 WL 51859, at *8.  Washington courts have never held otherwise.  The 1985 UTSA amendments simply codified a nationwide pre-existing understanding that allowed the remedy.[6]  Reasonable royalty is thus indisputably available under WUTSA.

### B. Reasonable Royalty May be Based on Expected Benefits to Affiliates

Huawei's Trial Brief fails to dispute that one of the key considerations in a reasonable royalty calculation is whether the benefits from a license flow to a defendant's affiliates.  *See, e.g., Storagecraft*, 744 F.3d at 1185-86 (affirming transfer of trade secret to third party as factor); *see also* Dkt. 351 (T-Mobile Tr. Br.) at 15-18 (citing cases).  Huawei USA's research and development capabilities are inextricably intertwined with those of its affiliates in China; the factfinder may thus consider Huawei affiliates' use of the technology-in-suit in this analysis.

### IV. HUAWEI'S JOINT AND SEVERAL LIABILITY ARGUMENTS FAIL

Even if the plain language of the WUTSA did not conclusively state that T-Mobile may recover all unjust enrichment caused by Huawei USA's misappropriation, T-Mobile could still recover damages from Huawei USA for benefits accruing to its China-based affiliates under the

---

[6] Other states before the UTSA amendments in 1985 also recognized that reasonable royalty was a calculation of damages for misappropriation.  *See, e.g.*, *Span-Deck v. Fab-Con, Inc.*, 677 F.2d 1237, 1249 (8th Cir. 1982) (reasonable royalty is a measure of damages under trade secret law); *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 536-39 (5th Cir. 1974) (same); *Forest Labs, Inc. v. Pillsbury Co.*, 452 F.2d 621, 627 (7th Cir. 1971) (same); *Demit of Venezuela, C.A. v. Electronic Water Sys.*, 547 F. Supp. 850, 853-54 (S.D. Fl. 1982) (same).

T-MOBILE USA, INC.'S SUPPLEMENTAL BRIEF IN
SUPPORT OF ITS TRIAL BRIEF - 8
(14-cv-01351-RAJ)

principles of joint and several liability. Dkt. 351 (T-Mobile Tr. Br.) at 11-14. Huawei USA contends that T-Mobile cannot recover because it did not specifically plead the theory and thus Huawei was not on notice, but it is wrong about the law and the facts.

The Federal Rules of Civil Procedure, which govern pleading requirements in federal district court, even in diversity cases involving state law claims, require only "simple, concise, and direct" statements of factual allegations that give rise to a claim, and pleadings are to be construed liberally "as to do justice." Fed. R. Civ. P. 8(e); *id.* 8(d)(1) ("No technical form is required."); *see, e.g., Grassmueck v. Barnett*, 281 F. Supp. 2d 1227, 1233 (W.D. Wash. 2003) ("[In diversity cases,] the federal rules govern the manner in which [] claims and defenses are raised.").[7] T-Mobile alleged agency, alter ego, conspiracy, and, in particular, coordinated theft. *See supra* Section I.A. Subsequent filings (including both parties' expert reports), also show Huawei USA has long been on notice of T-Mobile's allegations of joint conduct with Huawei's China-based affiliates. *See supra* Sections I.A-B.[8] In contrast, Huawei USA primarily relies on a Washington Practice Guide that refers to inapplicable *state* procedural law, and discusses a negligence/strict liability statute – RCW 4.22.070 – not the different statute governing intentional conduct, RCW 4.22.030. The Practice Guide Huawei cites also contradicts Huawei's position:

> Since joint and several liability is an ***exception*** to the statutory rule ***of proportionate liability***, plaintiff would ***presumably*** have the responsibility of alleging a joint and several liability theory against the defendants as a separate claim in the complaint.

9 Wash. Prac. Civil Procedure Forms 8.34 cmt. (3d ed. 2016) (emphasis added). This is not a negligence case where joint and several liability is an "exception," it is an intentional conduct case where, under well-established law, joint liability is the rule. *See Standing Rock*, 106 Wash.

---

[7] In particular, legal theories or labels characterizing the claims are not required, nor are "***specific phrases*** or ***legal labels*** characterizing the claim…required, so long as sufficient facts are alleged to put defendant on notice of the claim." Rutter Group Practice Guide: Federal Civil Procedure Before Trial, 8:96.1 (2016) (citing cases).

[8] The only case applying the Fed. R. Civ. P. that Huawei cites is *United States v. Cochran*, 79 F. Supp. 3d 578, 585 (E.D.N.C. Jan. 14, 2015), in which the Court held that "Plaintiff did not in this case plead such joint and several liability, based upon a theory of alter ego or piercing the corporate veil, nor did plaintiff plead facts upon which to assert such a claim of relief…." But T-Mobile here pled such facts *and* claims of agency, alter ego and conspiracy. In addition, *Cochran* opined on a joint and several liability theory of relief that was "unusual, exceptional, and specialized," differentiating it from "straightforward, well-established, avenue[s] of relief." *Id.* at 584. In contrast, in intentional conduct cases, joint and several liability is the well-established rule. *See Standing Rock Homeowners Ass'n v. Misich*, 106 Wash. App. 231, 245-47 (2001) (joint and several liability applies to all intentional torts).

T-MOBILE USA, INC.'S SUPPLEMENTAL BRIEF IN
SUPPORT OF ITS TRIAL BRIEF - 9
(14-cv-01351-RAJ)

App. at 245-47 (joint and several liability applies to all intentional torts).[9]

Huawei USA's remaining argument rests on the erroneous claim that joint and several liability uniquely does not apply to unjust enrichment damages. But Huawei ignores clear authority stating the contrary. *See, e.g.*, *Clark v. Bunker*, 453 F.2d 1006, 1010-11 (9th Cir. 1972) (holding joint tortfeasor liable for profits (unjust enrichment) received by another tortfeasor as a result of the misappropriation); Dkt. 351 (T-Mobile Tr. Br.) at 11-14 (citing cases). Indeed, the cases Huawei cites are inapposite because they involve the *cause of action* for unjust enrichment, which is fundamentally different from the unjust enrichment *damages remedy* at issue here. *Davenport v. Wash. Educ. Assoc.*, 147 Wash. App. 704, 725 (2008) (*cause of action* of unjust enrichment is distinct from the remedy in torts, contracts, and other law).[10] This distinction is critical because, under Washington law, joint and several liability is the default rule for intentional conduct, but not in other types of conduct. *See Standing Rock*, 106 Wash. App. at 245-47. Trade secret misappropriation is an intentional tort, unlike the cause of action of unjust enrichment, and so joint and several liability is the default liability rule.[11]

## V.   CONCLUSION

For these reasons, T-Mobile respectfully requests that this Court preserve the status quo by allowing T-Mobile to recover for all unjust enrichment caused by Huawei USA's conduct and the use of a reasonable royalty as a calculation of damages.

---

[9] Huawei USA also cites two cases for the uncontroversial principle that a party needs to plead the causes of action under which it seeks relief. It appears to be relying on the phrase "theories of recovery" in those cases to suggest they are somehow linked to "theories of [damages] recovery." Yet it is clear in both cases that "theories of recovery" is being used as a synonym for causes of action. *See Pinkley Inc. v. City of Frederick, MD*, 191 F.3d 394, 400-01 (4th Cir. 1999) (conversion claim not in pleading); *Kirby v. City of Tacoma*, 124 Wash. App. 454, 472 (2004) (new unpled adverse employment action tort). T-Mobile is not inserting any new cause of action.

[10] Each of the Washington cases cited by Huawei USA expressly deal with the cause of action of unjust enrichment, not trade secrets or the remedies available under WUTSA. *Bailie*, 61 Wash. App. at 153 (claim of unjust enrichment); *Norcon Builders, LLC v. GMP Homes VG, LLC*, 161 Wash. App. 474, 489-90 (2011) (same); *Cox v. O'Brien*, 150 Wash. App. 24, 27 (2009) (same). And the only trade secret misappropriation case it cites was *reversed* on appeal because the Michigan Tort Reform Act explicitly prohibited joint and several liability in the vast majority of tort claims, including trade secret misappropriation. *Mike's Train House, Inc. v. Lionel L.L.C.*, 2004 WL 2472644, at *3 (E.D. Mich. Nov. 1, 2004), *reversed by* 472 F.3d 398, 413-15 (6th Cir. 2006).

[11] Indeed, Huawei USA recognizes this distinction in its own brief, parenthetically noting while citing *Erausquin v. Notz*: "rejecting argument for joint and several liability on a claim for unjust enrichment on the ground that '[j]oint and several liability is a tort principle.'" Dkt. 357 (Huawei Trial Br.) at 7-8.

T-MOBILE USA, INC.'S SUPPLEMENTAL BRIEF IN
SUPPORT OF ITS TRIAL BRIEF - 10
(14-cv-01351-RAJ)

DATED this 21st day of February, 2017.

/s/ John C. Hueston
John C. Hueston (admitted *pro hac vice*)
Alison L. Plessman (admitted *pro hac vice*)
Steven N. Feldman (admitted *pro hac vice*)
jhueston@hueston.com
aplessman@hueston.com
sfeldman@hueston.com
**HUESTON HENNIGAN LLP**
523 W. 6th Street, Suite 400
Los Angeles, CA 90014
(213) 788-4340

/s/ Michael E. Kipling
Michael E. Kipling, WSBA #7677
kipling@kiplinglawgroup.com
**KIPLING LAW GROUP PLLC**
4464 Fremont Avenue N., Suite 300
Seattle, WA 98103
(206) 545-0345

***Counsel for Plaintiff T-Mobile USA, Inc.***

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of February, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

DATED this 21st day of February, 2017.

*s/ Xinlin Li Morrow*
Xinlin Li Morrow (admitted *pro hac vice*)
**HUESTON HENNIGAN LLP**
523 W. 6th Street, Suite 400
Los Angeles, CA  90014
(213) 788-4340

*Counsel Plaintiff T-Mobile USA, Inc.*