HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| T-MOBILE USA, INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>HUAWEI DEVICE USA, INC., a Texas corporation,<br><br>        Defendant. | Case No. 14-cv-01351-RAJ<br><br>**PLAINTIFF T-MOBILE USA, INC.'S BRIEF IN SUPPORT OF UNJUST ENRICHMENT DAMAGES FOR BREACHES OF CONTRACT** |

This Court's March 30, 2017 Order held that reasonable royalty is an appropriate measure for breach of non-disclosure obligations in Washington, including those in the Handset and Accessory Supply Agreement ("Supply Agreement") and the Clean Room Letter ("CRL"). *See* Dkt. 400 at 5-6 (citing *Veritas Operating Corp. v. Microsoft Corp.*, 2008 WL 7404617, at *3-4 (W.D. Wash. Feb. 26, 2008)). To determine a reasonable royalty, courts routinely account for the scope of the license, including, as relevant here, third-party benefits from the license and the parties' corporate families. *See Avocent Redmond Corp. v. Rose Electronics*, 2013 WL 8844098, at *3 (W.D. Wash. Mar. 11, 2013) (considering "nature and scope of the license").[1]

The contracts at issue here, as well as the facts presented at trial, provide sufficient basis for this Court to allow consideration of Huawei's affiliates in the reasonable royalty award.

*First,* accounting for affiliate use in calculating a reasonable royalty is consistent with the Supply Agreement and CRL. The Supply Agreement prohibits Huawei USA from using T-Mobile's "confidential, proprietary or secret information…except in performance of [the Supply Agreement]" and provides that Huawei is "liable for ***any*** breach of the Agreement," including those of its employees, Affiliates, or Subcontractors. PTX953 at 32, § 7.7 (emphasis added); *id.* at 39-40, § 9.4.[2] The Supply Agreement also permits T-Mobile to recover – for breaches of confidentiality or the gross negligence or willful misconduct of Huawei USA – ***all*** available contractual remedies under the laws of Washington. *Id.* at 26, §§ 4.3, 4.4. All of these same provisions apply to the CRL, which is governed by the terms and conditions of the Supply

---

[1] *See also StorageCraft Technology Corp. v. Kirby*, 744 F.3d 1183, 1189-90 (10th Cir. 2014) ("[T]he facts all the same permitted the jury to issue an award premised on an understanding that the license Mr. Kirby assumed allowed him the right to share the [licensed information] with a rival and permit (if not compel) its commercial exploitation by that rival."); *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 425 F.3d 1366, 1377 (Fed. Cir. 2005) ("[T]he holding company would not enter any negotiation without considering the competitive position of its corporate parent."), overruled on other grounds by *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.,* 576 F.3d 1348 (Fed. Cir. 2009); *Inventio AG v. Thyssenkrupp Elevator Am. Corp.*, 2013 WL 6628007, at *1 (D. Del. Dec. 13, 2013) ("[T]he corporate relationship…would likely have been considered during a licensing negotiation and thus is an appropriate factor in the expert's analysis of the hypothetical licensing negotiation.").

[2] Section 7.7's provision that Huawei USA "is liable for any breach of the Agreement by any contractor(s) and/or employee(s) of Seller" certainly includes Huawei affiliate companies like Huawei Device China, who served as the manufacturer and supplier of Huawei USA's phones. *See* 4/26/17 Trial Tr. (J. Young) at 42:2-17.

PLAINTIFF T-MOBILE USA, INC.'S BRIEF IN SUPPORT
OF UNJUST ENRICHMENT DAMAGES FOR BREACHES
OF CONTRACT - 1
(14-cv-01351-RAJ)

Agreement (*see* PTX1258 at 1). The CRL thus incorporates the provisions making Huawei USA liable for breaches by its employees, affiliates, and subcontractors. In addition, the CRL incorporates by reference the Nondisclosure Agreement, which Huawei USA signed "on behalf of itself, its parents, affiliates, subsidiaries, contract manufacturers, parent companies and alliances." *See* PTX 1258 at 1, 5. As a result, Huawei USA is contractually responsible under the Supply Agreement and CRL for its affiliates' breaches.

*Second*, T-Mobile has presented more than sufficient evidence at trial to justify Huawei USA's liability for its affiliates' breaches and damages resulting therefrom, including unjust enrichment to Huawei USA or its corporate affiliates. Indeed, the documentary evidence presented at trial showed that Huawei USA and its affiliates repeatedly and systematically leveraged Huawei USA's access to T-Mobile's confidential information[3] through these contracts to build Huawei's own robotic technology for non-T-Mobile carriers. *See, e.g.*, PTX1924 at 6 ("Prachi and Adam have accessed the robot lab....They know how TMO robot work and system info. I asked them to write down the info in detail and then send to R&D.").[4] Testimony at trial from Huawei's own witnesses likewise confirmed that Huawei USA shared T-Mobile's confidential information with its affiliates, including Huawei Device China, pursuant to the Supply Agreement. *See, e.g.*, 4/27/17 Trial Tr. (R. Yao) at 51:1-8, 179:3-10; 5/5/17 Trial Tr. (J. Cui) at 24:17-19, 69:17-22.

For these reasons, the contracts and evidence presented at trial show that Huawei USA's affiliates benefitted from information learned as a result of Huawei USA and its affiliates' breaches of Huawei USA's contracts with T-Mobile. Consequently, Huawei USA can be held liable for those breaches and responsible for all legally available contractual remedies.

---

[3] T-Mobile's confidential information includes its robot lab, which Huawei was only able to access by signing the Clean Room Letter. 4/28/17 Trial Tr. (K. Barnes) at 196:4-12, 197:6-12.

[4] *See also, e.g.*, PTX1924 at 5 ("Based on our conversation yesterday, you will send us the detailed information for robot test environment and test methodology."); PTX 1934 at 2 ("The attachment is the pictures of Robot test, including test tools and test procedure."); PTX1949 at 4 ("Because we can access TMO robot, you guys should fully leverage the advantage."); PTX1882 at 5 ("I suggested [to] HQ to send an engineer to TMO for a hands-on experience by playing the robot system. I believe this would give HQ robot team a huge benefit in understanding TMO robot system from hardware and software, as well as operation."); PTX1915 at 2 ("For the mechanical arm issues, go to the laboratory for [reconnaissance or survey or investigation] and obtain measurement data....").

DATED this 12th day of May, 2017.

        */s/ Steven N. Feldman*
John C. Hueston (admitted *pro hac vice*)
Alison L. Plessman (admitted *pro hac vice*)
Moez M. Kaba (admitted *pro hac vice*)
Steven N. Feldman (admitted *pro hac vice*)
jhueston@hueston.com
aplessman@hueston.com
mkaba@hueston.com
sfeldman@hueston.com
**HUESTON HENNIGAN LLP**
523 W. 6th Street, Suite 400
Los Angeles, CA 90014
(213) 788-4340

Michael E. Kipling, WSBA #7677
kipling@kiplinglawgroup.com
**KIPLING LAW GROUP PLLC**
4464 Fremont Avenue N., Suite 300
Seattle, WA 98103
(206) 545-0345
***Counsel for Plaintiff T-Mobile USA, Inc.***

# **CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of May, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

DATED this 12th day of May, 2017.

> *s/ Xinlin Li Morrow*
> Xinlin Li Morrow (admitted *pro hac vice*)
> **HUESTON HENNIGAN LLP**
> 523 W. 6th Street, Suite 400
> Los Angeles, CA 90014
> (213) 788-4340
>
> *Counsel Plaintiff T-Mobile USA, Inc.*