HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

T-MOBILE USA, INC.,

            Plaintiff,

     v.

HUAWEI DEVICE USA, INC., *et al.*,

          Defendants.

Case No. C14-1351-RAJ

**COURT'S JURY INSTRUCTIONS**

Given in open court this 15th day of May, 2017.

The Honorable Richard A. Jones
United States District Judge

JURY INSTRUCTIONS – 1

## INSTRUCTION NO. 1

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

**INSTRUCTION NO. 2**

The evidence you are to consider in deciding what the facts are consists of:

1. The sworn testimony of any witness;

2. The exhibits that are admitted into evidence, including any video exhibits that may be played upon request and any computer based files that may be reviewed upon request;

3. Any facts to which the lawyers have agreed; and

4. Any facts that I have instructed you to accept as proved.

JURY INSTRUCTIONS – 3

## INSTRUCTION NO. 3

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1. Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2. Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3. Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

4. Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

## INSTRUCTION NO. 4

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

# INSTRUCTION NO. 5

Certain charts and summaries not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial.

Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

## INSTRUCTION NO. 6

Some documents have been admitted into evidence with certain words or other portions deleted.  You should not speculate why the deletions were made or what has been deleted or let the existence of the deletions influence your decision one way or another.

## INSTRUCTION NO. 7

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

## INSTRUCTION NO. 8

You have heard testimony from witnesses who testified to opinions and the reasons for their opinions. This opinion testimony is allowed, because of the education or experience of this witness.

Such opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

## INSTRUCTION NO. 9

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

## INSTRUCTION NO. 10

You have heard testimony of witnesses who testified in the Chinese language and seen documents written in Chinese. Witnesses who do not speak English or are more proficient in another language testify through an official a court-certified interpreter.  In addition to the witness's interpreter, there was a check interpreter provided by the other party.  Although some of you may know the Chinese language, it is important that all jurors consider the same evidence.  Therefore, you must accept the interpreter's translation of the witness's testimony or of Chinese text in documents.  You must disregard any different meaning.

You must not make any assumptions about a witness or a party based solely on the use of an interpreter to assist that witness or party.

## INSTRUCTION NO. 11

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

## INSTRUCTION NO. 12

Under the law, a corporation is considered to be a person.  It can act only through its employees, agents, directors, or officers.  Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

**INSTRUCTION NO. 13**

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

## INSTRUCTION NO. 14

Some of you have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of what was said.  Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

## INSTRUCTION NO. 15

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiff, T-Mobile, claims:

1. That Huawei Device USA misappropriated T-Mobile's trade secrets.

2. That Huawei Device USA entered into one or more of the following contracts with T-Mobile, and that Huawei Device USA breached those contract(s):

    a. Handset and Accessory Supply Agreement between T-Mobile and Huawei Device USA.

    b. MetroPCS Supply Agreement between T-Mobile and Huawei Device USA.

    c. Mutual Nondisclosure Agreement between T-Mobile and Huawei Device USA.

    d. Clean Room Letter Agreement between T-Mobile and Huawei Device USA.

The Court has already determined as a matter of law that Huawei Device USA breached the Mutual Nondisclosure Agreement and Clean Room Letter Agreement.  It is up to the jury to determine whether T-Mobile suffered any damage as a result of Huawei Device USA's breach of the Mutual Nondisclosure Agreement and Clean Room Letter Agreement.  It is also up to the jury to determine whether Huawei Device USA breached the Handset and Accessory Supply Agreement or the MetroPCS Supply Agreement and, if so, whether T-Mobile suffered any damage as a result.

T-Mobile also claims that it sustained damages as a result of Huawei Device USA's actions and that Huawei Device USA's misappropriation and breaches of two of the contracts caused Huawei Device USA and its related corporate entities to be unjustly enriched.

Huawei Device USA denies these claims.  Huawei Device USA further denies that T-Mobile was damaged or that it was unjustly enriched.  Huawei Device USA further

denies the nature and extent of the claimed damage.

## INSTRUCTION NO. 16

On the claim of misappropriated trade secrets, T-Mobile has the burden of proving each of the following propositions:

(1) That T-Mobile had a trade secret;

(2) That Huawei Device USA misappropriated T-Mobile's trade secret; and

(3) That Huawei Device USA's misappropriation was a proximate cause of damages to T-Mobile and/or that, as a result of the misappropriation, Huawei Device USA or Huawei Device China, received money or benefits that in justice and fairness belong to T-Mobile.

If you find from your consideration of all the evidence that each of these propositions has been proved, then your verdict should be for T-Mobile on this claim. On the other hand, if you find that any of these propositions has not been proved, your verdict should be for Huawei Device USA on this claim.

## INSTRUCTION NO. 17

Washington law prohibits misappropriation of a trade secret. "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process that:

(1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

## INSTRUCTION NO. 18

A compilation of information may constitute a trade secret even though the plaintiff cannot prove that every element of the compilation is unavailable elsewhere. Trade secrets may contain elements that by themselves may be in the public domain, but which together qualify as trade secrets. On the other hand, when the information is in the public domain, and the end product of the information is unoriginal, there is no trade secret.

## INSTRUCTION NO. 19

Information has "independent economic value" if it gives the owner of the information a competitive advantage over others who do not know the information.

In determining whether information derives "independent economic value" from not being generally known or readily ascertainable, you may consider, among other factors, the following:

(1) The value of the information to the plaintiff and to the plaintiff's competitors;

(2) The amount of effort or money that the plaintiff expended in developing the information;

(3) The extent of measures that the plaintiff took to guard the secrecy of the information;

(4) The ease or difficulty of acquiring or duplicating the information by proper means;

(5) The degree to which third parties have placed the information in the public domain or rendered the information readily ascertainable.

## INSTRUCTION NO. 20

In determining whether information is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy," you may consider, among other factors, the following:

(1) The extent to which the information is known outside the plaintiff's business;

(2) The extent to which employees and others in the plaintiff's business know the information;

(3) The nature and extent of the measures the plaintiff took to guard the secrecy of the information;

(4) The existence or absence of an express agreement restricting disclosure; and

(5) The extent to which the circumstances under which the information was disclosed to others indicate that further disclosure without the plaintiff's consent was prohibited.

## INSTRUCTION NO. 21

"Misappropriation" of a trade secret means acquisition, disclosure, or use of a trade secret without the express or implied consent of the owner of the trade secret by a person who:

(1) Used improper means to acquire the trade secret; or

(2) At the time of acquisition, disclosure, or use, knew or had reason to know that his or her knowledge of the trade secret was:

(a) derived from or through a person who had utilized improper means to acquire it; or

(b) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(c) derived from or through a person who owed a duty to the plaintiff to maintain its secrecy or limit its use.

## INSTRUCTION NO. 22

The phrase "improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.

On the other hand, the phrase "improper means" does not include acquiring information through independent development or invention, research of public or industry resources, or reverse engineering of materials that were acquired and used lawfully.

**INSTRUCTION NO. 23**

The plaintiff, T-Mobile, has the burden of proving each of the following propositions on its claim of breach of contract:

(1)     That Huawei Device USA entered into one or more of the following contracts with T-Mobile:

       a.  Handset and Accessory Supply Agreement.

       b.  MetroPCS Supply Agreement.

(2)     That the terms of the contract(s) entered into included: a promise not to reproduce, copy and/or disclose T-Mobile's confidential and/or trade secret information.

(3)     That Huawei Device USA breached the contract(s) entered into.

The Court has already ruled that Huawei Device USA entered into and did not comply with the terms of the following two contracts:

       a.  Mutual Nondisclosure Agreement.

       b.  Clean Room Letter Agreement.

(4)     That T-Mobile was not in material breach of and had performed or offered to perform its obligations under the contract(s);

and

(5)     That T-Mobile was damaged as a result of Huawei Device USA's breach(es).

The Court's ruling on the Mutual Nondisclosure Agreement and Clean Room Letter Agreement does not mean that T-Mobile was damaged as a result.  It is your job to determine the amount of damages sustained by T-Mobile as a result of Huawei Device USA's failure to comply with the terms of the Mutual Nondisclosure Agreement or the Clean Room Letter Agreement.

If you find from your consideration of all the evidence that each of these propositions has been proved, your verdict should be for T-Mobile on this claim. On the

other hand, if any of these propositions has not been proved, your verdict should be for Huawei Device USA on this claim.

## INSTRUCTION NO. 24

A contract is to be interpreted to give effect to the intent of the parties at the time they entered the contract.

You are to take into consideration all the language used in the contract, giving to the words their ordinary meaning, unless the parties intended a different meaning.

You are to determine the intent of the contracting parties by viewing the contract as a whole, considering the subject matter and apparent purpose of the contract, all the facts and circumstances leading up to and surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of the respective interpretations offered by the parties.

## INSTRUCTION NO. 25

It is the duty of the court to instruct you as to the measure of damages.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

The burden of proving damages rests with the plaintiff and it is for you to determine, based upon the evidence, whether any particular element has been proved by a preponderance of the evidence. You must be governed by your own judgment, by the evidence in the case, and by these instructions, rather than by speculation, guess, or conjecture.

## INSTRUCTION NO. 26

On its trade secret misappropriation claim, T-Mobile seeks damages in the form of its actual damages and unjust enrichment.

T-Mobile has the burden of proving actual damages by a preponderance of the evidence. Actual damages means the amount of money that will reasonably and fairly compensate T-Mobile for any injury you find was caused by the Huawei Device USA's misappropriation of T-Mobile's trade secrets.

T-Mobile also claims unjust enrichment damages on its claim of trade secret misappropriation. To recover unjust enrichment damages, T-Mobile has the burden of proving that Huawei Device USA misappropriated trade secrets and that, as a result of the misappropriation, Huawei Device USA or Huawei Device China received money or benefits that in justice and fairness belong to T-Mobile. T-Mobile has the burden of proving Huawei Device USA or Huawei Device China's sales attributable to the use of T-Mobile's trade secrets. The burden then shifts to Huawei Device USA to establish any portion of those sales not attributable to T-Mobile's trade secrets and any expenses to be deducted in determining net profits.

As an alternative means of calculating unjust enrichment, you may award a reasonable royalty. You may not award both reasonable royalty and unjust enrichment.

The law does not permit a plaintiff to recover twice for the same damages. Thus, you may include as damages both T-Mobile's actual loss and Huawei Device USA and Huawei Device China's unjust enrichment, but only if and to the extent that they do not overlap in this way.

## INSTRUCTION NO. 27

A royalty is a payment made to the owner of a trade secret by someone else so that he can use the trade secret. A "reasonable royalty" is the amount T-Mobile and Huawei Device USA would have agreed upon as a royalty at the time Huawei Device USA's misappropriation or breach occurred.

In determining a reasonable royalty, you should assume that T-Mobile would have been willing to allow Huawei Device USA to use the trade secrets and that Huawei Device USA would have been willing to pay T-Mobile to do so. You should take into account what T-Mobile's and Huawei Device USA's expectations would have been if they had negotiated a royalty and had acted reasonably in their negotiations. You should assume that both T-Mobile and Huawei Device USA would have believed that T-Mobile's trade secrets were legally enforceable and that they would have known the level of sales and profits that Huawei Device USA and its related corporate entities would make from the trade secrets. You should also assume that Huawei Device USA would have been willing to pay, and T-Mobile would have been willing to accept, the reasonable royalty they negotiated. Your role is to determine what T-Mobile and Huawei Device USA would have agreed upon if they had negotiated in this manner, not just what either T-Mobile or Huawei Device USA would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard. One way to calculate a royalty is to determine an "ongoing royalty." Another way to calculate a royalty is to determine a one-time lump sum payment that the wrongdoer would have paid at the time of the hypothetical negotiation for a license covering all sales, both past and future. When a one-time lump sum is paid, the wrongdoer pays a single price for a license covering both past and future sales. It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.

JURY INSTRUCTIONS – 30

# INSTRUCTION NO. 28

In determining a reasonable royalty, you may consider the following factors, in addition to any others that are shown by the evidence.  These factors, however, are neither exclusive nor necessarily pertinent to every reasonable royalty analysis:

1. Royalties that others paid to T-Mobile for the trade secrets;

2. Royalties that Huawei Device USA paid to others for comparable trade secrets;

3. Whether T-Mobile had a policy of licensing or not licensing the trade secrets;

4. Whether T-Mobile and Huawei Device USA are competitors;

5. Whether use of the trade secrets helps to make sales of other products or services;

6. Whether the product made using the trade secrets is commercially successful, as well as its profitability;

7. The advantages of using the trade secrets over products that do not include the trade secrets;

8. The extent of use by Huawei Device USA or its related corporate entities' use of the trade secrets and the value of that use to Huawei Device USA;

9. Any royalty amounts that are customary for similar or comparable trade secrets;

10. The portion of the profit on sales that is due to the trade secrets, as opposed to other factors, such as elements or processes, features, or improvements developed by Huawei Device USA or Huawei Device China; and

11. Expert opinions regarding what would be a reasonable royalty.

JURY INSTRUCTIONS – 31

## INSTRUCTION NO. 29

On its breach of contract claim, T-Mobile claims damages in the form of actual damages.  In order to recover actual damages, T-Mobile has the burden of proving that Huawei Device USA breached a contract with it, and that T-Mobile incurred actual economic damages as a result of Huawei Device USA's breach, and the amount of those damages.

Actual Damages:

T-Mobile may recover actual damages for Huawei Device USA's breach of any and all of the four contracts in this case.  If T-Mobile has proved that it incurred actual damages and the amount of those actual damages, then you shall award actual damages to T-Mobile for breach of that contract.

Actual damages are those losses that were reasonably foreseeable, at the time the contract was made, as a probable result of a breach.  A loss may be foreseeable as a probable result of a breach because it follows from the breach either (a) in the ordinary course of events, or (b) as a result of special circumstances, beyond the ordinary course of events, that the party in breach had reason to know.

In calculating T-Mobile's actual damages, you should determine the sum of money that will put the T-Mobile in as good a position as it would have been in if both plaintiff and defendant had performed all of their promises under the contract.

The burden of proving damages rests with the plaintiff and it is for you to determine, based upon the evidence, whether any particular element has been proved by a preponderance of the evidence.  You must be governed by your own judgment, by the evidence in the case, and by these instructions, rather than by speculation, guess, or conjecture.

Reasonable Royalty:

As an alternative to actual damages for a breach of the Handset and Accessory Supply Agreement or the Clean Room Letter, you may award unjust enrichment damages

JURY INSTRUCTIONS – 32

in the form of a reasonable royalty.  Because Huawei Device China was not a signatory to the Handset and Accessory Supply Agreement or the Clean Room Letter, unjust enrichment damages on T-Mobile's contract claim must be measured according to any unjust enrichment conferred on Huawei Device USA.  You may not award unjust enrichment damages in the form of a reasonable royalty for a breach of either the MetroPCS Supply Agreement or the Mutual Nondisclosure Agreement.

If you award T-Mobile damages for both its breach of contract and misappropriation of trade secrets claims, you may not award damages in a manner that results in a double recovery of the same damages.

## INSTRUCTION NO. 30

In this case T-Mobile claims actual damages in the form of lost profits. T-Mobile's damages may include net profits if T-Mobile proves with reasonable certainty that net profits would have been earned, but were not earned because of Huawei Device USA's breach of contract and/or misappropriation.

"Reasonable certainty" relates to the fact of damage rather than the amount of damage.

"Net profits" in this case mean the actual profit after operating expenses T-Mobile would have earned but did not earn because of Huawei Device USA's breach of contract and/or misappropriation.

## INSTRUCTION NO. 31

If you find for the plaintiff on its trade secrets misappropriation claim, you may, but are not required to, award punitive damages.  The purposes of punitive damages are to punish a defendant and to deter similar acts in the future.  Punitive damages may not be awarded to compensate a plaintiff.

The plaintiff has the burden of proving by a preponderance of the evidence that punitive damages should be awarded and, if so, the amount of any such damages.

You may award punitive damages only if you find that the defendant's conduct that harmed the plaintiff was willful and malicious.  Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff.  Conduct is willful if it is voluntary and intentional.

If you find that punitive damages are appropriate, you must use reason in setting the amount.  Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice or sympathy toward any party. In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendant's conduct.

In addition, you may consider the relationship of any award of punitive damages to any actual harm inflicted on the plaintiff.

## INSTRUCTION NO. 32

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

## INSTRUCTION NO. 33

A verdict form has been prepared for you. You will note that the form includes a number of questions which call for a "yes" or "no" answer. It is important that you answer the questions in the order in which they appear on the form, except where the verdict form indicates otherwise. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the bailiff that you are ready to return to the courtroom.

## INSTRUCTION NO. 34

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

## INSTRUCTION NO. 35

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any Internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the

JURY INSTRUCTIONS – 39

parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

JURY INSTRUCTIONS – 40

HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

T-MOBILE USA, INC.,

        Plaintiff,

    v.

HUAWEI DEVICE USA, INC., *et al.*,

        Defendants.

Case No. C14-1351-RAJ

**COURT'S VERDICT FORM**

We, the jury, being duly impaneled and sworn, provide the following answers to the questions submitted by the Court:

**Trade Secret Misappropriation:**

**QUESTION NO. 1**:  Do you find by a preponderance of the evidence that T-Mobile has proven its misappropriation of trade secrets claim against Huawei Device USA?

YES _____  NO _____

*If you answered "Yes" to Question No. 1, then you must answer Question Nos. 2-3.  If you answered "No" to Question No. 1, then you must skip Question Nos. 2-3 and continue on with Question No. 5.*

**QUESTION NO. 2**:

(a) What do you find is the amount of actual damages, if any, that T-Mobile incurred as a result of trade secret misappropriation?

$_____

(b) What do you find is the amount of unjust enrichment damages, if any, that T-Mobile incurred as a result of trade secret misappropriation?

$_____

**QUESTION NO. 3**:  Do you find by a preponderance of the evidence that Huawei Device USA's misappropriation of trade secrets was willful and malicious?

YES _____  NO _____

*If you answered "Yes" to Question No. 3, then you must answer Question No. 4. If you answered "No" to Question No. 3, then you must skip Question No. 4 and continue on with Question No. 5.*

**QUESTION NO. 4:**  What amount of punitive damages, if any, do you award T-Mobile?

$_____

**Breach of Contract:**

VERDICT FORM – 2

*You must answer Question No. 5.*

**QUESTION NO. 5:**  The Court has already determined that Huawei Device USA breached its Mutual Nondisclosure Agreement and Clean Room Letter Agreement with T-Mobile.  Do you find by a preponderance of the evidence that T-Mobile has proven its claim that Huawei Device USA also breached one or more of its other contracts with T-Mobile?

Handset and Accessory Supply Agreement

YES _____   NO _____

MetroPCS Supply Agreement

YES _____   NO _____

*You must answer Question Nos. 6 and 7.*

**QUESTION NO. 6:**  What do you find is the total amount of actual damages, if any, that T-Mobile incurred as a result of (1) Huawei Device USA's breaches of the Nondisclosure Agreement and Clean Room Letter Agreement, and (2) Huawei Device USA's breach(es), if any, of the Handset and Accessory Supply Agreement and/or MetroPCS Supply Agreement?

$_____

**QUESTION NO. 7:**  What do you find is the total amount of unjust enrichment conferred on Huawei Device USA, if any, that T-Mobile should be awarded as a result of Huawei Device USA's breach of either, or both, the Handset and Accessory Supply Agreement and Clean Room Letter Agreement?

$_____

If you award T-Mobile damages for both its breach of contract and misappropriation of trade secrets claims, you may not award damages in a manner that results in a double recovery of the same damages.

VERDICT FORM – 3

*Please sign and date this form, and notify the courtroom deputy that you have reached a verdict.*

Dated this _____ day of May, 2017.

_____

Presiding Juror

VERDICT FORM – 4